IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 4 2008

Michael N. Milby, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| *ex rel.* Susan Ruscher, | § |
| | § |
| STATE OF CALIFORNIA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF DELAWARE | § |
| *ex rel.* Susan Ruscher, | § |
| DISTRICT OF COLUMBIA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF FLORIDA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF GEORGIA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF HAWAII | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF ILLINOIS | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF INDIANA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF LOUISIANA | § |
| *ex rel.* Susan Ruscher, | § |
| COMMONWEALTH OF MASSACHUSETTS | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF MICHIGAN | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF MONTANA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF NEVADA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF NEW HAMPSHIRE | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF NEW JERSEY | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF NEW MEXICO | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF NEW YORK | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF OKLAHOMA | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF RHODE ISLAND | § |
| *ex rel.* Susan Ruscher, | § |
| STATE OF TENNESSEE | § |

H - 08 - 3396

CIVIL NO. _____

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

FILED IN CAMERA AND
UNDER SEAL

PLAINTIFFS' ORIGINAL
COMPLAINT PURSUANT TO
31 U.S.C. §§ 3729–3732,
FEDERAL FALSE CLAIMS
ACT, AND VARIOUS STATE
FALSE CLAIMS ACTS

JURY TRIAL DEMANDED

*ex rel.* Susan Ruscher,       §
STATE OF TEXAS        §
*ex rel.* Susan Ruscher,       §
COMMONWEALTH OF VIRGINIA   §
*ex rel.* Susan Ruscher,       §
            §
   Plaintiffs,        §
            §
V.             §
            §
OMNICARE, INC.; ACCU-MED SERVICES,  §
LLC; ACCU-MED SERVICES OF    §
WASHINGTON LLC; ACCU-MED, INC;   §
OMNICARE OF TEXAS 2, LP D/B/A    §
AMERICAN PHARMACEUTICAL SERVICES;  §
OMNICARE OF FLORIDA, LP D/B/A    §
AMERICAN PHARMACEUTICAL SERVICES;  §
ARLINGTON ACQUISITION I, INC; ASCO / IS  §
GROUP; ASCO HEALTHCARE, LLC D/B/A  §
ASCO NEIGHBORCARE; ASCO PPS GOODWIN  §
HOUSE; BAKERSFIELD HEART HOSPITAL  §
FOUNDATION; BADGER ACQUISITION OF  §
TAMPA, LLC D/B/A BAY PHARMACY;   §
BADGER ACQUISITION OF OHIO, LLC D/B/A  §
BEEBER PHARMACY; BEST CARE HHC   §
ACQUISITION COMPANY LLC; BEST CARE  §
LTC ACQUISITION COMPANY LLC;    §
BRIDGEPORT PHARMACY SERVICES, INC.;  §
BROADWAY LONG TERM CARE PHARMACY,  §
INC.; CALIFORNIA HEART HOSPITAL;   §
CAMPO'S MEDICAL PHARMACY; CARE   §
PHARMACEUTICAL SERVICES, LP; CTLP  §
ACQUISTION LLC D/B/A CARE TECH; CIP  §
ACQUISTION CORPORATION D/B/A    §
CARTER'S INSTITUTIONAL PHARMACY; CP  §
ACQUISITION CORP. D/B/A CENTRAL   §
PHARMACY; CHP ACQUISITION     §
CORPORATION D/B/A CHERRY HILL   §
PHARMACY, INC.; CIBOLA GENERAL   §
HOSPITAL CORP.; CLINIMETRICS RESEARCH  §
ASSOCIATES, INC.; COLUSA REGIONAL  §
MEDICAL CENTER; COMMUNITY    §
HEALTHCARE OF DOUGLAS, INC.;    §
COMMUNITY MEDICAL ARTS PHARMACY;  §
COMPSCRIPT CORP; COMPSCRIPT, LLC;  §
CONSULTING AND PHARMACEUTICAL  §

SERVICES, INC.; CORNERSTONE FT. WAYNE;           §
CORNERSTONE HOSPITAL OF HUNTINGTON;              §
CORNERSTONE INDIANAPOLIS; HIS                    §
ACQUISITION NO. 170, INC. D/B/A CORPUS           §
CHRISTI SPECIALTY HOSPITAL; CREEKSIDE            §
PHARMACY, INC. F/K/A PHARMACON                   §
SERVICES, INC.; D&R PHARMACEUTICAL               §
SERVICES, LLC D/B/A D & R PHARMACARE             §
D/B/A OMNICARE OF LEXINGTON, KY D/B/A            §
OMNICARE OF LOUISVILLE, KY; NIV                  §
ACQUISITION LLC D/B/A DENMAN                     §
PHARMACY SERVICES; DOCTOR'S                      §
HOSPITAL, LLC; DOCTOR'S SPECIALTY               §
HOSPITAL, LLC; THE DR. JOHN WARNER               §
HOSPITAL FOUNDATION, INC.; THI OF                §
BALTIMORE MANAGEMENT, LLC; EDMOND                §
SPECIALTY HOSPITAL; PHARMACY                     §
ASSOCIATES OF GLENS FALLS, INC. D/B/A            §
EFS/ROYAL CARE; ELDERCARE HOME                   §
PHARMACY, LLC; ENLOE DECATUR D/B/A               §
ENLOE DRUG, LLC; EVERGREEN                       §
PHARMACEUTICAL, LLC; EVERGREEN                   §
PHARMACEUTICAL OF CALIFORNIA, INC.               §
F/K/A PIP ACQUISTION F/K/A WEST VAL              §
PREMIER F/K/A NCS HEALTHCARE OF                  §
CALIFORNIA, INC. F/K/A CREEKSIDE                 §
MANAGED CARE PHARMACY, INC.;                     §
EXCELLERX, INC.; FIRST CHOICE                    §
PHARMACY SERVICES D/B/A FIRST CHOICE             §
RX; GATEWAY/MIDWEST REGIONAL                     §
OVERHEAD; GPR REGIONAL OVERHEAD;                 §
GREAT LAKES OVERHEAD; GULF POINT                 §
SPECIALTY HOSPITAL – HOUSTON;                    §
OMNICARE DISTRIBUTION CENTER LLC                 §
D/B/A HEARTLAND REPACK SERVICES, LLC;            §
HMIS, INC.; HOLLAND RETAIL LTC; HOME             §
CARE PHARMACY, INC.; HOME CARE                   §
PHARMACY, LLC; INTERLOCK PHARMACY                §
SYSTEMS, INC. F/K/A INTERLOCK                    §
PHARMACY OF COLUMBIA; INTERLOCK                  §
PHARMACY SYSTEMS, LLC; KEEFER                    §
MEDICAL CENTER; KONSULT, INC.; LCPS              §
ACQUISITION, LLC D/B/A MEDILIFE                  §
PHARMACY; PHARMACY SUPPORT                       §
SERVICES, INC.; LO-MED PRESCRIPTION              §
SERVICES, LLP; LTC - OCR OF CAROLINA;            §

LTC PHARMACY SERVICES; MAHONING                    §
VALLEY HOSPITAL, INC. F/K/A SPECIALTY              §
MAHONING VALLEY HOSPITAL, INC.;                    §
MANAGED HEALTHCARE,INC.;                           §
MCCLELLAND HEALTH SYSTEMS; MED                     §
WORLD ACQUISITION CORP. D/B/A MED                  §
WORLD PHARMACY; MEDICAL ARTS                       §
HEALTH CARE, INC.; MEDICATE                        §
PHARMACY; MEDICO PHARMACY;                         §
MEDILIFE OF TENNESSEE; OMNICARE                    §
PHARMACY OF FLORIDA, LP D/B/A                      §
MEDISTAT; MIDEAST REG. OVERHEAD;                   §
MIDWEST REGIONAL MEDICAL                           §
ASSOCIATES, INC.; MT. WASHINGTON                   §
PEDIATRIC HOSPITAL, INC. F/K/A                     §
CHILDREN'S HOSPITAL, INC.; NCP                     §
CHANTILLY HMIV VA NCAH; NCRX                       §
SPECIALTY; NCS HEALTHCARE OF OHIO,                 §
INC.; NCS HEALTHCARE OF NEW MEXICO,                §
INC.; NCS HEALTHCARE OF WISCONSIN,                 §
INC.; NCS HEALTHCARE OF CALIFORNIA,                §
INC.; NCS HEALTHCARE OF MONTANA, INC.;             §
NCS HEALTHCARE OF WASHINGTON, INC.;                §
NCS HEALTHCARE OF ILLINOIS, INC.; NCS              §
HEALTHCARE OF SOUTH CAROLINA, INC.;                §
NCS HEALTHCARE OF KANSAS, LLC; NCS                 §
HEALTHCARE; NEIGHBORCARE OF                        §
INDIANA, LLC; NEIGHBORCARE PHARMACY                §
SERVICES, INC. D/B/A NETWORK HEALTH                §
SERVICES; ASCO HEALTHCARE, LLC;                    §
NEIGHBORCARE, INC.; SPHERIS                        §
OPERATIONS, INC.; NH VETERANS                      §
HOSPITAL; NIHAN & MARTIN, INC.; N & M              §
ACQUISITION, INC.; NORTH SHORE                     §
PHARMACY, INC.; OMNICARE ESC, LLC;                 §
OMNICARE PHARMACY OF TEXAS 1, LP;                  §
OMNICARE PHARMACY OF TEXAS 2, LP;                  §
HOME CARE PHARMACY, LLC; OMNICARE                  §
EXTENDED PHARMA SERVICES, LLC;                     §
OMNICARE PHARMACEUTICALS, INC.;                    §
NEIGHBORCARE PHARMACY OF VIRGINIA,                 §
LLC; OMNICARE OF NEW YORK, LLC;                    §
OMNICARE PHARMACY AND SUPPLY                       §
SERVICES, LLC; OWENS HEALTHCARE –                  §
SPECIALTY PHARMACY, INC.; PA                       §
OVERHEAD; PBM PLUS, INC.; PHARM CO.;               §

PHARMACON CORP.; CR PHARMACY          §
SERVICE, INC., PHARMACY ASSOCIATES,   §
LTD.; STL HEALTH RESOURCES CO.;       §
PHARMACY CARE ASSOCIATES, LLC;        §
PHARMACY CONSULTANTS, INC.;           §
PHARMACY SUPPORT SERVICES, INC.;      §
PHARMASOURCE, LLC; PHARM-CORP OF      §
MAINE, LLC; PHARMED GROUP SOLUTIONS,  §
LLC; PHARMED OF BATON ROUGE, INC.;    §
PHARMED, INC.; PINNACLE PHARMACY OF   §
EAU CLAIRE, LLC; INTEGRATED OF        §
AMARILLO, INC.; PLUM CREEK SPECIALTY; §
PPS/OCR OF CAROLINA-WILSON;           §
PREFERRED CHOICE, LLC; PREFERRED      §
CHOICE HOME & HEALTHCARE, LLC;        §
HOSPICE PREFERRED CHOICE; BHS         §
PHARMACY; PRICE-RITE PHARMACY; PRN    §
PHARMACEUTICAL SERVICES, LP; PUGET    §
PHARMACY SERVICES; RESCOT SYSTEMS     §
GROUP, INC.; RESOURCE PHARMACY        §
SERVICES; RESPICARE RX; RIVER PARK    §
HOSPITAL, INC.; ROESCHEN'S CLINIC     §
PHARMACY; ROYAL CARE PHARMACY,        §
INC.;  RX SERVICES, INC.; RX DRUG     §
SERVICES, INC.; RX SERVICES           §
ENTERPRISES, INC.; SENIOR HEALTH CARE; §
BALKO, JOHN P. & ASSOCIATES, A SOLE   §
PROPRIETORSHIP, D/B/A SENIOR HEALTH   §
CARE ASSOCIATES; CATHOLIC SENIOR      §
HOUSING AND HEALTH CARE SERVICES,     §
INC.;  FORT PITT SENIOR HEALTH CARE   §
ASSOCIATES, PC; KALIL HEALTH CARE     §
ASSOCIATES D/B/A COMFORCARE SENIOR    §
SERVICES OF DELAWARE COUNTY, INC.;    §
SENIOR CARE GROUP, INC.; SENIOR HEALTH §
CARE CONCEPTS, INC.; SENIOR HEALTH    §
CARE INSURANCE SERVICES, LTD., L.L.P.; §
SENIOR HEALTH CARE PLANNING           §
SERVICES, INC.; SENIOR HEALTH CARE    §
TRANSITION TRUST; SENIOR HEALTH-CARE  §
FOUNDATION, INC.; U.S. SENIOR HEALTH  §
CARE ASSOCIATION, INC.; SENIOR HOME   §
HEALTH CARE, INC.; LANGSAM HEALTH     §
SERVICES, INC.; LANGSHAM HEALTH       §
SERVICES, LLC; JHC ACQUISITIONS, LLC  §
D/B/A OMNICARE CLINICAL INTERVENTION  §

CENTER; LANGSAM MEDICAL PRODUCTS, §
INC. D/B/A SEQUOIA; SEQUOIA MEDICAL §
PRODUCTS, INC., SHORE PHARMACY, INC.; §
LAKE SHORE PHARMACY, INC.; NORTH §
SHORE PHARMACY, INC.; SOUND SHORE §
PHARMACY, INC.; SOUTH SHORE §
PHARMACY AND SURGICAL SUPPLY, INC.; §
SOUTHERN DESERT; SOUTHERN REG. §
OVERHEAD; THI OF TEXAS AT LUBBOCK I, §
LLC D/B/A SOUTHWEST REGIONAL §
SPECIALTY HOSPITAL; SPECIALIZED §
PHARMACY SERVICES NORTH, INC.; §
SPECIALIZED PHARMACY SERVICES, LLC; §
SPECIALIZED PHARMACY SERVICES, INC.; §
SPECIALTY HOSPITAL OF ALBUQUERQUE; §
SPECIALTY HOSPITAL OF MIDAMERICA; §
SAN ANTONIO SPECIALTY MEDICAL §
CENTER, INC. D/B/A THI OF TEXAS AT SAN §
ANTONIO II, INC. D/B/A SPECIALTY §
HOSPTIAL OF SAN ANTONIO; STERLING §
HEALTHCARE SERVICES, INC. D/B/A §
STERLING HOME MEDICAL SERVICES; §
STERLING PHARMACY; STERLING §
PHARMACY, LLC; STURGIS HOSPITAL; §
SUNSCRIPT MEDICAL SERVICES, INC.; §
SUNSCRIPT PHARMACY CORP.; SHS §
HOLDING, LLC D/B/A SYNERGY §
HEALTHCARE SERVICES; THI OF TEXAS AT §
DALLAS, LLC D/B/A TEXAS SPECIALTY §
HOSPITAL OF DALLAS; THI OF TEXAS AT §
WICHITA FALLS, LLC D/B/A TEXAS §
SPECIALTY HOSPITAL OF WICHITA FALLS; §
THE PHARMACY; THREE FORKS §
APOTHECARY; THREE FORKS §
APOTHECARY, LP; THREE FORKS §
APOTHECARE, INC.; OMNICARE OF §
BEATTYVILLE, KY; TRELLES PHARMACY §
MANAGEMENT, INC.; TRELLES PHARMACY §
MANAGEMENT OF BRANDON, INC.; §
UNICARE; UNICARE LIFE & HEALTH §
INSURANCE CO.; UPA SERVICES, INC.; §
VALUE HEALTH CARE SERVICES, LLP; §
VALUE HEALTH CARE SERVICES, LLC; NCS §
HEALTHCARE OF KENTUCKY, INC. D/B/A §
VANGARD LABS; VAPS ACQUISITION §
COMPANY, LLC; VITAL CARE INFUSIONS, §

vi

INC.; WADSWORTH PHARMACY, INC.;                                  §
SELECT SPECIALTY HOSPITAL – WICHITA,                             §
INC.; WILLIAMSON DRUG CO., INC. D/B/A                            §
PHARMACY RESOURCE NETWORK D/B/A                                  §
EXTENDED CARE ASSOCIATES D/B/A RX                                §
SERVICES D/B/A WILLIAMSON'S                                      §
PHARMACY D/B/A WOODBINE PHARMACY;                                §
WILLIAMSON'S NORFOLK A/K/A                                       §
PHARMACY RESOURCE NETWORK; ZS                                    §
ACQUISITION COMPANY, LLC; ADVOCAT,                               §
INC.; ALLIANCE PURCHASING NETWORK,                               §
LLC; ASCENSION HEALTH; ASSISTED                                  §
LIVING CONCEPTS, INC.; CAPITAL LIVING                            §
AND REHABILITATION CENTRES; CARE                                 §
PURCHASING; CONSULATE HEALTH CARE,                               §
INC.; COVENANT CARE, INC.; DEACONESS                             §
CORP.; EMERITUS SENIOR LIVING;                                   §
EXTENDICARE HEALTH SERVICES, INC.;                               §
FAMILY SENIOR CARE; FIVE STAR QUALITY                            §
CARE, INC.; FOUNTAINS NURSING HOME;                              §
FUNDAMENTAL; GENESIS HEALTHCARE;                                 §
GOOD SAMARITAN HOMES; GREYSTONE;                                 §
HCR MANORCARE; HEARTLAND;                                        §
MANORCARE HEALTH SERVICES; ARDEN                                 §
COURTS; HEALTHBRIDGE; LIFE CARE                                  §
CENTERS OF AMERICA; LYRIC HEALTH                                 §
CARE; MARINER HEALTH CARE, INC.;                                 §
PATHWAY; PDP PARTNERS; SAVA SENIOR                               §
CARE; SENIOR LIVING PROPERTIES, LLC;                             §
SHORELINE HEALTHCARE MANAGEMENT;                                 §
SOVEREIGN HEALTHCARE; SUMMERVILLE                                §
SENIOR LIVING; SUNBRIDGE HEALTHCARE                              §
CORPORATION; SUNRISE SENIOR LIVING,                              §
INC.; TOKEN DEMO; TRANS HEALTHCARE;                              §
INC.; TRINITY HEALTH CARE CENTER;                                §
VITAS INNOVATIVE HOSPICE CARE, AAHS                              §
ACQUISITION CORP.; ALACRITAS                                     §
BIOPHARMA, INC.; AMBLER ACQUISITION                              §
COMPANY, LLC; AMC – NEW YORK, INC.;                              §
AMC – TENNESSEE, INC.; ANDERSON                                  §
MEDICAL SERVICES, INC.; APS                                      §
ACQUISITION, LLC; APS SUMMIT CARE                                §
PHARMACY, LLC; ASCO HEALTHCARE OF                                §
NEW ENGLAND, LLC; ASCO HEALTHCARE                                §
OF NEW ENGLAND, LP; ATLANTIC MEDICAL                             §
GROUP, LLC; BACH'S PHARMACY EAST,                                §

LLC; BACH'S PHARMACY SERVICES, LLC;                §
BADGER ACQUISITION, LLC; BADGER                    §
ACQUISITION OF BROOKSVILLE, LLC;                   §
BADGER ACQUISITION OF KENTUCKY, LLC;               §
BADGER ACQUISITION OF MINNESOTA,                   §
LLC; BADGER ACQUISITION OF ORLANDO,                §
LLC; BADGER ACQUISITION OF TEXAS, LLC;             §
BIO-PHARM INTERNATIONAL, INC.; BPNY                §
ACQUISITION CORP.; BPTX ACQUISITION                §
CORP.; CAPITOL HOME INFUSION, INC.;                §
CARE CARD, INC.; CARE4, LP; CIC SERVICES,          §
LLC; COMPASS HEALTH SERVICES, LLC;                 §
COMPSCRIPT – BOCA, LLC; COMPSCRIPT –               §
MOBILE, INC.; CONCORD PHARMACY                     §
SERVICES, INC.; CP SERVICES, LLC; CPS              §
ACQUISITION COMPANY, LLC; DELCO                    §
APOTHECARY, INC.; DIXON PHARMACY,                  §
LLC.; DP SERVICES, LLC; EASTERN                    §
MEDICAL SUPPLIES, INC.; EASTERN REHAB              §
SERVICES, INC.; ENCARE OF                          §
MASSACHUSETTS, LLC; EURO BIO-PHARM                 §
CLINICAL SERVICES, INC.; GENEVA SUB,               §
INC.; H.O. SUBSIDARY, INC.; THE                    §
HARDARDT GROUP, INC.; HEALTH                       §
CONCEPTS AND SERVICES, INC.; HEALTH                §
OBJECTS CORPORATION; HEARTLAND                     §
HEALTHCARE SERVICES; HIGHLAND                      §
WHOLESALE, LLC; HOME PHARMACY                      §
SERVICES, LLC; HORIZON MEDICAL                     §
EQUIPMENT AND SUPPLY, INC.; HYTREE                 §
PHARMACY, INC.; INSTITUTIONAL HEALTH               §
CARE SERVICES, LLC; LIFEMED, LLC;                  §
LOBOS ACQUISITION, LLC; LOBOS                      §
ACQUISITION OF ARIZONA, INC.; LOBOS                §
ACQUISITION OF PENNSYLVANIA, INC.; LPA             §
ACQUISITION COMPANY, LLC; LPI                      §
ACQUISITION CORPORATION; MAIN STREET               §
PHARMACY, LLC; MANAGEMENT &                        §
NETWORK SERVICES, INC.; MANAGEMENT                 §
& NETWORK SERVICES, LLC; MEDICAL                   §
SERVICES CONSORTIUM, INC.; MEDICAL                 §
SERVICES GROUP, LLC; MHHP ACQUISITION              §
COMPANY, LLC; MOSI ACQUISITION                     §
CORPORATION; NATIONAL CARE FOR                     §
SENIORS, LLC; NCH HEALTHCARE OF                    §
ARIZONA, INC.; NCH HEALTHCARE OF                   §

ARKANSAS, INC.; NCH HEALTHCARE OF §
BEACHWOOD, LLC; §
NCS HEALTHCARE OF CONNECTICUT, INC.; §
NCS HEALTHCARE OF FLORIDA, INC.; NCS §
HEALTHCARE OF INDIANA, INC.; NCS §
HEALTHCARE OF INDIANA, LLC; NCS §
HEALTHCARE OF IOWA, LLC; NCS §
HEALTHCARE OF KENTUCKY, INC.; NCS §
HEALTHCARE OF MARYLAND, LLC; NCS §
HEALTHCARE OF MASSACHUSETTS, INC.; §
NCS HEALTHCARE OF MICHIGAN, INC.; NCS §
HEALTHCARE OF MINNESOTA, INC.; NCS §
HEALTHCARE OF MISSOURI, INC.; NCS §
HEALTHCARE OF NEW HAMPSHIRE, INC.; §
NCS HEALTHCARE OF NEW JERSEY, INC.; §
NCS HEALTHCARE OF NORTH CAROLINA, §
INC.; NCS HEALTHCARE OF OHIO, LLC; NCS §
HEALTHCARE OF OKLAHOMA, INC.; NCS §
HEALTHCARE OF OREGON, INC.; NCS §
HEALTHCARE OF PENNSYLVANIA, INC.; §
NCS HEALTHCARE OF RHODE ISLAND, LLC.; §
NCS HEALTHCARE OF TENNESSEE, INC.; §
NCS HEALTHCARE OF TEXAS, INC.; NCS §
HEALTHCARE OF VERMONT, INC.; NCS §
HEALTHCARE OF WASHINGTON, INC.; §
NCS SERVICES, INC.; NEIGHBORCARE- §
ORCA, LLC; NEIGHBORCARE- TC12, LLC; §
NEIGHBORCARE HOLDINGS, INC.; §
NEIGHBORCARE HOME MEDICAL EQUIP, §
LLC; NEIGHBORCARE HOME MEDICAL §
EQUIP OF MARYLAND LLC; NEIGHBORCARE §
INFUSION SERVICES, INC.; NEIGHBORCARE §
OF CALIFORNIA, INC.; NEIGHBORCARE OF §
MARYLAND, LLC; NEIGHBORCARE OF NEW §
HAMPSHIRE, LLC; NEIGHBORCARE OF §
NORTHERN CALIFORNIA, INC.; §
NEIGHBORCARE OF OHIO, LLC; §
NEIGHBORCARE OF OKLAHOMA, INC.; §
NEIGHBORCARE OF VIRGINIA, INC.; §
NEIGHBORCARE OF WISCONSIN, LLC; §
NEIGHBORCARE PHARMACIES, LLC; §
NEIGHBORCARE PHARMACY OF §
OKLAHOMA LLC; NEIGHBORCARE §
PHARMACY OF VIRGINIA LLC; §
NEIGHBORCARE REPACKAGING, INC.; §
NEIGHBORCARE-MEDISCO, INC.; NGC §

ix

ACQUISITION COMPANY LLC; OCR                    §
SERVICES CORPORATION; OCR-RA                    §
ACQUISITION, LLC, D/B/A LONG TERM CARE          §
PHARMACY; OFL CORP.; OKLAHOMA                   §
INSTITUTIONAL PHARMACY SERVICES,                §
LLC; OMNIBILL SERVICES LLC; OMNICARE            §
AIR TRANSPORT SERVICES, INC.;                   §
OMNICARE CANADIAN HOLDINGS, INC.;               §
OMNICARE CLINICAL RESEARCH, INC.,               §
F/K/A IBAH, INC.; OMNICARE CLINICAL             §
RESEARCH, LLC, F/K/A COROMED, INC.;             §
OMNICARE CR INC.; OMNICARE                      §
HEADQUARTERS LLC; OMNICARE HOLDING              §
COMPANY; OMNICARE INDIANA                       §
PARTNERSHIP HOLDING CO, LLC;                    §
OMNICARE MANAGEMENT COMPANY;                    §
OMNICARE OF NEVADA LLC; OMNICARE                §
PENNSYLVANIA MED SUPPLY, LLC;                   §
OMNICARE PHARMACIES OF MAINE                    §
HOLDING COMPANY; OMNICARE                       §
PHARMACIES OF PENNSYLVANIA EAST,                §
LLC; OMNICARE PHARMACIES OF                     §
PENNSYLVANIA WEST, LLC; OMNICARE                §
PHARMACIES OF THE GREAT PLAINS                  §
HOLDING COMPANY; OMNICARE                       §
PHARMACY OF COLORADO, LLC;                      §
OMNICARE PHARMACY OF INDIANA, LLC;              §
OMNICARE PHARMACY OF MAINE LLC;                 §
OMNICARE PHARMACY OF NEBRASKA LLC;              §
OMNICARE PHARMACY OF NORTH                      §
CAROLINA, LLC; OMNICARE PHARMACY OF             §
PUEBLO, LLC; OMNICARE PHARMACY OF               §
SOUTH DAKOTA LLC; OMNICARE                      §
PHARMACY OF TENNESSEE LLC;                      §
OMNICARE PHARMACY OF THE MIDWEST,               §
LLC, F/K/A FREED'S; OMNICARE                    §
PURCHASING COMPANY GENERAL                      §
PARTNER, INC.; OMNICARE PURCHASING              §
COMPANY LIMITED PARTNER, INC.;                  §
OMNICARE PURCHASING COMPANY LP;                 §
OMNICARE RESPIRATORY SERVICES, LLC;             §
OMNICARE SENIOR HEALTH OUTCOMES,                §
LLC; OMNICARE.COM, INC.; PBM PLUS MAIL          §
SERVICE PHARMACY, LLC; PCI                      §
ACQUISITION, LLC; PHARMACY HOLDING              §
#1, LLC; PHARMACY HOLDING #2, LLC;              §

x

PHARMASOURCE HEALTHCARE, INC.; PP §
ACQUISITION COMPANY, LLC; PPS §
ACQUISITION COMPANY, LLC; PPS- GBMC §
JOINT VENTURE LLC; PPS- ST. AGNES JOINT §
VENTURE, LLC; PRN PHARMACEUTICAL §
SERVICES, LP; §
PROFESSIONAL PHARMACY SERVICES, INC.; §
PSI ARKANSAS ACQUISITION, LLC; §
RESOURCE BIOMETRICS, INC.; RXC §
ACQUISITION COMPANY; SHC ACQUISITION §
CO., LLC, D/B/A SYNERGY; SHORE §
PHARMACEUTICAL PROVIDERS, INC.; §
SOUTH PARK PARTNERS LP; SOUTHSIDE §
APOTHECARY, INC.; SPECIALIZED HOME §
INFUSION OF MICHIGAN, LLC; SPECIALIZED §
PATIENT CARE SERVICES, INC.; §
SPECIALIZED PHARMACY SERVICES, LLC; §
SPECIALIZED SERVICES OF MICHIGAN, INC.; §
SPECIALTY CARTS, LLC; STERLING §
HEALTHCARE SERVICES, INC.; SUBURBAN §
MEDICAL SERVICES, INC.; SUPERIOR CARE §
PHARMACY, INC.; SWISH, INC.; TCPI §
ACQUISITION CORP., D/B/A TOTAL CARE §
PHARMACY; THE MEDICINE CENTRE, LLC; §
THG ACQUISITION CORP., D/B/A TANDEM §
HEALTH GROUP; THE TIDEWATER §
HEALTHCARE SHARED SERVICES GROUP, §
INC.; TRANSPORT SERVICES, INC.; UC §
ACQUISITION CORP., D/B/A UNICARE, INC.; §
UNI-CARE HEALTH SERVICES OF MAINE, §
INC.; VALUE PHARMACY, INC.; WINSLOW'S §
PHARMACY §
§
§
        Defendants. §

## RELATOR SUSAN RUSCHER'S ORIGINAL COMPLAINT

**RELATOR SUSAN RUSCHER'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

1.      The United States of America, the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, the Commonwealths of Massachusetts and Virginia, and the District of Columbia, by and through qui tam relator Susan Ruscher, bring this action under 31 U.S.C. §§ 3729–3732 ("False Claims Act") to recover all damages, penalties, and other remedies established by the False Claims Act on behalf of the United States and themselves and, in support, show the following:

## I.      INTRODUCTION

2.      In a typical nursing home ("skilled nursing facility"), about 80% of pharmacy services and drug costs are covered by Medicaid, while Medicare pays the other 20% of costs and services. Omnicare and other long-term care pharmacy providers that serve these homes bill state Medicaid programs directly for Medicaid reimbursement of the pharmacy services and drug costs, but must bill the homes to collect their share of total Medicare reimbursement. This suit concerns Omnicare's scheme to offer unlawful enticements to certain skilled nursing facilities in violation of the Anti-Kickback Statute. Specifically, in order to induce and retain business from favored skilled nursing facilities that provide services to a high volume of Medicare and Medicaid patients, Omnicare forgoes its Medicare payments for pharmaceuticals and related services rendered to these facilities. In other words, in order to retain the majority of Omnicare's business with skilled nursing facilities—Medicaid business—Omnicare allows these favored facilities to enrich themselves on its share of Medicare reimbursement. The Centers for Medicare and Medicaid Services ("CMS") continues to pay Medicare reimbursement to these

skilled nursing facilities, never knowing that the funds go towards these kickbacks that help Omnicare increase its stranglehold on the long-term care pharmacy market.

3.      Not all skilled nursing facilities that do business with Omnicare are favored with such inducements.  The nursing home facilities fortunate enough to receive these kickbacks are typically those with multiple locations and a high volume of Medicaid patients.  Many are designated in Omnicare's accounting system as "National Accounts."  These nursing home chains control such a large proportion of nursing home beds in the United States that long-term care pharmacy providers such as Omnicare have every incentive to win their business at virtually any cost.  Other nursing home chains favored by Omnicare's scheme are smaller but still account for a high volume of patients; often these have set their sights on acquisition of other facilities in the near future.

4.      Even while it works this fraud on Medicare and Medicaid, Omnicare maintains the pretense that the Medicare payments owed are debts it intends to collect.  Omnicare continues billing National Account and other favored customers for its Medicare reimbursement but it declines to collect on these invoices regardless of how far these customers go into debt.  Omnicare and these customers share the understanding that Omnicare will never seek to collect the substantial sums owed, yet these debts are seldom written off.  The costs of Omnicare's kickback scheme are so great that Omnicare's continued solvency is a mystery: as of June 2008, skilled nursing facilities whose debts Omnicare refuses to collect owed Omnicare approximately $400 million in amounts past-due over 180 days.

5.      This illegal favoritism provides an unfair competitive advantage to the larger nursing home chains at the expense of individually-owned facilities.  The Office of Inspector General for the United States Department of Health and Human Services has made clear that this

is among the very dangers that Congress sought to prevent in enacting the Anti-Kickback Statute. *See* Publication of OIG Special Advisory Bulletin on Offering Gifts and Other Inducements to Beneficiaries, 67 Fed. Reg. 55,855, 55,856 (Aug. 30, 2002) ("The use of giveaways to attract business also favors large providers with greater financial resources for such activities, disadvantaging smaller providers and businesses."). Further, Omnicare's practice of paying vast kickbacks to its largest customers works as a kind of predatory pricing with regard to its competitors in the long term care pharmacy market, driving them out of business and furthering Omnicare's monopolistic interests.

## II.    PARTIES

6.    Relator Susan Ruscher ("Ruscher") is a citizen of the United States and a resident of the State of Ohio.

7.    Defendant Omnicare, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare, Inc. may be served through its registered agent, CSC – Lawyers Incorp., 701 Brazos St., Suite 1050, Austin, Texas 78701.

8.    Defendant Accu-Med Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Accu-Med Services, LLC. may be served through its registered agent, Corporation Service Company, 200 SW 30th St., Topeka, KS 66611.

9.    Defendant Accu-Med Services of Washington LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Accu-Med Services of Washington LLC may be served

through its registered agent, Corporation Service Company, 6500 Harbour Heights Pkwy, Ste 400, Mukilteo, WA 98275.

10.     Defendant Accu-Med, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Accu-Med, Inc. may be served through its registered agent, Lawyers Incorporating Service, 14 Centre St., Concord, New Hampshire 03301.

11.     Defendant Omnicare Pharmacy of Texas 2, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Omnicare Pharmacy of Texas 2, LP may be served through its registered agent, CSC, 701 Brazos St., Suite 1050, Austin, Texas 78701.

12.     Defendant Omnicare Pharmacy of Florida, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare Pharmacy of Florida, LP may be served through its registered agent, CSC, 1201 Hays St., Tallahassee, Florida 32301.

13.     Defendant Arlington Acquisition I, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Arlington Acquisition I, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

14.     Defendant ASCO/IS Group is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. ASCO/IS Group address and registered agent is unknown at this time and will be supplemented.

15.     Defendant ASCO Healthcare, LLC d/b/a ASCO Neighborcare is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and

4

pharmaceutical services to long-term care patients.   ASCO Healthcare, LLC d/b/a ASCO Neighborcare may be served through its registered agent, CSC, 11S 12th St., P.O. Box 1463, Richmond, Virginia 23218.

16.     Defendant ASCO PPS Goodwin House is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. ASCO PPS Goodwin House address and registered agent is unknown at this time and will be supplemented.

17.     Defendant Bakersfield Heart Hospital Foundation is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Bakersfield Heart Hospital Foundation may be served through its registered agent, Chip Robinson, 3001 Sillect Ave., Bakersfield, California 93308.

18.     Defendant Badger Acquisition of Tampa, LLC d/b/a Bay Pharmacy is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Tampa, LLC d/b/a Bay Pharmacy  may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

19.     Defendant Badger Acquisition of Ohio, LLC d/b/a Beeber Pharmacies is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Ohio, LLC d/b/a Beeber Pharmacies may be served through its registered agent, CSC, 701 Brazos St., Suite 1050, Austin, Texas 78701.

20.     Defendant Best Care HHC Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and

5

pharmaceutical services to long-term care patients.  Best Care HHC Acquisition Company, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

21.     Defendant Best Care LTC Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Best Care LTC Acquisition Company, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

22.     Defendant Bridgeport Pharmacy Services, Inc. is a Washington corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Bridgeport Pharmacy Services, Inc. may be served through its registered agent, W. John Sinsheimer, Fourth Ave. Plaza, 1001 4th Ave., #2120, Seattle, Washington 98154.

23.     Defendant Broadway Long Term Pharmacy, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Broadway Long Term Pharmacy, Inc. may be served through its registered agent, John Goralka, 2115 J St., Suite 201, Sacramento, California 95816.

24.     Defendant California Heart Hospital is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. California Heart Hospital's address and registered agent is unknown at this time and will be supplemented.

25.     Defendant Campo's Medical Pharmacy, Inc. is a Louisiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Campo's Medical Pharmacy, Inc. may be served through its registered agent, CSC, 320 Somerulos St., Baton Rouge, Louisiana 70802.

26.     Defendant Care Pharmaceutical Services, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Care Pharmaceutical Services, LP may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

27.     Defendant CTLP Acquisition LLC d/b/a Care Tech is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CTLP Acquisition LLC d/b/a Care Tech may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, IL 62703.

28.     Defendant CIP Acquisition Corporation d/b/a Carter's Institutional Pharmacy is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CIP Acquisition Corporation d/b/a Carter's Institutional Pharmacy may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

29.     Defendant CP Acquisition Corporation d/b/a Central Pharmacy is an Oklahoma corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CP Acquisition Corporation d/b/a Central Pharmacy may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

30.     Defendant CHP Acquisition Corporation d/b/a Cherry Hill Pharmacy, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CHP Acquisition Corporation d/b/a Cherry Hill Pharmacy, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

7

31.     Defendant Cibola General Hospital Corporation is a New Mexico corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Cibola General Hospital Corporation may be served through its registered agent, CSC, Kenneth Cochran, 1016 Roosevelt Ave., Grants, New Mexico  87020.

32.     Defendant Clinimetrics Research Associates, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Clinimetrics Research Associates, Inc. may be served through its registered agent, CSC, 1201 Hays St., Tallahassee, Florida  32301.

33.     Defendant Colusa Regional Medical Center is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Colusa Regional Medical Center may be served through its registered agent, Brady Myers, 199 E. Webster St., Colusa, California  95932.

34.     Defendant Community Healthcare of Douglas, Inc. is an Arizona corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Community Healthcare of Douglas, Inc. may be served through its registered agent, Michael Carter, 2174 W. Oak Ave., Douglas, Arizona  85607.

35.     Defendant Community Medical Arts Pharmacy is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Community Medical Arts Pharmacy may be served through its registered agent, Douglas Koch, 3152 E. Santa Ana, Fresno, California  93726.

36.     Defendant Comscript Corp. is a corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Comscript Corp's address and registered agent is unknown at this time and will be supplemented.

37.     Defendant Comscript, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Comscript, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

38.     Defendant Consulting and Pharmaceutical Services, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Consulting and Pharmaceutical Services, Inc. may be served through its registered agent, CT Corporation System, 520 Pike, Seattle, Washington 98101.

39.     Defendant Cornerstone Ft. Wayne is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Cornerstone Ft. Wayne's address and registered agent is unknown at this time and will be supplemented.

40.     Defendant Cornerstone Hospital of Huntington is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Cornerstone Hospital of Huntington's address and registered agent is unknown at this time and will be supplemented.

41.     Defendant Cornerstone Indianapolis is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Cornerstone Indianapolis' address and registered agent is unknown at this time and will be supplemented.

42.     Defendant IHS Acquisition No. 170, Inc. d/b/a Corpus Christi Specialty Hospital is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  IHS Acquisition No. 170, Inc. d/b/a Corpus

9

Christi Specialty Hospital may be served through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

43.    Defendant Creekside Pharmacy, Inc. f/k/a Pharmacon Services, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Creekside Pharmacy, Inc. f/k/a Pharmacon Services, Inc. may be served through its registered agent, David Medina, 95 Montgomery Dr., Santa Rosa, California 95404.

44.    Defendant D&R Pharmaceutical Services, LLC d/b/a D&R Pharmacare d/b/a Omnicare of Louisville, KY d/b/a Omnicare of Lexington, KY is a Kentucky limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  D&R Pharmaceutical Services, LLC d/b/a D&R Pharmacare d/b/a Omnicare of Louisville, KY d/b/a Omnicare of Lexington, KY may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

45.    Defendant NIV Acquistion LLC d/b/a Denman Pharmacy Services is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NIV Acquisition LLC d/b/a Denman Pharmacy Services may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, Illinois 62703.

46.    Defendant Doctor's Hospital, LLC is a limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Doctor's Hospital, LLC's address and registered agent is unknown at this time and will be supplemented.

47.     Defendant Doctor's Specialty Hosptial, LLC is a limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Doctor's Specialty Hospital, LLC's address and registered agent is unknown at this time and will be supplemented.

48.     Defendant The Dr. John Warner Hospital Foundation, Inc. is an Illinois corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  The Dr. John Warner Hospital Foundation, Inc. may be served through its registered agent, Mary Ellen Torbert, RR2 Box 90, Clinton, Illinois 61727.

49.     Defendant THI of Baltimore Management, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  THI of Baltimore Management, LLC may be served through its registered agent, National Corporate Research Ltd., 176 Mine Lake Court, Suite 100, Raleigh, North Carolina 27615.

50.     Defendant Edmond Specialty Hospital is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Edmond Specialty Hospital may be served through its registered agent, National Corporate Research, Ltd., 613 SW 112th St., Oklahoma City, OK 73170.

51.     Defendant Pharmacy Associates of Glens Falls, Inc. d/b/a EFS/Royal Care is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Associates of Glens Falls, Inc. d/b/a EFS/Royal Care may be served through its registered agent, Jeffrey Stamps, 100 E. Rivercenter Blvd., Suite 1600, Covington, Kentucky 41011.

52.     Defendant Eldercare Home Pharmacy, LLC is a Michigan limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Eldercare Home Pharmacy, LLC may be served through its registered agent, Karen Miron, 2353 Deer Trail NE, Grand Rapids, Michigan  49505.

53.     Defendant Enloe Decatur d/b/a Enloe Drug, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Enloe Decatur d/b/a Enloe Drug, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

54.     Defendant Evergreen Pharmaceutical, LLC is a Washington limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Evergreen Pharmaceutical, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

55.     Defendant Evergreen Pharmaceutical of California, Inc. f/k/a PIP Acquisition f/k/a West Val Premier f/k/a NCS Healthcare of California, Inc. f/k/a Creekside Managed Care Pharmacy, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Evergreen Pharmaceutical of California, Inc. f/k/a PIP Acquisition f/k/a West Val Premier f/k/a NCS Healthcare of California, Inc. f/k/a Creekside Managed Care Pharmacy, Inc. may be served through its registered agent, CSC, 2730 Gateway Oaks Dr., Suite 100, Sacramento, California 95833.

56.     Defendant Excellerx, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.

12

Excellerx, Inc. may be served through its registered agent, CT Corporation System, 75 Beattie Place, Greenville, SC 29601.

57.     Defendant First Choice Pharmacy Services d/b/a First Choice RX is a Florida corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. First Choice Pharmacy Services d/b/a First Choice RX may be served through its registered agent, Andrew Weisman, 5310 33rd Ave., Suite 211, Ft. Lauderdale, Florida 33309.

58.     Defendant Gateway/Midwest Regional Overhead is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Gateway/Midwest Regional Overhead's address and registered agent is unknown at this time and will be supplemented.

59.     Defendant GPR Regional Overhead is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. GPR Regional Overhead's address and registered agent is unknown at this time and will be supplemented.

60.     Defendant Great Lakes Overhead is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Great Lakes Overhead's address and registered agent is unknown at this time and will be supplemented.

61.     Defendant Gulf Point Specialty Hospital – Houston is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Gulf Point Specialty Hospital's address and registered agent is unknown at this time and will be supplemented.

62.     Defendant Omnicare Distribution Center LLC f/k/a Heartland Repack Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Distribution Center LLC f/k/a Heartland Repack Services, LLC may be served through its registered agent, CSC, 50 W. Broad St., Suite 1800, Columbus, Ohio 43215.

63.     Defendant HMIS, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  HMIS, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

64.     Defendant Holland Retail, LTC is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Holland Retail, LTC's address and registered agent is unknown at this time and will be supplemented.

65.     Defendant Home Care Pharmacy, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Home Care Pharmacy, Inc. may be served through its registered agent, CSC, 50 W. Broad St., Suite 1800, Columbus, Ohio 43215.

66.     Defendant Home Care Pharmacy, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Home Care Pharmacy, LLC may be served through its registered agent, CSC, 701 Brazos, Suite 1050, Austin, Texas 78701.

67.     Defendant Interlock Pharmacy Systems, Inc. f/k/a Interlock Pharmacy of Columbia is a Missouri corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Interlock Pharmacy Systems, Inc. f/k/a

Interlock Pharmacy of Columbia may be served through its registered agent, CSC, 221 Bolivar St., Jefferson City, Missouri 65101.

68.     Defendant Interlock Pharmacy Systems, LLC is a Missouri limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Interlock Pharmacy Systems, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

69.     Defendant Keefer Medical Center is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Keefer Medical Center's address and registered agent is unknown at this time and will be supplemented.

70.     Defendant Konsult, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Konsult, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

71.     Defendant LCPS Acquisition, LLC d/b/a Medilife Pharmacy is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  LCPS Acquisition, LLC d/b/a Medilife Pharmacy may be served through its registered agent, CSC, 200 SW 30th St., Topeka, Kansas 66611.

72.     Defendant Pharmacy Support Services, Inc. is an Iowa corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Support Services may be served through its registered agent, Matthew McNulty, 301 Tradition Dr., Polk City, Iowa 50226.

73.     Defendant Lo-Med Prescription Services, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Lo-Med Prescription Services, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

74.     Defendant LTC – OCR of Carolina is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. LTC-OCR of Carolina's address and registered agent is unknown at this time and will be supplemented.

75.     Defendant LTC Pharmacy Services is a Missouri company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   LTC Pharmacy Services may be served through the Missouri Secretary of State/Corporations Division, 600 W. Main St., Room 322, Jefferson City, Missouri 65101.

76.     Defendant Mahoning Valley Hospital, Inc. f/k/a Specialty Mahoning Valley Hospital, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Mahoning Valley Hospital, Inc. f/k/a Specialty Mahoning Valley Hospital, Inc. may be served through its registered agent, Michael Senchak, 8049 South Ave., Youngstown, Ohio  44512.

77.     Defendant Managed Healthcare, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Managed Healthcare, Inc. may be served through its registered agent, CSC, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808.

78.     Defendant McClelland Health Systems is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care

patients. McClelland Health Systems' address and registered agent is unknown at this time and will be supplemented.

79.     Defendant Med World Acquisition Corp. d/b/a Med World Pharmacy is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Med World Acquisition Corp. d/b/a Med World Pharmacy may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

80.     Defendant Medical Arts Health Care, Inc. is a Georgia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Medical Arts Health Care, Inc. may be served through its registered agent, CSC, 40 Technology Parkway South, #300, Norcross, Georgia 30092.

81.     Defendant Medicate Pharmacy is an Illinois corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Medicate Pharmacy may be served through its registered agent, Lawrence Schaltenbrand, 7400 W. Main St., Belleville, Illinois 62223.

82.     Defendant Medico Pharmacy is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Medico Pharmacy's address and registered agent is unknown at this time and will be supplemented.

83.     Defendant Medilife of Tennessee is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Medilife of Tennessee may be served through its registered agent, CSC, 2908 Poston Ave., Nashville, Tennessee 37203.

84.     Defendant Omnicare Pharmacy of Florida, LP d/b/a Medistat is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Florida, LP d/b/a Medistat may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

85.     Defendant Mideast Reg. Overhead is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Mideast Reg. Overhead's address and registered agent is unknown at this time and will be supplemented.

86.     Defendant Midwest Regional Medical Associates, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Midwest Regional Medical Associates, Inc. may be served through its registered agent, Shawn Young, 2100 PNC Center, 201 E 5th St., Cincinnati, Ohio  45202.

87.     Defendant Mt. Washington Pediatric Hospital, Inc. f/k/a Children's Hospital, Inc. is a Maryland corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Mt. Washington Pediatric Hospital, Inc. f/k/a Children's Hospital, Inc. may be served through its registered agent, Sheldon Stein, 1708 W. Rogers Ave., Baltimore, Maryland  21209.

88.     Defendant NCP Chantilly HMIV VA NCAH is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NCP Chantilly HMIV VA NCAH's address and registered agent is unknown at this time and will be supplemented.

89.    Defendant NCRX Specialty is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NCRX Specialty's address and registered agent is unknown at this time and will be supplemented.

90.    Defendant NCS Healthcare of Ohio, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Ohio, Inc. may be served through its registered agent, CSC, 2730 Gateway Oaks Dr., Suite 100, Sacramento, California  95833.

91.    Defendant NCS Healthcare of New Mexico, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of New Mexico, Inc. may be served through its registered agent, CSC, 125 Lincoln Ave., Suite 223, Santa Fe, New Mexico  87503.

92.    Defendant Healthcare of Wisconsin, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Wisconsin, Inc may be served through its registered agent, CSC, 25 W Main St., Madison, WI  53703.

93.    Defendant NCS Healthcare of California, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of California, Inc. may be served through its registered agent, CSC, 50 W. Broad St, Suite 1800, Columbus, Ohio  43215.

94.    Defendant NCS Healthcare of Montana, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Montana, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

95.     Defendant NCS Healthcare of Washington, Inc. an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Washington, Inc. may be served through its registered agent, CSC, 6500 Harbour Heights Pkwy, Suite 400, Mukilteo, Washington  98275.

96.     Defendant NCS Healthcare of Illinois, Inc. is an Illinois corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Illinois, Inc. may be served through its registered agent, CSC, 901 Adlai Stevenson Dr., Springfield, Illinois  62703.

97.     Defendant NCS Healthcare of South Carolina, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of South Carolina, Inc. may be served through its registered agent, CSC, 1703 Laurel St., Columbia, South Carolina  29201.

98.     Defendant NCS Healthcare of Kansas, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Kansas, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

99.     Defendant NCS Healthcare is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

100.    Defendant Neighborcare of Indiana, LLC is an Indiana limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical

services to long-term care patients.  Neighborcare of Indiana, LLC may be served through its registered agent, CSC, 251 E. Ohio St., Suite 500, Indianapolis, Indiana  46204.

101.    Defendant Neighborcare Pharmacy Services, Inc. d/b/a Network Health Services is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare Pharmacy Services, Inc. may be served through its registered agent, CSC, 701 Brazos, Suite 1050, Austin, Texas  78701.

102.    Defendant ASCO Healthcare, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  ASCO Healthcare, LLC may be served through its registered agent, CSC, 11 S 12th St., P.O. Box 1463, Richmond, Virginia  23218.

103.    Defendant Neighborcare, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

104.    Defendant Spheris Operations, Inc. is a Tennessee corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.    Spheris Operations, Inc. may be served through its registered agent, National Registered Agents, Inc., 1280 Clausel St., Mandeville, Louisiana 70448.

105.    Defendant NH Veteran's Hosptial is a corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NH Veteran's Hospital's address and registered agent is unknown at this time and will be supplemented.

106.    Defendant Nihan & Martin, Inc. is an Illinois corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Nihan & Martin, Inc. may be served through its registered agent, Anna Quaerna, 3041 Westwood, Janesville, Wisconsin 53545.

107.    Defendant N&M Acquisition, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  N&M Acquisition, Inc. may be served through its registered agent, CSC, 324 S. Hamilton, Madison, Wisconsin 53703.

108.    Defendant North Shore Pharmacy, Inc. is a Hawaii corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. North Shore Pharmacy, Inc. may be served through its registered agent, Jean Bjornson, 56-119 Pualalea St., Kahuku, Hawaii 96731.

109.    Defendant Omnicare Esc, LLC is a Delaware limited liablity corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Esc., LLC may be served through its registered agent, CSC, 50 Weston St., Hartford, Connecticut 06120.

110.    Defendant Omnicare Pharmacy of Texas 1, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Omnicare Pharmacy of Texas 1, LP may be served through its registered agent, CSC, 701 Brazos St., Suite 1050, Austin, Texas 78701.

111.    Defendant Omnicare Pharmacy of Texas 2, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to

long-term care patients.   Omnicare Pharmacy of Texas 2, LP may be served through its registered agent, CSC, 701 Brazos St., Suite 1050, Austin, Texas 78701.

112.   Defendant Home Care Pharmacy, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Home Care Pharmacy, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

113.   Defendant Omnicare Extended Pharma Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Extended Pharma Services, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

114.   Defendant Omnicare Pharmaceuticals, Inc. is a corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare Pharmaceuticals Inc.'s address and registered agent is unknown at this time and will be supplemented.

115.   Defendant Neighborcare Pharmacy of Virginia, LLC is a Virginia limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare Pharmacy of Virginia, LLC may be served through its registered agent, CSC, 11 S 12th St., P.O. Box 1463, Richmond, Virginia 23218.

116.   Defendant Omnicare of New York, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare of New York, LLC may be served through its registered agent, CSC, 90 State St., Albany, New York 12207.

117.    Defendant Omnicare Pharmacy and Supply Services, LLC is a South Dakota limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy and Supply Services, LLC may be served through its registered agent, CSC, 503 S. Pierre St., Pierre, South Dakota 57501.

118.    Defendant Owens Healthcare – Specialty Pharmacy, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Owens Healthcare – Specialty Pharmacy, Inc. may be served through its registered agent, John Friesen, 2247 Court St., Redding, California 96001.

119.    Defendant PA Overhead is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. PA Overhead's address and registered agent is unknown at this time and will be supplemented.

120.    Defendant PBM-Plus, Inc is a Wisconsin corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PBM-Plus, Inc. may be served through its registered agent, CSC, 8040 Excelsior Dr., Suite 400, Madison, Wisconsin 53717.

121.    Defendant Pharm Co. is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Pharm Co.'s address and registered agent is unknown at this time and will be supplemented.

122.    Defendant Pharmacon Corp. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Pharmacon Corp. may be served through its registered agent, CSC, 80 State St., Albany, New York 12207.

123.    Defendant CR Pharmacy Service, Inc. is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. CR Pharmacy Service, Inc.'s address and registered agent is unknown at this time and will be supplemented.

124.    Defendant Pharmacy Associates, Ltd. is an Iowa corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Associates, Ltd. may be served through its registered agent, TJ Johnsrud, 1002 6th St., Navada, Iowa  50201.

125.    Defendant STL Health Resources Co. is an Iowa corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  STL Health Resources Co. may be served through its registered agent, Theodore Townsend, 1026 A Ave NE, Cedar Rapids, Iowa  52402.

126.    Defendant Pharmacy Care Associates, LLC is an Alabama limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Care Associates, LLC may be served through its registered agent, Steven Snyder, 126 Mendel Parkway, Unit 10, Montgomery, Alabama  36117.

127.    Defendant Pharmacy Consultants, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Consultants, Inc. may be served through its registered agent, Paul Levine, 10350 Santa Monica, Blvd, Suite 250, Los Angeles, California  90025.

128.    Defendant Pharmacy Support Services, Inc. is an Iowa corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term

care patients.   Pharmacy Support Services, Inc. may be served through its registered agent, Matthew McNulty, 301 Tradition Dr., Polk City, Iowa  50226.

129.    Defendant Pharmasource LLC is an Illinois limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmasource LLC may be served through its registered agent, Balmukund Patel, 743 Sherwood Dr., Addison, Illinois  60101.

130.    Defendant Pharm-Corp of Maine, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharm-Corp of Maine, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

131.    Defendant Pharmed Group Solutions, LLC is a Louisiana limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmed Group Solutions, LLC may be served through its registered agent, National Registered Agents, 1280 Clausel St. Mandeville, Louisana  70448.

132.    Defendant Pharmed of Baton Rouge, Inc. is a Louisiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmed of Baton Rouge, Inc. may be served through its registered agent, James Vanderhoeven, 3109 Jackson St., Alexandria, Louisiana 71301.

133.    Defendant Pharmed Inc. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Pharmed Inc. may be served through its registered agent, Rajan Vohora, 617 Woodfield Rd., West Hempstead, New York  11552.

134.   Defendant Pinnacle Pharmacy of Eau Claire, LLC is a Wisconsin limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pinnacle Pharmacy of Eau Claire, LLC may be served through its registered agent, Michael McCann, 2818 Progress Rd., Madison, Wisconsin  53716.

135.   Defendant Integrated of Amarillo, Inc. is a Texas corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Integrated of Amarillo, Inc. may be served through its registered agent, CSC, 350 N. St. Paul St., Dallas, Texas  75201.

136.   Defendant Plum Creek Specialty is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Plum Creek Specialty's address and registered agent is unknown at this time and will be supplemented.

137.   Defendant PPS/OCR of Carolina-Wilson is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. PPS/OCR of Carolina-Wilson's address and registered agent is unknown at this time and will be supplemented.

138.   Defendant Preferred Choice, LLC is a Minnesota limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Preferred Choice, LLC may be served through its registered agent, Secretary of State/Corporations Division, 180 State Office Building, Saint Paul, Minnestoa 55155.

139.   Defendant Preferred Choice Home & Healthcare, LLC is a Connecticut limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Preferred Choice Home & Healthcare, LLC

27

may be served through its registered agent, David Alfano, 3 Boulder Ave., Old Greenwich, Connecticut 06870.

140.    Defendant Hospice Preferred Choice is a Minnesota limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Hospice Preferred Choice may be served through its registered agent, Secretary of State/Corporations Division, 180 State Office Building, Saint Paul, Minnestoa 55155.

141.    Defendant BHS Pharmacy is a Minnesota limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   BHS Pharmacy may be served through its registered agent, Secretary of State/Corporations Division, 180 State Office Building, Saint Paul, Minnestoa 55155.

142.    Defendant Price Rite Pharmacy is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Price Rite Pharmacy's address and registered agent is unknown at this time and will be supplemented.

143.    Defendant PRN Pharmaceutical Services, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PRN Pharmaceutical Services, LP may be served through its registered agent, CSC, 251 E. Ohio St., Suite 500, Indianapolis, Indiana 46204.

144.    Defendant Puget Pharmacy Services is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Puget Pharmacy Services' address and registered agent is unknown at this time and will be supplemented.

145.    Defendant Rescot Systems Group, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Rescot Systems Group, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

146.    Defendant Resource Pharmacy Services is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Resource Pharmacy Services' address and registered agent is unknown at this time and will be supplemented.

147.    Defendant Respicare RX is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. REspicare RX's address and registered agent is unknown at this time and will be supplemented.

148.    Defendant River Park Hospital, Inc. is a Tennessee corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  River Park Hospital, Inc. may be served through its registered agent, CT Corporation System, 800 S. Gay St., Suite 2021, Knoxville, Tennessee 37929.

149.    Defendant Roeschen's Clinic Pharmacy, Inc. is a Wisconsin corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Roeschen's Clinic Pharmacy, Inc. may be served through its registered agent, William Fervoy, 5625 Washington Ave., Racine, Wisconsin 53406.

150.    Defendant Royal Care Pharmacy, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Royal Care Pharmacy, Inc. may be served through its registered agent, Maxim Sverdlov, 7300 W. Sunset Blvd., #L, Los Angeles, California 90046.

151.    Defendant RX Services, Inc. is a Texas corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. RX Services, Inc. may be served through its registered agent, Milton Jez, 805 Davis St., Taylor, Texas 76574.

152.    Defendant RX Drug Services, Inc. is a North Carolina corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. RX Drug Services, Inc. may be served through its registered agent, Edwin Howard, P.O. Box 190 Mars Hill, North Carolina 28754.

153.    Defendant RX Services Enterprises, Inc. is a Virginia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. RX Services Enterprises, Inc. may be served through its registered agent, William C. Thornbury, P.O. Box 763, Grundy, Virginia 24614.

154.    Defendant Senior Health Care is an Oregon corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Senior Health Care may be served through its registered agent, Stephen Gordon, 3578 Crocker Rd, Eugene, Oregon 97404.

155.    Defendant Balko, John P. & Associates d/b/a Senior Health Care Associates is a Pennsylvania sole proprietorship whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Balko, John P. & Associates d/b/a Senior Health Care Associates may be served upon John Balko, 60 Strawbridge Ave., Sharon, Pennsylvania 16146.

156.    Defendant Catholic Senior Housing and Health Care Services, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and

pharmaceutical services to long-term care patients. Catholic Senior Housing and Health Care Services, Inc. may be served through its registered agent, Dennis Ridney, 1200 Spring St., Bethlehem, Pennsylvania 18018.

157. Defendant Fort Pitt Senior Health Care Associates, P.C. is a Pennsylvania private corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Fort Pitt Senior Health Care Associates, P.C. may be served through its registered agent, John Prendergast, 871 Valley View Dr., Pittsburgh, Pennsylvania 15243.

158. Defendant Kalil Health Care Associates d/b/a Comforcare Senior Services of Delaware County is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Kalil Health Care Associates d/b/a Comforcare Senior Services of Delaware County may be served through its registered agent, Jim Kalil, 111 N. Olive St., Media, Pennsylvania 19063.

159. Defendant Senior Healthcare Group, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Senior Healthcare Group, Inc. may be served through its registered agent, National Registered Agents, Inc., of OK, 115 SW 89th St., Oklahoma City, Oklahoma 73139.

160. Defendant Senior Health Care Concepts, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Senior Health Care Concepts, Inc. may be served through its registered agent, Mylene Ortolani, 1015 Fairway Dr., Bear Creek, Pennsylvania 18602.

161. Defendant Senior Health Care Insurance Services, LTD, LLP. is a Texas limited liability partnership whose principal business is the provision of pharmaceuticals and

pharmaceutical services to long-term care patients.  Senior Health Care Insurance Services, LTD, LLP. may be served through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

162.    Defendant Senior Health Care Planning Services, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Senior Health Care Planning Services, Inc. may be served through its registered agent, Edward Fenlon, 117 Whitemarsh Rd., Ardmore, Pennsylavania 19003.

163.    Defendant Senior Health Care Transition Trust is a Pennsylvania company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Senior Health Care Transition Trust. may be served through its registered agent, John Wells, 130 N. Garland, Chicago, Illinois 60602.

164.    Defendant Senior Health-Care Foundation, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Senior Health-Care Foundation, Inc. may be served through its registered agent, 1040 Depot St., Youngwood, Pennsylvania 15697.

165.    Defendant U.S. Senior Health Care Association, Inc. is a Florida corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  U.S. Senior Health Care Association, Inc. may be served through its registered agent, CSC, 327 Hillsborough St., Raleigh, North Carolina 27603.

166.    Defendant Senior Home Health Care, Inc. is a Missouri corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term

care patients.  Senior Home Health Care, Inc. may be served through its registered agent, Jim Argotsinger, 102 Hospital Dr., Smithville, Missouri  64089.

167.    Defendant Langsam Health Services, LLC. is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Langsam Health Services, LLC. may be served through its registered agent, CSC, 115 SW 89th St., Oklahoma City, Oklahoma  73139.

168.    Defendant Langsam Health Services, Inc is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Langsam Health Services, Inc. may be served through its registered agent, CSC, 115 SW 89th St., Oklahoma City, Oklahoma  73139.

169.    Defendant JHC Acquisitions, LLC d/b/a Omnicare Clinical Intervention Center is a Delaware limited liabilty corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  JHC Acquisitions, LLC d/b/a Omnicare Clinical Intervention Center may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, IL  62703.

170.    Defendant Langsam Medical Products, Inc. d/b/a Sequoia is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Langsam Medical Products, Inc. d/b/a Sequoia may be served through its registered agent, CSC, 701 Brazos St., Suite 1050, Austin, Texas  78701.

171.    Defendant Shore Pharmacy, Inc. is a Massachusetts corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Shore Pharmacy, Inc. may be served through its registered agent, Robert Pasquariello, 18 Colony Rd., Arlington, Massachusetts  02474.

172.    Defendant Lake Shore Pharmacy, Inc. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Lake Shore Pharmacy, Inc. may be served through its registered agent, Robert Issacs, 65 Fancher Ave., Buffalo, New York  14223.

173.    Defendant North Shore Pharmacy Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   North Shore Pharmacy Services, LLC may be served through its registered agent, CSC, 701 84 State St., Boston, Massachusetts  02109

174.    Defendant Sound Shore Pharmacy, Inc. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Sound Shore Pharmacy, Inc. may be served through its registered agent, John Spicer, 16 Guion Place, New Rochelle, New York  10802.

175.    Defendant South Shore Pharmacy and Surgical Supply, Inc. is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. South Shore Pharmacy and Surgical Supply, Inc.'s address and registered agent is unknown at this time and will be supplemented.

176.    Defendant Southern Desert is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Southern Desert's address and registered agent is unknown at this time and will be supplemented.

177.    Defendant Southern Reg. Overhead is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Southern Reg. Overhead's address and registered agent is unknown at this time and will be supplemented.

178.    Defendant THI of Texas Lubbock I, LLC d/b/a Southwest Regional Specialty Hospital is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  THI of Texas Lubbock I, LLC d/b/a Southwest Regional Specialty Hosptial may be served through its registered agent, National Corporate Research, 800 Brazos St., Suite 400, Austin, Texas  78701.

179.    Defendant Specialized Pharmacy Services North, Inc. is a Michigan corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialized Pharmacy Services North, Inc. may be served through its registered agent, Gary Kadlec, 33510 Schoolcraft, Livonia, Michigan  48150.

180.    Defendant Specialized Pharmacy Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialized Pharmacy Services, LLC may be served through its registered agent, CSC, 421 W. Main, Frankfort, Kentucky  40601.

181.    Defendant Specialized Pharmacy Services, Inc. is a Florida corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialized Pharmacy Services, Inc. may be served through its registered agent, CSC, 38 State St., Suite 420, Salem, Oregon  97301.

182.    Defendant Specialty Hospital of Albuquerque is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Specialty Hospital of Albuquerque's address and registered agent is unknown at this time and will be supplemented.

183.    Defendant Specialty Hospital of Mid-America is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care

35

patients. Specialty Hospital of Mid-America's address and registered agent is unknown at this time and will be supplemented.

184.    Defendant San Antonio Specialty Medical Center, Inc. d/b/a THI of Texas at San Antonio II, Inc. d/b/a Specialty Hospital of San Antonio is a Louisiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  San Antonio Specialty Medical Center, Inc. d/b/a THI of Texas at San Antonio II, Inc. d/b/a Specialty Hospital of San Antonio may be served through its registered agent, Choicepoint Services, Inc., 1601 Rio Grande, Suite 500, Austin, Texas  78701.

185.    Defendant Sterling Healthcare Services, Inc. d/b/a Sterling Home Medical Services is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Sterling Healthcare Services, Inc. d/b/a Sterling Home Medical Services may be served through its registered agent, CSC, 320 Somerulos, Baton Rouge, Louisiana  70802.

186.    Defendant Sterling Pharmacy is a Louisiana company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Sterling Pharmacy may be served through its owner, Sterling Associates, 206 Reynolds Dr., Suite E-1, Ruston, Louisiana  71270.

187.    Defendant Sterling Pharmacy, LLC is a Louisiana limited liablity corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Sterling Pharmacy, LLC may be served through its registered agent, Scott Simmons, 205 Reynolds Dr., Suite C, Ruston, Louisiana  71270.

188.    Defendant Sturgis Hospital is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Sturgis Hospital's address and registered agent is unknown at this time and will be supplemented.

189.    Defendant Sunscript Medical Services, Inc. is a Florida corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Sunscript Medical Services, Inc. may be served through its registered agent, National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, Texas  77062.

190.    Defendant Sunscript Pharmacy Corporation is a New Mexico corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Sunscript Pharmacy Corporation may be served through its registered agent, CSC of Lea County, Inc., 1819 N. Turner St., Suite G, Hobbs, New Mexico  88240.

191.    Defendant SHS Holding, LLC d/b/a Synergy Healthcare Services is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. SHS Holding, LLC may be served through its registered agent, Lawrence Hecker, 405 W. Franklin, Tuscon, Arizona  85701.

192.    Defendant THI of Texas at Dallas, LLC d/b/a Texas Specialty Hospital of Dallas is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  THI of Texas at Dallas, LLC d/b/a Texas Specialty Hospital at Dallas may be served through its registered agent, National Corporate Research, Ltd., 800 Brazos St., Suite 400, Austin, Texas  78701.

193.    Defendant THI of Texas at Wichita Falls Dallas, LLC d/b/a Texas Specialty Hospital of Wichita Falls is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  THI of

37

Texas at Wichita Falls, LLC d/b/a Texas Specialty Hospital of Wichita Falls may be served through its registered agent, National Corporate Research, Ltd., 800 Brazos St., Suite 400, Austin, Texas 78701.

194.    Defendant The Pharmacy is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. The Pharmacy's address and registered agent is unknown at this time and will be supplemented.

195.    Defendant Three Forks Apothecary is a Kentucky corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Three Forks Apothecary may be served through its registered agent, Rosemary Smith, Main St., Booneville, Kentucky 41314.

196.    Defendant Three Forks Apothecary, LP is a Kentucky limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Three Forks Apothecary, LP may be served through its registered agent, Three Forks Apothecary, P.O. Box 346, By-Pass Road, Beattyville, Kentucky 41311.

197.    Defendant Three Forks Apothecary, Inc. is a Kentucky corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Three Forks Apothecary, Inc. may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky 40601.

198.    Defendant Omnicare of Beattyville, KY is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare of Beattyville, KY's address and registered agent is unknown at this time and will be supplemented.

199.     Defendant Trelles Pharmacy Management, Inc. is a Florida corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Trelles Pharmacy Management, Inc. may be served through its registered agent, James Richardson, 1402 Front St., Valrico, Florida  33594.

200.     Defendant Trelles Pharmacy Management of Brandon, Inc. is a Florida corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Trelles Pharmacy Management of Brandon, Inc. may be served through its registered agent, Allan Watkins, 707 N. Franklin, Suite 750, Tampa, Florida 33602.

201.     Defendant Unicare is a Utah entity whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Unicare may be served through its registered agent, Mike Fotheringham, 141 E 5600 S, Salt Lake City, Utah  84107.

202.     Defendant Unicare Life and Health Insurance Co., is an Indiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.   Unicare Life and Healt Insurance Co. may be served through its registered agent, CT Corporation System, 4701 Cox Rd., Suite 301, Glen Allen, Virginia  23060.

203.     Defendant UPA Services, Inc. is a Kentucky corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  UPA Services, Inc. may be served through its registered agent, WT&C Corporate Services, Inc., 500 West Jefferson St., Suite 2800, Louisville, Kentucky  40202.

204.     Defendant Value Health Care Services, LLP is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care

patients. Value Health Care Services, LLP's address and registered agent is unknown at this time and will be supplemented.

205.   Defendant Value Health Care Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Value Health Care Services, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

206.   Defendant NCS Healthcare of Kentucky, Inc. d/b/a Vangard Labs is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Kentucky, Inc. d/b/a Vangard Labs may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

207.   Defendant VAPS Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  VAPS Acquisition Company, LLC may be served through its registered agent, CSC, 421 W. Main St., Frankfort, Kentucky  40601.

208.   Defendant Vital Care Infusions, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Vital Care Infusions, Inc. may be served through its registered agent, CT Corporation System, 1633 Broadway, New York, New York  10019.

209.   Defendant Wadsworth Pharmacy, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Wadsworth Pharmacy, Inc. may be served through its registered agent, Duane Rogers, 2854 S. Medina Line Rd., Wadsworth, Ohio  44281.

210.     Defendant Select Specialty Hospital – Wichita – Salem, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Select Specialty Hospital – Wichita – Salem, Inc. may be served through its registered agent, CT Corporation System, 150 Fayetteville, Box 1011, Raleigh, North Carolina 27101.

211.     Defendant Williamson Drug Co., Inc. d/b/a Pharmacy Resource Network d/b/a Extended Care Associates d/b/a RX Services d/b/a Williamson's Pharmacy d/b/a Woodbine Pharmacy is a Virginia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Williamson Drug Co., Inc. d/b/a Pharmacy Resource Network d/b/a Extended Care Associates d/b/a RX Services d/b/a Williamson's Pharmacy d/b/a Woodbine Pharmacy may be served through its registered agent, CSC, 11 S 12th St., PO Box 1463, Richmond, Virginia 23218.

212.     Defendant Williamson's Norfolk a/k/a Pharmacy Resource Network is a Virginia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Williamson's Norfolk a/k/a Pharmacy Resource Network may be served through its registered agent, CSC, 11 S 12th St., PO Box 1463, Richmond, Virginia 23218.

213.     Defendant ZS Acquisition Company, LLC is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. ZS Acquisition Company, LLC's address and registered agent is unknown at this time and will be supplemented.

214.   Defendant Advocat, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.  Advocat, Inc. may be served through its registered agent, William Council, III, 1621 Galleria Blvd., Brentwood, Tennessee 37027.

215.   Defendant Alliance Purchasing Newtork, LLC is a Minnesota limited liability corporation whose principal business is the provision of patient care to long-term care residents. Alliance Purchasing Network, LLC may be served at 2550 University Ave W, #350S, St. Paul, Minnesota 55114.

216.   Defendant Ascension Health is a Missouri corporation whose principal business is the provision of patient care to long-term care residents.  Ascension Health may be served through its registered agent, Charles Barnett, 1201 W. 38th, Austin, Texas 78705.

217.   Defendant Assisted Living Concepts, Inc. is a Nevada corporation whose principal business is the provision of patient care to long-term care residents.  Assisted Living Concepts, Inc. may be served through its registered agent, Prentice Hall Corporation System, 701 Brazos St., Suite 1050, Austin, Texas 78701.

218.   Defendant Capital Living and Rehabilitation Centres is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Capital Living and Rehabilitation Centres's address and registered agent is unknown at this time and will be supplemented.

219.   Defendant Care Purchasing is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Care Purchasing's address and registered agent is unknown at this time and will be supplemented.

220.   Defendant Consulate Health Care, Inc. is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.

Consulate Health Care, Inc.'s address and registered agent is unknown at this time and will be supplemented.

221.    Defendant Covenant Care, Inc. is a California corporation whose principal business is the provision of patient care to long-term care residents.  Covenant Care, Inc. may be served through its registered agent, Andrew Torok, 27071 Aliso Creek Rd., Suite 100, Aliso Viejo, California  92656.

222.    Defendant Deaconess Corp. is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Deaconess Corp's address and registered agent is unknown at this time and will be supplemented.

223.    Defendant Emeritus Senior Living is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Emeritus Senior Living's address and registered agent is unknown at this time and will be supplemented.

224.    Defendant Extendicare Health Services, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.  Extendicare Health Services, Inc. may be served through its registered agent, CorpAmerica Inc., 1560 Broadway, Suite 2090, Denver, Colorado  80202.

225.    Defendant Family Senior Care is an Ohio corporation whose principal business is the provision of patient care to long-term care residents.  Family Senior Care. may be served through its registered agent, Jewell Hunt, 750 First Ave., Gallipolis, Ohio  45631.

226.    Defendant Five Star Quality, Inc. is a Texas corporation whose principal business is the provision of patient care to long-term care residents.  Five Star Quality, Inc. may be served through its registered agent, CSC, 701 Brazos, Suite 1050, Austin, Texas  78701.

227.    Defendant The Fountains Nursing Home, Inc. is a Florida corporation whose principal business is the provision of patient care to long-term care residents.  The Fountains Nursing Home, Inc. may be served through its registered agent, Brian McAvoy, c/o Harter, Secrest & Emery, Naples, Florida  34108.

228.    Defendant Fundamental is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Fundamental's address and registered agent is unknown at this time and will be supplemented.

229.    Defendant Genesis Healthcare is an Oklahoma corporation whose principal business is the provision of patient care to long-term care residents.  Genesis Healthcare may be served through at P.O. Box 50076, Midwest City, Oklahoma  73140.

230.    Defendant Good Samaritan Homes is a Kentucky corporation whose principal business is the provision of patient care to long-term care residents.  Good Samaritan Homes may be served through its registered agent, Kathy Wilson, 124 Main Street, North Middletown, Kentucky  40361.

231.    Defendant Greystone is an Oregon corporation whose principal business is the provision of patient care to long-term care residents.  Greystone may be served through its registered agent, David Cole, 12838 La Cresta Dr., Los Altos, California  94022.

232.    Defendant HCR Manorcare Services, LLC is a Michigan limited liability corporation whose principal business is the provision of patient care to long-term care residents. HCR Manorcare Services, LLC may be served through its registered agent, The Corporation Company, 30600 Telegraph Rd, Suite 2345, Bingham Farms, Michigan  48025.

233.   Defendant Heartland is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Heasrtland's address and registered agent is unknown at this time and will be supplemented.

234.   Defendant Manorcare Health Services is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Manorcare Health Services' address and registered agent is unknown at this time and will be supplemented.

235.   Defendant Arden Court, LLC is an Oregon limited liability corporation whose principal business is the provision of patient care to long-term care residents.  Arden Court, LLC may be served through its registered agent, Warner Allen, 850 NE 122nd Ave., Portland, Oregon 97230.

236.   Defendant Healthbridge is a Nevada corporation whose principal business is the provision of patient care to long-term care residents.  Healthbridge may be served through its registered agent, Trey Ligon, 855 Mill St., Suite 1A, Reno, Nevada 89502.

237.   Defendant Life Care Centers of America, Inc. is a Tennessee corporation whose principal business is the provision of patient care to long-term care residents.  Life Care Centers of America, Inc. may be served through its registered agent, CT Corporation System, 350 N. St. Paul, Dallas, Texas 75201.

238.   Defendant Lyric Health Care is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Lyric Health Care's address and registered agent is unknown at this time and will be supplemented.

239.    Defendant Mariner Health Care, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.  Mariner Health Care, Inc. may be served through Texas Secretary of State, 1019 Brazos St., Austin, Texas  78701.

240.    Defendant Pathway is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pathway's address and registered agent is unknown at this time and will be supplemented.

241.    Defendant PDP Partners is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. PDP Partners' address and registered agent is unknown at this time and will be supplemented.

242.    Defendant Sava Senior Care is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Sava Senior Care's address and registered agent is unknown at this time and will be supplemented.

243.    Defendant Senior Living Properties, LLC is a Delaware limited liability corporation whose principal business is the provision of patient care to long-term care residents. Senior Living Properties, LLC may be served through its registered agent, HIQ Corporate Services, Inc., 904 Master Dr., Galloway, Ohio  43119.

244.    Defendant Shoreline Healthcare Management, LLC is a Delaware limited liability corporation whose principal business is the provision of patient care to long-term care residents. Shoreline Healthcare Management, LLC may be served through its registered agent, CSC, 50 W. Broad St., Suite 1800, Columbus, Ohio  43215.

245.    Defendant Sovereign Healthcare, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.  Sovereign Healthcare, Inc.

may be served through, William Krystopowicz, 101 Sunnytown Rd., Suite 201, Casselberry, Florida 32707.

246.    Defendant Summerville Senior Living, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.   Summerville Senior Living, Inc. may be served through its registered agent, HIQ Corporate Services, 580 E Town St., Suite 100, Columbus, Ohio 43215.

247.    Defendant Sunbridge Healthcare Corporation is a New Mexico corporation whose principal business is the provision of patient care to long-term care residents.   Sunbridge Healthcare Corporation may be served through its registered agent, CSC, 50 W. Broad St., Suite 1800, Columbus, Ohio 43215.

248.    Defendant Sunrise Senior Living, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.  Sunrise Senior Living, Inc. may be served through its registered agent, CT Corporation System, 1300 East 9th St., Cleveland, Ohio 44114.

249.    Defendant Token Demo is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Token Demo's address and registered agent is unknown at this time and will be supplemented.

250.    Defendant Trans Healthcare, Inc. is a Delaware corporation whose principal business is the provision of patient care to long-term care residents.   Trans Healthcare, Inc. may be served through its registered agent, National Corporate Research, Ltd., 836 Park Ave., Second Floor, Baltimore, Maryland 21201.

251.    Defendant Trinity Health Care Center is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Trinity

Health Care Center's address and registered agent is unknown at this time and will be supplemented.

252.    Defendant Vitas Hospice Services, LLC d/b/a Vitas Innovative Hospice Care is a Delaware limited liability corporation whose principal business is the provision of patient care to long-term care residents. Vitas Hospice Services, LLC d/b/a Vitas Innovative Hospice Care may be served through its registered agent, CSC, 701 Brazos St., Suite 1050, Austin, Texas 78701.

253.    The following are additional defendants: AAHS Acquisition Corp.; Alacritas Biopharma, Inc.; Ambler Acquisition Company, LLC; AMC – New York, Inc.; AMC – Tennessee, Inc.; Anderson Medical Services, Inc.; APS Acquisition, LLC; APS Summit Care Pharmacy, LLC; ASCO Healthcare of New England, LLC; ASCO Healthcare of New England, LP; Atlantic Medical Group, LLC; Bach's Pharmacy East, LLC; Bach's Pharmacy Services, LLC; Badger Acquisition, LLC; Badger Acquisition of Brooksville, LLC; Badger Acquisition of Kentucky, LLC; Badger Acquisition of Minnesota, LLC; Badger Acquisition of Orlando, LLC; Badger Acquisition of Texas, LLC; Bio-Pharm International, Inc.; BPNY Acquisition Corp.; BPTX Acquisition Corp.; Capitol Home Infusion, Inc.; Care Card, Inc.; Care4, LP; CIC Services, LLC; Compass Health Services, LLC; Compscript – Boca, LLC; Compscript – Mobile, Inc.; Concord Pharmacy Services, Inc.; CP Services, LLC; CPS Acquisition Company, LLC; Delco Apothecary, Inc.; Dixon Pharmacy, LLC.; DP Services, LLC; Eastern Medical Supplies, Inc.; Eastern Rehab Services, Inc.; Encare of Massachusetts, LLC; Euro Bio-Pharm Clinical Services, Inc.; Geneva Sub, Inc.; H.O. Subsidary, Inc.; The Hardardt Group, Inc.; Health Concepts and Services, Inc.; Health Objects Corporation; Heartland Healthcare Services; Highland Wholesale, LLC; Home Pharmacy Services, LLC; Horizon Medical Equipment and Supply, Inc.; Hytree Pharmacy, Inc.; Institutional Health Care Services, LLC; LifeMed, LLC;

Lobos Acquisition, LLC; Lobos Acquisition of Arizona, Inc.; Lobos Acquisition of Pennsylvania, Inc.; LPA Acquisition Company, LLC; LPI Acquisition Corporation; Main Street Pharmacy, LLC; Management & Network Services, Inc.; Management & Network Services, LLC; Medical Services Consortium, Inc.; Medical Services Group, LLC; MHHP Acquisition Company, LLC; MOSI Acquisition Corporation; National Care for Seniors, LLC; NCH Healthcare of Arizona, Inc.; NCH Healthcare of Arkansas, Inc.; NCH Healthcare of Beachwood, LLC; NCS Healthcare of Connecticut, Inc.; NCS Healthcare of Florida, Inc.; NCS Healthcare of Indiana, Inc.; NCS Healthcare of Indiana, LLC; NCS Healthcare of Iowa, LLC; NCS Healthcare of Kentucky, Inc.; NCS Healthcare of Maryland, LLC; NCS Healthcare of Massachusetts, Inc.; NCS Healthcare of Michigan, Inc.; NCS Healthcare of Minnesota, Inc.; NCS Healthcare of Missouri, Inc.; NCS Healthcare of New Hampshire, Inc.; NCS Healthcare of New Jersey, Inc.; NCS Healthcare of North Carolina, Inc.; NCS Healthcare of Ohio, LLC; NCS Healthcare of Oklahoma, Inc.; NCS Healthcare of Oregon, Inc.; NCS Healthcare of Pennsylvania, Inc.; NCS Healthcare of Rhode Island, LLC.; NCS Healthcare of Tennessee, Inc.; NCS Healthcare of Texas, Inc.; NCS Healthcare of Vermont, Inc.; NCS Healthcare of Washington, Inc.;NCS Services, Inc.; NeighborCare- ORCA, LLC; NeighborCare- TC12, LLC; NeighborCare Holdings, Inc.; NeighborCare Home Medical Equip, LLC; NeighborCare Home Medical Equip of Maryland LLC; NeighborCare Infusion Services, Inc.; NeighborCare of California, Inc.; NeighborCare of Maryland, LLC; NeighborCare of New Hampshire, LLC; NeighborCare of Northern California, Inc.; NeighborCare of Ohio, LLC; NeighborCare of Oklahoma, Inc.; NeighborCare of Virginia, Inc.; NeighborCare of Wisconsin, LLC; NeighborCare Pharmacies, LLC; NeighborCare Pharmacy of Oklahoma LLC; NeighborCare Pharmacy of Virginia LLC; NeighborCare Repackaging, Inc.; NeighborCare-Medisco, Inc.; NGC Acquisition Company

LLC; OCR Services Corporation; OCR-RA Acquisition, LLC, D/B/A Long Term Care Pharmacy; OFL Corp.; Oklahoma Institutional Pharmacy Services, LLC; Omnibill Services LLC; Omnicare Air Transport Services, Inc.; Omnicare Canadian Holdings, Inc.; Omnicare Clinical Research, Inc., F/K/A IBAH, Inc.; Omnicare Clinical Research, LLC, F/K/A Coromed, Inc.; Omnicare CR Inc.; Omnicare Headquarters LLC; Omnicare Holding Company; Omnicare Indiana Partnership Holding Co, LLC; Omnicare Management Company; Omnicare of Nevada LLC; Omnicare Pennsylvania Med Supply, LLC; Omnicare Pharmacies of Maine Holding Company; Omnicare Pharmacies of Pennsylvania East, LLC; Omnicare Pharmacies of Pennsylvania West, LLC; Omnicare Pharmacies of the Great Plains Holding Company; Omnicare Pharmacy of Colorado, LLC; Omnicare Pharmacy of Indiana, LLC; Omnicare Pharmacy of Maine LLC; Omnicare Pharmacy of Nebraska LLC; Omnicare Pharmacy of North Carolina, LLC; Omnicare Pharmacy of Pueblo, LLC; Omnicare Pharmacy of South Dakota LLC; Omnicare Pharmacy of Tennessee LLC; Omnicare Pharmacy of the Midwest, LLC, F/K/A Freed's; Omnicare Purchasing Company General Partner, Inc.; Omnicare Purchasing Company Limited Partner, Inc.; Omnicare Purchasing Company LP; Omnicare Respiratory Services, LLC; Omnicare Senior Health Outcomes, LLC; Omnicare.com, Inc.; PBM Plus Mail Service Pharmacy, LLC; PCI Acquisition, LLC; Pharmacy Holding #1, LLC; Pharmacy Holding #2, LLC; Pharmasource Healthcare, Inc.; PP Acquisition Company, LLC; PPS Acquisition Company, LLC; PPS- GBMC Joint Venture LLC; PPS- St. Agnes Joint Venture, LLC; PRN Pharmaceutical Services, LP; Professional Pharmacy Services, Inc.; PSI Arkansas Acquisition, LLC; Resource Biometrics, Inc.; RXC Acquisition Company; SHC Acquisition Co., LLC, D/B/A Synergy; Shore Pharmaceutical Providers, Inc.; South Park Partners LP; Southside Apothecary, Inc.; Specialized Home Infusion of Michigan, LLC; Specialized Patient Care

Services, Inc.; Specialized Pharmacy Services, LLC; Specialized Services of Michigan, Inc.; Specialty Carts, LLC; Sterling Healthcare Services, Inc.; Suburban Medical Services, Inc.; Superior Care Pharmacy, Inc.; Swish, Inc.; TCPI Acquisition Corp., D/B/A Total Care Pharmacy; The Medicine Centre, LLC; THG Acquisition Corp., D/B/A Tandem Health Group; The Tidewater Healthcare Shared Services Group, Inc.; Transport Services, Inc.; UC Acquisition Corp., D/B/A UniCare, Inc.; Uni-Care Health Services of Maine, Inc.; Value Pharmacy, Inc.; Winslow's Pharmacy.  Their addresses are unknown at this time and will be supplemented in a later pleading.

254.   The defendants named in paragraphs 7 through 213 and 253 are hereinafter referred to collectively as "Omnicare."

255.   The defendants named in paragraphs 214 through 252 are hereinafter referred to collectively as "National Account Defendants."

### III.   JURISDICTION AND VENUE

256.   Jurisdiction and venue are proper in this Court for the following reasons:

(a)   Jurisdiction for this Court exists pursuant to the False Claims Act (31 U.S.C. §§ 3730(b)(1), 3732(a)) because Relator's claims seek remedies on behalf of the United States for Defendants' multiple violations of title 31, section 3729 of the United States Code, some of which occurred in the Southern District of Texas.

(b)   Venue exists in the United States District Court for the Southern District of Texas pursuant to title 31, sections 3730(b)(1) and 3732(a) of the United States Code because Omnicare, Inc. and certain other Defendants are qualified to do business in the State of Texas and conduct business within the State of Texas and within the Southern District of Texas and transact business or committed acts proscribed by section 3729 within the State of Texas and within the Southern District of Texas.

## IV.   STATUTORY AND REGULATORY BACKGROUND

### A.   Federal Anti-Kickback Statute

257.   The Medicare-Medicaid Anti-Fraud and Abuse Amendments, known as the Medicare Anti-Kickback Statute ("Anti-Kickback Statute"), 42 U.S.C. § 1320a-7b(b) (2000), makes it illegal for an individual knowingly and willfully to offer or pay remuneration in cash or in kind, directly or indirectly to induce a person to purchase a good or service that is reimbursed by a federal healthcare program.  *See* 42 U.S.C. § 1320a-7b(b)(2).   Violation of the Anti-Kickback statute is a felony and is punishable by a fine of up to $25,000 and up to 5 years' imprisonment.  *Id.*   Those who violate the Anti-Kickback Statute also are subject to exclusion from participation in federal healthcare programs and civil monetary penalties of up to $50,000 per violation and up to three times the amount of remuneration paid.  42 U.S.C. § 1320a-7(b)(7) (2000); 42 U.S.C. § 1320a-7a(a)(7) (2000).

258.   "Remuneration" includes anything of value offered or paid in return for purchasing, ordering, or arranging for or recommending the purchase or order of any item reimbursable by a federal or state healthcare program.  *See* Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti-Kickback Provisions, 56 Fed. Reg. 35,952 (July 29, 1991) (to be codified at 42 C.F.R. pt. 1001).

259.   The purpose of the Anti-Kickback Statute is to prohibit such remuneration in order to secure proper medical treatment and referrals and to limit unnecessary treatment, services, or goods that are based not on the needs of the patient but on improper incentives given to others, thereby limiting the patient's right to choose proper medical care and services.  Paying kickbacks taints an entire prescription, regardless of the medical propriety of its use.

260.    According to the OIG, paying kickbacks raises quality and cost concerns.  *See* Publication of OIG Special Advisory Bulletin on Offering Gifts and Other Inducements to Beneficiaries, 67 Fed. Reg. 55,855, 55,856 (Aug. 30, 2002).  Providers may have an economic incentive to offset the additional costs attributable to the kickback by providing unnecessary services or substituting cheaper or poorer quality goods or services.  *Id.*  Moreover, the use of kickbacks to induce business favors larger providers with greater financial resources for such activities, which puts smaller providers and businesses at a disadvantage.  *Id.*

**B.    Medicare Part A**

261.    Medicare was established by title XVIII of the Social Security Act of 1965, 42 U.S.C. § 1395 *et seq.* (2000).  It provides federal health insurance for approximately 44 million people who are aged or disabled.  Medicare Part A covers inpatient care in hospitals, skilled nursing facility, hospice, and home health care.  *See* 42 U.S.C. § 1395d (2000).  Under Medicare Part A, skilled nursing facility care is covered only for up to 100 days.  *See id.*  Medicare Part A does not cover long-term or "custodial" care.

**C.    Medicaid**

262.    Medicaid was established by title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 *et seq.* (2000).  It is a joint federal-state program that provides healthcare benefits to over 53 million people who belong to certain groups, particularly the poor and disabled.

263.    Within broad national guidelines established by federal statutes, regulations, and policies, each state: (1) establishes its own eligibility standards; (2) determines the type, amount, duration, and scope of services; (3) sets the rate of payment for services; and (4) administers its own program.  States generally have broad discretion to determine which groups their Medicaid programs will cover and the financial criteria for Medicaid eligibility.  To be eligible for federal

funds, however, states are required to provide Medicaid coverage for certain individuals who receive federally assisted income-maintenance payments, as well as for related groups who do not receive cash payments.  In general, state Medicaid programs are required to cover nursing facility and home health care for eligible individuals age 21 and older.  States may receive federal matching funds to provide certain optional services, including prescription drugs.

264.    Nineteen percent of Medicaid recipients also are eligible for Medicare.  Medicare beneficiaries who have low incomes and limited resources may receive assistance from the Medicaid Program.  Because Medicaid is a "payer of last resort," their Medicare coverage is supplemented by services available under their state's Medicaid Program.

## V.    FACTUAL ALLEGATIONS

### A.    Overview of Omnicare, Inc.

265.    Omnicare, Inc. ("Omnicare") is one of the largest pharmaceutical and pharmaceutical service providers for skilled nursing, assisted living, and other healthcare facilities in the United States.  In 2005, Omnicare acquired rival NeighborCare, Inc., creating a company with approximately $6 billion in annual revenue, serving nearly 1.4 million long-term care beds.  Current estimates of Omnicare's share of the long-term care pharmacy market range from 50% to 85%, though not all Omnicare-owned pharmacies use the "Omnicare" name.  Omnicare provides pharmaceuticals, specialty unit-dose packaging, delivery, pharmacist consulting, infusion and respiratory therapy, and medical supplies to the long-term care facilities it services.  Its pharmacists direct and oversee the acquisition, disposition, handling, storage, and administration of pharmaceuticals for this vulnerable population.

266.    Upon information and belief, approximately 80% of Omnicare's skilled nursing facility business is derived from patients whose healthcare benefits are paid for by Medicaid.

The remaining 20% of Omnicare's skilled nursing facility business is derived from patients whose benefits are paid for by Medicare.

267.    Omnicare contracts with state Medicaid programs to provide pharmaceuticals and pharmaceutical services to Medicaid beneficiaries in skilled nursing facilities that Omnicare services.   Omnicare is reimbursed directly by the states for the pharmaceuticals and related services it provides to Medicaid beneficiaries.

268.    For Medicare patients, the skilled nursing facilities that Omnicare services bill Medicare on a capitated basis for all services that are provided, including pharmaceuticals.  The facilities purchase pharmaceuticals and related services from Omnicare, which then bills the facilities for the drugs it provides for the Medicare beneficiaries.

**B.      Omnicare's Scheme to Induce Business by Forgoing Payment for Drugs Reimbursable by Medicare**

269.    Omnicare does business with skilled nursing facilities of all shapes and sizes, but with regard to collections it treats them very differently.  Customers with multiple locations in multiple states and therefore a high volume of Medicaid business are designated as "National Accounts" and coded as "NAT" in Omnicare's accounting system.  (*See* Ex. 45, Facility AR Aging 06-17-08 Company Name.)    There are presently approximately forty customers designated as National Accounts in Omnicare's accounting system.  In September 2008, they included groups such as Assisted Living Concepts, Inc., Extendicare Health Services, Inc., Five Star Quality Care, Genesis HealthCare, HCR Manor Care, Life Care Centers of America, Mariner Health Care, Inc., Sava Senior Care, SunBridge Healthcare Corporation, and Sunrise Senior Living, Inc.

270.    Employees with Omnicare's Credit and Collections Department ("Collections"), headed by Relator Susan Ruscher ("Ruscher") until her recent termination, are expressly

prohibited from making any contact with National Accounts. (*See* Ex. 1, Brumleve Email of Oct. 22, 2007; Ex. 2, Brumleve email of Oct. 2, 2007.)   Collections employees have little involvement with these accounts, except accidentally, for instance when the "NAT" designation has not yet been entered into the database for a new facility.   Debts on these accounts fall under the responsibility of senior management: David Froesel, Senior Vice President and Chief Financial Officer, Patrick Keefe, Executive Vice President and Chief Operating Officer, Joel Gemunder, President and Chief Executive Officer, and Richard Richow, Vice President of Credit and Collections.   These debts are not referred to counsel for litigation.   Any payments made are haphazard, minimal, and purely for the sake of appearances.   Yet National Account debts are written off only when they become inescapably unenforceable, such as when a customer files for bankruptcy.   In November 2007, for example, one of Omnicare's National Accounts, Haven Healthcare ("Haven") filed for bankruptcy, at which time it owed Omnicare over $20 million. The debt had grown so large because Collections was unable to attempt to collect any payment from Haven, even as Omnicare continued to service its nursing homes.   Moreover, none of the debt was secured, which left Omnicare $20 million in the hole due to its failure to collect.

271.   "Pharmacy Hold," or "P-Hold," customers (sometimes referred to as "P-Hold" facilities") are those that are not National Accounts, but have nevertheless won for themselves unwritten arrangements with Omnicare management under which Omnicare will forgo its Medicare reimbursement indefinitely.   Once a facility is designated in Omnicare's accounting system as on P-Hold, collections efforts cease and Collections is informed that the customer is working out a payment arrangement with the individual Omnicare-owned pharmacy.   At times, payments will then be made on the past-due amounts.   Even then, the amounts owed will usually continue to increase as Omnicare continues to provide pharmaceuticals and services to the

facility. (*See* Ex. 23, Brumleve Email of Sept. 8, 2006.) The skilled nursing facilities that typically obtain P-Holds are (1) regional chains; and (2) facilities with imminent plans to acquire other nursing homes, if they are willing to commit those new facilities to Omnicare.

272.   P-Holds are generally permanent. Once or twice, senior Omnicare management has directed a pharmacy to remove a P-Hold so that Collections could attempt to collect past-due amounts. Occasionally a pharmacy might otherwise release a P-Hold, for instance after the customer had decided to discontinue doing business with Omnicare. Afterwards, collection efforts are usually met with resistance from the facilities, and the P-Holds are eventually reinstated.

273.   All other customers besides National Accounts and those with P-Holds, including most individually-owned nursing homes with a single location, are lumped into the third category of customers, which are subject to vigorous collection efforts. These are the only customers that Omnicare is willing to sue for overdue accounts. Nursing homes of all sizes often respond to Omnicare collection efforts with the plea that they need Omnicare's Medicare proceeds in order to keep their residents comfortable, but these small nursing homes are the least likely to receive that considerable boost to their budgets.

**C.     Omnicare's Incentives to Forgive Certain Customers' Huge Medicare Debts**

274.   Omnicare maintains a bonus structure and culture that create incentives to disregard debt. Its managers' bonuses are based largely on pharmaceutical sales to nursing home residents, and not on actual collections from skilled nursing facilities. Moreover, executive directors and management are unwilling to risk losing a customer, particularly a national or regional chain, because they then face a tongue-lashing or worse from CEO Joel Gemunder, regardless of the size of the customer's debt.

275.    Upon information and belief, the profit margin on pharmaceuticals and services reimbursed by Medicare and Medicaid to long-term care pharmacy providers like Omnicare is 8% to 10%.  This small margin means that Omnicare actually loses money whenever it offers an effective 20% discount to customers by forgoing its Medicare reimbursement (which amounts to 20% of the business between Omnicare and the facilities; the remaining 80% is Medicaid).  In order to stay in business, Omnicare has to make up the difference somewhere.  This basic mathematical insight raises the question of whether Omnicare and the skilled nursing facilities to which it offers this generous discount are accurately reporting the price of pharmaceuticals and services.  Omnicare may be negotiating deep, unreported discounts from pharmaceutical companies in order to make up for the essentially free pharmaceuticals and services it provides to Medicare beneficiaries served by larger skilled nursing facilities.  Further, on the Medicaid side, Omnicare may be inflating the stated cost of pharmaceuticals and services it provides to Medicaid beneficiaries to make up for this difference.  Meanwhile, Omnicare's favored skilled nursing facilities are required to submit to Medicare highly detailed accountings of where their funds go in the form of "cost reports"; they certainly are not reporting to Medicare that they pocket vast Medicare sums intended for pharmacies.

276.    Furthermore, the massive size of the discounts that Omnicare offers to favored skilled nursing facilities raises the question of whether Omnicare is engaged in, in essence, predatory pricing or other anti-competitive tactics.  With a market share of 50% to 85%, depending on the source, Omnicare can perhaps afford in the short term to offer significantly lower prices than its competitors, eventually eliminating them from the market and allowing Omnicare to make a greater profit in the long term.  Omnicare's apparent nervousness at losing a

customer, even when losing vast sums of money to keep that customer, raises the concern that it is attempting to gain/maintain a monopoly in its industry.

277.    Moreover, Omnicare's practice of giving National Accounts and others an effective 20% discount on pharmaceuticals and services provided by its pharmacies is an unfair form of price discrimination between customers.   Individually-owned nursing homes cannot compete when their competitors are offered such a large pricing advantage on pharmaceuticals and services.  Many likely are forced out of business as a result.  This practice hurts competition by giving National Accounts and customers with P-Holds an edge in the skilled nursing facility market that is not related to their ability to provide services with greater efficiency or of greater quality.   Neither does it reflect their ability to legally and fairly negotiate better prices on pharmaceuticals and services from various long-term care pharmacy providers.

**D.    Relator Susan Ruscher's Discovery of Omnicare's Fraudulent Conduct and Subsequent Retaliation by Omnicare**

**i.    Relator's Background and Employment History with Omnicare**

278.    Ruscher worked for Omnicare from July 18, 2005 until her termination on August 18, 2008.  She first came to Omnicare as Corporate National Credit and Collections Manager. When she arrived at Omnicare, there was no central mechanism in place for Collections to monitor accounts receivable for individual Omnicare-owned pharmacies.  Collections could only learn of delinquent accounts through reports from the individual pharmacies.  Ruscher worked with the company's information technology department to set up a system that allowed Collections to monitor open invoices and assist the individual pharmacies with collections for amounts over 180 days past due.

279.    With Ruscher at the helm, Collections grew from a staff of four to a staff of sixteen.  With regard to accounts that were neither "National Accounts," nor on "P-Hold,"

Collections worked to ensure Omnicare would get paid for past-due amounts by implementing payment plans with the skilled nursing facilities or entering into promissory notes that included personal guarantees and financing statements to perfect Omnicare's security interest in the event of default or bankruptcy.  Ruscher and her staff monitored any bankruptcies to ensure proofs of claim were filed correctly and promptly on behalf of Omnicare.

280.    With regard to National Accounts, however, Ruscher's hands were tied.  She was specifically instructed not to contact National Accounts to collect past-due amounts.  She was told not to "stir up trouble" by attempting to collect the "paltry" amount that those past-due monies represented  As a result, National Accounts typically paid little to none of their Medicare debt owed to Omnicare.

281.    Whenever Ruscher's staff mistakenly contacted a National Account in the course of their collections duties (often when ownership of a facility had changed hands unbeknownst to Collections), Ruscher was promptly summoned by her supervisor Richard Richow, who conveyed the message that the customer had complained, and that CEO Joel Gemunder, COO Patrick Keefe, or CFO David Froesel demanded that she cease collections efforts immediately.

282.    Five Star Quality Care ("Five Star") was a particularly delinquent account. Although it was designated as a National Account, Ruscher put her foot down in June 2008 and instructed the company to pay its debt.  She was soon summoned to Patrick Keefe's office and ordered to desist.  Keefe told her that despite the size of Five Star's debt, approximately $1.4 million, Omnicare needed to "tread lightly" because Omnicare was attempting to purchase five pharmacies from Five Star.[1]

---

[1] Five Star owned both long-term care facilities and pharmacies.

283.    The only time Omnicare would attempt to collect from National Accounts was at the end of the year, when Omnicare wished to make a show of a reasonable attempt to collect in order to improve its year-end financial statements.  On these occasions, Ruscher and her staff would be permitted to contact National Accounts for a token payment, but usually with one of the key account managers assigned to the particular National Account on the phone during the call.   Ruscher typically would request that the nursing home group make a payment that represented an average month's billings, plus a modest payment toward the past due balance. Inevitably, the key account manager would insist that Omnicare was interested only in the monthly payment and usually offered a discount to offset any mistakes the manager suggested the billing department inevitably made.  The account managers' group soon earned themselves the title "Inducement Team" among Collections employees because of this eagerness to forgo payment to induce Medicaid business.

284.    Customers with P-Holds specifically noted in the billing systems were also protected from Ruscher's collection efforts.  Every month, her department forwarded each Omnicare pharmacy (or in the case of former NeighborCare pharmacies, regional billing office) a list of its accounts.[2]  Each pharmacy was asked to name any accounts that Collections should not attempt to collect, and pharmacies were often specifically asked about the status of any P-Holds on the list.  Very rarely would they relent and remove a customer's "P-Hold" status. Ruscher once became so frustrated about the number of accounts accruing increasing debt this way that she confronted her supervisor, Richard Richow.  He reminded her that Omnicare makes a great deal of money from the Medicaid beneficiaries at those facilities and said that Omnicare did not want to risk losing that income.   "But that's inducement!" responded Ruscher, in

---

[2] This process was initiated by Ruscher within months after her arrival at Omnicare as part of her ongoing efforts to collect past-due amounts.

violation of Medicare and Medicaid laws.  Richow agreed, and added that Michael Rosenblum, who oversaw most of the New York region, likely would be the "first to go to prison" over the arrangement.  Ruscher understood that to pursue the matter further would risk her job.

285.   Ruscher and her staff were expressly forbidden to collect from customers in the New York region overseen by Michael Rosenblum, Executive Director of Pharmacy in New York.   Rosenblum kept P-Holds on most of his accounts because he was afraid that any collection efforts would cause his customers to cease doing business with Omnicare.   The amount owned by his customers is astronomical:   these entities represent approximately $55 million of the $400 million of amounts past-due over 180 days owed to Omnicare.

286.   Ruscher did experience one victory with regard to P-Hold accounts, however.  In May 2007, she attended a regional meeting in Syracuse, New York (a region of New York not included in Michael Rosenblum's territory), during which she explained to the pharmacy managers that failure to collect amounts due from pharmaceuticals and services provided to Medicare beneficiaries probably constituted illegal inducement.  The managers were surprised to learn that the practice might be illegal and thanked her for being the first to explain the illegality of inducements to customers.  From that point forward, those managers lifted all P-Holds and allowed Ruscher to collect in that region successfully.

287.   With regard to other customers, Omnicare regularly initiated litigation, but not without some hurdles.  If Ruscher wished to initiate litigation, she first would have to complete a detailed form.  (Ex. 98, Litigation & Termination Approval/Management Review.)  In addition to information about the date and amount of the facility's last payment and the total outstanding debt, the form shows how much revenue is generated from that facility's Medicare and Medicaid beneficiaries.  (*Id.*)  The form also shows how much revenue Omnicare would stand to lose by

initiating collections litigation if the facility's business were terminated. (*Id.*) If the amount was too great, Omnicare usually denied Ruscher's request and continued doing business with the facility in order to keep the Medicaid business.

288.    Once collections litigation had been approved, Ruscher monitored the litigation. She prepared cases for litigation, assisted Schutts & Bowen, Omnicare's national counsel, in selecting litigation attorneys, and approved pleadings, signed affidavits, and attended depositions, mediations, and trials as representative for Omnicare with settlement authority. Ruscher also worked with outside collections litigation counsel, who were often able to collect 100% of what was due to Omnicare.

>    **ii.    Omnicare's Retaliation Against Relator**

289.    Ruscher repeatedly challenged Omnicare's refusal to collect its Medicare debt. Time and again she tried to institute more effective measures for collecting debts that Omnicare had actually decided to forgive.  Although Ruscher was successful in some of her efforts, it worked to her disadvantage.  As Ruscher became more effective, Omnicare's illegal kickback scheme became more obvious, and Omnicare's senior management surely feared that she would derail their efforts to monopolize the long-term care pharmacy market.

290.    When Ruscher first arrived at Omnicare and Richard Richow told her not to collect from National Accounts or P-Holds, she was initially preoccupied with the effort of constructing a collections department large and sophisticated enough to keep up with the debts owed hundreds of separate Omnicare-owned pharmacies.  But in those early days of her tenure, Ruscher and her staff in Collections began producing monthly aging spreadsheets that were distributed to each Omnicare-owned pharmacy, and as months passed, Ruscher observed from the reports the growing debt in all past-due accounts, in particular the P-Holds.  It was then that

Ruscher began questioning Omnicare's collections practices with regard to General Accounts and accounts on P-Hold.

291.    Ruscher tried to win permission to collect from National Accounts and other prized customers who were pocketing Omnicare's Medicare money.   She confronted her supervisor specifically about the fact that Omnicare's forgiveness of its favored facilities' debt attributable to Medicare beneficiaries constituted an illegal inducement to keep the Medicaid business.  His response was that Omnicare's judgment was that it makes so much money from the Medicaid business that it benefits Omnicare to forgo the payments.

292.    Later, in order to secure Omnicare's debts owed by various facilities in the event the facilities were sold or defaulted on their agreements, Ruscher instituted promissory notes with UCC securitization clauses.  When she attempted to include such clauses in Omnicare's contracts, she was chastised.  Ruscher's vigorous efforts only made Omnicare's policies more apparent.

293.    In May 2007, Ruscher traveled to Syracuse, New York and—upsetting Omnicare's scheme—let pharmacy managers know that their practice of failing to collect debts reimbursable by Medicare in order to keep Medicaid business likely constituted an illegal kickback.  Later that year, she further drew attention to the scheme when she began raising these concerns to other pharmacy managers and directors, who repeated the Omnicare company line that it makes too much money to risk alienating the facilities by asking for payment.

294.    Despite Omnicare management's resistance, in June 2008, Ruscher insisted that Five Star, one of Omnicare's prized National Accounts, pay its bill.  CFO Patrick Keefe immediately instructed Ruscher cease collection efforts, especially since Omnicare was seeking to purchase some of Five Star's pharmacies.

295.    On July 1, 2008, Ruscher was promoted to National Litigation Manager.  In this position, she became responsible for monitoring litigation costs in addition to her other duties related to collections litigation.  When Ruscher was promoted, she asked Suzanne Labrit, her contact at Schutts & Bowen, to provide collections litigation billings from Schutts & Bowen as well as from local collections litigation counsel as part of her efforts to monitor litigation costs. David Gemunder, a partner at Schutts & Bowen and the son of Omnicare President and CEO Joel Gemunder, let Ruscher know that she did not need that information because Schutts & Bowen was monitoring litigation costs.  As had become usual, Ruscher was thwarted in her attempts to act in Omnicare's interest.

296.    In the second week of July, Ruscher was told by Omnicare's in-house counsel that some attorneys wished to discuss accounts receivable with her.  She then met with Stuart Chanen and Aharon Kaye, attorneys from the firm of Katten Muchin Rosenbaum LLP, who told her that they had been hired by Omnicare's in-house counsel to find the "disconnect" between Ruscher and its national counsel, Schutts & Bowen.  This was a ruse engineered to disguise the true "disconnect" that existed between Omnicare's desire to maintain its practice of offering illegal kickbacks in order to maintain Medicaid business and Ruscher's efforts to collect monies owed in opposition to this scheme.

297.    The attorneys began to interrogate Ruscher regarding a seemingly random selection of her past actions.  Suzanne Labrit at Schutts & Bowen previously had told Ruscher that she did not approve of her title of National Litigation Manager because Ruscher might be construed as an attorney.  When Ruscher was asked how she responded to this complaint, Ruscher explained that she had notified in-house counsel, who advised that he would let Ruscher

know if her title needed to be changed. Chanen insisted that Ruscher should have pursued Labrit's complaint about her title more vigorously.

298.    Ruscher then was questioned about a meeting in Las Vegas, Nevada to discuss litigation strategy with Omnicare's national and outside counsel. She was asked who planned the trip and answered that David Gemunder and Angelina Whittington, a former Schutts & Bowen attorney, planned the trip and that David Gemunder chose the location. Ruscher was then questioned about her relationship with an attorney whom she often hired as collections litigation counsel because of his frequent success in collecting 100% of what was owned to Omnicare. Chanen asked whether Ruscher and the attorney shared a room in Las Vegas and whether they were personally involved. Ruscher assured Chanen that they were not involved and did not share a room, but Chanen continued to press for a detailed minute-by-minute account of Ruscher's activities in Las Vegas. She was further interrogated about a trip to Miami with Schutts & Bowen on which the same attorney accompanied her.

299.    At the conclusion of this four-hour-and-twenty-minute meeting, during which Ruscher felt unfairly harassed, she was instructed not to discuss anything with her supervisor, Omnicare's in-house counsel, or the outside collections litigation attorney. For the next three days, Ruscher was on a vacation that had been planned in advance. During that time, she, along with others in the credit and collections department, received an email instructing her not to send any new cases to the successful outside attorney's firm.

300.    After returning from vacation on a Sunday, she attempted to work but could not log in on her office computer. She called her supervisor, but he was not aware of why she would be having these difficulties. The following day, Ruscher was terminated. Omnicare denied her request for any paperwork related to the termination.

301.    One too many times, Ruscher exposed the illegal kickbacks being spent on the National Accounts, among other customers, and Omnicare's larger scheme to dominate the market, which has the effect of driving the smallest nursing homes out of business and enriching the largest. As her success grew in collecting amounts due by customers who did not benefit from the scheme, the amounts due by National Accounts and customers with P-Holds became more apparent. In the end, Omnicare could not tolerate the threat Ruscher posed, so she was terminated.

### E.    Omnicare's Conduct Violates its Corporate Integrity Agreement with the United States Government

#### i.    2006 Settlement

302.    Omnicare has worked a fraud on the United States Government ("Government") and forty-two state Medicaid programs before. On or around November 2006, Omnicare entered a $49.5 million settlement to settle allegations by two former Omnicare employees that Omnicare switched patients from tablets to capsules, from capsules to tablets, and switched dosages of drugs in order to get higher reimbursement from forty-two state Medicaid programs.[3]

#### ii.    Corporate Integrity Agreement Between Omnicare and the United States Government

303.    As part of the 2006 settlement, Omnicare entered into a Corporate Integrity Agreement ("CIA") with the Office of the Inspector General for the Department of Health and Human Services. Upon information and belief, further participation by Omnicare in federal and state-funded healthcare programs is conditioned upon compliance with the CIA.

---

[3] Ruscher's allegations relate to conduct not covered by the settlement. She raises no allegations with regard to switching of drug dosages or forms. She alleges entirely new claims: Omnicare's offering of kickbacks in the form of forgoing reimbursement from skilled nursing facilities for Medicare business in order to keep Medicaid business.

304.    Among other provisions, the CIA requires Omnicare to establish and maintain a disclosure program that enables individuals to report issues or questions associated with Omnicare's policies, conduct, practices, or procedures that potentially violate criminal, civil, or administrative laws with respect to any federal healthcare program.  (*See* Ex. 96, Omnicare Corporate Integrity Agreement 2, 12.)  The provision would include any violations of laws applicable to Medicare and Medicaid programs.  The disclosure program must emphasize a non-retribution and non-retaliation policy and include an anonymous reporting mechanism.  (*See id.* at 13.)

305.    The CIA also requires Omnicare to notify the Government of a matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any federal healthcare program.  (*See* Ex. 96, Omnicare Corporate Integrity Agreement 16.)  The provision would include any violations of laws applicable to Medicare and Medicaid programs.

306.    Furthermore, the CIA requires Omnicare to certify in an implementation report, which was due on or around April 8, 2007, and in annual reports thereafter, the first of which was due on or around January 8, 2008, that, to the best of its knowledge, it is in compliance with all requirements of the CIA, including maintenance of the disclosure program and reporting any violations of laws applicable to Medicare and Medicaid programs.  (*See* Ex. 96, Omnicare Corporate Integrity Agreement 18–22.)

307.    Omnicare has violated the False Claims Act by expressly certifying that it was in compliance with the CIA, when in fact it was engaging in illegal conduct with regard to Medicare and Medicaid, such as offering kickbacks to skilled nursing facilities by forgoing payment for amounts reimbursable by Medicare in order to keep Medicaid business.  Omnicare

further engaged in illegal conduct when it terminated Ruscher for insisting upon collecting past-due amounts Omnicare wished to disregard as part of its illegal kickback scheme.   Upon information and belief, Omnicare did not report any of the illegal and fraudulent activities alleged by Relator.  Had it done so, an investigation would have ensued.

## VI.   ACTIONABLE CONDUCT BY OMNICARE UNDER THE FALSE CLAIMS ACT

### A.   Applicable Law

#### i.   False Claims Act

308.   This is an action to recover damages and civil penalties on behalf of the United States Government ("Government") and Relator arising from the false or fraudulent claims submitted by Omnicare and the skilled nursing facilities designated as National Accounts in violation of the False Claims Act.  *See* 31 U.S.C. §§ 3729–3732 (2000).

309.   The False Claims Act ("FCA") provides that any person who:

(a)   knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(b)   knowingly makes, uses, or causes to be or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(c)   conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(d)   knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government

is liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each claim, plus three times the amount of damages sustained by the Government because of the false or fraudulent claim.  31 U.S.C. § 3729(a).

310.   The FCA allows any person who has knowledge of a false or fraudulent claim against the Government to bring an action in federal district court for himself and for the

Government and to share in any recovery. 31 U.S.C. § 3730. The FCA also prohibits negative employment actions taken in response to an employee's investigation and initiation of a claim under the FCA. 31 U.S.C. § 3730(h).

311.   On behalf of the Government and the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, the Commonwealths of Massachusetts and Virginia, and the District of Columbia (collectively "States"), Relator seeks through this action to recover damages and civil penalties arising from Omnicare and the skilled nursing facilities designated as National Accounts' causation of submission of false claims to the Government and the States. *See* 31 U.S.C. § 3730. In this case, such claims were submitted to the Government for payment for pharmaceuticals and pharmaceutical services by Omnicare and certain skilled nursing facilities. Relator believes that the Government and the states have suffered significant damages as a result of false claims for payment for the pharmaceuticals and services. There are no bars to recovery under section 3730(e), and, or in the alternative, Relator is an original source as defined in that section.

312.   As required under the FCA, Relator provides the Attorney General of the United States, the United States Attorney for the Southern District of Texas, and the Attorneys General of the States a statement of all material evidence and information related to her complaint. *See* 31 U.S.C. § 3730(b). This disclosure statement is supported by documentary evidence.

### ii.   The Federal Anti-Kickback Statute

313.   In pertinent part, the Anti-Kickback Statute provides:

(b)   Illegal remuneration

(1)     whoever knowingly and willfully   solicits or receives any
        remuneration (including any kickback, bribe, or rebate) directly or
        indirectly, overtly or covertly, in cash or in kind—

    (A)     in return for referring an individual to a person for the
        furnishing or arranging for the furnishing of any item or
        service for which payment may be made in whole or in part
        under a Federal health care program, or

    (B)     in return for purchasing, leasing, ordering, or arranging for
        or recommending purchasing, leasing, or ordering any
        good, facility, service, or item for which payment may be
        made in whole or in part under a Federal health care
        program,

shall be guilty of a felony and upon conviction thereof, shall be fined not
more than $25,000 or imprisoned for not more than five years, or both.

(2)     whoever knowingly and willfully offers or pays any remuneration
        (including any kickback, bribe, or rebate) directly or indirectly,
        overtly or covertly, in cash or in kind to any person to induce such
        person—

    (A)     to refer an individual to a person for the furnishing or
        arranging for the furnishing of any item or service for
        which payment may be made in whole or in part under a
        Federal health care program, or

    (B)     to purchase, lease, order or arrange for or recommend
        purchasing, leasing or ordering any good, facility, service,
        or item for which payment may be made in whole or in part
        under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not
more than $25,000 or imprisoned for not more than five years, or both.

(3)     Paragraphs (1) and (2) shall not apply to—

    (A)     a discount or other reduction in price obtained by a
        provider of services or other entity under a Federal health
        care program if the reduction in price is properly disclosed
        and appropriately reflected in the costs claimed or charges
        made by the provider or entity under a Federal health care
        program . . . .

71

42 U.S.C. § 1320a-7b(b) (2000).  Those who violate the statute also are subject to exclusion from participation in federal healthcare programs, and civil monetary penalties of up to $50,000 per violation and up to three times the amount of remuneration paid.  42 U.S.C. § 1320a-7(b)(7) (2000); 42 U.S.C. § 1320a-7a(a)(7) (2000).

**B.**      **Omnicare Caused the Skilled Nursing Facilities that Pocketed Omnicare's Medicare Reimbursement to Make False Certifications to the United States Government.**

314.    Upon information and belief, each of the skilled nursing facilities' Medicare provider applications and provider agreements contain an agreement that the facility will comply with all applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.  (*See* Ex. 97, Medicare Enrollment Application 37.)  By participating in the Medicare program, and in submitting applications, and/or entering agreements with Medicare and/or state Medicaid programs, the skilled nursing facilities certified compliance with all applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.

315.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  Omnicare caused the facilities to violate the Anti-Kickback Statute by engaging with the facilities in a scheme under which Omnicare offered to forgo reimbursement on pharmaceuticals and services to Medicare patients at certain favored skilled nursing facilities, such as those designated as National Accounts and those on P-Hold, in order to win and keep Medicaid business.  Those favored facilities also violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare patients and pocketing the reimbursement in exchange for giving Omnicare their Medicaid business.

316.     When those skilled nursing facilities submitted claims for payment under their Medicare provider agreements, they falsely certified compliance with all applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violated the FCA, 31 U.S.C. § 3729(a)(1) through (7).  Omnicare's fraudulent scheme to induce certain facilities to keep their Medicaid business with Omnicare caused the Government to suffer substantial damages.

**C.     Omnicare Made False Certifications to the States.**

317.     Upon information and belief, Omnicare's Medicaid provider applications contain an agreement that the facility will comply with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.  By participating in the Medicaid program, and in submitting applications, and/or entering agreements with Medicare and/or state Medicaid programs, Omnicare certified compliance with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.

318.     The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  Omnicare violated the Anti-Kickback Statute by engaging in a scheme to provide pharmaceuticals and services for which Omnicare would bill but never attempt to collect payment to certain skilled nursing facilities in order to keep the business that was reimbursable by Medicaid.

319.     When Omnicare submitted claims for payment under its state Medicaid provider agreements, it falsely certified compliance with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7).  Omnicare's fraudulent scheme to induce certain

facilities to keep their Medicaid business with Omnicare caused the States to suffer substantial damages.

**D.     Omnicare Caused the Skilled Nursing Facilities that Pocketed Omnicare's Medicare Reimbursement to Make False Certifications to the States.**

320.    Upon information and belief, each of the skilled nursing facilities' provider agreements with state Medicaid programs contain an agreement that the facility will comply with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.   By participating in the Medicaid program, and in submitting applications, and/or entering agreements with Medicare and/or state Medicaid programs, the skilled nursing facilities certified compliance with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.

321.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.   Omnicare caused the facilities to violate the Anti-Kickback Statute by engaging with the facilities in a scheme under which Omnicare offered to forgo reimbursement on pharmaceuticals and services to Medicare patients at certain favored skilled nursing facilities, such as those designated as National Accounts and those on P-Hold, in order to win and keep Medicaid business.   Those favored facilities also violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare patients and pocketing the reimbursement in exchange for giving Omnicare their Medicaid business.

322.    When those skilled nursing facilities submitted claims for payment under their Medicaid provider agreements, they falsely certified compliance with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7).   Omnicare's fraudulent

scheme to induce certain facilities to keep their Medicaid business with Omnicare caused the States to suffer substantial damages.

**E.    Skilled   Nursing   Facilities   that   Pocketed   Omnicare's   Medicare Reimbursement Made False Certifications to the Government.**

323.    Upon information and belief, each of the skilled nursing facilities' Medicare provider applications and provider agreements contain an agreement that the facility will comply with all applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.  (*See* Ex. 97, Medicare Enrollment Application 37.)  By participating in the Medicare program, and in submitting applications, and/or entering agreements with Medicare and/or state Medicaid programs, the skilled nursing facilities certified compliance with all applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.

324.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  The favored skilled nursing facilities violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare patients and pocketing the reimbursement in exchange for giving Omnicare their Medicaid business.

325.    When those skilled nursing facilities submitted claims for payment under their Medicare provider agreements, they falsely certified compliance with all applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7), causing the Government to suffer substantial damages.

**F.     Skilled     Nursing     Facilities     that     Pocketed     Omnicare's     Medicare Reimbursement Made False Certifications to the States.**

326.    Upon information and belief, each of the skilled nursing facilities' provider agreements with state Medicaid programs contain an agreement that the facility will comply with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.   By participating in the Medicaid program, and in submitting applications, and/or entering agreements with Medicare and/or state Medicaid programs, the skilled nursing facilities certified compliance with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.

327.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.   The favored skilled nursing facilities violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare patients and pocketing the reimbursement in exchange for giving Omnicare their Medicaid business.

328.    When those skilled nursing facilities submitted claims for payment under their Medicaid provider agreements, they falsely certified compliance with all applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7), causing the States to suffer substantial damages.

**G.     Skilled     Nursing     Facilities     that     Pocketed     Omnicare's     Medicare Reimbursement Submitted False Medicare and Medicaid Cost Reports.**

329.    Medicare and Medicaid require skilled nursing facilities to submit regular, detailed cost reports accounting for their assets, transactions, and costs.   Upon information and belief, each of the Medicare and Medicaid cost reports contain a certification that the facility will comply with all applicable Medicare and/or Medicaid laws, regulations, and program

76

instructions including, but not limited to, the Anti-Kickback Statute.  When those skilled nursing facilities submitted the Medicare and Medicaid cost reports, they falsely certified compliance with all applicable Medicare and/or Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7), causing the Government and States to suffer substantial damages.

330.   On those cost reports, the skilled nursing facilities designated as National Accounts and other skilled nursing facilities that have pocketed Omnicare's Medicare reimbursement have had to account for those very funds.  Upon information and belief, they have misrepresented the whereabouts of those funds; Medicare and Medicaid would certainly not have allowed them to keep such money if the truth had been disclosed.  The misrepresentations by the skilled nursing facilities designated as National Accounts and P-Hold facilities on their Medicare and Medicaid cost reports violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7).

## H.   Omnicare Conspired with the National Account Defendants and the P-Hold Facilities to Defraud Medicare and Medicaid in Violation of the FCA.

331.   Omnicare, the facilities designated as National Accounts, and the P-Hold facilities entered into agreements and conspired with one another to submit false claims for reimbursement for pharmaceuticals, pharmaceutical services and other services provided to long-term care patients to Medicare and state Medicaid programs and to receive reimbursement for these pharmaceuticals and services to which they were not entitled.

332.   As part of the scheme and agreement to obtain reimbursement for pharmaceuticals and services in violation of the state Medicaid programs' reimbursement policies, Omnicare, the facilities designated as National Accounts, and the P-Hold facilities conspired and agreed to perform acts to effectuate the conspiracy.  Omnicare offered, and the facilities designated as National Accounts and the P-Hold facilities accepted, kickbacks to induce

the nursing homes to keep their business with Omnicare.  Under this scheme, Omnicare would forgo reimbursement on pharmaceuticals and services to Medicare patients at the facilities designated as National Accounts and P-Hold facilities, in order to win and keep Medicaid business.

333.    Omnicare, the facilities designated as National Accounts, and the P-Hold facilities knew that their actions would result in the submission to Medicare and state Medicaid programs of false and fraudulent claims for reimbursement for pharmaceuticals and services provided to long-term care patients, violating the FCA, 31 U.S.C. § 3729 (a)(1) through (7), and resulting in substantial damages to the Government.

**I.     Omnicare Violated the FCA by Terminating Ruscher When She Questioned and Attempted to Thwart Omnicare's Practice of Forgoing Medicare Reimbursement in Order to Keep Medicaid Business.**

334.    The FCA prohibits an employer from taking negative employment actions in response to an employee's investigation and initiation of a claim under the FCA.  Omnicare violated the FCA when it terminated Ruscher for attempting to collect amounts past due that were reimbursable by Medicare so that Omnicare could induce purchase of pharmaceuticals and services by skilled nursing facilities that would be reimbursed by Medicaid.

**J.     Omnicare Falsely Certified Compliance with the CIA.**

335.    As a condition to participating in federal and state healthcare programs, Omnicare agreed to abide by the provisions in the CIA with the Office of the Inspector General for the Department of Health and Human Services.  The CIA requires Omnicare to certify in its implementation report and annual reports under the agreement that it is complying with all terms and conditions of the CIA.  By continuing to engage in illegal conduct, such as forgoing payment for pharmaceuticals and services reimbursable by Medicare to induce purchase of pharmaceuticals and services reimbursable by Medicaid, Omnicare falsely certified that it was in

compliance with the CIA.   In addition, by failing to maintain a disclosure program and terminating Ruscher when she questioned Omnicare's illegal practices, Omnicare falsely certified that it was in compliance with the CIA, and thus violated the FCA, 31 U.S.C. § 3729 (a)(1) through (7), causing the Government to suffer substantial damages.

## VII.   DAMAGES

336.   All prescriptions and claims for related services that resulted from these false certifications would not have been reimbursed by Medicare and the state Medicaid programs had the Government and the States known that Omnicare was offering and that certain skilled nursing facilities were accepting illegal kickbacks in the form of Omnicare forgoing reimbursement of amounts reimbursable by Medicare in order to induce the purchase of pharmaceuticals and services by those facilities who have high numbers of Medicaid patients. Consequently, the Government and the States have suffered damages as a result.

## VIII.   CAUSES OF ACTION

### A.   Count I – False Claims Act (31 U.S.C. § 3729)

337.   *Qui tam* Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 336 of this Complaint.

338.   Based on the acts described above, Omnicare and/or the National Account Defendants knowingly violated one or more of the following:

(a)   knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(b)   knowingly makes, uses, or causes to be or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(c)   conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(d)    knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

339.    The United States Government, unaware of the falsity of these claims, records, and/or statements made by Omnicare and/or the National Account Defendants and in reliance on the accuracy thereof, paid Omnicare and/or the National Account Defendants for the claims.

340.    Due to the conduct of Omnicare and/or the National Account Defendants, the United States Government has suffered substantial monetary damages.

**B.    Count II – Retaliation (31 U.S.C. § 3730(h))**

341.    *Qui tam* Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 340 of this Complaint.

342.    In violation of title 31, section 3730(h) of the United States Code, Omnicare took negative employment actions against Relator in response to her investigation and initiation of this claim.

343.    As a result of Omnicare's conduct, Relator suffered negative employment consequences and has suffered damages, now and in the future.

**RELIEF**

344.    On behalf of the United States Government, *qui tam* Relator seeks to receive monetary damages equal to three times that suffered by the United States Government. In addition, Relator seeks to receive all civil penalties on behalf of the United States Government in accordance with the False Claims Act.

345.    *Qui tam* Relator seeks to receive on her own behalf, all monetary damages that she is entitled to for Omnicare's retaliatory conduct against her, including prejudgment interest. In addition, Relator seeks punitive damages on her own behalf.

346.   *Qui tam* Relator seeks to be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act.

347.   *Qui tam* Relator seeks to be awarded all costs and expenses for this action, including attorneys' fees and court costs.

348.   *Qui tam* Relator seeks pre-judgment interest at the highest rate allowed by law.

**PRAYER**

WHEREFORE, Relator prays that this Court enter judgment on behalf of the Relator and against Omnicare and the National Account Defendants for the following:

- Damages in the amount of three (3) time the actual damages suffered by the United States Government as a result of the conduct of Omnicare and the National Account Defendants;

- Civil penalties against Omnicare and the National Account Defendants up to $11,000 for each violation of 31 U.S.C. § 3729;

- The maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

- All costs and expenses of this litigation, including attorneys' fees and costs of court;

- Relator's individual damages pursuant to 31 U.S.C. § 3730(h);

- Pre-judgment interest at the highest rate allowed by law for the retaliatory conduct by Omnicare;

- Punitive damages to Relator for the retaliatory conduct by Omnicare; and

- All other relief on behalf of Relator or the United States Government to which they may be entitled and that the Court deems just and proper.

**C.     Count III – California False Claims Act (Cal. Gov't. Code § 12650 *et seq.*)**

349.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

350.     This is a *qui tam* action brought by Relator and the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650 *et seq*.

351.     Cal. Gov't Code § 12651(a) provides liability for any person who-

    (a)    knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof, a false claim for payment or approval;

    (b)    knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

    (c)    conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.

    (d)    is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

352.     In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code §§ 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code §14107.2.

353.     Omnicare and/or the National Account Defendants violated Cal. Gov't Code § 12651(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of California by their violation of federal and state laws, including Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf, & Inst. Code §14107.2, the Federal Anti-Kickback Act, as described herein.

354.     The State of California, by and through the California Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and

third party payers in connection therewith. Compliance with applicable Medicare, Medi-Cal and various other federal and state laws was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of California in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

355.    Had the State of California known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

356.    As a result of the violations of Cal. Gov't Code §12651(a) by Omnicare and/or the National Account Defendants, the State of California has been damaged.

357.    There are no bars to recovery under Cal. Gov't Code § 12652(d)(3), and, or in the alternative, Relator is an original sources as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of herself and the State of California.

358.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF CALIFORNIA:

- Three times the amount of actual damages that the State of California has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

83

- A civil penalty of up to $10,000 for each false claim that Omnicare and the National Account Defendants presented or caused to be presented to the State of California;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**D.   Count IV – Delaware False Claims and Reporting Act (6 Del. C. § 1201 *et seq.*)**

359.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

360.   This is a *qui tam* action brought by Relator and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title 6, Chapter 12 of the Delaware Code.

361.   6 Del. C. § 1201(a) provides liability for any person who-

(a)   knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

(b)   knowingly makes, uses, or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved; or

(c)   conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

362.    In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration (including kickbacks, bribes or rebate) directly or indirectly, overtly or covertly, in cash or in kind, in return for the furnishing of any medical care or services for which payment may be made in whole or in part under any public assistance program.

363.    Omnicare and/or the National Account Defendants violated 6 Del. C. § 1201(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Delaware by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Delaware Anti-Kickback Statute (31 Del. C. § 1005), as described herein.

364.    The State of Delaware, by and through the Delaware Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

365.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Delaware in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

366.    Had the State of Delaware known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

367.    As a result of the violations of Omnicare and/or the National Account Defendants of 6 Del. C. § 1201(a), the State of Delaware has been damaged.

368.    There are no bars to recovery under 6 Del. C. § 1206(c) and, or in the alternative, Relator is an original source as defined therein.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of herself and the State of Delaware.

369.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF DELAWARE:

- Three times the amount of actual damages that the State of Delaware has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Delaware;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to 6 Del. C. § 1205, and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**E.      Count V – District of Columbia Procurement Reform Amendment Act (D.C. Code § 2-308.13 *et seq*.)**

370.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

371.   This is a *qui tam* action brought by Relator and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.13 *et seq.*

372.   D.C. Code § 2-308.14(a) provides liability for any person who:

(a)   knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

(b)   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

(c)   conspires to defraud the District by getting a false claim allowed or paid by the District;

(d)   is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

373.   Omnicare and/or the National Account Defendants violated D.C. Code § 2-308.14(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the District of Columbia by their violation of federal and state laws, including the Federal Anti-Kickback Act and the District of Columbia Anti-Kickback Statute (D.C. Code § 4-802), as described herein.

374.   The District of Columbia, by and through the District of Columbia Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

375.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of

87

payment of claims submitted to the District of Columbia in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

376.     Had the District of Columbia known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

377.     As a result of the violations of Omnicare and/or the National Account Defendants of D.C. Code § 2-308.14(a), the District of Columbia has been damaged.

378.     There are no bars to recovery under D.C. Code § 2-308.15(c)(2) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to D.C. Code § 2-308.15(b) on behalf of herself and the District of Columbia.

379.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the DISTRICT OF COLUMBIA:

- Three times the amount of actual damages that the District of Columbia has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the District of Columbia;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to D.C. Code § 2-308.15(f) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**F.     Count VI – Florida False Claims Act (Fla. Stat. § 68.081 *et seq.*)**

380.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

381.    This is a *qui tam* action brought by Relator and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

382.    Fla. Stat. § 68.082(2) provides liability for any person who-

(a)     knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c)     conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid.

383.    Omnicare and the skilled nursing facilities designated as National Accounts violated Fla. Stat. § 68.082(2) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Florida by their violation of federal and state laws, including: the Federal Anti-Kickback Act and the Florida Anti-Kickback Statute (Fla. Stat. § 409.920), as described herein.

384.    The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

385.    Compliance with applicable Medicare, Medicaid and various other federal and state laws was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Florida in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

386.    Had the State of Florida known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

387.    As a result of the violations of Omnicare and/or the National Account Defendants of Fla. Stat. § 68.082(2), the State of Florida has been damaged.

388.    There are no bars to recovery under Fla. Stat. § 68.087(3) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of herself and the State of Florida.

389.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF FLORIDA:

- Three times the amount of actual damages that the State of Florida has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Florida;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**G.    Count VII – Georgia State False Medicaid Claims Act (Ga. Code. Ann. § 49-4-168 *et seq.*)**

390.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

391.    This is a *qui tam* action brought by Relator and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code. Ann. § 49-4-168 *et seq.*

392.    Ga. Code. Ann. § 49-4-168.1(a) provides liability for any person who:

(a)    knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

> (b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;
>
> (c)     conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid.

393.     Omnicare and/or the National Account Defendants violated Ga. Code. Ann. § 49-4-168.1 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia by their violation of federal and state laws, including the Federal Anti-Kickback Act, as described herein.

394.     The State of Georgia, by and through the Georgia Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

395.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Georgia in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

396.     Had the State of Georgia known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

397.     As a result of the violations of Omnicare and/or the National Account Defendants of Ga. Code. Ann. § 49-4-168.1, the State of Georgia has been damaged.

398.     There are no bars to recovery under Ga. Code Ann. § 49-4-168.2(j)(2) and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with

direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ga. Code Ann. § 4-4-168.2(b) on behalf of herself and the State of Georgia.

399.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF GEORGIA:

- Three times the amount of actual damages that the State of Georgia has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Georgia;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Ga. Code. Ann. § 49-4-168.2(i)(2) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

### H.    Count VIII – Hawaii False Claims Act (Haw. Rev. Stat. § 661-21 *et seq.*)

400.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

401.    This is a *qui tam* action brought by Relator and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

402.    Haw. Rev. Stat. § 661-21(a) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(c)    conspires to defraud the state by getting a false or fraudulent claim allowed or paid; or

(d)    is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

403.    Omnicare and/or the National Account Defendants violated Haw. Rev. Stat. § 661-21(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Hawaii by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Hawaii Anti-Kickback Statute (Haw. Rev. Stat. § 346-43.5), as described herein.

404.    The State of Hawaii, by and through the Hawaii Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

405.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of

94

payment of claims submitted to the State of Hawaii in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

406.    Had the State of Hawaii known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

407.    As a result of the violations of Omnicare and/or the National Account Defendants of Haw. Rev. Stat. § 661-21(a) the State of Hawaii has been damaged.

408.    There are no bars to recovery under Haw. Rev. Stat. § 661-28 and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of herself and the State of Hawaii.

409.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF HAWAII:

- Three times the amount of actual damages that the State of Hawaii has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Hawaii;

- Prejudgment interest; and

- All costs incurred in bringing this action.

TO RELATOR:

- The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

## I.  Count IX – Illinois Whistleblower Reward and Protection Act (740 ILCS *et seq.*)

410.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

411.    This is a *qui tam* action brought by Relator and the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq.*

412.    740 ILCS 175/3(a) provides liability for any person who:

    (a)    knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

    (b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

    (c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

413.    In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for

96

furnishing any item or service for which payment may be made in whole or in part under the Illinois Medicaid program.

414.    Omnicare and/or the National Account Defendants violated 740 ILCS 175/3(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Illinois by their violation of federal and state laws, including the Illinois Anti-Kickback Statute 305 ILCS 5/8A-3(b) and the Federal Anti-Kickback Act, as described herein.

415.    The State of Illinois, by and through the Illinois Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

416.    Compliance with applicable Medicare, Medicaid and various other federal and state laws was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Illinois in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

417.    Had the State of Illinois known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

418.    As a result of the violations of Omnicare and/or the National Account Defendants of 740 ILCS 175/3(a), the State of Illinois has been damaged.

419.    There are no bars to recovery under 740 ILCS 175/4(e)(4), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with

direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 740 ILCS 175/4(b) on behalf of herself and the State of Illinois.

420.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF ILLINOIS:

- Three times the amount of actual damages that the State of Illinois has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Illinois;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**J.      Count X – Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-1 *et seq.*)**

421.     Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

422.   This is a *qui tam* action brought by Relator and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5-1 *et seq*.

423.   Ind. Code § 5-11-5.5-2 provides liability for any person who:

(b)   Knowingly or intentionally:

(1)   presents a false claim to the state for payment or approval;

(2)   makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

(3)   with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

(4)   with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

(5)   receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

(6)   makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

(7)   causes or induces another person to perform an act described in subdivisions (1) through (6).

424.   Omnicare and/or the National Account Defendants violated Ind. Code § 5-11-5.5-2 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Indiana Anti-Kickback Statute (Ind. Code § 12-15-24-2), as described herein.

425.   The State of Indiana, by and through the Indiana Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and

third party payers in connection therewith.

426.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Indiana in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

427.    Had the State of Indiana known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

428.    As a result of the violations of Omnicare and/or the National Account Defendants of Ind. Code § 5-11-5.5-2 the State of Indiana has been damaged.

429.    There are no bars to recovery under Ind. Code § 5-11-5.5-7(f) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Ind. Code § 5-11-5.5-4 on behalf of herself and the State of Indiana.

430.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF INDIANA:

- Three times the amount of actual damages that the State of Indiana has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Indiana;

- Prejudgment interest; and

- All costs incurred in bringing this action.

TO RELATOR:

- The maximum amount allowed pursuant to Ind. Code § 5-11-5.5-6 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

## K.   Count XI – Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:437.1 *et seq.*)

431.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

432.   This is a *qui tam* action brought by Relator and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:437.1 *et seq.*

433.   La. Rev. Stat. Ann. § 46:438.3 provides-

(a)   No person shall knowingly present or cause to be presented a false or fraudulent claim;

(b)   No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds; and

(c)   No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

434.     In addition, La. Rev. Stat. Ann. § 46:438.2(A) prohibits the solicitation, receipt,

offering or payment of any financial inducements, including kickbacks, bribes, rebates, etc.,

directly or indirectly, overtly or covertly, in cash or in kind, for furnishing health care goods or

services paid for in whole or in part by the Louisiana medical assistance programs.

435.     Omnicare and/or the National Account Defendants violated La. Rev. Stat. Ann. §

46:438.3 and knowingly caused hundreds of thousands of false claims to be made, used and

presented to the State of Louisiana by their violation of federal and state laws, including the

Federal Anti-Kickback Act and the Louisiana Anti-Kickback Statute (La. Rev. Stat. Ann. §

46:438.2(A)), as described herein.

436.     The State of Louisiana, by and through the Louisiana Medicaid program and other

state health care programs, and unaware of the fraudulent and illegal practices of Omnicare

and/or the National Account Defendants, paid the claims submitted by health care providers and

third party payers in connection therewith.

437.     Compliance with applicable Medicare, Medicaid and the various other federal and

state laws cited herein was an implied, and upon information and belief, an express condition of

payment of claims submitted to the State of Louisiana in connection with the fraudulent and

illegal practices of Omnicare and/or the National Account Defendants.

438.     Had the State of Louisiana known that Omnicare and/or the National Account

Defendants were violating the federal and state laws cited herein, it would not have paid the

claims submitted by health care providers and third party payers in connection with the

fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

439.     As a result of the violations of Omnicare and/or the National Account Defendants

of La. Rev. Stat. Ann. § 46:438.3 the State of Louisiana has been damaged.

440.   There are no bars to recovery under La. Rev. Stat. Ann. § 46:439.1(E) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. § 46.439.1(A) on behalf of herself and the State of Louisiana.

441.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF LOUISIANA:

- Three times the amount of actual damages that the State of Louisiana has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for nursing facilities designated as National Account Defendants caused to be presented to the State of Louisiana;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to La. Rev. Stat. § 46:439.4(A) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorney's fees and costs; and

- Such further relief as this Court deems equitable and just.

**L.     Count XII – Massachusetts Claims Act (Mass. Gen. Laws Ann. 12 § 5A *et seq.*)**

442.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

443.    This is a *qui tam* action brought by Relator and the Commonwealth of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. 12 § 5A *et seq.*

444.    Mass. Gen. Laws Ann. 12 § 5B provides liability for any person who:

(a)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

(c)     conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(d)     is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

445.    In addition, Mass. Gen. Laws Ann. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or overtly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Massachusetts Medicaid program.

446.    Omnicare and/or the National Account Defendants violated Mass. Gen. Laws Ann. 12 § 5B and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Massachusetts by their violation of federal and state laws,

including the Federal Anti-Kickback Act and the Massachusetts Anti-Kickback Statute (Mass. Gen. Laws Ann. 118E §41), as described herein.

447.    The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

448.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

449.    Had the Commonwealth of Massachusetts known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

450.    As a result of the violations of Omnicare and/or the National Account Defendants of Mass. Gen. Laws Ann. 12 § 5B, the Commonwealth of Massachusetts has been damaged.

451.    There are no bars to recovery under Mass. Gen. Laws Ann. 12 § 5G(3) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. 12 § 5C(2) on behalf of herself and the Commonwealth of Massachusetts.

452.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the COMMONWEALTH OF MASSACHUSETTS:

- Three times the amount of actual damages that the Commonwealth of Massachusetts has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the Commonwealth of Massachusetts;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Mass. Gen. Laws Ann.12, §5F and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**M.   Count XIII – Michigan Medicaid False Claims Act (Mich. Comp. Laws § 400.601 *et seq.*)**

453.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

454.     This is a *qui tam* action brought by Relator and the State of Michigan to recover treble damages and civil penalties under the Michigan Medicaid False Claims Act, Mich. Comp. Laws § 400.601 *et seq.*

455.     Mich. Comp. Laws §§ 400.603 to 400.607 provides liability for a person who:

(a)     knowingly makes or causes to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit;

(b)     knowingly makes or presents or causes to be made or presented to an employee or officer of this state claim under Medicaid;

(c)     conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim.

456.     Omnicare and/or the National Account Defendants violated Mich. Comp. Laws §§ 400.603 to 400.607 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Michigan Anti-Kickback Statute (Mich. Comp. Laws § 400.604), as described herein.

457.     The State of Michigan, by and through the Michigan Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

458.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Michigan in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

459.    Had the State of Michigan known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

460.    As a result of the violations of Omnicare and/or the National Account Defendants of Mich. Comp. Laws §§ 400.603 to 400.607 the State of Michigan has been damaged.

461.    There are no bars to recovery under Mich. Comp. Laws § 400.610(13) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mich. Comp. Laws § 400.610a on behalf of herself and the State of Michigan.

462.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF MICHIGAN:

- Three times the amount of actual damages that the State of Michigan has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty equal to the full amount received for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Michigan;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To Relator:

- The maximum amount allowed pursuant to Mich. Comp. Laws § 400.610a and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**N.    Count XIV – Montana False Claims Act (Mont. Code Ann. § 17-8-401 *et seq.*)**

463.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

464.    This is a *qui tam* action brought by Relator and the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*

465.    Mont. Code Ann. § 17-8-403 provides liability for any person causing damages in excess of $ 500 to a governmental entity for any of the following acts:

(a)    knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

(b)    knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

(c)    conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity.

466.    Omnicare and/or the National Account Defendants violated Mont. Code Ann. § 17-8-403 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Montana by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Montana Anti-Kickback Statute (Mont. Code Ann § 45-6-313), as described herein.

467.     The State of Montana, by and through the Montana Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants paid the claims submitted by health care providers and third party payers in connection therewith.

468.     Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Montana in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

469.     Had the State of Montana known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

470.     As a result of the violations of Omnicare and/or the National Account Defendants of Mont. Code Ann. § 17-8-403 the State of Montana has been damaged.

471.     There are no bars to recovery under Mont. Code Ann. § 17-8-403(5)(c) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mont. Code Ann. § 17-8-406 on behalf of herself and the State of Montana.

472.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Montana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF MONTANA:

- Three times the amount of actual damages that the State of Montana sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty pursuant Mont. Code Ann. § 17-8-410 to for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Montana

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Mont. Code Ann. § 17-8-410 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**O.     Count XV – Nevada False Claims Act (N.R.S. § 357.010 *et seq.*)**

473.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

474.    This is a *qui tam* action brought by Relator and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010 *et seq.*

475.    N.R.S. § 357.040(1) provides liability for any person who:

(a)    knowingly presents or causes to be presented a false claim for payment or approval;

(b)    knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

(c)    conspires to defraud by obtaining allowance or payment of a false claim;

(d)     is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the state or political subdivision within a reasonable time.

476.    In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

477.    Omnicare and/or the National Account Defendants violated N.R.S. § 357.040(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada by their violation of federal and state laws, including: the Federal Anti-Kickback Act and the Nevada Anti-Kickback Statute (N.R.S. § 422.560), as described herein.

478.    The State of Nevada, by and through the Nevada Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

479.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Nevada in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

480.    Had the State of Nevada known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

481.    As a result of the violations of Omnicare and/or the National Account Defendants of N.R.S. § 357.040(1), the State of Nevada has been damaged.

482.   There are no bars to recovery under N.R.S. § 357.100 and, or in the alternative, Relator is an original source as defined therein.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.R.S. § 357.080 on behalf of herself and the State of Nevada.

483.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF NEVADA:

- Three times the amount of actual damages that the State of Nevada has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Nevada;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.R.S. § 357.210 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**P.   Count XVI – New Hampshire False Claims Act (N.H. Rev. Stat. Ann. § 167:61 *et seq.*)**

484.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

485.   This is a *qui tam* action brought by Relator and the State of New Hampshire to recover treble damages and civil penalties under the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. § 167:61 *et seq*.

486.   N.H. Rev. Stat. Ann. § 167:61-b(I) provides liability for any person who:

    (a)    knowingly presents, or causes to be presented, to an officer or employee of the department, a false or fraudulent claim for payment or approval;

    (b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the department;

    (c)    conspires to defraud the department by getting a false or fraudulent claim allowed or paid.

487.   Omnicare and/or the National Account Defendants violated N.H. Rev. Stat. Ann. § 167:61-b(I) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Hampshire by their violation of federal and state laws, including the Federal Anti-Kickback Act, as described herein.

488.   The State of New Hampshire, by and through the New Hampshire Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

489.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New Hampshire in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

490.   Had the State of New Hampshire known that Omnicare and/or the National Account Defendant were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

491.   As a result of the violations of Omnicare and/or the National Account Defendants of N.H. Rev. Stat. Ann. § 167:61-b(I), the State of New Hampshire has been damaged.

492.   There are no bars to recovery under N.H. Rev. Stat. Ann. § 167:61-e(III)(d) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.H. Rev. Stat. Ann. § 167:61-c(II)(a) on behalf of herself and the State of New Hampshire.

493.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Hampshire operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF NEW HAMPSHIRE:

- Three times the amount of actual damages that the State of New Hampshire has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of New Hampshire;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To Relator:

- The maximum amount allowed pursuant to N.H. Rev. Stat. Ann. § 167:61-e and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**Q.    Count XVII – New Jersey False Claims Act (N.J. Stat. Ann. §§ 2A:32-C1–2A:32-C18)**

494.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

495.    This is a *qui tam* action brought by Relator and the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32-C1–2A:32-C18.

496.    N.J. Stat. Ann. § 2A:32C-3 provides liability for any person who:

(a)    knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

497.    Omnicare and/or the National Account Defendants violated N.J. Stat. Ann. § 2A:32C-3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Jersey by their violation of federal and state laws, including the Federal Anti-Kickback Act, as described herein.

498.    The State of New Jersey, by and through the New Jersey Medicaid program and

116

other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

499.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New Jersey in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

500.    Had the State of New Jersey known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

501.    As a result of the violations of Omnicare and/or the National Account Defendants of N.J. Stat. Ann. § 2A:32C-3, the State of New Jersey has been damaged.

502.    There are no bars to recovery under N.J. Stat. Ann. § 2A:32C-9(c), and, or in the alternative, Relator is an original sources as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.J. Stat. Ann. § 2A:32C-5(b) on behalf of herself and the State of New Jersey.

503.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF NEW JERSEY:

- Three times the amount of actual damages that the State of New Jersey has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of New Jersey;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.J. Stat. Ann. § 2A:32C-37 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**R.      Count XVIII – New Mexico Medicaid False Claims Act (N.M. Stat. Ann. § 27-14-1 *et seq.*)**

504.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

505.   This is a *qui tam* action brought by Relator and the State of New Mexico  to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.*

506.   N.M. Stat. Ann. § 27-14-4 provides liability for any person who:

   (a)      presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent;

   (b)      presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that the person receiving a Medicaid

benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program;

(c)    makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

(d)    conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

507.    Omnicare and/or the National Account Defendants violated N.M. Stat. Ann. § 27-14-4 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Mexico by their violation of federal and state laws, including the Federal Anti-Kickback Act and the New Mexico Anti-Kickback Statute (N.M. Stat Ann. § 30-44-7), as described herein.

508.    The State of New Mexico, by and through the New Mexico Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

509.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New Mexico in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

510.    Had the State of New Mexico known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

119

511.   As a result of the violations of Omnicare and/or the National Account Defendants of N.M. Stat. Ann. § 27-14-4, the State of New Mexico has been damaged.

512.   There are no bars to recovery under N.M. Stat. Ann. § 27-14-10(C), and, or in the alternative, Relator is an original source as defined therein.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. § 27-14-7(B) on behalf of herself and the State of New Mexico.

513.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF NEW MEXICO:

- Three times the amount of actual damages that the State of New Mexico has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of New Mexico;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.M. Stat. Ann. § 27-14-9 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

■    Such further relief as this Court deems equitable and just.

**S.    Count XIX – New York False Claims Act (N.Y. State Fin. Law § 187 *et seq.*)**

514.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

515.    This is a *qui tam* action brought by Relator and the State of New York to recover treble damages and civil penalties under the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq.*

516.    N.Y. State Fin. Law § 189 provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to any employee, officer or agent of the state or a local government, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government;

(c)    conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid.

517.    Omnicare and the skilled nursing facilities designated as National Accounts violated N.Y. State Fin. Law § 189 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New York by their violation of federal and state laws, including the Federal Anti-Kickback Act, as described herein.

518.    The State of New York, by and through the New York Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

519.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of New York in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

520.    Had the State of New York known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

521.    As a result of the violations of Omnicare and/or the National Account Defendants of N.Y. State Fin. Law § 189, the State of New York has been damaged.

522.    There are no bars to recovery under N.Y. Fin. Law § 190(9) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.Y. State Fin. Law § 190(2) on behalf of herself and the State of New York.

523.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF NEW YORK:

- Three times the amount of actual damages that the State of New York has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

122

- A civil penalty of not less than $6,000 and not more than $12,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of New York;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.Y. State Fin. Law § 190(6) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**T.  Count XX – Oklahoma Medicaid False Claims Act (Okla. Stat. Ann. § 5053.1 *et seq.*)**

524.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

525.    This is a *qui tam* action brought by Relator and the State of Oklahoma to recover treble damages and civil penalties under 63 Okla. Stat. Ann. § 5053.1 *et seq.*

526.    63 Okla. Stat. Ann. § 5053.1(B) provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(c)    conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

527.    Omnicare and/or the National Account Defendants violated 63 Okla. Stat. Ann. § 5053.1(B) and knowingly caused hundreds of thousands of false claims to be made, used and

123

presented to the State of Oklahoma by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Oklahoma Anti-Kickback Statute (56 Okla. Stat. Ann. § 1005, as described herein.

528.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

529.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Oklahoma in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

530.    Had the State of Oklahoma known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

531.    As a result of the violations of Omnicare and/or the National Account Defendants of 63 Okla. Stat. Ann. § 5053.1(B), the State of Oklahoma has been damaged.

532.    There are no bars to recovery under 63 Okla. Stat. Ann. § 5053.5 and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 63 Okla. Stat. Ann. § 5053.2 on behalf of herself and the State of Oklahoma.

533.  This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF OKLAHOMA:

- Three times the amount of actual damages that the State of Oklahoma has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Oklahoma;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to 63 Okla. Stat. Ann. § 5053.4 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**U.     Count XXI – Rhode Island State False Claims Act (R.I. Gen. Laws § 9-1.1-1 et seq.)**

534.  Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

535.    This is a *qui tam* action brought by Relator and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*

536.    R.I. Gen. Laws § 9-1.1-3 provides liability for any person who:

    (a)    knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

       (b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

    (c)    conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

537.    Omnicare and/or the National Account Defendants violated R.I. Gen. Laws § 9-1.1-3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Rhode Island by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Rhode Island Anti-Kickback Statutes (R.I. Gen Laws 5-48.1-3 and 40-8.2-3), as described herein.

538.    The State of Rhode Island, by and through the Rhode Island Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

539.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Rhode Island in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

540.    Had the State of Rhode Island known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

541.    As a result of the violations of Omnicare and/or the National Account Defendants of R.I. Gen. Laws § 9-1.1-3, the State of Rhode Island has been damaged.

542.    There are no bars to recovery under R.I. Gen. Laws § 9-1.1-4(e)(3), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to R.I. § 9-1.1-4(b) on behalf of herself and the State of Rhode Island.

543.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the as National Account Defendants:

To the STATE OF RHODE ISLAND:

- Three times the amount of actual damages that the State of Rhode Island has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Rhode Island;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to R.I. Gen. Laws § 9-1.1-4(d) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**V.    Count XXII – Tennessee Medicaid False Claims Act (Tenn. Code  Ann. § 71-5-181 *et seq.*)**

544.    Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

545.    This is a *qui tam* action brought by Relator and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

546.    Tenn. Code Ann. § 71-5-182(a)(1) provides liability for any person who-

(a)    presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

(b)    makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false; or

(c)    conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

547.    Omnicare and/or the National Account Defendants violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee by their violation of federal and state laws, including: the Federal Anti-Kickback Act and the Tennessee Anti-Kickback Statute (Tenn. Code Ann. § 71-5-182), as described herein.

128

548.    The violations of Omnicare and/or the National Account Defendants of § 71-5-182 and various other federal and state laws caused false claims to be submitted for payment to the State of Tennessee.

549.    The State of Tennessee, by and through the Tennessee Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

550.    Compliance with applicable Medicare, Medicaid, and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of payment of claims submitted to the State of Tennessee in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

551.    Had the State of Tennessee known that Omnicare and/or the National Account Defendants violated the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

552.    As a result of the violations of Omnicare and/or the National Account Defendants of Tenn. Code Ann. § 71-5-182(a)(1), the State of Tennessee has been damaged.

553.    There are no bars to recovery under Tenn. Code Ann. § 71-5-183(d)(2) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(1) on behalf of herself and the State of Tennessee.

554.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF TENNESSEE:

- Three times the amount of actual damages that the State of Tennessee has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the State of Tennessee;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(d) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**W.     Count XXIII – Texas False Claims Act (V.T.C.A. Hum. Res. Code § 36.001 *et seq.*)**

555.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

556.   This is a *qui tam* action brought by Relator and the State of Texas to recover double damages and civil penalties under Texas False Claims Act, V.T.C.A. Hum. Res. Code § 36.001 *et seq.*

557.   V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who:

(a)   knowingly makes causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid Program that is not authorized or that is greater than the benefit or payment that is authorized;

(b)   knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning . . . information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(c)   knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;

(d)   knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to this state under the Medicaid program; or

(e)   knowingly engages in conduct that constitutes a violation under V.T.C.A Hum. Res. Code § 32.039 (the Texas Anti-Kickback Statute).

558.   Omnicare and/or the National Account Defendants violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Texas Anti-Kickback Statute (V.T.CA Hum. Res. Code § 32.039), as described herein.

559.   The State of Texas, by and through the Texas Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of OOmnicare and/or

the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

560.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied and an express condition of payment of claims submitted to the State of Texas in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants

561.    Had the State of Texas known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

562.    As a result of the violations of Omnicare and/or the National Account Defendants of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged.

563.    There are no bars to recovery under V.T.C.A. Hum. Res. Code § 36.113(b), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of herself and the State of Texas.

564.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the STATE OF TEXAS:

- The amount of actual damages that the State of Texas has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- Three times the amount of actual damages that the State of Texas has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 as described in V.T.C.A. Hum. Res. Code Section 36.052(a)(3) for each false claim that Omnicare and the National Account Defendants caused to be presented to the state of Texas;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code Section 36.110, and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action; and

- An award of reasonable attorneys' fees and costs.

## X.  Count XXIV – Virginia Fraud Against Taxpayer Act (Va. Code Ann. § 8.01-216.1 *et seq.*)

565.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 348 of this Complaint.

566.   This is a *qui tam* action brought by Relator and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Fraud Against Taxpayer Act, Va. Code Ann. § 8.01-216.1 *et seq.*

567.   Va. Code Ann. § 8.01-216.3 provides liability for any person who-

(a)   Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth false or fraudulent claim for payment or approval;

(b)   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth;

(c)    Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid;

(d)    Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(e)    Authorizes to make or deliver a document certifying receipt of property used, or to be used by the Commonwealth, and intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(f)    Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

(g)    Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth.

568.    Omnicare and/or the National Account Defendants violated Va. Code Ann. § 8.01-216.3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Virginia by their violation of federal and state laws, including the Federal Anti-Kickback Act and the Virginia Anti-Kickback Statute (Va. Code Ann. § 32.1-315), as described herein.

569.    The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state health care programs, and unaware of the fraudulent and illegal practices of Omnicare and/or the National Account Defendants, paid the claims submitted by health care providers and third party payers in connection therewith.

570.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, an express condition of

134

payment of claims submitted to the Commonwealth of Virginia in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants.

571.    Had the Commonwealth of Virginia known that Omnicare and/or the National Account Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with the fraudulent and illegal practices of Omnicare and/or the National Account Defendants

572.    As a result of the violations of Omnicare and/or the National Account Defendants of Va. Code Ann. § 8.01-216.3, the Commonwealth of Virginia has been damaged.

573.    There are no bars to recovery under Va. Code Ann. § 8.01-216.8, and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Va. Code Ann. § 8.01-216.5 on behalf of herself and the Commonwealth of Virginia.

574.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare and the National Account Defendants:

To the COMMONWEALTH OF VIRGINIA:

- Three times the amount of actual damages that the Commonwealth of Virginia has sustained as a result of the fraudulent and illegal practices of Omnicare and the National Account Defendants;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the National Account Defendants caused to be presented to the Commonwealth of Virginia;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

### Y.   Count XXV – Common Fund Relief

575.   Relator realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 574 of this Complaint.

576.   The states possessing *qui tam* statutes have a regulatory scheme for rewarding Relator for coming forward, while those that have none will potentially receive a windfall with little or no investigation or commitment of time or resources to the recovery.  The Common Fund doctrine preserves the right of the litigant or counsel to an award from the Common Fund that has been generated.   The United States Supreme Court, and many other courts, have addressed this situation. *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980):

> Since the decisions in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettuss*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. [citations omitted].   The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough*, supra 105 U.S., at 532-537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees [citations omitted].   The doctrine rests upon the perception that persons who obtain the benefit of the lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense [citation omitted].   Jurisdiction over the fund involved in the litigation

allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefitted by this suit. [citations omitted].

*Accord*, *In re Smithkline Beckman Corp. Securities Litig.*, 751 F. Supp. 525, 531 (E.D. Pa. 1990).

A lengthy string of cases recognizes the Common Fund doctrine for situations like that in this case. *See The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation*, 31 Ind. L. Rev. 313, 337–38 (1998). Relator respectfully requests this Court to award her a percentage share from the Common Fund generated by her actions.

## IX. DEMAND FOR JURY TRIAL

577.    Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury.

Respectfully submitted,

Joel M. Androphy
State Bar No. 01254700
Sarah M. Frazier
State Bar No. 24027320
Kathryn E. Nelson
State Bar No. 24037166
Berg & Androphy
3704 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785
jandrophy@bafirm.com

Attorneys-in-Charge for Relator
Susan Ruscher

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 14, 2008 a true and correct copy of the above disclosure statement was forwarded via the United States Mail, certified, return receipt requested, by facsimile, by electronic mail, or by messenger to the United States Attorney's Office in Houston, Texas, the Department of Justice in Washington, D.C., and the Attorneys General of the Qui Tam States and the District of Columbia.

_____
Joel M. Androphy

138

## INDEX OF EXHIBITS

| Exhibit | Description | Date | Bates Label |
|---|---|---|---|
| 1 | E-mail to Tim Waters re: Premier Rehab – LA Pharmed IV | 10/22/2007 | SR000001 – SR000003 |
| 2 | E-mail to Nicole Mcleod re: Premier Rehab – LA Pharmed IV | 10/02/2007 | SR000004 – SR000005 |
| 3 | Pharmacy Services Agreement – Premier Rehab Hospital | 10/01/2007 | SR000006 – SR000013 |
| 4 | E-mail re: Belmont Parkside King of Prussia | 10/26/2007 | SR000014 – SR000016 |
| 5 | NeighborCare – King of Prussia Activity Log | | SR000017 – SR000018 |
| 6 | NeighborCare – King of Prussia Invoices & Payment History | | SR000019 – SR000020 |
| 7 | NeighborCare Pharmacy Services Agreement for Belmont & Parkside Geriatric Center | 11/2002 | SR000021 – SR000035 |
| 8 | Email re: 3230 Westwood Nursing | 12/06/2006 | SR000036 – SR000039 |
| 9 | E-mail re: Village of Pennwood | 12/18/2007 | SR000040 |
| 10 | E-mail from Jeff Stamps re: Approvals Needed for Termination | 03/13/2008 | SR000041 – SR000042 |
| 11 | E-mail from Doug Landy re: Approvals Needed for Terminations | 03/13/2008 | SR000043 |
| 12 | E-mail re: Approvals Needed for Termination / Village of Pennwood | 03/14/2008 | SR000044 – SR000046 |
| 13 | NeighborCare Pharmacy Services Agreement | | SR000047 – SR000065 |
| 14 | Omnicare Pharmacy Facility Instructions for Non-Covered Medications (Village of Pennwood) | 12/17/2007 | SR000066 |
| 15 | E-mail re: Kane Facilities - Pittsburgh | 02/28/2008 | SR000067 |
| 16 | Spreadsheet re: Kane Facilities | | SR000068 |
| 17 | E-mail from Jeff Schneider re: Kane Facility Balances | 04/10/2007 | SR000069 – SR000075 |
| 18 | E-mail re: Kane  - Status | 07/27/2006 | SR000076 |
| 19 | Kane Invoices – Facility #1 | | SR000077 |
| 20 | Kane Invoices – Facility #3 | | SR000078 |
| 21 | Kane Invoices – Facility #4 | | SR000079 |
| 22 | Omnicare / Kane Invoices – Facility #2 | | SR000080 – SR000081 |
| 23 | E-mail from Cathy Brumleve re: Kane Facilities / Pittsburgh | 09/08/2008 | SR000082 – SR000083 |
| 24 | Allegheny County Contract Log – Agreement Extension | 04/02/2004 | SR000084 |
| 25 | Agreement between Allegheny County and NeighborCare | 07/21/2004 | SR000085 – SR000105 |
| 26 | E-mail from Doug Ryan re: Kane Facilities / Pittsburgh | 09/21/2006 | SR000106 – SR000108 |

| Exhibit | Description | Date | Bates Label |
|---|---|---|---|
| 27 | E-mail from Bob Meyer re: Kane Facility Balances | 04/10/2007 | SR000109 – SR000114 |
| 28 | E-mail from Jeff Schneider re: Kane Facility Balances | 04/10/2007 | SR000115 – SR000121 |
| 29 | E-mail from Doug Ryan re: Kane Facility Balances | 04/10/2007 | SR000122 – SR000128 |
| 30 | E-mail from Bob Meyer re: Kane Facility Balances | 04/10/2007 | SR000129 – SR000135 |
| 31 | E-mail from Susan Ruscher re: Kane Facility Balances | 04/10/2007 | SR000136 – SR000142 |
| 32 | E-mail from Bob Meyer re: Kane Facility Balances | 04/10/2007 | SR000143 – SR000149 |
| 33 | E-mail from Susan Ruscher re: Kane Facility Balances | 04/10/2007 | SR000150 – SR000156 |
| 34 | E-mail from Bob Meyer re: Kane Facility Balances | 04/10/2007 | SR000157 – SR000163 |
| 35 | E-mail from Doug Ryan re: Kane Facility Balances | 04/10/2007 | SR000164 – SR000170 |
| 36 | E-mail from Jeff Schneider re: Kane Facility Balances | 05/17/2007 | SR000171 – SR000184 |
| 37 | Omnicare Pittsburgh Invoices: Facility #3232 | | SR000185 |
| 38 | Omnicare Pittsburgh Invoices: Facility #3233 | | SR000186 – SR000187 |
| 39 | Omnicare Pittsburgh Invoices: Facility #3234 | | SR000188 – SR000189 |
| 40 | Invoices: 940 HealthWest Rehab | | SR000190 – SR000191 |
| 41 | Omniview – List of National Accounts | | SR000192 – SR000203 |
| 42 | COMBINED OASIS Fac March08 Spreadsheet | 03/08 | SR000204 |
| 43 | Facility AR Aging Company Name Spreadsheet | 03/18/08 | SR000205 |
| 44 | COMBINED OASIS Facility June08 Spreadsheet | 06/08 | SR000206 – SR000208 |
| 45 | Facility AR Aging Company Name Spreadsheet | 06/17/08 | SR000209 |
| 46 | Vital Aging March08 Spreadsheet | 03/08 | SR000210 |
| 47 | Vital Aging Spreadsheet | | SR000211 |
| 48 | Facility AR Aging Company Name Spreadsheet | 01/22/08 | SR000212 |
| 49 | COMBINED OASIS Facility Jan08 Spreadsheet | 01/08 | SR000213 |
| 50 | Vital Aging Jan08 Spreadsheet | 01/08 | SR000214 |
| 51 | Master Omnicare Locations | 03/25/08 | SR000215- SR000219 |
| 52 | Five Star Reconciliation Spreadsheet | 07/29/08 | SR000220- SR000249 |
| 53 | LEGAL CHART -  LATEST Spreadsheet | 08/22/08 | SR000250- SR000256 |
| 54 | Vital Aging Aug08 Spreadsheet | 08/08 | SR000257 |
| 55 | Facility AR Aging Company Name Spreadsheet | 09/02/08 | SR000258 |

| Exhibit | Description | Date | Bates Label |
|---|---|---|---|
| 56 | Copy of COMBINED OASIS Facility Aug08 Spreadsheet | 08/08 | SR000259-SR000260 |
| 57 | Problem Accounts Spreadsheet | | SR000261 |
| 58 | COMBINED OASIS Facility Jan08 Spreadsheet | 01/08 | SR000262 |
| 59 | Facility AR Aging Company Name Spreadsheet | 01/22/08 | SR000263 |
| 60 | Vital Aging Jan08 Spreadsheet | 01/08 | SR000264 |
| 61 | COMBINED OASIS Facility June08 Spreadsheet | 06/08 | SR000265-SR000267 |
| 62 | Facility AR Aging Company Name Spreadsheet | 06/17/08 | SR000268 |
| 63 | Vital Aging Spreadsheet | | SR000269 |
| 64 | COMBINED OASIS Fac March08 Spreadsheet | 03/08 | SR000270 |
| 65 | Facility AR Aging Company Name Spreadsheet | 03/18/08 | SR000271 |
| 66 | Vital Aging March08 - Spreadsheet | 03/08 | SR000272 |
| 67 | Master Omnicare Locations Spreadsheet | 03/25/08 | SR000273-SR000277 |
| 68 | CA-DX Spreadsheet | | SR000278-SR000280 |
| 69 | CA-VITAL Spreadsheet | | SR000281 |
| 70 | NY-DX – Spreadsheet | | SR000282-SR000283 |
| 71 | OH-DX Spreadsheet | | SR000284 |
| 72 | OH-OASIS Spreadsheet | | SR000285 |
| 73 | Copy of Harold Sosna Balances through July 08 with Med B Spreadsheet | 07/08 | SR000286 |
| 74 | GoldenAge NO SC Spreadsheet | 09/09/08 | SR000287 |
| 75 | Harold Sosna Spreadsheet | 06/20/08 | SR000288 |
| 76 | Harold Sosna Balances through July 08 with Med B Spreadsheet | 07/08 | SR000289 |
| 77 | Harold Sosna Balances through June with Med B Spreadsheet | | SR000290 |
| 78 | IvyWoods Spreadsheet | 09/09/08 | SR000291 |
| 79 | KenwoodTerrace Spreadsheet | 09/09/08 | SR000292 |
| 80 | Livingston Spreadsheet | 09/09/08 | SR000293 |
| 81 | MaderiaHealth Spreadsheet | 09/09/08 | SR000294 |
| 82 | Southbrook Spreadsheet | 09/09/08 | SR000295 |
| 83 | State of Ohio Custody of Business Records – Euclid Health Care, Inc. and Initial Articles of Incorporation | 12/05/03 | SR000296-SR000299 |
| 84 | State of Ohio Custody of Business Records – Golden Health Care, Inc. and Initial Articles of Incorporation | 12/05/03 | SR000300-SR000303 |
| 85 | State of Ohio Custody of Business Records – Golden Health Care, Inc. Certificate of Merger | 12/05/03 | SR000304-SR000312 |
| 86 | State of Ohio Custody of Business Records – Huffman Health Care, Inc. Certificate of Merger | 12/26/03 | SR000313-SR000321 |
| 87 | State of Ohio Custody of Business Records – Huffman Health Care, Inc. and Initial Articles of Incorporation | 12/05/03 | SR000322-SR000325 |
| 88 | State of Ohio Custody of Business Records – Ivy Health Care, Inc. Certificate of Merger | 12/26/03 | SR000326-SR000334 |

| Exhibit | Description | Date | Bates Label |
|---|---|---|---|
| 89 | State of Ohio Custody of Business Records – Ivy Health Care, Inc. and Initial Articles of Incorporation | 12/05/03 | SR000335-SR000338 |
| 90 | State of Ohio Custody of Business Records – Kenwood Terrace Health Care Center, Inc. and Articles of Incorporation | 04/25/02 | SR000339-SR000341 |
| 91 | Omnicare Notice of Annual Meeting of Stockholders | 05/23/08 | SR000342-SR000399 |
| 92 | Cash Flow Data - Golden Health Care, Inc. dba Golden Age Care Center; Euclid Health Care, Inc. dba Hadeira Health Care Center; Ivy Health Care, Inc., dba Ivy Woods Care Center; Kenwood Terrace Health Care Center, Inc. bda Kenwood Terrace Cash; Huffman Health Care, Inc. dba Livingston Care Center; Southbrook Health Care Center, Inc. bda Southbrook Care Center | 09/09/08 | SR000400-SR000417 |
| 93 | Open Invoices – Livingston Care, Southbrook Care, Golden Age Reti, Ivy Woods, 2242 Madeira Health, 2239 Kenwood Terrace | 08/14/08 | SR000418-SR000423 |
| 94 | State of Ohio Custody of Business Records – Southbrook Health Care Center, Inc. and Articles of Incorporation | 05/02/02 | SR000424-SR000426 |
| 95 | State of Ohio Custody of Business Records – Seminole Realty Nursing Care, Inc. Certificate of Merger | 05/29/02 | SR000427-SR000435 |
| 96 | Omnicare Corporate Integrity Agreement | 10/30/06 | SR000436-SR000490 |
| 97 | Medicare Enrollment Application | | SR000491-SR000533 |
| 98 | Litigation & Termination Approval/Management Review | | SR000534-SR000535 |
| 99 | Southbrook Invoice 2-28-06 to 08-31-08 | 09/09/08 | SR000536-SR000537 |
| 100 | Ivy Woods Invoices 9-30-06 to 08-31-08 | 09/09/08 | SR000538 |
| 101 | Golden Age Reti Invoices 10-31-06 to 08-31-08 | 09/09/08 | SR000539 |
| 102 | 2239 Kenwood Terrace Invoices 07-31-06 to 08-31-08 | 09/09/08 | SR000540 |
| 103 | 2242 Madeira Health Invoices 04-30-06 to 08-31-08 | 09/09/08 | SR000541 |
| 104 | Deershadow Ln Property Information | | SR000542 |
| 105 | Hickory Hollow Property Information | | SR000543 |