UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SUSAN RUSCHER, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:08-CV-3396 |
| § | |
| OMNICARE INC, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Relator Susan Ruscher has asked the Court to reconsider its June 12, 2014, Memorandum and Order granting Defendants' Motion to Dismiss her claims under the Reverse False Claims Act, 31 U.S.C. § 3729(a)(7). Relator argues that the Court erred in dismissing her § 3729(a)(7) claims based on alleged violations of Omnicare's Corporate Integrity Agreement because those claims are legally distinct from the claims at issue in *United States v. HCA Health Servs. of Oklahoma, Inc.*, No. 3:09-CV-0992, 2011 WL 4590791 (N.D. Tex. Sept. 30, 2011), and similar cases. For the reasons set forth below, Relator's Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

   **A.  Statutory and Procedural Background**

The so-called Reverse False Claims Act, § 3729(a)(7), prohibits the use of false records or statements to conceal an obligation to pay money to the government. The statute subjects to liability anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the

Government." *See* 31 U.S.C. 3729(a)(7) (version operative when complaint was filed).[1]

In her complaint, Relator made two types of § 3729(a)(7) claims: those premised upon false cost reports and those based on violations of Omnicare's Corporate Integrity Agreement. In its June 12, 2014, Memorandum and Order, this Court dismissed all of the § 3729(a)(7) claims. Mem. & Order June 12, 2014, ECF No. 147. Because the briefing up to that point had focused on the claims premised on false cost reports, the Court also invited Relator to file a motion pursuant to Federal Rule of Civil Procedure 59 if she believed that the Corporate Integrity Agreement claims differed in a legally relevant manner from the false cost report claims. *Id.* at 51. This motion followed.

### B. Factual Background[2]

In 2006, Omnicare entered into a $49.5 million settlement with the Office of the Inspector General (OIG) for the Department of Health and Human Services. *See* Third Am. Compl. (TAC), ECF. No. 97 at 105, ¶ 232. As part of the settlement, Omnicare signed a Corporate Integrity Agreement (CIA) that required it to notify the Government of matters that a reasonable person would consider a probable violation of criminal, civil or administrative laws related to federal health care programs. *Id.* at ¶ 335. Omnicare was also required to establish and maintain a disclosure program that enabled individuals to report possible violations of criminal, civil or administrative laws, including any violations of Medicare and Medicaid laws. *Id.* at ¶ 334. The disclosure program was required to emphasize to employees a non-retribution and non-retaliation policy, and to have an anonymous reporting mechanism. *Id*. The CIA also requires Omnicare to certify on an annual basis that, to the best of its knowledge, it is in compliance with

---

[1] Section 3729(a)(7) has since been recodified as § 3729(a)(1)(G).
[2] For the purposes of a motion to dismiss, the Court takes Relator's factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

all requirements of the CIA. *Id.* at ¶ 336.

Under the agreement, Omnicare's failure to comply with CIA obligations "may lead to the imposition of" monetary penalties. *Id.* at Ex. 96, Omnicare Corporate Integrity Agreement p. 25. For instance, a Stipulated Penalty of $2,500 "shall begin to accrue" for each day Omnicare fails to establish and implement compliance measures specified in the CIA. *Id.* at 25. A Stipulated Penalty of $5,000 applies "for each false certification submitted by or on behalf of Omnicare." *Id.* Similar penalties are specified for other violations of the CIA.

The CIA also specifies a process for collecting the penalties. "Upon a finding that Omnicare has failed to comply with any of the obligations [triggering Stipulated Penalties] … and after determining that Stipulated Penalties are appropriate, OIG shall notify Omnicare" of the breach and of "OIG's exercise of its contractual right to demand payment of the stipulated penalties." *Id.* at 27. Within 10 days of receiving a Demand Letter, Omnicare must either cure the breach (and pay the Stipulated Penalties), or request a hearing before an ALJ to dispute the determination of noncompliance. *Id.* In a hearing before an ALJ, "the only issues … shall be: (a) whether Omnicare was in full and timely compliance with the obligations of this CIA for which OIG demands payment; and (b) the period of noncompliance." *Id.* at 29.

After 2006, Omnicare did not report the ongoing, illegal kickback scheme and certified to OIG that it was in compliance with the CIA. TAC at 106-07, ¶ 337. In fact, at that time, it was violating Medicare and Medicaid laws with the kickback scheme. *Id.* In addition, Omnicare did not report Relator's allegations of illegal fraud and activities to OIG, as was required by the CIA. *Id.* As a result, the government never sought to collect Stipulated Penalties. *Id.*

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678. Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland*

4

*Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). A court may consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that a party "alleging fraud or mistake . . . state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s particularity requirement "has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Complaints alleging a violation of the False Claims Act come within the auspices of Rule 9(b). *Id.*

The traditional understanding of the rule is that, "[t]o plead fraud with particularity a plaintiff must include the 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)), abrogated on other grounds by *United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928 (2009). But the Fifth Circuit has held that "the 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)," and that imposing such requirements is more sensible in the context of common law and securities fraud claims, which require showing reliance and damages. *Grubbs*,

565 F.3d at 189-90. Because the False Claims Act demands a different ultimate showing, the court of appeals has fashioned "a workable construction of Rule 9(b)," one designed to "effectuate[]" the Rule's purpose "without stymieing legitimate efforts to expose fraud." *Id.* at 190. Thus, "to plead with particularity the circumstances constituting fraud for a False Claims Act § 3729(a)(1) claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* As for the False Claims Act's mens rea requirement, that "may be alleged generally." Fed. R. Civ. P. 9(b).

### III. RELATOR'S 59(e) MOTION

Relator's Third Amended Complaint raised two types of claims under the Reverse False Claims Act: 1) claims based on false cost reports submitted to Medicare and Medicaid for reimbursement, and 2) claims based on violations of the Corporate Integrity Agreement (CIA). In its prior order, this Court dismissed the false cost report claims because they were "two sides of the same coin" with the § 3729(a)(2) claims. Mem. & Order June 12, 2014, ECF No. 147, at 49; *see also United States ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505 (E.D. Pa. 2010); *United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313 (S.D.N.Y. 2004); *United States v. HCA Health Servs. of Oklahoma, Inc.*, No. 3:09-CV-0992, 2011 WL 4590791, at *8 (N.D. Tex. Sept. 30, 2011). Because the parties had not briefed the CIA-based claims, however, the Court invited Relator to bring a Rule 59 motion if those claims were legally distinct from *Thomas*, *Taylor* and *HCA*.

Relator now argues that her CIA-based claims are distinct from the false cost claims because they seek to recover different funds. Specifically, Relator alleges that Omnicare violated

§ 3729(a)(7) when it falsely certified its compliance with the Corporate Integrity Agreement (CIA). By those false certifications, Omnicare allegedly avoided paying Stipulated Penalties to the government. The Court agrees that this claim is distinct from the previously-dismissed § 3729(a)(7) claims based on false cost reports because it concerns a different set of funds, the Stipulated Penalties.

Defendants object that Relator's Motion advances a new argument raised for the first time on a Rule 59 motion, and thus the court should deem the argument waived. However, the cases Defendants cite for this proposition all concern Rule 59 motions filed *after a trial*. *See Kohler v. England*, 470 F.3d 1104, 1114 (5th Cir. 2006); *WesternGeco LLC v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 740 (S.D. Tex. 2013). Where an argument is not raised until after summary judgment or trial, one might well say that the district court lacked "an opportunity to rule on it." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005). Here, in contrast, the Court specifically invited additional briefing on this issue well in advance of trial. *See* Mem. & Order, June 12, 2014, ECF No. 147 at 51. Because the Court has had a full opportunity to consider and rule on Relator's argument, it will not deem Relator to have waived it.

  A. <u>Challenges sounding in Rule 12(b)(6)</u>

In order to state a claim under the Reverse False Claims Act, § 3729(a)(7), Relator must prove that Defendants 1) knowingly 2) made, used or caused to be made or used, 3) a false record or statement 4) to conceal, avoid or decrease 5) an obligation to pay or transmit money or property to the Government. *See* 31 U.S.C. 3729(a)(7). Relator's theory is that the Corporate Integrity Agreement was a contract between the Government and Omnicare. Omnicare allegedly breached that contract by failing to notify the Government of Ms. Ruscher's allegations of illegal

7

activities and other probable violations of applicable laws. By falsely representing to the government that it *was* in compliance with the CIA, Omnicare avoided the Stipulated Penalties that it would have otherwise faced for breaching the CIA.

There is broad agreement that a breach of contract can give rise to an "obligation" under the Reverse False Claims Act. *See* 31 U.S.C. § 3729(b)(3) ("obligation" includes "an established duty … arising from an express or implied contractual … relationship"); *see also American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 741 (6th Cir. 1999) ("§ 3729(a)'s definition of 'obligation' certainly includes those arising from … breaches of government contracts"); *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1204 (10th Cir. 2006); *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1237 (11th Cir. 1999).

Defendants do not dispute that the CIA formed a contract between the government and Omnicare. Nonetheless, they argue that the Stipulated Penalties are not recoverable in a § 3729(a)(7) claim because no penalties could be imposed until the OIG determined that they were "appropriate." TAC at Ex. 96, Omnicare Corporate Integrity Agreement, p. 25. Defendants primarily rely on two cases from this circuit concerning *statutory* fines and penalties, in which the Fifth Circuit held that "when potential fines depend on intervening discretionary governmental acts, they are not sufficient to create 'obligations to pay.'" *U.S. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 391 (5th Cir. 2008); *see also United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 657 (2004).

*Marcy* and *Bain* are distinct from the instant case because they involved only fines and penalties authorized by statute, not money owed under a contract. Here, the relationship between Omnicare and OIG was governed by a contract as well as a statute. The contract gave Omnicare additional duties not required by statute, and authorized additional penalties in case of breach.

*See* TAC at Ex. 96. A decision by the OIG that Stipulated Penalties are "appropriate" is identical to the decision by any contracting party to sue for a breach. The fact that some discretion is involved in that decision does not preclude False Claims Act liability. "Government officials may have discretion as to whether to insist on a party's performance under a contract or whether to file a breach of contract action if a party does not perform. However, a contractual obligation falls within the scope of § 3729(a)(7)." *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1204 (10th Cir. 2006); *see also United States ex rel. Landis v. Tailwind Sports Corp.*, 10-CV-00976 (RLW), 2014 WL 2772907, at *33 (D.D.C. June 19, 2014). Indeed, the Fifth Circuit in *Marcy* explicitly acknowledged that obligations arising out of a contract were different from the statutory fines and penalties that it held were insufficient to state a claim under § 3729(a)(7). *Marcy*, 520 F.3d at 391 (citing *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 657 (2004)) ("the claim failed because such fines would arise from the general environmental laws, not any particular contractual relationship between the government and the defendant").

The Court is mindful that another court reviewing a similar Corporate Integrity Agreement came out the other way. *See U.S. ex rel. Booker v. Pfizer, Inc.*, No. 10-cv-11166-DPW, 2014 WL 1271766 (D. Mass. March 26, 2014). In that case, the Corporate Integrity Agreement provided that a breach "may lead to the imposition" of the Stipulated Penalties. *Id*. at *9. The *Booker* court held that the prospect of penalties under a Corporate Integrity Agreement was insufficient to establish an "obligation" to pay the government under the Reverse False Claims Act, emphasizing that the duty to pay would only arise upon the government's decision to assess the stipulated penalties. *Id.* at *10. However, the court in *Booker* did not distinguish between the statutory fines at issue in *Marcy* and *Bain* and the contractual damages provided for by the CIA. This Court is convinced that the contract makes a difference, and could ultimately

provide the "obligation" necessary for a Reverse False Claims Act claim.

  B. <u>Challenges sounding in Rule 9(b)</u>

  Finally, Defendants argue that Relator has not pled sufficient facts to support a Reverse FCA claim based on the Corporate Integrity Agreement. Relator's allegations regarding the Corporate Integrity Agreement are contained in ¶¶ 332-337 of the complaint. The agreement itself is attached to her complaint as an exhibit. On the basis of those documents, the Court is convinced that Relator has pled allegations with sufficient particularity to satisfy Rule 9(b).

  The attachment of the CIA itself is sufficient to prove the contents of the agreement. Relator's complaint asserts that Omnicare falsely certified that it was in compliance with the CIA when in fact it violated the agreement in two ways: First, Omnicare was required to report any "matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized." TAC at Ex. 96, p. 16. Relator alleges that "Omnicare has violated the False Claims Act by impliedly or expressly certifying that it was in compliance with the CIA, when in fact it was engaging in illegal conduct with regard to Medicare and Medicaid," such as the kickback scheme. TAC at p. 106, ¶ 337. Second, Omnicare was required to maintain a disclosure log of employee reports of wrongdoing, and to send that disclosure log to OIG as part of its Annual Report. TAC at Ex. 96, pp. 12-13, 21. In the section of the complaint discussing the CIA, Relator alleges that "Omnicare did not report any of the illegal and fraudulent activities alleged by Relator." TAC at p. 107, ¶ 337. Both of those violations would, if proven, entitle the Government to collect Stipulated Penalties for breach of the CIA. TAC at Ex. 96, pp. 25-26. Omnicare's alleged false certifications allowed it to avoid those penalties.

  It is true that Relator does not name the individual who certified Omnicare's CIA

compliance. Ordinarily, Rule 9(b) requires that a plaintiff alleging fraud plead the "who, what, when, where and how" of the fraud. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (internal quotation marks omitted), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003). But in the context of FCA claims, "if [Relator's Complaint] cannot allege the details of an actually submitted false claim," it "may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190.

The Court understands Relator's allegations of false CIA certifications to be part of the same kickback scheme that forms the basis of her § 3729(a)(1) and (2) claims. If Omnicare had reported the kickback scheme and Relator's complaints to OIG as was required under the CIA, OIG would likely have put a stop to the scheme as a whole. And the Court has already held that Relator has sufficiently alleged the "who" of the kickback scheme, including Omnicare CEO Joel Gemunder and others on his senior management team. Mem. & Order, June 12, 2014, ECF No. 147, at 24. Furthermore, under the terms of the CIA, one of those individuals was responsible for making the annual certifications of CIA compliance. The CIA requires that a member of Omnicare's senior management be designated as the Compliance Officer under the CIA, TAC at Ex. 96, p. 3, and that person is required to make the annual certifications of compliance with the CIA, *id.* at 22. Although Relator has not identified which member of Omnicare's senior management was designated as the Compliance Officer, in light of the *somewhat* relaxed pleading standard that applies to allegations of long-running fraud, Relator has pleaded enough "who" to survive this Motion.

Accordingly, Relator's Motion to Alter or Amend the Court's June 12, 2014 Order is **GRANTED** as to her § 3729(a)(7) claims based on the Corporate Integrity Agreement.

Relator also asks the Court to reconsider the dismissal of her other § 3729(a)(7) claims, which were based on the false cost reports allegedly submitted to Medicare and Medicaid. She suggests that it is premature to dismiss claims solely because they are "redundant." But the Court did not merely find that the § 3729(a)(2) and § 3729(a)(7) claims were redundant. Instead, the court found that Relator's allegations were insufficient to state a claim under § 3729(a)(7). *See* Mem. & Order, June 12, 2014, ECF No. 147, at 50. For that reason, Relator's Motion to Alter or Amend the Court's June 12, 2014 Order is **DENIED** as to her § 3729(a)(7) claims based on the false cost reports.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the fifth day of September, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE