IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* Susan Ruscher, | § | |
| | § | |
| STATE OF CALIFORNIA | § | |
| *ex rel.* Susan Ruscher, | § | CIVIL NO. 08-3396 |
| STATE OF DELAWARE | § | |
| *ex rel.* Susan Ruscher, | § | |
| DISTRICT OF COLUMBIA | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF FLORIDA | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF GEORGIA | § | |
| *ex rel.* Susan Ruscher, | § | PLAINTIFFS' FOURTH |
| STATE OF HAWAII | § | AMENDED COMPLAINT |
| *ex rel.* Susan Ruscher, | § | PURSUANT TO 31 U.S.C. §§ |
| STATE OF ILLINOIS | § | 3729–3732, FEDERAL FALSE |
| *ex rel.* Susan Ruscher, | § | CLAIMS ACT, AND VARIOUS |
| STATE OF INDIANA | § | STATE FALSE CLAIMS ACTS |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF LOUISIANA | § | |
| *ex rel.* Susan Ruscher, | § | |
| COMMONWEALTH OF MASSACHUSETTS | § | JURY TRIAL DEMANDED |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF MICHIGAN | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF MONTANA | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF NEVADA | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF NEW JERSEY | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF NEW MEXICO | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF NEW YORK | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF OKLAHOMA | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF RHODE ISLAND | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF TENNESSEE | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF TEXAS | § | |
| *ex rel.* Susan Ruscher, | § | |
| STATE OF WISCONSIN | § | |

*ex rel.* Susan Ruscher,                                              §
COMMONWEALTH OF VIRGINIA                                              §
*ex rel.* Susan Ruscher,                                              §
DOE STATES 1-21                                                       §
                                                                     §
     Plaintiffs,                            §
                                                                     §
v.                                                                   §
                                                                     §
OMNICARE, INC.; OMNICARE PHARMACY                                     §
OF TEXAS 2, LP; OMNICARE PHARMACY OF                                  §
FLORIDA, LP; ARLINGTON ACQUISITION I,                                §
INC.; ASCO HEALTHCARE, LLC; BADGER                                   §
ACQUISITION OF TAMPA, LLC D/B/A/ BAY                                  §
PHARMACY; BADGER ACQUISITION OF                                      §
OHIO, LLC D/B/A/ BEEBER  PHARMACIES;                                  §
BEST CARE LTC ACQUISITION COMPANY,                                   §
LLC; CAMPO'S MEDICAL PHARMACY, INC.;                                  §
CARE PHARMACEUTICAL SERVICES, LP;                                    §
CTLP ACQUISITION LLC; CIP ACQUISITION                                §
CORP. D/B/A/ CARTER'S INSTITUTIONAL                                   §
PHARMACY; CP ACQUISITION CORP. D/B/A/                                 §
CENTRAL PHARMACY; CHP ACQUISITION                                    §
CORP. D/B/A/OMNICARE OF SOUTHERN NEW                                  §
JERSEY; COMSCRIPT, LLC; D&R                                          §
PHARMACEUTICAL SERVICES, LLC D/B/A                                    §
D&R PHARMACARE D/B/A/ OMNICARE OF                                     §
LOUISVILLE, KY D/B/A/ OMNICARE OF                                     §
LEXINGTON, KY; NIV ACQUISITION LLC                                   §
D/B/A DENMAN PHARMACY SERVICES;                                      §
PHARMACY ASSOCIATES OF GLENS FALLS,                                  §
INC.; ENLOE DRUGS, LLC; EVERGREEN                                    §
PHARMACEUTICAL, LLC; EVERGREEN                                       §
PHARMACEUTICAL OF CALIFORNIA, INC.                                   §
F/K/A PIO ACQUISITION F/K/A WEST VAL                                  §
PREMIER F/K/A NCS HEALTHCARE OF                                      §
CALIFORNIA, INC. F/K/A CREEKSIDE                                     §
MANAGED CARE PHARMACY, INC.;                                         §
EXCELLERX, INC.; OMNICARE                                            §
DISTRIBUTION CENTER LLC F/K/A                                        §
HEARTLAND REPACK SERVICES; HMIS,                                     §
INC.; HOME CARE PHARMACY, LLC;                                       §
INTERLOCK PHARMACY SYSTEMS; LCPS                                      §
ACQUISITION, LLC; LO-MED PRESCRIPTION                                §
SERVICES, LLC; MANAGED HEALTHCARE,                                   §
INC.; MCCLELLAND HEALTH SYSTEMS;                                      §
MED WORLD ACQUISITION CORP D/B/A/                                     §
MED WORLD PHARMACY; MEDICAL ARTS                                     §

HEALTH CARE, INC.; OMNICARE §
PHARMACY OF FLORIDA, LP D/B/A/ §
MEDISTAT; NCS HEALTHCARE OF NEW §
MEXICO, INC.; NCS HEALTHCARE OF §
MONTANA, INC.; NCS HEALTHCARE OF §
WASHINGTON, INC.; NCS HEALTHCARE OF §
ILLINOIS, LLC; NCS HEALTHCARE OF §
SOUTH CAROLINA, INC.; NCS HEALTHCARE §
OF KANSAS, LLC; NCS HEALTHCARE, LLC; §
NEIGHBORCARE OF INDIANA, LLC; §
NEIGHBORCARE PHARMACY SERVICES, §
INC. D/B/A NETWORK HEALTH SERVICES; §
NEIGHBORCARE, INC.; NIHAN & MARTIN, §
INC.; NORTH SHORE PHARMACY, LLC; §
OMNICARE ESC, LLC; OMNICARE §
PHARMACY OF TEXAS 1, LP; OMNICARE §
PHARMACY OF TEXAS 2, LP; HOME CARE §
PHARMACY, INC.; HOME CARE PHARMACY, §
LLC;OMNICARE EXTENDED PHARMACY §
SERVICES, LLC;  NEIGHBORCARE §
PHARMACY OF VIRGINIA, LLC; OMNICARE §
OF NEW YORK, LLC; OMNICARE §
PHARMACY AND SUPPLY SERVICES, LLC; §
PBM-PLUS, INC.; PHARMACON CORP.; §
PHARMACY CONSULTANTS, INC.; §
PHARMASOURCE, LLC; PHARM-CORP OF §
MAINE, LLC; PRN PHARMACEUTICAL §
SERVICES, LP; RESCOT SYSTEMS GROUP, §
INC.; LANGSAM HEALTH SERVICES, LLC; §
JHC ACQUISITION, LLC D/B/A OMNICARE §
CLINICAL INTERVENTION CENTER; §
LANGSAM MEDICAL PRODUCTS, INC. D/B/A §
SEQUOIA; NORTH SHORE PHARMACY §
SERVICES, LLC; SPECIALIZED PHARMACY §
SERVICES, LLC; STERLING HEALTHCARE §
SERVICES, INC. D/B/A STERLING HOME §
MEDICAL SERVICES; THREE FORKS §
APOTHECARY, INC.; VALUE HEALTH CARE §
SERVICES, LLC; NCS HEALTHCARE OF §
KENTUCKY, INC. D/B/A VANGARD LABS; §
VAPS ACQUISITION COMPANY; VITAL CARE §
INFUSIONS, INC.; WILLIAMSON DRUG CO., §
INC.; ZS ACQUISITION COMPANY; AAHS §
ACQUISITION CORPORATION; AMBLER §
ACQUISITION COMPANY, LLC; AMC – NEW §
YORK, INC.; AMC – TENNESSEE, INC.; §
ANDERSON MEDICAL SERVICES, INC.; APS §
ACQUISITION, LLC; APS SUMMIT CARE §

PHARMACY, LLC; ASCO HEALTHCARE OF §
NEW ENGLAND, LLC; ASCO HEALTHCARE §
OF NEW ENGLAND, LP; ATLANTIC MEDICAL §
GROUP, LLC; BACH'S PHARMACY (EAST), §
LLC; BACH'S PHARMACY SERVICES, LLC; §
BADGER ACQUISITION, LLC; BADGER §
ACQUISITION OF BROOKSVILLE, LLC; §
BADGER ACQUISITION OF KENTUCKY, LLC; §
BADGER ACQUISITION OF MINNESOTA, §
LLC; BADGER ACQUISITION OF ORLANDO, §
LLC; BADGER ACQUISITION OF TEXAS, LLC; §
BPNY ACQUISITION CORP.; BPTX §
ACQUISITION CORP.; CAPITAL HOME §
INFUSION, INC.; CARE CARD, INC.; CARE4, §
LP; COMPASS HEALTH SERVICES, LLC; §
COMSCRIPT-BOCA, LLC; CONCORD §
PHARMACY SERVICES, INC.; CP SERVICES, §
LLC; CPS ACQUISITION COMPANY, LLC; §
DELCO APOTHECARY, INC.; DIXON §
PHARMACY, LLC; HEARTLAND §
HEALTHCARE SERVICES, LLC; HOME §
PHARMACY SERVICES, LLC; HYTREE §
PHARMACY, INC.; INSTITUTIONAL HEALTH §
CARE SERVICES, LLC; LOBOS ACQUISITION, §
LLC; LOBOS ACQUISITION OF ARIZONA, §
INC.; LPA ACQUISITION COMPANY, LLC; LPI §
ACQUISITION CORPORATION; MAIN STREET §
PHARMACY, LLC; MANAGEMENT & §
NETWORK SERVICES, INC.; MANAGEMENT §
& NETWORK SERVICES, LLC; MEDICAL §
SERVICES GROUP, LLC; MHHP ACQUISITION §
COMPANY; MOSI ACQUISITION §
CORPORATION; NCS HEALTHCARE OF §
ARIZONA, INC.; NCS HEALTHCARE OF §
ARKANSAS, INC.; NCS HEALTHCARE OF §
CONNECTICUT; NCS HEALTHCARE OF §
FLORIDA, INC.; NCS HEALTHCARE OF §
INDIANA, INC.; NCS HEALTHCARE OF §
INDIANA, LLC; NCS HEALTHCARE OF IOWA, §
LLC; NCS HEALTHCARE OF KENTUCKY, §
INC.; NCS HEALTHCARE OF MARYLAND, §
LLC; NCS HEALTHCARE OF §
MASSACHUSETTS, INC.; NCS HEALTHCARE §
OF MICHIGAN, INC.; NCS HEALTHCARE OF §
MINNESOTA, INC.; NCS HEALTHCARE OF §
MISSOURI, INC.; NCS HEALTHCARE OF NEW §
HAMPSHIRE, INC.; NCS HEALTHCARE OF §
NEW JERSEY, INC.; NCS HEALTHCARE OF §

iv

NORTH CAROLINA, INC.; NCS HEALTHCARE          §
OF OHIO, LLC; NCS HEALTHCARE OF               §
OKLAHOMA, INC.; NCS HEALTHCARE OF             §
OREGON, INC.; NCS HEALTHCARE OF               §
PENNSYLVANIA, INC.; NCS HEALTHCARE            §
OF RHODE ISLAND, LLC; NCS HEALTHCARE          §
OF TENNESSEE, INC.; NCS HEALTHCARE OF         §
TEXAS, INC.; NCS HEALTHCARE OF                §
VERMONT, INC.; NCS HEALTHCARE OF              §
WASHINGTON, INC.; NCS SERVICES, INC.;         §
NEIGHBORCARE-ORCA, LLC;                       §
NEIGHBORCARE HOLDINGS, INC.;                  §
NEIGHBORCARE INFUSION SERVICES, INC.;         §
NEIGHBORCARE OF NEW HAMPSHIRE, LLC;           §
NEIGHBORCARE OF NORTHERN                      §
CALIFORNIA, INC.; NEIGHBORCARE OF             §
OHIO, LLC; NEIGHBORCARE OF                     §
OKLAHOMA, INC.; NEIGHBORCARE OF               §
WISCONSIN, LLC; NEIGHBORCARE                  §
PHARMACIES, LLC; NEIGHBORCARE                 §
PHARMACY OF OKLAHOMA, LLC;                    §
NEIGHBORCARE PHARMACY OF VIRGINIA,           §
LLC; NEIGHBORCARE REPACKAGING, INC.;         §
NEIGHBORCARE-MEDISCO, INC.; NGC              §
ACQUISITION COMPANY, LLC; OCR                §
SERVICES CORPORATION; OCR-RA                 §
ACQUISITION, LLC D/B/A LONG TERM CARE        §
PHARMACY; OFL CORP.; OMNIBILL                §
SERVICES, LLC; OMNICARE AIR TRANSPORT        §
SERVICES, INC.; OMNICARE                     §
HEADQUARTERS, LLC; OMNICARE                  §
HOLDINGS COMPANY; OMNICARE INDIANA           §
PARTNERSHIP HOLDING COMPANY, LLC;           §
OMNICARE MANAGEMENT COMPANY;                 §
OMNICARE OF NEVADA, LLC; OMNICARE           §
PENNSYLVANIA MED SUPPLY, LLC;               §
OMNICARE PHARMACIES OF                       §
PENNSYLVANIA EAST, LLC; OMNICARE            §
PHARMACIES OF PENNSYLVANIA WEST,            §
LLC; OMNICARE PHARMACIES OF GREAT           §
PLAINS HOLDING COMPANY; OMNICARE            §
PHARMACY OF COLORADO, LLC;                   §
OMNICARE PHARMACY OF MAINE, LLC;            §
OMNICARE PHARMACY OF NEBRASKA,              §
LLC; OMNICARE PHARMACY OF NORTH             §
CAROLINA, LLC; OMNICARE PHARMACY OF         §
PUEBLO, LLC; OMNICARE PHARMACY OF           §
TENNESSEE, LLC; OMNICARE PHARMACY           §

OF THE MIDWEST, LLC F/K/A FREED'S;                §
OMNICARE PURCHASING COMPANY               §
GENERAL PARTNER, INC.; OMNICARE          §
PURCHASING COMPANY LIMITED                §
PARTNER, INC.; OMNICARE PURCHASING        §
COMPANY, LP; OMNICARE RESPIRATORY         §
SERVICES,  LLC; OMNICARE SENIOR            §
HEALTH OUTCOMES, LLC; OMNICARE.COM,       §
INC.; PBM PLUS MAIL SERVICE PHARMACY,     §
LLC; PCI ACQUISITION, LLC; PHARMACY       §
HOLDING #1, LLC; PHARMACY HOLDING #2,     §
LLC; PHARMASOURCE HEALTHCARE, INC.;       §
PP ACQUISITION COMPANY, LLC; PPS-GBMC     §
JOINT VENTURE, LLC; PPS-ST. AGNES JOINT   §
VENTURE, LLC; PRN PHARMACEUTICAL          §
SERVICES, LP; PROFESSIONAL PHARMACY       §
SERVICES, INC.; PSI ARKANSAS              §
ACQUISITION, LLC; RXC ACQUISITION         §
COMPANY; SHC ACQUISITION COMPANY,         §
LLC D/B/A SYNERGY; SHORE                   §
PHARMACEUTICAL PROVIDERS, INC.;           §
SOUTHSIDE APOTHECARY, INC.;               §
SPECIALIZED PATIENT CARE SERVICES,        §
INC.; SPECIALIZED PHARMACY SERVICES,      §
LLC; SPECIALTY CARTS, LLC; STERLING       §
HEALTHCARE SERVICES, INC.; SUPERIOR       §
CARE PHARMACY, INC.; TCPI ACQUISITION     §
CORP., D/B/A TOTAL CARE PHARMACY; THE     §
MEDICINE CENTRE, LLC; THG ACQUISITION     §
CORP., D/B/A TANDEM HEALTH GROUP; UC      §
ACQUISITION CORP., D/B/A UNICARE; UNI-    §
CARE HEALTH SERVICES OF MAINE, INC.;      §
VALUE PHARMACY, INC.; WINSLOW'S           §
PHARMACY,                                  §
                                           §
        Defendants.                        §

**RELATOR SUSAN RUSCHER'S FOURTH AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.  Introduction .................................................................................................... 1

II.  Parties ........................................................................................................... 3

III.  Respondeat Superior and Vicarious Liability ............................................ 62

IV.  Jurisidiction and Venue ............................................................................. 63

V.  Statutory and Regulatory Background ........................................................ 63

    A.  Federal Anti-Kickback Statute .............................................................. 63

    B.  Medicare .............................................................................................. 65

        i.  Medicare Part A ............................................................................. 65

        ii.  Medicare Part D ............................................................................ 66

        iii.  Medicare Certification .................................................................. 67

    C.  Medicaid .............................................................................................. 68

VI.  Factual Allegations ..................................................................................... 81

    A.  Overview of Omnicare, Inc ................................................................... 81

    B.  Omnicare's Scheme to Induce Business by Forgoing Payment for Drugs Reimbursable by Medicare ........................................... 84

    C.  Relator Susan Ruscher's Discovery of Omnicare's Fraudulent Conduct ............. 93

        i.  Relator's Background and Employment History with Omnicare ............. 93

        ii.  Relator's Efforts to Collect Money on Behalf of Omnicare and her Discovery of Omnicare's Fraudulent Conduct ........... 94

            a.  National Accounts ....................................................... 95

            b.  P-Holds ..................................................................... 98

            c.  Other Customers ....................................................... 100

    D.  Omnicare's Conduct Violates its Corporate Integrity Agreement with the United States Government ................................................. 105

i.       2006 Settlement ...................................................................... 105

ii.      Corporate Integrity Agreement Between Omnicare and
         the United States Government ................................................. 105

E.       Summary of SNFs' Conduct. ........................................................ 107

i.       Shoreline HealthCare Management,…………………………………107

ii.      Five Star Quality Care……………………………………………………108

iii.     Harborside Healthcare/Sun Healthcare Group, Inc…………………110

iv.      Life Care Centers of America, Inc…………………………………….111

v.       Avamere Health Services, LLC…………………………………...112

vi.      Family Senior Care………………………………………………………113

vii.     Millennium Management, LLC……………………………………...115

viii.    Fundamental Long Term Care Holdings, LLC/Trans
         Healthcare, Inc…...................................................................115

VII.  Actionable Conduct by Omnicare Under the False Claims Act ................................... 117

A.       Applicable Law .............................................................................. 117

i.       False Claims Act ...................................................................... 117

ii.      The Federal Anti-Kickback Statute ........................................ 121

iii.     Payment for Drugs Under Medicaid ...................................... 122

B.       Omnicare and the SNFs
         Submitted False Claims by Offering and Solciting and Accepting Kickbacks in
         Violation of the Anti-Kickback Statute and the FCA…...................................... 123

C.       Omnicare Made False Certifications to the United States Government ............. 125

D.       Omnicare Causes the Skilled Nursing Facilities that Pocket Omnicare's Medicare
         Part A Reimbursement to Make False Certifications to the United States
         Government.................................................................................... 127

E.       Omnicare Makes False Certifications to State Medicaid Programs ................... 129

F        Omnicare Caused the Skilled Nursing Facilities that Pocketed Omnicare's

Medicare Part A Reimbursement to Make False Certifications to State Medicaid Programs ................................................................................................. 131

G.    Skilled Nursing Facilities that Pocket Omnicare's Medicare Part A Reimbursement Make False Certifications to the United States Governement.. 134

H.    Skilled Nursing Facilities that Pocketed Omnicare's Medicare Part A Reimbursement Made False Certifications to State Medicaid Programs. .......... 137

I.     Skilled Nursing Facilities that Pocketed Omnicare's Medicare Part A Reimbursement Submitted False Medicare and Mediciad Cost Reports............ 139

J.     Omnicare Falsely Certifies Compliance with the CIA ...................................... 141

K.    Omnicare Conspired with the SNFs to Defraud Medicare and Medicaid in Violation of the FCA……………………………142

VIII.  DAMAGES............................................................................................................ 143

IX.    CAUSES OF ACTION .......................................................................................... 144

A.    Count I - False Claims 31 U.S.C. § 3729(a)(1)(former)/31 U.S.C. § 3729 (a)(1)(A) (current)....................................................................................... 144

B.    Count II - False Records or Statements (31 U.S.C. § 3729 (a)(2)(former); 31 U.S.C. § 3729(a)(1)(B) (current) ................................................................. 145

C.    Count III - Conspiracy (31 U.S.C. § 3729(a)(3)(former)/31 U.S.C. § 3729(a)(1)(C)(Current)……………………………………………………146

D.    Count IV - Reverse False Claims (31 U.S.C. § 3729(a)(7)(former); 31 U.S.C. 3729(a)(1)(G)(current)……………………………………………………147

RELIEF……………………………………………………………………………………149

PRAYER .................................................................................................................... 150

F.    Count V - California False Claims Act (Cal. Gov't Code § 12650 *et seq.*)........................................................................ 150

G.    Count VI - Delaware False Claims and Reporting Act (6 Del. C. § 1201 *et seq.*) ................................................................................... 153

H.    Count VII - District of Columbia Procurement Reform Amendment Act (D.C. Code § 2-308.13 *et seq.*). ..................................................................... 156

I.     Count VIII - Florida False Claims Act (Fla. Stat. § 68.081 *et seq.*) ................................................................................ 158

ix

J.      Count IX - Georgia State False Medicaid Claims Act
        (Ga. Code. Ann. § 49-4-168 *et seq.*) ................................................................. 161

K.      Count X - Hawaii False Claims Act
        (Haw. Rev. Stat. § 661-21 *et seq*) ...................................................................... 163

L.      Count XI - Illinois Whistleblower Reward and Protection Act
        (740 Ill. Comp. Stat. *et seq.*) ............................................................................. 166

M.      Count XII - Indiana False Claims and Whistleblower Protection Act
        (Ind. Code § 5-11-5.51 *et seq.*) ......................................................................... 169

N.      Count XIII - Louisiana Medical Assistance Programs Integrity Law
        (La. Rev. Stat. Ann. §46:437.1 *et seq.*)............................................................. 172

O.      Count XIV - Massachusetts Claims Act
        (Mass. Gen. Laws Ann. 12 § 5A *et seq.*) .......................................................... 174

P.      Count XV - Michigan Medicaid False Claims Act
        (Mich. Comp. Laws § 400.601 *et seq.*)............................................................. 177

Q.      Count XVI - Montana False Claims Act
        (Mont. Code Ann. § 17-8-401 *et seq.*) .............................................................. 179

R.      Count XVII - Nevada False Claims Act
        (N.R.S. § 357.010 *et seq.*)................................................................................. 182

S.      Count XVIII - New Jersey False Claims Act
        (N.J. Stat. Ann. §§ 2A:32-C1-2A:32-C18) ......................................................... 185

T.      Count XIX - New Mexico Medicaid False Claims Act
        (N.M. Stat. Ann. § 27-14-1 *et* seq) .................................................................... 187

U.      Count XX - New York False Claims Act
        (N.Y. State Fin. Law § 187 *et* seq) .................................................................... 190

V.      Count XXI - Oklahoma Medicaid False Claims Act
        (Okla. Stat. Ann. § 5053.1 *et seq*)..................................................................... 193

W.      Count XXII - Rhode Island State False Claims Act
        (R.I. Gen. Laws § 9-1.1-1 *et seq*)...................................................................... 196

X.      Count XXIII - Tennessee Medicaid False Claims Act
        (Tenn. Code Ann. § 71-5-181 *et seq*) ................................................................ 198

Y.      Count XXIV - Texas False Claims Act
        (V.T.C.A. Hum. Res. Code § 36.001 *et seq*) ..................................................... 201

Z.      Count XXV - Virginia Fraud Against Taxpayer Act
        (Va. Code Ann. § 8.01-216.1 *et seq*) ................................................................. 204

AA.     Count XXVI - Wisconsin False Claims Act
        (Wis. Stat. Ann. § 20.931 *et seq*) ...................................................................... 207

BB.     Count XXVII - Common Fund Relief .............................................................. 210

X.      DEMAND FOR JURY TRIAL……………………………………………………...211

## RELATOR SUSAN RUSCHER'S FOURTH AMENDED COMPLAINT

1.      The United States of America, the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, Wisconsin, the Commonwealths of Massachusetts and Virginia, and the District of Columbia, ("Qui Tam States"), and Doe States 1-21, by and through qui tam relator Susan Ruscher, bring this action under 31 U.S.C. §§ 3729–3732 ("False Claims Act") to recover all damages, penalties, and other remedies established by the False Claims Act and various state and district false claims acts and, in support, show the following:

## I.      INTRODUCTION

2.      Defendant Omnicare, Inc., along with its vast number of affiliates who are also named Defendants (collectively "Omnicare") in this action, is the nation's leading provider of pharmaceuticals to long-term care facilities such as nursing homes ("skilled nursing facilities" or "SNFs"), with over $6.2 billion in revenue reported for 2011.  This suit concerns an ongoing nationwide fraudulent kickback scheme in which Omnicare induces and retains business from SNFs that provide services to a high volume of Medicare Part D/ Medicaid patients, from whom Omnicare derives most of its revenues, in exchange for which Omnicare forgoes its payments for pharmaceuticals dispensed to Medicare Part A patients that the SNFs owe Omnicare.  In other words, in order to retain the majority of Omnicare's business with SNFs—Medicare Part D and Medicaid business—Omnicare allows these favored facilities to unjustly enrich themselves on Omnicare's drug costs for Medicare Part A patients.  The Centers for Medicare and Medicaid Services ("CMS") continues to pay these powerful SNFs its Medicare Part A prospective per diem payments to cover such patients' care never knowing that the SNFs to pocket the portion of the

payment they would have spent on patients' drugs and use it to out-compete their rivals, while Omnicare, having paid to secure their business increases its stranglehold on the long-term care pharmacy market.

3.      The magnitude of the inducement amounts Omnicare was willing to pay to get and maintain nursing home chains' business is revealed in the accounts receivable spreadsheets compiled by Omnicare's Collections departments.  Omnicare typically bore a burden of over $400 million in uncollected accounts payable, largely attributable to purposefully uncollected debt.  By late 2009, Omnicare carried over $720 million in accounts receivable due over 180 days, again, the majority of which represented kickbacks in the form of forgiven debt.  Relator Susan Ruscher's attempts from 2005 to 2008 as Corporate National Facility Credit and Collections Manager to get control of these ever-burgeoning accounts receivable were met by resistance and eventual termination, after which she was replaced by a successor whose lack of bona fide interest in collecting on protected customers was manifest in her nickname for the Collections Department: the "department of reasonable attempts."

4.      Omnicare's knowledge that it was fraudulently inducing Medicaid and Medicare Part D business from SNFs through Part A kickbacks is established by not only its internal communications and documents, discussed below, but also by its subsequent spoliation of evidence concerning its kickback scheme.  After Relator Ruscher filed this action on November 14, 2008, the Office of the Inspector General of the Department of Health and Human Services issued a subpoena to Omnicare on November 18, 2009 for the production of documents.   In response to the subpoena, on or about March 9, 2010 JoAnn Billman, Omnicare's National Facility Bankruptcy/Legal Lead, instructed Collections department employees to search for documents related to National Accounts.  These documents were then packed into approximately 100 boxes.

The boxes containing National Account documents were then picked up by a third party, Cintas (rather than Omnicare's normal storage company, Iron Mountain), and shredded and/or stored offsite to avoid detection by Omnicare's regulatory counsel, who was scheduled to visit five days later.

## II.     PARTIES

5.      Ruscher is a citizen of the United States and a resident of the State of Ohio.

6.      The United States Government and the named Qui Tam States are the government plaintiffs in this case.

7.      Plaintiff Doe States 1-21 include the states that subsequent to the filing of the Complaint enact *qui tam* statutes and the right to initiate *qui tam* lawsuits, or whose previously enacted statutes become effective after the filing of this case.  The Doe States include the States of Alabama, Alaska, Arizona, Arkansas, Idaho, Kansas, Kentucky, Maine, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, South Dakota, Utah, Vermont, West Virginia, and Wyoming.

8.      Defendant Omnicare, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare, Inc. may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

### Omnicare Affiliates

9.      Defendant Omnicare Pharmacy of Texas 2, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-

term care patients.  Omnicare Pharmacy of Texas 2, LP may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

10.     Defendant Omnicare Pharmacy of Florida, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Florida, LP may be served through its registered agent, CSC, 1201 Hays Street, Tallahassee, Florida  32301.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

11.     Defendant Arlington Acquisition I, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Arlington Acquisition I, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

12.     Defendant ASCO Healthcare, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  ASCO Healthcare, LLC d/b/a ASCO Neighborcare may be served through its registered agent, CSC, 11 South 12th Street, P.O. Box 1463, Richmond, Virginia  23218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

4

13.     Defendant Badger Acquisition of Tampa, LLC d/b/a Bay Pharmacy is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Tampa, LLC d/b/a Bay Pharmacy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

14.     Defendant Badger Acquisition of Ohio, LLC d/b/a Beeber Pharmacies is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Ohio, LLC d/b/a Beeber Pharmacies may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

15.     Defendant Best Care LTC Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Best Care LTC Acquisition Company, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

16.     Defendant Campo's Medical Pharmacy, Inc. is a Louisiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Campo's Medical Pharmacy, Inc. may be served through its registered agent, CSC,

320 Somerulos Street, Baton Rouge, Louisiana  70802.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

17.     Defendant Care Pharmaceutical Services, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Care Pharmaceutical Services, LP may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

18.     Defendant CTLP Acquisition LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CTLP Acquisition LLC may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, IL  62703.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

19.     Defendant CIP Acquisition Corp. d/b/a Carter's Institutional Pharmacy is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CIP Acquisition Corp. d/b/a Carter's Institutional Pharmacy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

20.     Defendant CP Acquisition Corp. d/b/a Central Pharmacy is an Oklahoma corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CP Acquisition Corp. d/b/a Central Pharmacy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

21.     Defendant CHP Acquisition Corp. d/b/a/Omnicare of Southern New Jersey  is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  CHP Acquisition Corporation d/b/a/Omnicare of Southern New Jersey may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

22.     Defendant Comscript Corp. is a corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Comscript Corp.'s address and registered agent is unknown at this time and will be supplemented.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

23.     Defendant D&R Pharmaceutical Services, LLC d/b/a D&R Pharmacare d/b/a Omnicare of Louisville, KY d/b/a Omnicare of Lexington, KY is a Kentucky limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  D&R Pharmaceutical Services, LLC d/b/a D&R Pharmacare d/b/a Omnicare of Louisville, KY d/b/a Omnicare of Lexington, KY may be served through its

registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

24.      Defendant NIV Acquisition LLC d/b/a Denman Pharmacy Services is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NIV Acquisition LLC d/b/a Denman Pharmacy Services may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, Illinois 62703. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

25.      Defendant Pharmacy Associates of Glens Falls, Inc. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Pharmacy Associates of Glens Falls, Inc. may be served through its registered agent, Jeffrey Stamps, 100 East Rivercenter Boulevard, Suite 1600, Covington, Kentucky 41011. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

26.      Defendant Enloe Drugs, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Enloe Drugs, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

27.     Defendant Evergreen Pharmaceutical, LLC is a Washington limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Evergreen Pharmaceutical, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

28.     Defendant Evergreen Pharmaceutical of California, Inc. f/k/a PIO Acquisition f/k/a West Val Premier f/k/a NCS Healthcare of California, Inc. f/k/a Creekside Managed Care Pharmacy, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Evergreen Pharmaceutical of California, Inc. f/k/a PIO Acquisition f/k/a West Val Premier f/k/a NCS Healthcare of California, Inc. f/k/a Creekside Managed Care Pharmacy, Inc. may be served through its registered agent, CSC, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

29.     Defendant Excellerx, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Excellerx, Inc. may be served through its registered agent, CT Corporation System, 75 Beattie Place, Greenville, SC  29601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

30.     Defendant Omnicare Distribution Center LLC f/k/a Heartland Repack Services  is a Delaware limited liability corporation whose principal business is the provision of

9

pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Distribution Center LLC f/k/a Heartland Repack Services may be served through its registered agent, CSC, 50 West Broad Street, Suite 1800, Columbus, Ohio  43215.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

31.    Defendant HMIS, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  HMIS, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

32.    Defendant Home Care Pharmacy, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Home Care Pharmacy, Inc. may be served through its registered agent, CSC, 50 West Broad Street, Suite 1800, Columbus, Ohio  43215.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

33.    Defendant Home Care Pharmacy, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Home Care Pharmacy, LLC may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

34.     Defendant Interlock Pharmacy Systems is a Missouri limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Interlock Pharmacy Systems may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

35.     Defendant LCPS Acquisition, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  LCPS Acquisition, LLC may be served through its registered agent, CSC, 200 SW 30th Street, Topeka, Kansas  66611.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

36.     Defendant Lo-Med Prescription Services, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Lo-Med Prescription Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

37.     Defendant Managed Healthcare, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Managed Healthcare, Inc. may be served through its registered agent, CSC, 2711 Centerville Road, Suite 400, Wilmington, Delaware  19808.  This Defendant waived service on

May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

38.     Defendant McClelland Health Systems is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

39.     Defendant Med World Acquisition Corp. d/b/a Med World Pharmacy is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Med World Acquisition Corp. d/b/a Med World Pharmacy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

40.     Defendant Medical Arts Health Care, Inc. is a Georgia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Medical Arts Health Care, Inc. may be served through its registered agent, CSC, 40 Technology Parkway South, #300, Norcross, Georgia 30092. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

41.     Defendant Omnicare Pharmacy of Florida, LP d/b/a Medistat is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare Pharmacy of Florida, LP d/b/a Medistat may be served through its registered agent, CSC, 421 West Main Street, Frankfort,

Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

42.     Defendant NCS Healthcare of New Mexico, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NCS Healthcare of New Mexico, Inc. may be served through its registered agent, CSC, 125 Lincoln Avenue, Suite 223, Santa Fe, New Mexico 87503. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

43.     Defendant NCS Healthcare of Montana, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NCS Healthcare of Montana, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

44.     Defendant NCS Healthcare of Washington, Inc. an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NCS Healthcare of Washington, Inc. may be served through its registered agent, CSC, 6500 Harbour Heights Parkway, Suite 400, Mukilteo, Washington 98275. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

45.     Defendant NCS Healthcare of Illinois, Inc. is an Illinois corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term

care patients.  NCS Healthcare of Illinois, Inc. may be served through its registered agent, CSC, 901 Adlai Stevenson Drive, Springfield, Illinois  62703.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

46.     Defendant NCS Healthcare of South Carolina, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of South Carolina, Inc. may be served through its registered agent, CSC, 1703 Laurel Street, Columbia, South Carolina 29201.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

47.     Defendant NCS Healthcare of Kansas, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Kansas, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

48.     Defendant NCS Healthcare, LLC is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

49.     Defendant Neighborcare of Indiana, LLC is an Indiana limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare of Indiana, LLC may be served through its registered agent, CSC, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

50.     Defendant Neighborcare Pharmacy Services, Inc. d/b/a Network Health Services is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare Pharmacy Services, Inc. may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

51.     Defendant Neighborcare, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

52.     Defendant Nihan & Martin, Inc. is an Illinois corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Nihan & Martin, Inc. may be served through its registered agent, Anna Quaerna, 3041 Westwood, Janesville, Wisconsin 53545.  This Defendant waived service on May 15, 2013

through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

53.     Defendant North Shore Pharmacy, LLC is a Hawaii corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  North Shore Pharmacy, LLC may be served through its registered agent, Jean Bjornson, 56-119 Pualalea Street, Kahuku, Hawaii  96731.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

54.     Defendant Omnicare ESC, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare ESC, LLC may be served through its registered agent, CSC, 50 Weston Street, Hartford, Connecticut  06120.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

55.     Defendant Omnicare Pharmacy of Texas 1, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Texas 1, LP may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

56.     Defendant Omnicare Pharmacy of Texas 2, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Texas 2, LP may be served through its registered agent,

CSC, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

57.     Defendant Omnicare Extended Pharmacy Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Extended Pharmacy Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

58.     Defendant Neighborcare Pharmacy of Virginia, LLC is a Virginia limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Neighborcare Pharmacy of Virginia, LLC may be served through its registered agent, CSC, 11 South 12th Street, P.O. Box 1463, Richmond, Virginia 23218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

59.     Defendant Omnicare of New York, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare of New York, LLC may be served through its registered agent, CSC, 90 State Street, Albany, New York 12207.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

60.     Defendant Omnicare Pharmacy and Supply Services, LLC is a South Dakota limited liability corporation whose principal business is the provision of pharmaceuticals and

pharmaceutical services to long-term care patients.  Omnicare Pharmacy and Supply Services, LLC may be served through its registered agent, CSC, 503 South Pierre Street, Pierre, South Dakota 57501.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

61.     Defendant PBM-Plus, Inc. is a Wisconsin corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PBM-Plus, Inc. may be served through its registered agent, CSC, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin  53717.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

62.     Defendant Pharmacon Corp. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Pharmacon Corp. may be served through its registered agent, CSC, 80 State Street, Albany, New York 12207.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

63.     Defendant Pharmacy Consultants, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Consultants, Inc. may be served through its registered agent, Paul Levine, 10350 Santa Monica, Boulevard, Suite 250, Los Angeles, California 90025.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

18

64.     Defendant Pharmasource LLC is an Illinois limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmasource LLC may be served through its registered agent, Balmukund Patel, 743 Sherwood Drive, Addison, Illinois  60101.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

65.     Defendant Pharm-Corp of Maine, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharm-Corp of Maine, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

66.     Defendant PRN Pharmaceutical Services, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PRN Pharmaceutical Services, LP may be served through its registered agent, CSC, 251 East Ohio Street, Suite 500, Indianapolis, Indiana  46204.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

67.     Defendant Rescot Systems Group, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Rescot Systems Group, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013

through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

68.     Defendant Langsam Health Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Langsam Health Services, LLC may be served through its registered agent, CSC, 115 SW 89th Street, Oklahoma City, Oklahoma  73139.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

69.     Defendant JHC Acquisitions, LLC d/b/a Omnicare Clinical Intervention Center is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  JHC Acquisitions, LLC d/b/a Omnicare Clinical Intervention Center may be served through its registered agent, Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, Illinois  62703.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

70.     Defendant Langsam Medical Products, Inc. d/b/a Sequoia is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Langsam Medical Products, Inc. d/b/a Sequoia may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

71.     Defendant North Shore Pharmacy Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical

services to long-term care patients.  North Shore Pharmacy Services, LLC may be served through its registered agent, CSC, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19898.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

72.     Defendant Specialized Pharmacy Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialized Pharmacy Services, LLC may be served through its registered agent, CSC, 421 West Main, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

73.     Defendant Sterling Healthcare Services, Inc. d/b/a Sterling Home Medical Services is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Sterling Healthcare Services, Inc. d/b/a Sterling Home Medical Services may be served through its registered agent, CSC, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19898.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

74.     Defendant Three Forks Apothecary, Inc. is a Kentucky corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Three Forks Apothecary, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

75.     Defendant Value Health Care Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Value Health Care Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

76.     Defendant NCS Healthcare of Kentucky, Inc. d/b/a Vangard Labs is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Kentucky, Inc. d/b/a Vangard Labs may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

77.     Defendant VAPS Acquisition Company is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  VAPS Acquisition Company may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

78.     Defendant Vital Care Infusions, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Vital Care Infusions, Inc. may be served through its registered agent, CT Corporation System, 1633 Broadway, New York, New York  10019.  This Defendant waived service on May

15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

79.     Defendant Williamson Drug Co., Inc. is a Virginia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Williamson Drug Co., Inc. may be served through its registered agent, CSC, 11 South 12th Street, P.O. Box 1463, Richmond, Virginia  23218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

80.     Defendant ZS Acquisition Company is a company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.    This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

81.     Defendant AAHS Acquisition Corporation is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  AAHS Acquisition Corporation may be served through its registered agent, CT Corporation System, 300 North 6th Street, Boise, Idaho  83701.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

82.     Defendant Ambler Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Ambler Acquisition Company, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived

service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

83.     Defendant AMC – New York, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  AMC – New York, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

84.     Defendant AMC – Tennessee, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  AMC – Tennessee, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

85.     Defendant Anderson Medical Services, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Anderson Medical Services, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

86.      Defendant APS Acquisition, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  APS Acquisition, LLC may be served through its registered agent, CSC, 421

West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

87.     Defendant APS Summit Care Pharmacy, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. APS Summit Care Pharmacy, LLC may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

88.     Defendant ASCO Healthcare of New England, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. ASCO Healthcare of New England, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

89.     Defendant ASCO Healthcare of New England, LP is a Maryland limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. ASCO Healthcare of New England, LP may be served through its registered agent, CSC, 222 Jefferson Boulevard, Suite 222, Warwick, Rhode Island 02888. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

90.     Defendant Atlantic Medical Group, LLC is a Florida limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-

term care patients.  Atlantic Medical Group, LLC may be served through its registered agent, John Kancilia, 1800 West Hibiscus Boulevard, Suite 138, Melbourne, Florida  32901.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

91.     Defendant Bach's Pharmacy East, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Bach's Pharmacy East, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

92.     Defendant Bach's Pharmacy Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Bach's Pharmacy Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

93.     Defendant Badger Acquisition, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

94.     Defendant Badger Acquisition of Brooksville, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Brooksville, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

95.     Defendant Badger Acquisition of Kentucky, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Kentucky, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

96.     Defendant Badger Acquisition of Minnesota, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Minnesota, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

97.     Defendant Badger Acquisition of Orlando, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Orlando, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant

waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

98.      Defendant Badger Acquisition of Texas, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Badger Acquisition of Texas, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

99.      Defendant BPNY Acquisition Corp. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  BPNY Acquisition Corp. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

100.      Defendant BPTX Acquisition Corp. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  BPTX Acquisition Corp. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

101.      Defendant Capitol Home Infusion, Inc. is a Virginia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Capitol Home Infusion, Inc. may be served through its registered agent, CSC, 421 West

Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

102.    Defendant Care Card, Inc. is an Indiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Care Card, Inc. may be served through its registered agent, Richard Schneider, Jr., 721 North County Rd. 450 East, Danville, Indiana 46122. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

103.    Defendant Care4, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Care4, LP. may be served through its registered agent, CSC, 80 State Street, Albany, New York 12207. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

104.    Defendant Compass Health Services, LLC is a West Virginia limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Compass Health Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

105.    Defendant Comscript – Boca, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Comscript – Boca, LLC may be served through its registered agent, CSC, 421

West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

106.     Defendant Concord Pharmacy Services, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Concord Pharmacy Services, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

107.     Defendant CP Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. CP Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

108.     Defendant CPS Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. CPS Acquisition Company, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

109.     Defendant Delco Apothecary, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care

patients.  Delco Apothecary, Inc. may be served through its president, Tracy Finn, 100 East Rivercenter Boulevard, Suite 16000, Covington, Kentucky 41011.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

110.     Defendant Dixon Pharmacy, LLC is an Illinois limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Dixon Pharmacy, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

111.     Defendant Heartland Healthcare Services, LLC is a Delaware company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Heartland Healthcare Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

112.     Defendant Home Pharmacy Services, LLC is a Missouri limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Home Pharmacy Services, LLC may be served through its registered agent, CSC, 221 Bolivar Street, Jefferson City, Missouri 65101.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

113.     Defendant Hytree Pharmacy, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Hytree Pharmacy, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

114.     Defendant Institutional Health Care Services, LLC is a New Jersey limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Institutional Health Care Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

115.     Defendant Lobos Acquisition, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Lobos Acquisition, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

116.     Defendant Lobos Acquisition of Arizona, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Lobos Acquisition of Arizona, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15,

2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

117.    Defendant LPA Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  LPA Acquisition Company, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

118.    Defendant LPI Acquisition Corporation is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  LPI Acquisition Corporation may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

119.    Defendant Main Street Pharmacy, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Main Street Pharmacy, LLC may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

120.    Defendant Management & Network Services, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Management & Network Services, Inc. may be served through its registered agent,

33

CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

121.    Defendant Management & Network Services, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Management & Network Services, LLC may be served through its registered agent, CSC, 200 Southwest 30th Street, Topeka, Kansas 66611. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

122.    Defendant Medical Services Group, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Medical Services Group, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

123.    Defendant MHHP Acquisition Company, Inc. is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. MHHP Acquisition Company, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

124.    Defendant MOSI Acquisition Corporation is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term

care patients.  MOSI Acquisition Corporation may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

125.     Defendant NCS Healthcare of Arizona, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Arizona, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

126.     Defendant NCS Healthcare of Arkansas, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Arkansas, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

127.     Defendant NCS Healthcare of Connecticut, Inc. is a Connecticut corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Connecticut, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

128.     Defendant NCS Healthcare of Florida, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Florida, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

129.     Defendant NCS Healthcare of Indiana, Inc. is an Indiana corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Indiana, Inc. may be served through its registered agent, CSC, 251 East Ohio Street, Suite 500, Indianapolis, Indiana  46204.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

130.     Defendant NCS Healthcare of Indiana, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Indiana, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

131.     Defendant NCS Healthcare of Iowa, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Iowa, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May

15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

132.    Defendant NCS Healthcare of Kentucky, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Kentucky, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

133.    Defendant NCS Healthcare of Maryland, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Maryland, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

134.    Defendant NCS Healthcare of Massachusetts, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Massachusetts, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

135.    Defendant NCS Healthcare of Michigan, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Michigan, Inc. may be served through its registered agent, CSC,

421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

136.    Defendant NCS Healthcare of Minnesota, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Minnesota, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

137.    Defendant NCS Healthcare of Missouri, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Missouri, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

138.    Defendant NCS Healthcare of New Hampshire, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of New Hampshire, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

139.    Defendant NCS Healthcare of New Jersey, Inc. is a New Jersey corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-

term care patients.  NCS Healthcare of New Jersey, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

140.    Defendant NCS Healthcare of North Carolina, Inc. is a North Carolina corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of North Carolina, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

141.    Defendant NCS Healthcare of Ohio, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Ohio, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

142.    Defendant NCS Healthcare of Oklahoma, Inc. is an Oklahoma corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Oklahoma, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

143.     Defendant NCS Healthcare of Oregon, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Oregon, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

144.     Defendant NCS Healthcare of Pennsylvania, Inc. is a Pennsylvania corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Pennsylvania, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

145.     Defendant NCS Healthcare of Rhode Island, LLC is a Rhode Island limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Rhode Island, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

146.     Defendant NCS Healthcare of Tennessee, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Tennessee, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15,

2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

147.     Defendant NCS Healthcare of Texas, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Texas, Inc. may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

148.     Defendant NCS Healthcare of Vermont, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Vermont, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

149.     Defendant NCS Healthcare of Washington, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Healthcare of Washington, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

150.     Defendant NCS Services, Inc. is an Ohio corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NCS Services, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort,

Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

151.     Defendant NeighborCare-ORCA, LLC is an Oregon corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NeighborCare-ORCA, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

152.     Defendant NeighborCare Holdings, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NeighborCare Holdings, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

153.     Defendant NeighborCare Infusion Services, Inc. a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. NeighborCare Infusion Services, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

154.     Defendant NeighborCare of New Hampshire, LLC is a New Hampshire limited liability corporation whose principal business is the provision of pharmaceuticals and

pharmaceutical services to long-term care patients.  NeighborCare of New Hampshire, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

155.     Defendant NeighborCare of Northern California, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare of Northern California, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

156.     Defendant NeighborCare of Ohio, LLC is an Ohio limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare of Ohio, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

157.     Defendant NeighborCare of Oklahoma, Inc. is an Oklahoma corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare of Oklahoma, Inc. may be served through its registered agent, CSC, 115 Southwest 89th Street, Oklahoma City, Oklahoma  73139.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

43

158.    Defendant NeighborCare of Wisconsin, LLC is a Wisconsin limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare of Wisconsin, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

159.    Defendant NeighborCare Pharmacies, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare Pharmacies, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

160.    Defendant NeighborCare Pharmacy of Oklahoma, LLC is an Oklahoma limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare of Oklahoma, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

161.    Defendant NeighborCare Pharmacy of Virginia, LLC is a Virginia limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare Pharmacy of Virginia, LLC may be served through its registered agent, CSC, 11 South 12th, P.O. Box 1463, Richmond, Virginia  23218.  This Defendant waived service on May 15, 2013 through its attorney of record,

Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

162.     Defendant NeighborCare Repackaging, Inc. is a Maryland corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare Repackaging, Inc. may be served through its registered agent, CSC, 80 State Street, Albany, New York  12207.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

163.     Defendant NeighborCare-Medisco, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare-Medisco, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

164.     Defendant NGC Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  NeighborCare of Oklahoma, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

165.     Defendant OCR Services Corporation is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  OCR Services Corporation may be served through its registered agent, CSC, 421 West

Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

166.     Defendant OCR-RA Acquisition, LLC d/b/a Long Term Care Pharmacy is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. OCR-RA Acquisition, LLC d/b/a Long Term Care Pharmacy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

167.     Defendant OFL Corp. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. OFL Corp. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

168.     Defendant Omnibill Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnibill Services, LLC. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

169.     Defendant Omnicare Air Transport Services, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-

term care patients.  Omnicare Air Transport Services, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

170.    Defendant Omnicare Headquarters LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Headquarters LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

171.    Defendant Omnicare Holding Company is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Holding Company may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

172.    Defendant Omnicare Indiana Partnership Holding Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Indiana Partnership Holding Company, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

173.     Defendant Omnicare Management Company is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Management Company may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

174.     Defendant Omnicare of Nevada, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare of Nevada, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

175.     Defendant Omnicare Pennsylvania Med Supply, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pennsylvania Med Supply, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

176.     Defendant Omnicare Pharmacies of Pennsylvania East, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacies of Pennsylvania East, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky

40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

177.    Defendant Omnicare Pharmacies of Pennsylvania West, LLC is a Pennsylvania limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare Pharmacies of Pennsylvania West, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

178.    Defendant Omnicare Pharmacies of the Great Plains Holding Company is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare Pharmacies of the Great Plains Holding Company may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

179.    Defendant Omnicare Pharmacy of Colorado, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients. Omnicare Pharmacy of Colorado, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601. This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

180.    Defendant Omnicare Pharmacy of Maine LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical

services to long-term care patients.  Omnicare Pharmacy of Maine LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

181.     Defendant Omnicare Pharmacy of Nebraska, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Nebraska, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

182.     Defendant Omnicare Pharmacy of North Carolina, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of North Carolina, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

183.     Defendant Omnicare Pharmacy of Pueblo, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Pueblo, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

184.     Defendant Omnicare Pharmacy of Tennessee, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of Tennessee, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

185.     Defendant Omnicare Pharmacy of the Midwest, LLC f/k/a Freed's is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Pharmacy of the Midwest, LLC f/k/a Freed's may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

186.     Defendant Omnicare Purchasing Company General Partner, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Purchasing Company General Partner, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

187.     Defendant Omnicare Purchasing Company Limited Partner, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Purchasing Company Limited Partner, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This

51

Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

188.    Defendant Omnicare Purchasing Company LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Purchasing Company LP may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

189.    Defendant Omnicare Respiratory Services, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Respiratory Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

190.    Defendant Omnicare Senior Health Outcomes, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare Senior Health Outcomes, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

191.    Defendant Omnicare.com, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Omnicare.com, Inc. may be served through its registered agent, CSC, 421 West Main

Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

192.    Defendant PBM Plus Mail Service Pharmacy, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PBM Plus Mail Service Pharmacy, LLC may be served through its registered agent, CSC, 211 E. 7th Street, Suite 620, Austin, Texas  78701-3218.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

193.    Defendant PCI Acquisition, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PCI Acquisition, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

194.    Defendant Pharmacy Holding #1, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmacy Holding #1, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

195.    Defendant Pharmacy Holding #2, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-

term care patients.  Pharmacy Holding #2, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

196.    Defendant Pharmasource Healthcare, Inc. is a Georgia corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Pharmasource Healthcare, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

197.    Defendant PP Acquisition Company, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PP Acquisition Company, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

198.    Defendant PPS-GBMC Joint Venture LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PPS-GBMC Joint Venture LLC may be served through its registered agent, Stanton Ades, 7 East Lee Street, Baltimore, Maryland  21202.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

199.     Defendant PPS-St. Agnes Joint Venture, LLC is a Maryland limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PPS-St. Agnes Joint Venture, LLC may be served through its registered agent, CSC – Lawyers Incorporation Service Company, 7 St. Paul Street, Suite 1660, Baltimore, Maryland  21202.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

200.     Defendant PRN Pharmaceutical Services, LP is a Delaware limited partnership whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PRN Pharmaceutical Services, LP may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

201.     Defendant Professional Pharmacy Services, Inc. is a California corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Professional Pharmacy Services, Inc. may be served through its registered agent, Denise Welvang, 11650 Riverside Drive, Suite 6, North Hollywood, California  91602.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

202.     Defendant PSI Arkansas Acquisition, LLC is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  PSI Arkansas Acquisition, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived

service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

203.     Defendant RXC Acquisition Company is a Delaware company whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  RXC Acquisition Company may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

204.     Defendant SHC Acquisition Company, LLC d/b/a Synergy is a Delaware limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  SHC Acquisition Company, LLC d/b/a Synergy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

205.     Defendant Shore Pharmaceutical Providers, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Shore Pharmaceutical Providers, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

206.     Defendant Southside Apothecary, Inc. is a New York corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care

patients.  Southside Apothecary, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

207.     Defendant Specialized Patient Care Services, Inc. is an Alabama corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialized Patient Care Services, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

208.     Defendant Specialized Pharmacy Services, LLC is a Michigan limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialized Pharmacy Services, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

209.     Defendant Specialty Carts, LLC is a Missouri limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Specialty Carts, LLC may be served through its registered agent, CSC, 221 Bolivar Street, Jefferson City, Missouri  65101.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

210.    Defendant Sterling Healthcare Services, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Sterling Healthcare Services, Inc. may be served through its registered agent, Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana  70802.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

211.    Defendant Superior Care Pharmacy, Inc. is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Superior Care Pharmacy, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

212.    Defendant TCPI Acquisition Corp. d/b/a Total Care Pharmacy is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  TCPI Acquisition Corp. d/b/a Total Care Pharmacy may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

213.    Defendant The Medicine Centre, LLC is a Connecticut limited liability corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  The Medicine Centre, LLC may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived

service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

214.     Defendant THG Acquisition Corp. d/b/a Tandem Health Group is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  THG Acquisition Corp. d/b/a Tandem Health Group may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

215.     Defendant UC Acquisition Corp. d/b/a UniCare is a Delaware corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  UC Acquisition Corp. d/b/a UniCare may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

216.     Defendant Uni-Care Health Services of Maine, Inc. is a New Hampshire corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Uni-Care Health Services of Maine, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky 40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

217.     Defendant Value Pharmacy, Inc. is a Massachusetts corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Value Pharmacy, Inc. may be served through its registered agent, CSC, 421 West Main

Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

218.    Defendant Winslow's Pharmacy, Inc. is a New Jersey corporation whose principal business is the provision of pharmaceuticals and pharmaceutical services to long-term care patients.  Winslow's Pharmacy, Inc. may be served through its registered agent, CSC, 421 West Main Street, Frankfort, Kentucky  40601.  This Defendant waived service on May 15, 2013 through its attorney of record, Eric A. Dubelier of Reed Smith LLP, 1301 K. Street NW, Suite 1100-East Tower, Washington, DC 20005.

219.    The defendants named in paragraphs 7 through 218 are hereinafter referred to collectively as "Omnicare."

### III.    RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

220.    Any and all acts alleged herein to have been committed by any or all of the Defendants were committed by said Defendants' officers, directors, employees, representatives or agents who at all times acted on behalf of their respective Defendant(s) for the purpose of benefiting the Defendants and within the course and scope of their employment.

221.    The Defendants identified in paragraphs 7 through 218 are related entities sharing common employees, offices and business names such that they are joint and severally liable under legal theories of respondeat superior.  Further, the past, present, and continuing relations and dealings by and between these related entities are so inextricably intertwined that for purposes of this suit, some or all of them can and should be considered as a single entity at law and equity.

### IV.    JURISDICTION AND VENUE

222.     Jurisdiction and venue are proper in this Court pursuant to the False Claims Act (31 U.S.C. § 3732(a)) because Relator's claims seek remedies on behalf of the United States for multiple violations of 31 U.S.C. § 3729 in the United States by all or any one of the defendants, some of which occurred in the Southern District of Texas, and because Omnicare, Inc. and certain other defendants transact other business within the Southern District of Texas.

223.     All defendants are subject to the general and specific personal jurisdiction of this Court.

## V.     STATUTORY AND REGULATORY BACKGROUND

### A.     Federal Anti-Kickback Statute

224.     The Medicare-Medicaid Anti-Fraud and Abuse Amendments, known as the Medicare Anti-Kickback Statute ("Anti-Kickback Statute"), 42 U.S.C. § 1320a-7b(b) (2000), make it illegal for an individual knowingly and willfully to offer or pay remuneration in cash or in kind, directly or indirectly to induce a person to purchase a good or service that is reimbursed by a federal healthcare program.  42 U.S.C. § 1320a-7b(b)(2).  Violation of the Anti-Kickback statute is a felony and is punishable by a fine of up to $25,000 and up to 5 years' imprisonment.  *Id.*  Those who violate the Anti-Kickback Statute also are subject to exclusion from participation in federal healthcare programs and civil monetary penalties of up to $50,000 per violation and up to three times the amount of remuneration paid.  42 U.S.C. § 1320a-7(b)(7) (2000); *id.* § 1320a-7a(a)(7) (2000).

225.     "Remuneration" includes anything of value offered or paid in return for purchasing, ordering, or arranging for or recommending the purchase or order of any item reimbursable by a federal or state healthcare program.  *See* Office of Inspector General Compliance Program Guidance for Pharmaceutical Manufacturers, 68 Fed. Reg. 23731, 23734,

23737 (Dep't of Health & Human Serv. May 5, 2003); Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti-Kickback Provisions, 56 Fed. Reg. 35,952 (Dep't of Health & Human Serv. July 29, 1991) (to be codified at 42 C.F.R. pt. 1001). Pursuant to the Patient Protection and Affordable Care Act, a violation of the Anti-Kickback Statute is a false or fraudulent claim for purposes of the False Claims Act. Pub. L. No. 111-148, § 6402(f)(1), 124 Stat. 119 (2010), codified at 42 U.S.C. § 1320a-7b(g).

226.    The purpose of the Anti-Kickback Statute is to prohibit such remuneration in order to secure proper medical treatment and referrals and to limit unnecessary treatment, services, or goods that are based not on the needs of the patient but on improper incentives given to others, thereby limiting the patient's right to choose proper medical care and services. *See* Medicare and Medicaid Programs: Fraud and Abuse OIG Anti-Kickback Provisions, 54 Fed. Reg. 3088, 3089 (Dep't of Health & Human Serv. proposed Jan. 23, 1989), codified at 42 C.F.R. pt. 1001 ("[I]t is necessary for the fiscal integrity of the Medicare and Medicaid programs to assure that physicians exercise sound, objective medical judgment when controlling admittance [of new drugs and medical devices] to . . ." the medical marketplace).

227.    Paying kickbacks taints an entire prescription, regardless of the medical propriety of its use. The kickback inherently interferes with the doctor-patient relationship and creates a conflict of interest, potentially putting the patient's health at risk. Any defendant convicted under the statute is automatically barred from participating in federal and federally-funded healthcare programs. 42 U.S.C. § 1320a7(a)(1).

228.    According to the OIG, paying kickbacks raises quality and cost concerns. *See* Publication of OIG Special Advisory Bulletin on Offering Gifts and Other Inducements to Beneficiaries, 67 Fed. Reg. 55,855, 55,856 (Aug. 30, 2002). Providers may have an economic

incentive to offset the additional costs attributable to the kickback by providing unnecessary services or substituting cheaper or poorer quality goods or services. *Id.* Moreover, the use of kickbacks to induce business favors larger providers with greater financial resources for such activities, which puts smaller providers and businesses at a disadvantage. *Id.*

### B. Medicare

#### i. Medicare Part A

229. Medicare was established by title XVIII of the Social Security Act of 1965, 42 U.S.C. § 1395 *et seq.* (2000). It provides federal health insurance for approximately 44 million people who are aged or disabled. Medicare Part A covers inpatient care, including pharmaceuticals, in hospitals, skilled nursing facility, hospice, and home health care. *See* 42 U.S.C. § 1395d (2000). Under Medicare Part A, skilled nursing facility care is covered only for up to 100 days. *See id.* Medicare Part A does not cover long-term or "custodial" care.

230. CMS pays facilities prospectively for the care of their Medicare Part A patients based on assessment of patients' health and likely costs. For instance, skilled nursing facilities categorize each of their patients into one of several dozens of classifications and receive prospective per diem payments based on that Minimum Data Set (MDS) comprehensive assessment. *See, e.g.*, Centers for Medicare and Medicaid Services, Department of Health and Human Services, Payment System Fact Sheet Series, Skilled Nursing Facility Prospective Payment System (Oct. 2012), http://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/snfprospaymtfctsht.pdf.

#### ii. Medicare Part D

231. Medicare Part D provides outpatient prescription drug coverage to Medicare beneficiaries. *See* 42 U.S.C. § 1395w-101 (2006). Effective January 1, 2006, it was enacted as

part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.  Part D specifically excludes drugs for beneficiaries during Part A skilled nursing facility stays.  *See id.* § 1395w-102(e)(2)(B).  Part D also excludes certain drugs for which Medicaid payment is optional, including drugs used to treat weight gain, barbiturates, and over-the-counter medications.  *See id.* §§ 1395w-102(e)(2)(A), 1396r(d)(2) (2006).

232.     In order to receive prescription drug benefits, a Medicare beneficiary must enroll in a Prescription Drug Plan ("PDP"), which is administered by a private company, or "sponsor." Dual eligibles[1]—those who are eligible for both Medicare and Medicaid—are automatically enrolled in a PDP if they fail to choose one themselves, but they are free to decline enrollment or enroll in another PDP at any time.   42 C.F.R. §§ 423.34–.38 (2008).   Part D sponsors independently negotiate reimbursement and prices with drug manufacturers and pharmacies, including long-term care pharmacy providers like Omnicare.

233.     Medicare beneficiaries, including skilled nursing facility residents, are guaranteed the right to obtain benefits from any qualified provider.  For skilled nursing facility residents, this means that they have the right to choose a PDP, but not necessarily the right to choose a pharmacy. Memorandum from Thomas E. Hamilton, Director, Survey and Certification Group, Center for Medicaid and State Operations, Centers for Medicare & Medicaid Services, Department of Health & Human Services, to State Survey Agency Directors 2, No. S&C-06-16 (May 11, 2006).

234.     Most PDPs are subject to a deductible and require beneficiaries to pay a premium and coinsurance or copayments.  In addition, there is a coverage gap, or "donut hole," during which beneficiaries have to pay all costs for prescription drugs when payments have reached a certain amount, but only up to a limit.  Dual eligibles—those who are eligible for both Medicare

---

[1] Most skilled nursing facility residents are dual eligibles.

and Medicaid—who are institutionalized in skilled nursing facilities are not responsible for any out-of-pocket costs during the coverage gap or any premiums, deductibles, or copayments during their skilled nursing facility stays.

235.     Although Part D is a component of Medicare, each of the fifty states and the District of Columbia are required to make a contribution to the United States Government to defray a portion of the cost of Part D for beneficiaries whose Medicaid drug coverage has been assumed by Part D.  42 C.F.R. § 423.910(a) (2008).

### iii.     Medicare Certification

236.     To participate in Medicare, providers such as pharmacies, Omnicare included, and pharmacists, must first sign enrollment agreements.  These agreements require providers to certify that they understand that "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with . . . the Federal anti-kickback statute."

237.     Furthermore, Medicare and Medicaid require skilled nursing facilities to submit regular, detailed cost reports accounting for their assets, transactions, and costs.  Skilled nursing facilities use HCFA form 2540-96 or 2540-10 to submit their cost reports.  The forms contain the following certification language:

> MISREPRESENTATION OR FALSIFICATION OF ANY INFORMATION CONTAINED IN THIS COST REPORT MAY BE PUNISHABLE BY CRIMINAL, CIVIL, AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT UNDER FEDERAL LAW. FURTHERMORE, IF SERVICES IDENTIFIED IN THIS REPORT WERE PROVIDED OR PROCURED THROUGH THE PAYMENT DIRECTLY OR INDIRECTLY OF A KICKBACK OR WERE OTHERWISE ILLEGAL, CRIMINAL, CIVIL AND ADMINISTRATIVE ACTION, FINE AND/OR IMPRISONMENT MAY RESULT.
>
> I hereby certify that I have read the above statement and that I have examined the accompanying electronically filed or manually submitted cost report and the Balance Sheet and Statement of Revenue and Expenses prepared by [provider name and number] for the cost reporting period  beginning [date] and ending [date] and that to the best of my knowledge and belief, it is a true, correct and

complete statement prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

Form 2450-96, furthermore, expressly states the consequences of a failure or refusal to certify:

This report is required by law (42 U.S.C. § 1395g; 42 C.F.R. 413.20(b)).  Failure to report can result in all interim payments made since the beginning of the cost reporting period being deemed overpayments (42U.S.C. § 1395g).

### C.     Medicaid

238.     Medicaid was established by title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 *et seq.* (2000).  It is a joint federal-state program that provides healthcare benefits to over 53 million people who belong to certain groups, particularly the poor and disabled.

239.     Within broad national guidelines established by federal statutes, regulations, and policies, each state: (1) establishes its own eligibility standards; (2) determines the type, amount, duration, and scope of services; (3) sets the rate of payment for services; and (4) administers its own program.  States generally have broad discretion to determine which groups their Medicaid programs will cover and the financial criteria for Medicaid eligibility.  To be eligible for federal funds, however, states are required to provide Medicaid coverage for certain individuals who receive federally assisted income-maintenance payments, as well as for related groups who do not receive cash payments.  In general, state Medicaid programs are required to cover nursing facility and home health care for eligible individuals age twenty-one and older.  States may receive federal matching funds to provide certain optional services, including prescription drugs.

240.     Nineteen percent of Medicaid recipients are dual eligibles.  Medicare beneficiaries who have low incomes and limited resources may receive assistance from the

Medicaid Program.  Because Medicaid is a "payer of last resort," their Medicare coverage is supplemented by services available under their state's Medicaid Program.

241.    Pharmacies such as Omnicare and pharmacists make express and/or implied certifications in their state Medicaid provider enrollment forms that they will comply with all federal and state laws applicable to Medicaid.  The following are representative samples of the types of certifications health care providers make when entering Medicaid Provider Agreements with the State Medicaid programs.  While state Medicaid enrollment agreements are continually revised and updated, the certifications within these agreements, as described below, generally survive in similar form from revision to revision:

242.    When a provider enters into the "Medi-Cal Provider Agreement" with the State of California's Health and Human Services Agency, the provider agrees under the Provider Attestation section that "compliance with the provisions of this agreement is a condition precedent to payment to the provider."  Medi-Cal Provider Agreement, Item 40 Provider Attestation, at 8, (available on Medi-Cal's website and incorporated herein).  The agreement's provisions include the provider's obligation to comply with the California Department of Health Care Services' rules, regulations and provisions found in Chapters 7 and 8 of the Welfare and Institutions Code as well as all federal laws and regulations governing and regulating Medicaid providers.  *Id.* at 1, Item 2. Furthermore, the provider agrees not to engage in or commit fraud or abuse including fraud under applicable federal or state laws and abuse that would result in unnecessary costs to health care programs financed in whole or in part by the Federal Government or any state or local agency in California or any other state, or practices that are inconsistent with sound medical practices that result in reimbursement from health care programs financed in whole or in part by the Federal Government or any state or local agency in California or any other state.  *Id.* at 3, Item 15.  Under

Item 19 - Prohibition of Rebate, Refund or Discount, the provider agrees "not to offer, furnish or deliver any rebate, refund, preference … or other gratuitous consideration in connection with the provision of health care services … or to take any other action or receive any other benefit prohibited by state or federal law."  *Id*. at 4, Item 19.  Finally, the provider agrees to comply with the Welfare and Institutions Code billing and claims requirements, its implementing regulations and the provider manual.  *Id*. at 4, Item 24.

243.    The Colorado Medicaid Assistance Program "Provider Participation Agreement" requires the provider to "comply with applicable provisions of the Social Security Act, as amended; federal or state laws, regulations, and guidelines and Department rules."  Provider Participation Agreement, Item A – Provider Participation, at 15, (available at Colorado Medicaid website and incorporated by reference herein).  Under Item K, the provider and person signing the claims or submitting electronic claims understand that "[T]he knowing submission of false claims or causing another to submit false claims may subject the persons responsible to criminal charges, civil penalties, and/or forfeitures."  *Id*. at 16.  Moreover, the "Provider Signature Page" states that by executing Colorado's Provider Agreement, the provider understands "that any false claims, statement, documents, or concealment of material fact may be … prosecuted under applicable federal and state laws."  *Id*. at 20.

244.    The State of Delaware requires providers to enter into a "Contract for Items or Services Delivered to Delaware Assistance Program Eligibles in the Department of Health and Social Services" with the Department of Health and Social Services, Division of Medicaid and Medical Assistance, Delaware Medical Assistance Program ("DMAP").  By signing the contract, the provider agrees to abide by and comply with DMAP's rules, regulations, policies and procedures as well as the terms of the Social Security Act.  Contract for Items or Services

Delivered to Delaware Assistance Program Eligibles in the Department of Health and Social Services, Section 1 Applicable Laws and Regulations, at 1, (available at the Delaware Medicaid website and incorporated by reference herein).  Furthermore, the provider's submission of any claim for payment will constitute certification by the provider that the items and services for which the claim for payment is submitted were in compliance with the DMAP rules, regulations, and policies, including certification that the services were actually provided and medically necessary. Id. at 2, Section 3 Payment for Items or Services.

245.    A provider who signs the District of Columbia's "Department of Health Medical Assistance Administration Medicaid Provider Agreement" agrees "to satisfy all requirements of the Social Security Act, as amended, and be in full compliance with the standards prescribed by Federal and State standards."  Department of Health Medical Assistance Administration Medicaid Provider Agreement, General Provisions C, at 20 (available at the District of Columbia Medicaid website and incorporated by reference herein).

246.    The State of Florida's "Medicaid Provider Enrollment Application" must be completed by any person or entity desiring to receive payment for medical, medical-related, and waiver-related services provided to Medicaid recipients.  Under Section VII – Certification, of the Application, in order to be eligible to receive direct or indirect payments for services rendered to Florida Medicaid Program recipients, a provider must certify that the provider understands "that false claims, statements, documents, or concealment of material facts may be prosecuted under applicable federal and state laws."  Florida Medicaid Provider Enrollment Application, Section VII Certification, at 9 (available at the Florida Medicaid website and incorporated herein). Furthermore, Section 409.907 of Chapter 409, Social and Economic Assistance of the Florida Statutes, which governs the Florida Medicaid provider agreements, provides that an individual or

entity with a provider agreement in effect will only receive payment for services rendered to Medicaid recipients, if that provider is "performing services or supplying the goods in accordance with federal, state and local laws . . . ." FLA. STAT. § 409.907.

247.     In Hawaii, a health care provider signs the "Hawaii State Medicaid Program Provider Agreement and Condition of Participation" and agrees to abide by the applicable provisions of the Hawaii State Medicaid Program as set forth in the Hawaii Administrative Rules, Title 17, Subtitle 12 and the applicable provisions of the Code of Federal Regulations relating to the Medical Assistance Program.   Hawaii State Medicaid Program Provider Agreement and Condition of Participation, Section 1, at 5 (available at the Hawaii Medicaid website and incorporated herein).   Additionally, under Part C of the agreement, the provider understands that the provider may be suspended or terminated from participation in the Medicaid program for violations of the provisions of H.A.R. Subtitle 12, Chapter 17-1704 pertaining to Provider Fraud and Chapter 17-1736 pertaining to Provider Provisions.   *Id.* (Part C), at p. 7.

248.     Under the Illinois "Agreement for Participation Illinois Medical Assistance Program," a provider who wishes to submit claims for services rendered to eligible Healthcare and Family Services clients agrees, on a continuing basis, to comply with "Federal standards specified in Title XIX and XXI of the Social Security Act and with all other applicable Federal and State laws and regulations."   State of Illinois Department of Healthcare and Family Services Agreement for Participation Illinois Medical Assistance Program, Item 3, at 1 (available at the Illinois Medicaid website and incorporated herein).   Moreover, the provider agrees "to be fully liable for the truth, accuracy and completeness of all claims submitted … to the Department for payment."   *Id.* at 1, Item 6.   Additionally, the Provider acknowledges that all services provided will be in compliance with such laws and the applicable provisions of the Illinois Healthcare and Family

Services Medical Assistance Program handbooks and that such compliance is "a condition of payment for all claims submitted." *Id*. The provider further agrees that "[A]ny submittal of false or fraudulent claim or claims or any concealment of a material fact may be prosecuted under applicable Federal and State laws." *Id*.

249.     When signing the "Indiana Health Coverage Programs Provider Agreement," a provider agrees "to comply with all federal and state statutes and regulations pertaining to the Indiana Health Coverage Programs, as they may be amended from time to time." IHCP Provider Agreement, at 17, Item 1 (available at the Indiana Medicaid website and incorporated herein). The provider also understands that "the submission of false claims, statements, and documents or the concealment of material fact may be prosecuted under the applicable federal and/or state laws." *Id*. at 19, Item 143. Moreover the provider agrees "[A]s a condition of payment…to abide by and comply with all the stipulations, conditions and terms set forth" in the agreement. *Id.* at p. 20. Furthermore, Indiana regulations state that "A provider who accepts payment of a claim submitted under the Medicaid program is considered to have agreed to comply with the statutes and rules governing the program." IND. CODE § 12-15-21-1 (2011).

250.     The Louisiana Medical Assistance Program Integrity Law (MAPIL), codified in LSA-RS-46:437.1 – 46:440.3, statutorily establishes that the Louisiana Medicaid PE-50 Provider Enrollment Agreement is a contract between the provider and the Louisiana Department of Health and Hospitals. The MAPIL provides that "the department shall make payments from the medical assistance funds…to any person who has a provider agreement with the department and who agrees to comply with all federal and state laws and rules pertaining to the medical assistance programs." LSA-RS-46.437.11A. Additionally, by signing the "PE-50 Addendum-Provider Agreement," the provider certifies that the provider understands all claims paid will be from

Federal and State Funds, and any false claims, statements or documents or concealment of fact may be prosecuted under applicable Federal and State laws.  PE-50 Addendum – Provider Agreement, at 2, Items 21 and 23 (available at the Louisiana Medicaid website and incorporated herein).

251.    In Massachusetts, pharmacies sign agreements with MassHealth, the Massachusetts Medicaid program.  Massachusetts regulations require "all pharmacies participating in MassHealth [to] comply with the regulations governing MassHealth, including but not limited to MassHealth regulations set forth in 130 CMR 406.00 and 450.00."   130 CMR 406.401. Massachusetts regulations also state that Mass Health will pay for physician services provided to members, "subject to the restrictions and limitations described in the MassHealth regulations." 130 CMR 433.402.  MassHealth regulation, 130 CMR 450.261, requires all providers to comply "with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, specifically including but not limited to 42 U.S.C. § 1320a-7b [the Federal Anti-Kickback Statute]."

252.    A provider agreeing to the Minnesota Health Care Program's "Provider Agreement" agrees to "comply with all federal and state statutes and rules relating to the delivery of services to individuals and to the submission of claims for such services."  Minnesota Health Care Programs Provider Agreement, at 1, Item 2, (available at the Minnesota Medicaid website and incorporated herein).

253.    Under the Montana "Medicaid Provider Enrollment Application," the provider, "IN CONSIDERATION OF MEDICAID PAYMENTS MADE FOR APPROPRIATE MEDICALLY NECESSARY SERVICES RENDERED TO THE ELIGIBLE CLAIMANTS . . . ." agrees to comply with "all applicable laws, rules and written policies pertaining to the Montana

Medicaid Program including but not limited to Title XIX of the Social Security Act, the Code of Federal Regulations, Montana Codes Annotated, Administrative Rules of Montana and written Department of Public Health and Human Services policies." Montana Medicaid Provider Enrollment Application, at 4 (available at the Montana Medicaid website and incorporated herein). Furthermore, the provider understands "THAT PAYMENTS OF CLAIMS WILL BE FROM FEDERAL AND STATE FUNDS AND THAT ANY FALSIFICATION OR CONCEALMENT OF A MATERIAL FACT MAY BE PROSECUTED UNDER FEDERAL AND STATE LAW." Id. at 5. Moreover, the Montana regulations require providers to "comply with all applicable state and federal statutes, rules and regulations, including but not limited to federal regulations and statutes found in Title 42 of the Code of Federal Regulations and the United States Code governing the Medicaid Program and all applicable Montana statutes and rules governing licensure and certification." MONT. ADMIN. R. 37.85.401 (2011).

254. The Magellan Medicaid Administration administers the Nevada Medicaid program on behalf of the state and provides the Provider Enrollment Agreement. Under this agreement the provider is "responsible for the presentation of true, accurate and complete information on all invoices/claims submitted to the Magellan Medicaid Administration." Magellan Medicaid Administration Provider Enrollment Application, Declaration – For all Providers, at 6 (available at the Nevada Medicaid website and incorporated herein). Additionally the provider "understands that payment . . . of those claims will be from Federal and State funds and that false claims, statements, documents, or concealment of material facts may be prosecuted under applicable Federal and State laws." Id. Moreover, the provider also enters the "Nevada Medicaid and Nevada Check Up Provider Contract" with the State of Nevada Division of Health Care Financing and Policy, wherein the Division agrees to only provide payment for services that are

"timely claimed, and actually and properly rendered by Provider in accordance with federal and state law and the state policies and procedures set forth in the Medicaid Services Manual, Nevada Check Up Manual and Nevada Medicaid Billing Manual.  Other claims are not properly payable Division claims."  Nevada Medicaid and Nevada Check Up Provider Contract, Section 2 – Reimbursement, at 2.  The provider is made responsible for the validity and accuracy of its claims. Id.

255.     In New Hampshire, the provider signs the "New Hampshire Medicaid Program Provider Enrollment Agreement" and certifies to "abide by all rules, regulations, billing manuals, and bulletins promulgated by the Department pertaining to the provision of care or services under NH Title XIX and the claiming of payments for those services."  New Hampshire Medicaid Program Provider Enrollment Agreement, at 1, (available at the New Hampshire Medicaid website and incorporated herein).

256.     A provider, when signing the New Jersey Department of Health and Senior Services' "Provider Agreement Between New Jersey Department of Health and Senior Service and Provider," agrees "to comply with all applicable State and Federal Medicaid laws and policies, and rules and regulations promulgated pursuant thereto …." and agrees "to comply with Section 1909 of P.L. 92-603, Section 242(c) which makes it a crime for persons found guilty of making any false statement or representation of a material fact in order to receive any benefit or payment under the Medicaid Assistance program…."  Provider Agreement Between New Jersey Department of Health and Senior Service and Provider, at 1, Items 1 and 5 (available at the New Jersey Medicaid website and incorporated herein).

257.     When a provider signs the New Mexico "Medical Assistance Division Provider Participation Agreement, the provider "AGREES TO ABIDE BY AND BE HELD TO ALL

FEDERAL, STATE, AND LOCAL LAWS, RULES AND REGULATIONS, INCLUDING, BUT

NOT LIMITED TO THOSE PERTAINING TO MEDICAID AND THOSE STATED HEREIN."

State of New Mexico Human Services Department Medical Assistance Division Provider

Participation Agreement, at 6 (available at the New Mexico Medicaid website and incorporated

herein).  Furthermore, the New Mexico regulations state that "A provider who furnishes services to

a Medicaid eligible recipient agrees to comply with all federal and state laws, regulations, and

executive orders relevant to the provision of services."  N.M. CODE R. § 8.302.1.11 (2011).

258.    Under the New York State Medicaid program's "Physician Request for

Enrollment," a provider agrees to "comply with the rules, regulations, and official directives of the

Department . . . ."  New York State Medicaid Physician Request for Enrollment, at 5 (available at

the New York Medicaid website and incorporated herein).

259.    Under North Carolina's "Provider Administrative Participation Agreement," a

provider may submit claims to the state Medicaid program either through electronic or paper

claims submission process.  As consideration for the right to submit paperless claims, the provider

agrees to "abide by all Federal and State statutes, rules, regulations and policies … of the Medicaid

program . . . ."  By submitting electronic claims, the provider agrees that "[A]ny false statement,

claims or concealment of or failure to disclose a material fact may be prosecuted under applicable

federal and/or state law (P.L. 95-142a and N.C. G.S. 108A-63) . . . ."  North Carolina Medicaid

Provider Enrollment Agreement, Electronic Claims Submission (ECS) Agreement, at 1, Items 1

and 2 (available at the North Carolina Medicaid website and incorporated herein).  Additionally,

the provider agrees when filing non-electronic Medicaid claims, that "payment of claims will be

from federal, state and local tax funds and any false claims, statements, or documents or

concealment of a material fact may be prosecuted under applicable Federal and State laws . . . ."
*Id.*

260.     The provider entering into the "State of Rhode Island Executive Office of Health and Human Services Provider Agreement Form" agrees to "follow all laws, rules, regulations, certification standards, policies and amendments including but not limited to the False Claims Act, and HIPAA, that govern the Rhode Island Medical Assistance Program as specified by the Federal Government and the State of Rhode Island."  State of Rhode Island Executive Office of Health and Human Services Provider Agreement Form, at 1, Item 1 (available at the Rhode Island Medicaid website and incorporated herein).

261.     In Tennessee, a provider enters the State of Tennessee's "Department of Finance and Administration Provider Participation Agreement Medicaid/TennCare Title XIX Program" in order to participate in the Tennessee Medicaid health care program.  By signing the agreement, the applicant agrees to, among other things, "comply with all contractual terms and Medicaid policies as outlined in Federal and State rules and regulations and Medicaid provider manuals and bulletins."  State of Tennessee The Department of Finance and Administration Provider Participation Agreement Medicaid/TennCare Title XIX Program, at 1, Item 7 (available at the Tennessee Medicaid website and incorporated herein).

262.     In the State of Texas, Medicaid Provider Enrollment Application providers certify that "concealment of a material fact, or pertinent omissions may constitute fraud and may be prosecuted under applicable federal and state law."  Texas Medicaid Provider Enrollment Application, at p. 6.5 (available at the Texas Medicaid website and incorporated herein). Providers further certify that "any falsification, omission, or misrepresentation in connection with...claims filed may result in all paid services declared as an overpayment and subject to

recoupment." *Id*.  Providers also certify that they will comply with the requirements of the enrollment agreement, including "federal laws and regulations relating to fraud, abuse and waste in health care and the Medicaid program." *Id*. at pp. 6.2, 6.5.  The Texas Medicaid enrollment agreement requires signatories to notify the State of Texas if they fall out of compliance with any of their obligations.  *Id*.

263.    Providers of medical services in the Commonwealth of Virginia, including physicians and pharmacists, must also sign a Participation Agreement.  This agreement requires the provider to certify that when participating in the Virginia Medical Assistance Program the "provider agrees to comply with all applicable state and federal laws," including the Health Insurance Portability and Accountability of Act of 1996 and all administrative policies and procedures of the Virginia Medicaid Assistance Program.  Commonwealth of Virginia Department of Medical Assistance Services Medical Assistance Program Participation Agreement, at 1, Item 8 (available at the Virginia Medicaid website and incorporated herein).

264.    When a provider enters into the State of Washington's "Core Provider Agreement" with the state's Department of Social and Health Services, the provider agrees under the Certification section "to abide by . . . all applicable federal and state statutes, rules, and policies.  Core Provider Agreement, Section 15 Certification, at 3, hrsa.dshs.wa.gov/forms/documents/09_048.doc and incorporated herein."  The certification signature page states that federal regulations require contractors and bidders to sign and abide by the terms of the certification, without modification, in order to participate in certain transactions directly or indirectly involving federal funds.  *Id.* at 12.

265.    In Wisconsin, the "Provider Agreement" is a contract between a provider and the Wisconsin Department of Health Services that sets forth conditions of participation and

reimbursement. The provider's signature signifies acknowledgement that any statement or representation of a material fact made or caused to be made in the application or during the process "for a benefit or payment or made for the use in determining rights to such benefit or payment" that is false as defined by s.49.49(1) or (4m) of the Wisconsin statutes subjects the provider to criminal or other penalties." Wisconsin Medicaid Provider Agreement and Acknowledgement of Terms of Participation, at 3 (available at the Wisconsin Medicaid website and incorporated herein).

266.    In addition, every time they submit an electronic claim for reimbursement by the state Medicaid programs pursuant to an electronic claims submission agreement, physicians and laboratories also make express and/or implied certifications that they are complying with state and federal laws applicable to the Medicaid program and that there has not been a material omission. Florida Medicaid's provider enrollment form, for instance, includes a notice regarding the certifications to be contained in electronic submissions:

> Providers who choose to submit claims electronically, including pharmacies that use Point of Service (POS) devices, must be aware that payment of claims will be from federal and state funds and that any falsification or concealment of material fact may be prosecuted under Federal and State laws. Further, providers must understand and agree to the following:
> …
> - Abide by all Federal and State statutes, rules, regulations, and manuals governing the Florida Medicaid program.

Florida Medicaid Provider Enrollment Application, http://portal.flmmis.com/FLPublic/Portals/0/StaticContent/Public/Public%20Misc%20Files/December%202004%20App%20EDS%20Web%20Version%20062508.pdf, section 22, page 5 (*last visited* April 5. 2012).

267.     These certifications are "essentially identical" from state to state,[2] and their particulars are a matter of public record.  In *United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 434-35 (3d Cir. 2004), for example, the court explained how this process works in the pharmacy context in New Jersey:

> After a Medicaid-provider pharmacy has supplied a medication to a Medicaid patient, the pharmacy submits a claim to Medicaid. Medicaid then pays the pharmacy for the medication. Instructions for filing Medicaid claims are set forth in New Jersey Medicaid's Pharmacy Services Fiscal Agent Billing Supplement (FABS). FABS instructs provider pharmacies to submit Medicaid pharmacy claims on the MC-6 form. The MC-6 claim form contains a "Provider Certification" which the provider must sign: I certify that the services covered by this claim were personally rendered by me or under my direct supervision . . . and that the services covered by this claim and the amount charged thereof are in accordance with the regulations of the New Jersey Health Services Program; and that no part of the net amount payable under this claim has been paid; and that payment of such amount will be accepted as payment in full without additional charge to the patient or to others on his behalf . . . . I understand that . . . any false claims, statements or documents, or concealment of a material fact, may be prosecuted under applicable federal or State law, or both.

## VI.     FACTUAL ALLEGATIONS

### A.     Overview of Omnicare, Inc.

268.     Omnicare is the nation's largest pharmaceutical and pharmaceutical service providers for SNFs in the United States.  In 2005, Omnicare acquired rival NeighborCare, Inc., creating a company with approximately $6 billion in annual revenue, serving nearly 1.4 million long-term care beds.  Current estimates of Omnicare's share of the long-term care pharmacy market range from 50% to 85%, though not all Omnicare-owned pharmacies use the "Omnicare" name.  Omnicare provides pharmaceuticals, specialty unit-dose packaging, delivery, pharmacist consulting, infusion and respiratory therapy, and medical supplies to the long-term care facilities it

---

[2] *See* Common Opposition of the United States and the Intervening States to Johnson & Johnson's Motion to Dismiss, filed Aug. 6, 2010 in *United States ex rel. Lisitza v. Johnson & Johnson,* No. 1:07-cv-10288-RGS (Dist. Mass.) at 10.

services.  Its pharmacists direct and oversee the acquisition, disposition, handling, storage, and administration of pharmaceuticals for this vulnerable population.

269.    Approximately 20% of the nursing home patients served by Omnicare's pharmacies are covered under Medicare Part A, which reimburses hospitals, skilled nursing facilities, and other facilities for limited inpatient stays.  The other approximately 80% of patients are enrolled in Medicaid as well as Medicare and, prior to 2006, Medicaid covered their drugs. After 2006, the Medicare Part D Prescription Drug Plan went into effect and assumed responsibility for these patients' drugs.

270.    For Medicare patients using their Part A skilled nursing facility benefit, the SNFs bill Medicare Part A on a prospective, monthly capitated basis for all services to be provided, including pharmaceuticals.   The SNFs purchase pharmaceuticals and related services from Omnicare, which bills the facilities after the fact for the drugs and services it has provided to the Medicare Part A beneficiaries.

271.    Through 2005, Omnicare contracted with state Medicaid programs to provide pharmaceuticals and pharmaceutical services to Medicare/Medicaid dual eligibles in skilled nursing facilities that Omnicare services and submitted reimbursement claims directly to the states for the pharmaceuticals and related services it provided to Medicaid beneficiaries.

272.    Beginning in 2006 with the commencement of Medicare Part D, Omnicare began instead contracting with Part D plan sponsors (PDPs) such as Blue Cross Blue Shield of Texas to provide pharmaceuticals and related services to these dual eligibles in skilled nursing facilities that Omnicare services.  Omnicare bills PDPs directly for the pharmaceuticals and related services it has provided to dual eligibles.

273.     In theory, all of Omnicare's facility customers pay Omnicare's Part A bill out of their Medicare Part A prospective payments.  But in practice, Omnicare offers its most important customers, National Accounts, Regional Holds, and P-Holds, an inducement in the form of forgiveness of these Part A bills.

274.     In exchange, Omnicare chiefly expects, in addition to other business opportunities, these homes to choose Omnicare as the pharmacy for their residents.  Since 2006 Omnicare has billed PDPs, and not Medicaid states, for drugs dispensed to dual eligibles, its main source of income in this sector.  The advent of Part D in that year has changed little else, however; while federal regulations prohibit providers (such as nursing homes) from steering patients to particular pharmacies for the sake of profit, and while the choice theoretically belongs to patients, for all practical purposes it is still nursing homes that elect the pharmacy that will serve their residents.  And as described below, Omnicare's National Account, Regional Hold, and P-Hold customers are more than happy to accept free Part A drugs in exchange for allowing Omnicare to keep and expand the number of facilities to which it provides drugs and services.

275.     This complaint references in several paragraphs the benefits Omnicare expected from its inducements, describing those benefits as both Medicare reimbursement and Medicaid reimbursement; this is because pre-2006 payments for drugs to dual eligible came from Medicaid, while beginning in 2006 such payments came from Medicare PDPs receiving prospective Medicare funding.

### B.     Omnicare's Scheme to Induce Business by Forgoing Payment for Drugs Reimbursable by Medicare

276.     Omnicare owns more than 250 pharmacies, each of which individually contracts with skilled nursing facility customers in its own territory.  Only when a customer has been in arrears for over 180 days does Omnicare's Corporate Collections Department become involved in

collecting the debt.  While Omnicare does business with SNFs of all shapes and sizes, it treats them very differently with regard to collections.

277.    Customers with multiple locations in multiple states, and therefore a high volume of Medicare Part D and Medicaid business, are designated as "National Accounts" and coded as "NAT" in Omnicare's accounting systems.[3]  *See, e.g.*, Ex. 45, Facility AR Aging 06-17-08 Company Name (previously attached to Relator's Original Complaint).[4]  As of September 2008, about forty customers were designated as National Accounts in Omnicare's accounting system, including groups such as Assisted Living Concepts, Inc., Extendicare Health Services, Inc., Five Star Quality Care, Genesis HealthCare, HCR Manor Care, Life Care Centers of America, Mariner Health Care, Inc., SavaSeniorCare Administrative Services, LLC, SunBridge Healthcare Corporation, and Sunrise Senior Living, Inc.

278.    Employees with Omnicare's Credit and Collections Department ("Collections"), headed by Ruscher until her termination in 2008, are expressly prohibited from making any contact with National Accounts.  *See* Ex. 1, Brumleve Email of Oct. 22, 2007; Ex. 2, Brumleve email of Oct. 2, 2007; Ex. 106, McElroy Email dated Oct. 28, 2009 at WIT000001 ("You cannot work any NAT accounts unless specifically requested to do so.").  Collections employees have little involvement with these accounts, except accidentally, for instance when the "NAT" designation has not yet been entered into the database for a new facility.

---

[3] Omnicare primarily uses three different billing systems:  OASIS, DX, and Vital.  When Omnicare acquired NeighborCare, its pharmacies used the Vital billing system, and those pharmacies still used that system as of 2008.  In 2003, Omnicare acquired NCS HealthCare, Inc., at the time the fourth-largest institutional pharmacy provider in the United States.  The NCS pharmacies used, and still use, the DX billing system.

[4] Relator specifically retains and adopts Exhibits 1–105 from Relator's Original Complaint and incorporates them in this Third Amended Complaint for all purposes.

279.     Debts on these accounts fall under the responsibility of senior management.  In 2008, this senior management group included Joel Gemunder, President and Chief Executive Officer, Patrick Keefe, Executive Vice President and Chief Operating Officer, David Froesel, Senior Vice President and Chief Financial Officer, and Richard Richow, Vice President of Credit and Collections, Jeffrey Carpp, Vice President of Asset Management, and Jeffrey Stamps, Executive Vice President – Long Term Care Operations.  *See, e.g.*, Ex. 106, McElroy Email dated Oct. 28, 2009, at WIT000001 ("The KAMs and Sr. VPs are working on these accounts . . . .").  In general, National Accounts are allowed to incur past-due balances into the millions of dollars. *See, e.g.*, Ex. 59 (Jan. 2008 Omnicare Collections Spreadsheet detailing over $200 million in accounts receivable over 180 days past-due). For example, Shoreline Healthcare Management, LLC, which owns eighteen NAT-designated facilities, owed more than $3.7 million in June 2008.[5]  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name).  In fact, in January 2008, Shoreline owed only $1.1 million in past-due debt,[6] which means that in less than six months, Shoreline was allowed to incur almost $2.6 million in additional past-due charges. *See id.*; Ex. 59, Facility AR Aging 01-22-10 Company Name.  Even more egregious, by June 2008, Family Senior Care, with fifty six NAT accounts facilities, owed over $18,500,00.00.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name (adding "180 Days Plus").  During Ruscher's tenure and beyond, Medicare Part A accounts receivable rose gradually over time.  These debts are not referred to counsel for litigation.  Any payments made are de minimis and solely for the sake of appearances.  June 2008 records indicate,

---

[5] This number was calculated by adding the amount of outstanding debt over 90 days old in each Shoreline NAT-designated account.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name (adding column entitled, "90 Days Plus").

[6] This number was calculated by adding the amount of outstanding debt over 90 days old in each Shoreline NAT-designated account.  *See* Ex. 59, Facility AR Aging 01-22-08 Company Name (adding column entitled, "90 Days Plus").

for instance, that the Family Senior Care facilities failed to make any kind of payment for an average of 111 days. *See id.* (averaging "Last PMT Date").

280.     National Account debts are written off only when they become inescapably unenforceable, such as when a customer files for bankruptcy.  In November 2007, for example, one of Omnicare's National Accounts, Haven Healthcare ("Haven") filed for bankruptcy, at which time it owed Omnicare over $20 million.  The debt had grown so large because Collections was unable to attempt to collect any payment from Haven, even as Omnicare continued to service its SNFs.  Moreover, Omnicare failed to secure any of the debt, resulting in the loss of the entire $20 million.

281.     Key Account Managers or "KAMs" are Omnicare employees who serve as single points of contact for National Accounts.  They report to the Senior Vice President of Marketing and Executive Vice President of Operations.  Ex. 106, McElroy Email dated Oct. 28, 2009, at WIT000001 ("The KAMs and Sr. VPs are working on these accounts . . . .").  KAMs are expected to develop annual business plans with their National Account customers, act as liaisons between National Accounts and Omnicare, and provide customer service to their National Account customers.  *Id.*  Ruscher and the Collections staff were repeatedly reprimanded by KAMs for contacting National Account customers such as Shoreline HealthCare Management.  KAMs vehemently opposed any attempts to collect from their National Account customers.

282.     In exchange for all of this forgiveness of National Account debt, Omnicare expects and receives maintenance and expansion of its business with these customers.  In other words, the National Account chain receiving free drugs for its Medicare Part A customers will, first, keep with Omnicare its homes already doing business with the company.  Second, upon opening or acquiring new homes, the National Account chain will designate Omnicare as the

pharmacy for these new homes as well.  National Accounts are also incentivized with such perks as free pharmaceuticals and expedited refunds in order to keep existing business or regain lost business.  On occasion, Omnicare also uses the free drugs to sweeten other potential deals with the National Accounts, such as business acquisition.  Because Medicare Part D business (Medicaid business prior to 2006) dwarfs the size of Medicare Part A business, it makes business sense to forgive the Part A business to win the Part D business.

283.    Thus, even if a National Account owes in the hundreds of thousands or even millions, such as Five Star Quality Care[7] or Harborside Healthcare Corporation,[8] Omnicare refuses to terminate or suspend services for fear of losing the revenue gained by servicing Medicaid/Medicare Part D patients.  Neither are National Accounts required to pay in advance if they did not meet their obligations.  By January 2008, Almaden Care, which is owned by Family Senior Care, owed more than $468,000.00 in past-due debt.  At that time, 96% of its liability was already over 180 days past-due.  *See* Ex. 59, Facility AR Aging 01-22-08 Company Name (using figures in columns, "90 Day Plus" and "180 Days Plus").  Yet, rather than require Almaden Care reduce its debt load, Omnicare allowed it to increase it by 9%.  As a result, by June 2008, Family Senior Care incurred over $513,000 in past-due charges.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name (using figures in columns entitled, "90 Days Plus" and "180 Days Plus").[9]

---

[7] In January 2008, Five Star Quality Care owed over $830,000 in past-due amounts.  *See* Ex. 59, Facility AR Aging 01-22-08 Company Name (adding column entitled, "90 Days Plus").

[8] In June 2008, Harborside owed over $260,000 in past-due amounts.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name (adding column entitled, "90 Days Plus").

[9] Like it did with Five Star, Omnicare allowed several facilities owned by Avamere Health Services, LLC to continue to increase its outstanding debt without penalty.  For instance, between January and June 2008, Avamere-owned Tacoma Rehab & Specialty increased its 90-day plus liability by 19%.  Likewise, Avamere-owned Georgian House HCC increased its June 2008 180-day plus arrearages to over $96,000.  Georgian House's increase amounted to a 64% growth from January of that year.  *See* Ex. 59, Facility AR Aging 01-22-08 Company Name; Ex. 45, Facility AR Aging 06-17-08 Company Name.

284.     In order to cover up Omnicare's kickbacks, Kim McElroy, Omnicare's National Facility Credit and Collections Manager, instructs Collections employees to fraudulently note in the facilities' files that Collections had made a "reasonable attempt" to collect past-due balances, despite Omnicare's widespread collection holds that prevent Collections employees from even contacting accounts that were designated as National, Pharmacy, or Regional holds.   Indeed, McElroy has actually referred to the Collections department as the "department of reasonable attempts," further establishing that very little actual "collecting" actually occurs with regard to protected accounts.

285.     Harborside Healthcare Corporation is but one National Account that has received favorable treatment from Omnicare in an effort to retain its business.   "As a rule," Omnicare did not charge Harborside for pharmaceuticals dispensed to Medicaid patients that were not covered by Medicaid.   This is due to the fact that Omnicare sought to gain the business of Harborside's newly acquired facilities.    To illustrate, Arden House, a Harborside-owned facility, owed $102,279.95 in outstanding past-due charges in January 2008.   Yet, despite having made a reported "payment" on May 28, 2008 of $56,487.08, this amount remained unchanged.   By June 2008, Arden House still owed the same $102,279.95 in past-due debt. Omnicare not only failed to collect this debt, but likely made adjustments to this account in Harborside's favor, either in a retroactive contract change or monthly pricing credit.   *See* Ex. 59, Facility AR Aging 01-22-08 Company Name; Ex. 45, Facility AR Aging 06-17-08 Company Name.

286.     Omnicare also failed to collect from Grant Park, a facility affiliated with Shoreline HealthCare Management, another National Account.   Between January and June 2008, Grant Park's uncollected 180-day plus debt grew to $ 1,134,183.30.   *See* Ex. 45, Facility AR

Aging 06-17-08 Company Name. The KAM assigned to Grant Park, Jeff Woodside, argued against collection, however, because Omnicare was attempting to acquire the business of fifty-nine related facilities.   Thus, while Grant Park's debt had grown to the point that termination was recommended, Woodside insisted that this was unwarranted, given the possibility of the new business and the revenue generated by Grant Park.   Much of the debt owed by Grant Park was due to its business with NeighborCare at Home, a part of Omnicare that provided pharmaceuticals to home health customers and in outpatient clinics.   Yet, by September 2008, Grant Park's debt ballooned even higher to $1,211,276.05. *See* Ex. 55, Facility AR Aging 09-02-2008 Company Name (reviewing column "180 Days Plus").

287.     "Pharmacy Hold," or "P-Hold," and Regional Hold customers (referred to herein as "P-Hold facilities" or "P-Hold customers") are SNFs that are not National Accounts, but have nevertheless procured unwritten arrangements under which Omnicare will forgo its Medicare Part A reimbursement indefinitely.   SNFs that typically obtain such status are (1) smaller yet still significant chains, and (2) facilities with imminent plans to acquire other facilities, if they are willing to commit those new facilities to Omnicare.   Once a facility is designated in Omnicare's accounting system as on P-Hold, collections efforts cease and Collections is informed that the customer is working out a payment arrangement with the individual Omnicare-owned pharmacy.[10]

288.     Just as with National Accounts, Omnicare heavily discourages, if not outright prohibits, Collections employees from attempting collections efforts against P-Hold customers.   In fact, during a conference call, Michael Rosenblum, Executive Director of Omnicare's New York subsidiary, not only told Ruscher and another Collections employee to not contact "his"

---

[10] At times, P-Hold customers make nominal payments, but these are generally applied to the oldest outstanding claims while the outstanding debt continues to increase as Omnicare continues to provide pharmaceuticals and services to the facility. *See* Ex. 23, Brumleve Email of Sept. 8, 2006.

facilities—Med World Pharmacy and Shore Pharmacy—but also physically threatened them, warning that "you do not want me to send you any flowers because the last person I sent flowers to got very, very sick." Subsequently, Omnicare restricted the Collections Department's access to the shared network and OmniView drives with respect to National, Pharmacy, and Regional Hold accounts.

289.    Also, as with National Accounts, Omnicare's concern in protecting P-Holds and Regional Holds from Collections is with soliciting and retaining the lucrative Medicaid and Medicare Part D business. *See* <u>Ex. 1</u>, McLeod Email dated Oct. 2, 2007, at SR000001 ("We are trying not to rock the boat too much on this account as long as they are keeping current because we also service another facility that is associated with this one and we don't want to lose the accounts."); *id.*, Brumleve Email dated Oct. 22, 2007, at SR000001 ("I understand you are trying to work with the facility & do not want to scare them off by demanding payments on the outstanding invoices."). West Broward Care Center, for example, which is owned by Millennium Management, LLC and is a designated P-Hold facility, kept its account current in both January and June 2008. During the same period, however, its debts over 180 days old increased 24%, from approximately $650,000 to more than $850,000. *See* <u>Ex. 44</u>, COMBINED OASIS Facility June08 (comparing West Broward Care Center, "Current" and "0 to 30," with "180 Days Plus"); <u>Ex. 49</u>, COMBINED OASIS Facility Jan08 (same).   By June 2008, its 90-day plus past-due debt represented 93% of West Broward's total bill.   <u>Ex. 44</u>, COMBINED OASIS Facility June08 (comparing West Broward Care Center, "Total Due" with "90 Days Plus.").

290.    Other P-Hold customers were on "hold" from collection efforts because Omnicare was attempting to renew its contracts with them.  According to Omnicare's records, the average P-Hold facility makes a payment every 259 days.  <u>Ex. 45</u>, Facility AR Aging 06-17-08 Company

Name (averaging "Last Pmt Date" for all PHOLD designated accounts).  Pharmasource Healthcare IV, one of the P-Hold facilities owned by Fundamental Long Term Care Holdings, LLC/Trans Healthcare, Inc., failed to make a payment to Omnicare for 296 days.  Omnicare permitted this delay despite $151,583.33 in past-due debt.  *Id.* (comparing Pharmasource Healthcare IV, "Last Pmt Date," with "90 Days Plus").

291.    P-Hold status is generally permanent.  On rare occasions, senior Omnicare management has directed an individual pharmacy to remove a facility from P-Hold status so that Collections could attempt to collect past-due amounts.  Occasionally, the pharmacy itself might release a P-Hold, for instance after the customer had decided to discontinue doing business with Omnicare.  Afterwards, collection efforts are usually met with resistance from the facilities, and the P-Holds are often eventually reinstated.

292.    The directives to placate National Accounts, P-Holds, and Regional Holds by forgoing collection efforts, offering free pharmaceuticals and services, and ultimately forgiving their debts came from the most senior management at Omnicare.  And the actions on the part of Omnicare's senior management establish that they were and are well aware that Omnicare's kickbacks practices were illegal.  In late 2008 or early 2009, Omnicare sought to conceal its illegal kickbacks.  All codes in collections and accounting spreadsheets were changed to remove the word "hold" to conceal Omnicare's failure to collect from P-Holds and Regional Holds.  "P-Hold" was changed to "Pharm," and "Regional Hold" was changed to "Regional."   "Pharm" was later changed to "Dunning Letter Yes" in order to "reflect no preferential treatment."  Omnicare later made further changes to its codes: National Accounts changed from "NAT" to "N," while Regional Holds were changed to "R."  Yet the same "reasonable attempts" practices continued, as they continue to this day.

293.     Most other customers besides National Accounts and those with P-Holds, including most individually-owned skilled nursing facilities with a single location, are lumped into the third category of customers:  Collectables, coded by the acronym COL.  COL accounts  are subject to vigorous collection efforts and, as the name "Collectables" implies, these are the only customers that Omnicare is willing to sue for overdue accounts.  Skilled nursing facilities of all sizes often respond to Omnicare collection efforts with the plea that they need Omnicare's Medicare Part A proceeds in order to keep their residents comfortable, but these small facilities are the least likely to receive that considerable boost to their budgets.

294.     Omnicare's knowledge that it was fraudulently inducing Medicaid and Medicare Part D business from SNFs through kickbacks is further established by its subsequent spoliation of evidence concerning its kickback scheme.  After Ruscher filed this action on November 14, 2008, the Office of the Inspector General of the Department of Health and Human Services issued a subpoena to Omnicare on November 18, 2009 for the production of documents.  In response to the subpoena, and in apparent anticipation of a planned visit by regulatory counsel to meet with employees and gather responsive documents, on or about March 9, 2010, JoAnn Billman, Omnicare's National Facility Bankruptcy/Legal Lead, instructed Collections department employees to search for documents related to National Accounts.  These documents were then packed into approximately 100 boxes without any further review:



These boxes containing National Account documents were then picked up by a third party, Cintas (and not Omnicare's normal storage company, Iron Mountain), and stored, shredded, or both, at that location.  Five days later, on March 15, 2010, Omnicare's outside counsel went to Omnicare's corporate office to collect documents responsive to the subpoena.  Obviously, since the National Account documents had already been relocated and/or destroyed, they were never reviewed by Omnicare's counsel or produced to the government.

### C.     Relator Susan Ruscher's Discovery of Omnicare's Fraudulent Conduct

#### i.     Relator's Background and Employment History with Omnicare

295.     Ruscher worked for Omnicare from July 18, 2005 until her termination on August 18, 2008.  She first came to Omnicare as Corporate National Facility Credit and Collections Manager.  The Facility Credit and Collections group was one of two groups within Omnicare's

Collections Department, and handled collections solely from long-term care facilities.  When she

arrived at Omnicare, there was no central mechanism in place for Collections to monitor accounts

receivable for individual Omnicare-owned pharmacies.  Collections could only learn of delinquent

accounts through reports from the individual pharmacies.  Ruscher worked with the company's

information technology department to set up a system that allowed Collections to monitor open

invoices and assist the individual pharmacies with collections for amounts over 180 days past-due.

296.    With Ruscher at the helm, Collections grew from a staff of four to a staff of

sixteen.  With regard to accounts that were neither "National Accounts," nor on "P-Hold,"

Collections worked to ensure Omnicare would get paid for past-due amounts by implementing

payment plans with the skilled nursing facilities or entering into promissory notes that included

personal guarantees and financing statements to perfect Omnicare's security interest in the event of

default or bankruptcy.  Ruscher found perfection to be a very effective tool, as it permitted her and

her staff to collect the full amount of the outstanding lien.  Ruscher and her staff monitored any

bankruptcies to ensure proofs of claim were filed correctly and promptly on behalf of Omnicare.

### ii.    Relator's Efforts to Collect Money on Behalf of Omnicare and her Discovery of Omnicare's Fraudulent Conduct

297.    When Ruscher first arrived at Omnicare, she was initially preoccupied with the

effort of constructing a collections department large and sophisticated enough to keep up with the

debts owed to hundreds of separate Omnicare-owned pharmacies.  With her new systems in place,

however, Ruscher was in a prime position to survey facilities' overdue debts on drugs that

facilities should have been able to pay for out of their Medicare Part A prospective payment funds.

In those early days of her tenure, Ruscher and her staff in Collections began producing monthly

aging spreadsheets that were distributed to each Omnicare-owned pharmacy.  Examples are

Exhibits 42 through Exhibit 50, Exhibit 55 and 55, and Exhibit 58 through Exhibit 65.  By

comparing these spreadsheets to one another, it is possible to understand, value, and compare the financial histories of Omnicare's accounts.  For instance, as months passed, Ruscher observed from these reports the growing debt in all past-due accounts, in particular the P-Holds.  To illustrate, Pharmasource Hospital IV,[11] increased its 180-day or older debts by 35% between January and June 2008.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name; Ex. 59, Facility AR Aging 01-22-08 Company Name (comparing "180 Days Plus").  It was then that Ruscher began questioning Omnicare's collections practices with regard to National Accounts and accounts on P-Hold.

### a.      National Accounts

298.    With regard to National Accounts, Ruscher's hands were tied.  She was specifically instructed not to contact National Accounts to collect past-due amounts.  She was told not to "stir up trouble" by attempting to collect the "paltry" amount that those past-due monies represented.  As a result, National Accounts typically paid little to none of their Medicare Part A debt owed to Omnicare.

299.    Whenever a Collections staffer mistakenly contacted a National Account (often when ownership of a facility had changed hands unbeknownst to Collections), the staffer was inevitably told by the facility to "talk to [CEO] Joel [Gemunder]" because the facility was now part of an entity that was not to be contacted regarding any past-due amounts.  Ruscher was then promptly summoned by her supervisor Richard Richow, who conveyed the message that the customer had complained and that Joel Gemunder, COO Patrick Keefe, or CFO David Froesel demanded that she cease collections efforts immediately.  On these occasions, the Collections staff

---

[11] As discussed above, Pharmasource is owned by Defendant, Fundamental Long Term Care Holdings, LLC/Trans Healthcare, Inc.

member who made the call (often Ruscher herself) would be required to write a letter to the facility, apologizing for contacting it regarding its debt to Omnicare.  Ruscher personally wrote about one or two of these letters each month during her employment.  At one point, the collections staff was instructed to specifically inquire when contacting a customer whether it was a National Account.

300.    In general, the only time when Omnicare would attempt to collect from National Accounts was at the end of the year, when Omnicare wished to make a show of a "reasonable attempt" to collect, perhaps in order to improve its year-end financial statements.  On these occasions, Ruscher and her staff would be permitted to contact National Accounts for a token payment, but usually with one of the KAMs assigned to the particular National Account on the phone during the call.  Ruscher typically would request that the skilled nursing facility group make a payment that represented an average month's billings, plus a modest payment toward the past-due balance.  Inevitably, the KAM would insist that Omnicare was interested only in the monthly payment and usually offered a discount to offset any mistakes the manager suggested the billing department inevitably made.  The KAM group soon earned themselves the title "Inducement Team" among Collections employees because of this eagerness to forgo unpaid balances in order to illegally induce Medicare Part D and Medicaid business.

301.    Omnicare's records reflect this practice.  Several of Shoreline HealthCare Management's SNFs, including Emerald Ridge, Garden Court Nursing Home, Clay County Care Center, and Chenal Healthcare, LLC, made payments to Omnicare early in January of 2008. Ex. 59, Facility AR Aging 01-22-08 Company Name (reviewing "Last Pmt Date").  However, Emerald Ridge's payment of $11,100.44 failed to cover even its last monthly billing amount of $11,868.73,

much less its 180-day plus past-due debt of over $154,000.[12] *Id.* (comparing "0 to 30" and "Last Pmt Amt" with "180 Days Plus").  Similarly Garden Court Nursing Home's January 2008 payment of $21,729.45 was only slightly greater than its $18,793.47 most recent invoice, and, more importantly, far less than its $95,297.57 in 180-day plus outstanding debt.  *Id.* (same).  In total, these four facilities paid only $58,405.43, or 12%, of their almost a half million dollars in 180-day plus past-due liabilities. *Id.*

302.    Five Star Quality Care ("Five Star") was a particularly delinquent account from which Omnicare directly received benefits for forgiving debt.  As of June 2008, Five Star had not made any payments on several of its accounts since 2007, or in some cases, 2006.  Even Five Star Van Nuys HC Center, with over $16,000 in past-due debts, and 676 days of non-payment, remained a NAT-account, impervious to collection.  Ex. 45, Facility AR Aging 06-17-08 Company Name (evaluating "Last Pmt Date" and "180 Days Plus").    In May 2008, Ruscher became concerned when then COO Keefe and then CFO David Froesel began negotiating a new contract with Five Star, despite Five Star's large delinquent balance.  She advised the Five Star KAM that Five Star had to bring its account current before a new contract was drafted, but was repeatedly told not to discuss past-due balances.   Mitch Hawkinson Omnicare's Director of National

---

[12] While Omnicare's financial records, refer to a "payment amount, these "payment" are often actually drug credit given by Omnicare to the SNF.  This is particularly true whenever the SNF's "payment amount" is lower than its 30 day monthly billing invoice.

    To illustrate, five of Life Care Centers of America, Inc.'s facilities hold past-due debt totaling more than $30,000.  Ex. 45, Facility AR Aging 06-17-08 Company Name (reviewing "90 Days Plus").  Further, four of these facilities made payments in May or June 2008. *Id.* (reviewing "Last Pmt Date").  Yet, oddly, these "payments" each represent *either* 89% or 74% of the facility's latest monthly invoice.  Life Care Center of New Market and Vosswood Nursing Center, for instance, each paid 89% of their respective $37,972.19 and $123,764.76 prior monthly bills. *Id.* (comparing "Last Pmt Amt" and "0 to 30").  Likewise, Sun City Convalescent Center and Wollridge Place each paid 74% of their $57,735.01 and $43,265.22 prior monthly bills.  *Id.* (same).  The consistency between the payment amount and the monthly bill suggests that Omnicare provided Life Care Center of New Market, Vosswood Nursing Center, Sun City Convalescent Center and Wollridge Place with a drug credit, and that, in fact, these four SNF facilities did not make any payments in May and June 2008.

95

Accounts, advised Ruscher that in addition to the contract renewal, Omnicare was also negotiating with Five Star to buy its pharmacy business.

303.     Ruscher's resistance to these negotiations eventually precipitated Ruscher's removal from involvement with the account and ultimate termination, as described in section iii below.   Her warnings went unheeded; within six months Omnicare and Five Star signed a settlement agreement, of sorts.   Omnicare received the benefit of its repeated kickbacks in June 2012, when Five Star agreed to sell its pharmacy business to Omnicare for $30.7 million.  Victoria Stillwell, *Five Star Sells Pharmacy Unit to Omnicare*, MARKETWATCH (July 9, 2012, 12:11 PM), http://www.marketwatch.com/story/five-star-sells-pharmacy-unit-to-omnicare-2012-07-09.

### b.     P-Holds

304.     Customers with P-Holds specifically noted in the billing systems were also protected from Ruscher's collection efforts.   Every month, her department forwarded to each Omnicare pharmacy (or in the case of former NeighborCare pharmacies, regional billing office) a list of its past-due accounts.[13]   Each pharmacy was asked to name any accounts that Collections should not attempt to collect, and pharmacies were often specifically asked about the status of any P-Holds on the list.   Very rarely would they relent and remove a customer's "P-Hold" status. Ruscher once became so frustrated about the number of accounts accruing increasing debt this way that she confronted her supervisor, Richard Richow.   He reminded her that Omnicare makes a great deal of money from the Medicaid (and, after January 1, 2006, Medicare Part D) beneficiaries at those facilities and said that Omnicare did not want to risk losing that income.   "But that's inducement!" responded Ruscher, in violation of Medicare and Medicaid laws.   Richow agreed,

---

[13] This process was initiated by Ruscher within months after her arrival at Omnicare as part of her ongoing efforts to collect past-due amounts.

and added that Michael Rosenblum, Executive Director of Pharmacy in New York, who oversaw most of the New York region, likely would be the "first to go to prison" over the arrangement. Ruscher understood that to pursue the matter further would risk her job.

305.     As discussed above, it was Rosenblum who expressly prohibited Ruscher and her staff from collecting on accounts in Rosenblum's New York region.  Rosenblum kept P-Holds on most of his accounts because he was afraid that any collection efforts would cause his customers to cease doing business with Omnicare. Omnicare's September 2008 records reflect P-Holds on 59% of his 595 accounts. *See* Ex. 55, Facility AR Aging 09-02-08 Company Name (Med World Pharmacy and Shore Pharmacy, "Collections Portfolio").  Rosenblum also made unwritten settlement agreements with his customers that could not be enforced by Omnicare, presumably in an effort to appear as if he were collecting past-due amounts while appeasing his customers at the same time.  The amount owed by his customers was typically astronomical:  as of September 2008, these entities represented approximately $55 million of the then over $200 million past-due from all New York pharmacies.  *Compare* Ex. 55, Facility AR Aging 09-02-08 Company Name (Med World Pharmacy/Shore Pharmacy, "90 Days Plus"), *with id.* (New York, "90 Days Plus").

306.     Omnicare maintains a bonus structure and culture that create incentives to disregard debt.  KAMs' bonuses are based largely on pharmaceutical sales to facility residents, and not on actual collections from skilled nursing facilities.   Moreover, executive directors and management are unwilling to risk losing a customer, particularly a national or regional chain, because they then face a tongue-lashing or worse from Omnicare leadership, including then CEO Joel Gemunder, prior to his 2010 resignation, regardless of the size of the customer's debt.

307.     Despite this bonus structure, Ruscher managed to convince managers in one Omnicare territory to reform their handling of past-due accounts, and the result was dramatic.  In

May 2007, Ruscher attended a regional meeting in Syracuse, New York, a region of New York not included in Michael Rosenblum's territory.  During her meetings with pharmacy managers, Ruscher explained that intentionally failing to collect amounts due for pharmaceuticals and services provided to Medicare Part A beneficiaries constituted illegal inducement.  The managers were surprised to learn that the practice might be illegal and thanked her for being the first to explain the illegality of inducements to customers.  From that point forward, those managers lifted all P-Holds and allowed Ruscher to collect in that region successfully.  As of September 2008, Rosenblum's pharmacies grew to 26% of amounts past-due from all New York pharmacies. *Compare* <u>Ex. 55</u>, Facility AR Aging 09-02-08 Company Name (Med World Pharmacy/Shore Pharmacy, "90 Days Plus"), *with* id. (New York, "90 Days Plus").

**c.      Other Customers**

308.     With regard to other customers, Ruscher regularly initiated litigation, though not without some hurdles.  In order to initiate litigation, she first had to complete a detailed form.  <u>Ex. 98</u>, Litigation & Termination Approval/Management Review.  In addition to information about the date and amount of the facility's last payment and the total outstanding debt, the form showed how much revenue was generated from that facility's Medicare and Medicaid beneficiaries.  *Id.*  The form also showed how much revenue Omnicare would stand to lose by initiating collections litigation if the facility's business were terminated.  *Id.*  When the amount was too great, Omnicare usually denied Ruscher's request and continued doing business with the facility in order to keep the Medicare Part D and Medicaid business.

309.     Once collections litigation was approved, Ruscher monitored all aspects of the litigation.  She assisted Schutts & Bowen, Omnicare's national counsel, and other attorneys, in selecting litigation attorneys, prepared cases for trial, approved pleadings, signed affidavits, and

98

attended depositions, mediations, and trials as representative for Omnicare with settlement authority.  Ruscher also worked with outside collections litigation counsel, who were often able to collect 100% of what was due to Omnicare.

310.    One of the methods Ruscher used in her efforts to collect money on behalf of Omnicare was to request Medicare cost reports from skilled nursing facilities that owed Omnicare for past-due amounts.  She was curious to see whether the facilities were reporting the costs of drugs provided by Omnicare, even as the invoices for those drugs remained unpaid, sometimes for years.  Interestingly, when she asked a facility for its Medicare cost report, the facility usually made a payment toward its debt to Omnicare.

**311.**    In addition, Ruscher instituted promissory notes with UCC securitization clauses in order to secure Omnicare's debts owed by various facilities in the event that the facilities were sold or defaulted on their agreements.  When she attempted to include similar clauses in all of Omnicare's contracts on the front end, however, she was chastised.  Ruscher's vigorous efforts only made Omnicare's policies more apparent.

312.    As discussed above, Ruscher repeatedly challenged Omnicare's refusal to collect its Medicare Part A debt.  She drew attention to Omnicare's scheme when she began raising these concerns to other pharmacy managers and directors, who repeated the Omnicare company line that it makes too much money to risk alienating the facilities by asking for payment.  Time and again she tried to institute more effective measures for collecting debts that Omnicare had actually decided to forgive.  Although Ruscher was successful in some of her efforts, her successes worked to her disadvantage.  As Ruscher became more effective, Omnicare's illegal kickback scheme became more obvious, and Omnicare's senior management feared that she would derail their efforts to monopolize the long-term care pharmacy market.

313.     In repeatedly warning her superiors that Omnicare was engaged in fraudulent activity, Ruscher did not mince words.

314.     Stamps and Richow "handled" Ruscher's allegations by renewing all seven accounts without requiring any of them to bring their accounts current.  *See* Ex. 59 (entries for Palm Gardens, New York Center for Rehabilitation, East Neck Nursing & Rehab. Center, Regeis Care Center, Chapin Nursing Home, San Simeon Nursing Home, and Michael Malotz Skilled Nursing).

315.     It was about two months after Ruscher warned the company not to renegotiate these contracts while balances were outstanding, when the same issue arose with regard to Five Star, as described above in section ii, above, and Ruscher attempted to collect past balances before further negotiation.  Even though Five Star was still failing to even keep up with current bills, Lori Travis, the KAM assigned to Five Star, complained bitterly at Ruscher's involvement.  In June of 2008 Ruscher was summoned to COO Keefe's office after instructing Five Star to pay its debt to Omnicare.  Keefe ordered her to cease all collection efforts as to Five Star.  He told her that despite the size of Five Star's debt, which was approximately $1.4 million, Omnicare needed to "tread lightly" because Omnicare was attempting to purchase five pharmacies from Five Star.[14]  Ruscher was then "eased out" of any communications with Five Star and asked to apologize for her "abruptness" in her dealings with this National Account.

---

[14] Five Star owned both long-term care facilities and pharmacies.

### D. Omnicare's Conduct Violates its Corporate Integrity Agreement with the United States Government

#### i. 2006 Settlement

316.     Omnicare has worked a fraud on the United States Government ("Government") and forty-two state Medicaid programs before.  On or around November 2006, Omnicare entered a $49.5 million settlement to settle allegations by two former Omnicare employees that Omnicare switched patients from tablets to capsules and from capsules to tablets and changed dosages of drugs in order to obtain higher reimbursement from forty-two state Medicaid programs.[15]

#### ii. Corporate Integrity Agreement Between Omnicare and the United States Government

317.     As part of the 2006 settlement, Omnicare entered into a Corporate Integrity Agreement ("CIA") with the Office of the Inspector General for the Department of Health and Human Services.  Further participation by Omnicare in federal and state-funded healthcare programs is conditioned upon compliance with the CIA.

318.     Among other provisions, the CIA requires Omnicare to establish and maintain a disclosure program that enables individuals to report issues or questions associated with Omnicare's policies, conduct, practices, or procedures that potentially violate criminal, civil, or administrative laws with respect to any federal healthcare program.  *See* Ex. 96, Omnicare Corporate Integrity Agreement 2, 12.  The provision would include any violations of laws applicable to Medicare and Medicaid programs.  The disclosure program must emphasize a non-retribution and non-retaliation policy and include an anonymous reporting mechanism.  *See id.* at 13.

---

[15] Ruscher's allegations relate to conduct not covered by the settlement.  She raises no allegations with regard to switching of drug dosages or forms.  She alleges entirely new claims: Omnicare's offering of kickbacks in the form of forgoing reimbursement from skilled nursing facilities for Medicare Part A business in order to keep Medicare Part D and Medicaid business.

319.     The CIA also requires Omnicare to notify the Government of a matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any federal healthcare program.  *See id.* at 16.  The provision would include any violations of laws applicable to Medicare and Medicaid programs.

320.     Furthermore, the CIA requires Omnicare to certify in an implementation report, which was due on or around April 8, 2007, and in annual reports thereafter, the first of which was due on or around January 8, 2008, that, to the best of its knowledge, it is in compliance with all requirements of the CIA, including maintenance of the disclosure program and reporting any violations of laws applicable to Medicare and Medicaid programs.  *See id.* at 18–22.

321.     Omnicare has violated the False Claims Act by impliedly or expressly certifying that it was in compliance with the CIA, when in fact it was engaging in illegal conduct with regard to Medicare and Medicaid, such as offering kickbacks to skilled nursing facilities by forgoing payment for amounts reimbursable by Medicare Part A in order to keep Medicare Part D and Medicaid business.  Omnicare further engaged in illegal conduct when it terminated Ruscher for insisting upon collecting past-due amounts Omnicare wished to disregard as part of its illegal kickback scheme.  Omnicare did not report any of the illegal and fraudulent activities alleged by Relator; had it done so, an investigation would have ensued.

### E.  Summary of the SNFs' Conduct

322.     In conjunction with Omnicare, the SNFs willingly defrauded Medicare and the state Medicaid programs.  Omnicare's financial records reflect that certain SNFs enjoyed hundreds of thousands of dollars in kickbacks and other incentives.   While Omnicare reflected these subsidies as past-due liabilities, neither Omnicare nor the SNFs sought to collect or pay these ever increasing debts.  Represented examples of the SNFs  fraudulent conduct are detailed below.

### i.     Shoreline HealthCare Management

323.     Shoreline HealthCare Management owns eighteen facilities designated as "NAT" accounts, meaning that Ruscher's Collections Department could not make any contact with these facilities to collect their overdue debts.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name. Nevertheless, as of June 2008, these Shoreline facilities owed past-due charges totaling $3,748,250.70.  *Id.* (adding "90 Days Plus" for Shoreline's NAT accounts).   This amount represented a 27% average increase from January and June 2008 of debts older than 180 days. *Compare id.* (Shoreline, "180 Days Plus)*, with* Ex. 59 Facility AR Aging 01-22-08 Company Name (same).  Shoreline-owned SNFs, Heritage Manor Bossier and THS Kannapolis saw two of the largest increases during this period.   Heritage Manor Bossier increased its 180-day plus arrearages by 49.05%, while THS Kannapolis increased its 180-day plus debt by 76.14%.

324.     Shoreline's largest amount of outstanding debt is owed by Grant Park Care Center.  In June 2008, Grant Park held arrearages of $1,233,037.57, accounting for 89% of its overall total due.  Ex. 45, Facility AR Aging 06-17-08 Company Name (Grant Park Care Center, "90 Days Plus" and "Total Due").  Shoreline's second largest amount of outstanding debt is held by Woodbine Healthcare LLC, and although it owed less than half of Grant Park's June 2008 total, it had still incurred $511,822.53 in debt by that time.  *Id.*  (Woodbine Healthcare LLC, "90 Days Plus").

325.     One Shoreline facility, Ashton Court Care and Rehab Center, has made particularly little effort to pay its outstanding debt.  Although Ashton Court owed growing 180-day plus debts of $92,400.15 in January 2008 and $122,778.45 in June 2008, its May 21, 2008 payment totaled only $435.20.  Ex. 59 Facility AR Aging 01-22-08 Company Name (Ashton Court, "180 Days Plus"); Ex. 45, Facility AR Aging 06-17-08 Company Name (Ashton Court,

"180 Days Plus" with "Last Pmt Amt"). In fact, this payment represented only 9% of its last monthly bill, which alone totaled $4,933.44. <u>Ex. 45</u> (Ashton Court, "0 to 30" with "Last Pmt Amt").

326. Shoreline's pattern of non-payment began long before 2008. On December 5 2006, Ruscher sent an e-mail to Doug Ryan of Westwood Nursing, one of Shoreline's facilities. According to Ruscher's e-mail, Omnicare had "never received any payment on this account, yet we have been serving them for over a year." <u>Ex. 8</u>, Email re 3230 Westwood Nursing).

### ii.    Five Star Quality Care

327. In 2007 and 2008, Five Star Quality Care owned at least forty SNFs; Omnicare's June 2008 records reflect that thirty-nine of these facilities were designated as National Accounts. <u>Ex. 45</u>, Facility AR Aging 06-17-08 Company Name (narrowing results to Five Star accounts). As a result, several of Five Star's SNFs experienced little to no change in their past-due liability, despite total outstanding past-due debts equaling at least $646,670.68. *Id.* (adding Five Star "90 Days Plus"). Stated differently, over the course of at least six months, Five Star enjoyed nearly constant debt amounts, with Omnicare making no attempt to collect these debts, and Five Star making no attempt to pay them.

328. To illustrate, Five Star-owned, Thousand Oaks Healthcare Center owed $1,368.00 in past-due debt in January 2008. <u>Ex. 59</u>, Facility AR Aging 01-22-08 Company Name (Thousand Oaks Healthcare, "90 Days Plus"). By June, this amount was the same. <u>Ex. 45</u>, Facility AR Aging 06-17-08 Company Name (same). Van Nuys Healthcare Center owed $16,160.68 in January. <u>Ex. 59</u> (Van Nuys Healthcare Center, "90 Days Plus"). Again, by June, the amount had not changed. <u>Ex. 45</u> (same). In January, the Forum at L.H, the Forum at Park Lane (ALF), and the Forum at Park Lane owed $5,295.46, $2,267.47 and $74,116.36 respectively in past-due debt. <u>Ex. 59</u>

(Forum at L.H, the Forum at Park Lane (ALF), and the Forum at Park Lane, "90 Days Plus"). Each debt remained untouched in June.  Ex. 45 (same).

329.     Further, often the only changes in Five Star's SNF's outstanding debt amounts were upwards.  The Forum Pueblo-Norte Marriot, for instance, saw a small .04% increase in its over 90-day debt between January and June 2008.  *Compare* Ex. 59, Facility AR Aging 01-22-08 Company Name (Forum Pueblo-Norte Marriot, "90 Days Plus"), *with* Ex. 45, Facility AR Aging 06-17-08 Company Name (same). It incurred a much larger corresponding increase in its 180-day plus debt during this same period, amounting to a 63.90% increase (or $15,814.21 to $43,802.13 in debt).  *Compare* Ex. 59, Facility AR Aging 01-22-08 Company Name (Forum Pueblo-Norte Marriot, "180 Days Plus"), *with* Ex. 45, Facility AR Aging 06-17-08 Company Name (same).

330.     Despite its liabilities and delinquencies, Omnicare agreed to purchase Five Star's pharmacy business for $30.7 million in June 2012.  Victoria Stillwell, *Five Star Sells Pharmacy Unit to Omnicare*, MARKETWATCH (July 9, 2012, 12:11 PM), http://www.marketwatch.com/story/five-star-sells-pharmacy-unit-to-omnicare-2012-07-09.

### iii.     Harborside Healthcare/Sun Healthcare Group, Inc.

331.     In December 2007, Harborside Healthcare/Sun Healthcare Group, Inc. filed its 2007 SEC report.  In the report, Sun stated that its voting and non-voting common stock had an aggregate market value of $612.3 million.  Sun Healthcare Group, Inc., Annual Report (Form 10-K), 2 (Jan. 8, 2009).

332.     Yet, over the course of a similar period of time, many of Harborside Healthcare/Sun Healthcare Group, Inc.'s eighteen Omnicare NAT and P-Hold accounts sustained nearly constant debt loads.  Arden House, which owed $102,279.95 in January 2008, owed the same sizeable debt nine months later.  *Compare* Ex. 59, Facility AR Aging 01-22-08 Company

Name (Arden House, "90 Days Plus"), *with* Ex. 45, Facility AR Aging 06-17-08 Company Name (same).  Similarly, Governor's House, which owed $13,288.53 in January 2008, paid down only $43.03 of this amount in its subsequent six months of payments.  *See* Ex. 59, Facility AR Aging 01-22-08 Company Name (Governor's House, "90 Days Plus"); Ex. 45, Facility AR Aging 06-17-08 Company Name (Governor's House, "90 Days Plus" and "180 Days Plus").

333.    While many of Harborside's SNFs appeared to be making regular—and sizable—monthly payments to Omnicare, these payments were, in fact, substantially less than even a single month's 30-day invoice.  In June 2008, for instance, Glen Hill Convalescent Home paid less than one month's fee, thereby allowing 16% of its monthly invoice to go unpaid.  Ex. 45, Facility AR Aging 06-17-08 Company Name (Glen Hill Convalescent Home, "Last Pmt Amt" and "0 to 30").  Similarly, on December 27, 2007, Arden House reportedly paid Omnicare $44,298.54.  Yet, this payment failed to cover its prior monthly bill of $49,721.25, leaving 11% of its invoice in arrears.  Ex. 59, Facility AR Aging 01-22-08 Company Name (comparing Arden House, "Last Pmt Amt" and "0 to 30").  Arden House repeated this pattern in June 2008.  On May 28, 2008, it paid $56,487.08.  As a result, this Harborside facility not only left $3,619.40 of its monthly invoice unpaid, but failed to reduce any of its $102,279.95 in past-due debt.  Ex. 45, Facility AR Aging 06-17-08 Company Name (comparing Arden House, "Last Pmt Amt," "0 to 30" and "90 Days Plus").

334.    This pattern was not unique to Arden House and Glen Hill.  Many of SNFs failed to make payments on their outstanding debt.  Moreover, over the course of six months—from January to June 2008—Harborside's SNFs reaped an average 6% increase in their 90-day plus debt.  *Compare* Ex. 59, Facility AR Aging 01-22-08 Company Name (Harborside, "90 Days Plus"), *with* Ex. 45, Facility AR Aging 06-17-08 Company Name (same).  Thus, by systematically

failing to pay—and, indeed, augmenting—their debt, Harborside realized a $276,427.58 monetary gain over this time.  *Id.* (totaling Harborside "90 Days Plus").

### iv.    Life Care Centers of America, Inc.

335.    Life Care Centers of America, Inc. owns more NAT and P-Hold facilities than any of the other seven SNFs detailed in this Complaint.  Omnicare has designated eighty-nine of Life Care's SNFs as, essentially, impenetrable.   Omnicare's Collections Department had no authority to contact these facilities, much less attempt to collect any of their debt, including $322,000 in June 2008 past-due debt.  Ex. 45, Facility AR Aging 06-17-08 Company Name (Life Care Center of New Market, "180 days Plus").

336.    On the other hand, Forbes classifies Life Care as one of the top private companies in the country.  In 2007, it ranked Life Care at #217, at which time Life Care reported earnings of $2.12 billion dollars.  These revenues also reflected a 3.6% increase from Life Care's 2006 profits. *America's Largest Private Companies*, FORBES (Nov. 3, 2008, 6:00 PM), http://www.forbes.com/lists/2008/21/privates08_Life-Care-Centers-of-America_DU3S.html.

337.    Nevertheless, many of Life Care's debts are very old.  For instance, by January 2008, Life Care Center of New Market held $83,155.78 in debts older than six months.  Ex. 59, Facility AR Aging 01-22-08 Company Name (Life Care Center of New Market, "180 Days Plus"). Still, rather than attempt to pay this debt, Omnicare's records reflect that even after an additional six months, Life Care of New Market did not remunerate payment.  Ex. 45, Facility AR Aging 06-17-08 Company Name (Life Care Center of New Market, "180 days Plus"). Conversely, by June 2008, New Market increased its liability by 0.66% to $83,706.76.  *Id.* (reviewing Life Care Center of New Market, "180 Days Plus").

338.     The same pattern is true of Garden Terrace, another Life Care National Account. In January 2008, it held over $27,400 in six month old debt.  Ex. 59, Facility AR Aging 01-22-08 Company Name (Garden Terrace, "180 Days Plus").  By June 2008, this amount remained entirely unchanged, and in fact, reflected 95% of Garden Terrace's overall "Total Due" to Omnicare.  Ex. 45, Facility AR Aging 06-17-08 Company Name (comparing Garden Terrace, "180 Days Plus" and "Total Due").

### v.     Avamere Health Services, LLC

339.     Avamere Health Services, LLC owns at least fourteen NAT-designated SNFs. *See* Ex. 49, COMBINED OASIS Facility June08.  In 2008 and 2009, Oregon Business magazine ranked Avamere as one of the Top Private Companies in Oregon.  In 2008, it listed Avamere at #42 and by 2009, increased Avamere's ranking to #36.  The 2009 ranking designated Avamere as a company with revenues between $1 billion and $250 million.  *Oregon's Top Private 150 Companies*, OREGON BUS., July 2009, *available at* http://www.oregonbusiness.com/articles/62-july-2009/1908-oregons-top-private-150-companies.

340.     During this same period, however, Avamere held Omnicare debts totaling $1,287,021.31.  Its SNFs also averaged 178 days of non-payment.  In January 2008, one of these facilities, Richmond Beach Rehabilitation, held $138,048.53 in 180-day plus debt, and despite continuing to incur thousands of dollars in monthly charges, failed to make a payment to Omnicare for 131 days. Ex. 49, COMBINED OASIS Facility June08 (Richmond Beach Rehabilitation, "180 Days Plus" and "Last Pmt Date"). On June 23, 2008, Richmond Beach did supposedly make a payment on its account.  Nonetheless, this payment made little impact on Richmond Beach's debts. First, despite this payment, Richmond Beach's outstanding 180-day plus liability increased 19% to $170,949.99.  Second, and more importantly, Omnicare's records reflect that this payment totaled

$0.00.  Ex. 44, COMBINED OASIS Facility Jan08 (Richmond Beach Rehabilitation, "180 Days Plus," "Last Pmt Date" and "Last Pmt Amt").

341.    In addition to Richmond Beach, several other Avamere facilities increased their 180-day plus debt load during this period.  Between January and June 2008, St. Francis Extended Healthcare increased its liabilities by 23%, incurring $39,675.87 in additional 180-day plus debt.  *Compare* Ex. 49 (St. Francis Extended Healthcare, "180 Days Plus"), *with* Ex. 44 (same).  More egregiously, Georgian House Health Care Center augmented its liabilities by 64%, going from $34,623.93 to $96,517.99 in past-due debt in only six months.  *Compare* Ex. 49 (Georgian House Health Care Center, "180 Days Plus"), *with* Ex. 44 (same).

### vi.    Family Senior Care

342.    Of the eight SNFs detailed in this Complaint, Family Senior Care held, by far, the largest amount of past-due debt.  In total, its fifty-five national accounts incurred June 2008 arrearages totaling $19,844,561.29.  Ex. 45, Facility AR Aging 06-17-08 Company Name (adding Family Senior Care "90 Days Plus").  Moreover, between January and June 2008, *none* of Family Senior Care's SNFs reduced its past-due debt.  Each facility chose to either not pay its liabilities or, as was more often the case, increase its debt load by 7 to 24%.  *Compare* Ex. 45 (Family Senior Care, "90 Days Plus"), *with* Ex. 59, Facility AR Aging 01-22-08 (same).  By abandoning all pretext of payment in many cases, Family Senior Care realized over $19 million dollars in unpaid debts.

343.    Family Senior Care-owned, Brookview Healthcare Center, provides a common example of this practice.  In January 2008, Brookview owed over a half million dollars in 90-day plus arrearages, and almost as much in 180-day plus arrearages.  Ex. 59, Facility AR Aging 01-22-08  (Brookview Healthcare Center, "90 Days Plus" and "180 Days Plus").  By June, both amounts

had increased.  Brookview now owed $667,429.09 in 90-day plus debts and $570,130.50 in 180-day plus debts.  Ex. 45, Facility AR Aging 06-17-08 Company Name (same).  By September, the debt had again increased to respective debts of $748,465.52 and $667,429.09.  Ex. 55, Facility AR Aging 09-02-08 Company Name (same).  Moreover, as of September 2008, Brookview had not made a payment to Omnicare in 294 days.  *Id.* (Brookview Healthcare Center, "Last Pmt Date").  In fact, its last payment occurred in November 2007, and amounted to only $16,831.89, or 2.2% of its September 2008 debt.  *Id.* (Brookview Healthcare Center, "Last Pmt Amt" and "90 Days Plus").

344.     Faith Nursing, also owned by Family Senior Care, reflects a similar pattern; like Brookview, it enjoyed every increasing debts, coupled with total non-payment.  For instance, over the course of at least eleven months Faith Nursing increased its past-due debts by $102,261.32 or 35%.  Yet, between October 11, 2007 and September 2, 2008, Faith Nursing did not make a single payment to Omnicare.  Ex. 55, Facility AR Aging 09-02-08 Company Name (Faith Nursing, "Last Pmt Date').  Indeed, even its October 2007 was a paltry $7,983.01, or only 84% of its average 30-day January, June and September 2008 monthly charges.  *Id.* (Faith Nursing, "Last Pmt Amt"); *see also id.* (averaging Faith Nursing, "0 to 30); Ex. 59, Facility AR Aging 01-22-08 Company Name (same); Ex. 45, Facility AR Aging 06-17-08 Company Name (same).

### vii.     Millennium Management, LLC

345.     Millennium Management, LLC owns two facilities designated as either NAT or P-Hold accounts:  Lanier Manor and West Broward Care Center.  Both facilities are located in Florida.  In January 2008, Lanier Manor, a NAT-designated facility, held $441,575.60 in 90-day past-due arrearages, and $380,710.25 in 180-day plus past-due arrearages.  Ex. 59, Facility AR Aging 01-22-08 Company Name (Lanier Manor, "90 Days Plus" and "180 Days Plus").  Further, Lanier Manor had not made a payment to Omnicare in 110 days, either on this debt, or its accruing

monthly bills.  *Id.* (Lanier Manor, "Last Pmt Date" and "0 to 30").  By June 2008, Lanier Manor's liability had grown to 90% of Lanier Manor's total due, and now equaled $498,989.23—a 12% increase 90-day plus arrearages in only six months.  Ex. 45, Facility AR Aging 06-17-08 Company Name (comparing Lanier Manor, "90 Days Plus" and "Total Due").

346.     West Broward Care Center's debt was even higher.  In January 2008, it totaled $776,899.38.  By June, West Broward's debt had increased by 19% to $953,962.41.   Ex. 45, Facility AR Aging 06-17-08 Company Name (West Broward, "90 Days Plus").  Accordingly, between simply these two SNFs, Millennium Management benefited from $1,452,951.64 in unpaid liabilities.  *Id.* (adding West Broward Care Center and Lanier Manor, "90 Days Plus").

### viii.     Fundamental Long Term Care Holdings, LLC/Trans Healthcare, Inc.

347.     Fundamental Long Term Care Holdings, LLC/Trans Healthcare, Inc. owns at least 112 facilities, the majority of which are designated as NAT accounts.  *See* Ex. 45, Facility AR Aging 06-17-08 Company Name (Fundamental Long Term Holdings, "Collections Portfolio").  Stoneybrook Healthcare holds Fundamental's largest balance of past-due debt.  As of January 2008, Stoneybrook's 180-day plus past-due debt totaled $319,586.75.  Ex. 59, Facility AR Aging 01-22-08 Company Name (Stoneybrook Healthcare, "180 Days Plus").  In fact, this amount represented *all* of Stoneybrook's total outstanding balance.  *Id.* (Stoneybrook Manor, "Total Due" and "180 Days Plus").  Yet, its payments to Omnicare were paltry; in December 2007, Omnicare reported a payment totaling $368.71, or 0.12% of Stoneybrook's arrearages.  *Id.* (Stoneybrook Manor, "Last Pmt Date," "Last Pmt Amt" and "90 Days Plus").  By June 2008, Stoneybrook had still not made a single additional payment on its $319,586.75 debt.  Ex. 45, Facility AR Aging 06-17-08 Company Name (Stoneybrook, "Last Pmt Date" and "90 Days Plus").

348.    Texoma Healthcare Center, which is also a Fundamental-owned facility, owed approximately $15,800 in 90 day debt in January 2008.  Over the course of the next six months, it continued to incur monthly billing charges, yet failed to pay down any of its past-due balance. Instead, Texoma increased both its 90-day and 180-day old debt by 14% and 18% respectively. *Compare* Ex. 59, Facility AR Aging 01-22-08 Company Name (Texoma Healthcare Center, "90 Days Plus" and "180 Days Plus"), *with* Ex. 45, Facility AR Aging 06-17-08 Company Name (same).

349.    Several other Fundamental facilities reflect a similar pattern: between January and June 2009, Tulia Care Center increased its 180-day plus debt load by 23%; Villa Haven Health and Rehab, added 28% to its arrearages; and Texas Specialty Nursing (Fundamental) enlarged its liability by 42%.  *Compare* Ex. 59, Facility AR Aging 01-22-08 Company Name (Tulia Care Center, Villa Haven Health and Rehab, Texas Specialty Nursing (Fundamental), "90 Days Plus" and "180 Days Plus"), *with* Ex. 45, Facility AR Aging 06-17-08 Company Name (same).

350.    Finally, many Fundamental facilities failed to make payments to Omnicare for six months or more.  By June 2008, Crosbyton Nursing and Rehab and River Valley Health and Rehab had both failed to make a payment for 261 days.  Ex. 45, Facility AR Aging 06-17-08 Company Name (Crosbyton Nursing and Rehab, River Valley Health and Rehab, "Last Pmt Date").  Care Inn Llano had also failed to pay for 690 days.  *Id.*  And Care Inn Edna had failed to pay for 694 days.  *Id.*  By delaying payments for such a long period of time, Fundamental accepted a benefit from Omnicare, the total of which equaled its SNF's past-due—and unpaid—debt.

351.    These companies' utter failure to pay their Omnicare bills was not due to financial troubles; they were in fact the giants among American Nursing home companies.  And to the contrary, public information about companies such as Life Care reveals that they were thriving

financially then and are now.  The sole reason for Omnicare to forego collection of Medicare Part A billings was to keep and expand their business.  In contrast, homes not part of a national or regional account show radically different debt histories; Collections cut off service long before they accrued the magnitude of debt seen for homes categorized as a NAT or P-Hold.  *See, e.g.*, Ex. 55, Facility AG Aging 09-02-08 Company Name (reviewing Ward & Ward and State Street Assisted Living, Collectable accounts with only $7,872.57 and $4,771.80  in 90-day plus debt).

## VII.   ACTIONABLE CONDUCT BY OMNICARE UNDER THE FALSE CLAIMS ACT

### A.   Applicable Law

#### i.   False Claims Act

352.   This is an action to recover damages and civil penalties on behalf of the United States Government ("Government") and Relator arising from the false or fraudulent statements, claims, and acts by Omnicare and the skilled nursing facilities designated as National Accounts and P–Hold facilities, made in violation of the False Claims Act.  *See* 31 U.S.C. §§ 3729–3732 (2000).

353.   For conduct occurring before May 20, 2009, the False Claims Act ("FCA") provides that any person who:

(a)   knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(b)   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(c)   conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(d)   knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government

is liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each claim, plus three times the amount of damages sustained by the Government because of the false or fraudulent claim.  31 U.S.C. § 3729(a).  The FCA defined "claim" at that time to include: "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."  31 U.S.C 3729(c).

354.     For conduct occurring on or after May 20, 2009, the False Claims Act ("FCA") provides that any person who:

> (a)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (b)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim (except that this language applies to all claims pending on or after June 7, 2008);
>
> (c)     conspires to commit a violation of the False Claims Act;
>
> (d)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government

is liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each claim, plus three times the amount of damages sustained by the Government because of the false or fraudulent claim.  31 U.S.C. § 3729(a), *amended by* Fraud Enforcement Recovery Act, Pub. L. No. 111-21, 123 Stat. 1617 (2009).

355.     The amended FCA defines "claim" as:

(A) mean[ing] any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any

portion of the money or property which is requested or demanded.

356.     The FCA allows any person who has knowledge of a false or fraudulent claim against the Government to bring an action in federal district court for himself and for the Government and to share in any recovery.  31 U.S.C. § 3730.  The FCA also prohibits negative employment actions taken in response to an employee's investigation and initiation of a claim under the FCA.  31 U.S.C. § 3730(h).

357.     On behalf of the Government and the States of California, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Michigan, Montana, Nevada, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee, Texas, Wisconsin, the Commonwealths of Massachusetts and Virginia, and the District of Columbia (collectively "States"), Relator seeks through this action to recover damages and civil penalties arising from Omnicare and the skilled nursing facilities designated as National Accounts and P–Hold facilities' causation of submission of false claims to the Government and the States.  *See* 31 U.S.C. § 3730.  In this case, such claims were submitted to the Government for payment for pharmaceuticals and pharmaceutical services by Omnicare and the skilled nursing facilities designated as National Accounts and P-Hold

facilities.  Relator believes that the Government and the states have suffered significant damages as a result of false claims for payment for the pharmaceuticals and services.

358.    There are no bars to recovery under section 3730(e), and, or in the alternative, Relator is an original source as defined therein.  Relator has direct and independent knowledge of the information on which the allegations are based.  To the extent that any allegations or transactions herein have been publicly disclosed, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions.  As required pursuant to 31 U.S.C. § 3730(b) and (e), Relator has voluntarily provided information, oral and/or written, and sent disclosure statement(s) describing all material evidence, and information, related to her Original Complaint, both before and contemporaneously with filing her Original Complaint, to the Attorney General of the United States and the United States Attorney for the District of Southern Texas, Houston Division.  Contemporaneously with filing her Original Complaint, Relator provided all material documents to the Attorney General of the United States and the United States Attorney for District Southern Texas, Houston Division.  She has since supplemented her disclosures as appropriate in the same manner.

359.    Just as Relator voluntarily disclosed information and/or documents to the United States before and contemporaneously with her Original Complaint and afterwards, as described in the preceding paragraph, Relator has made the same voluntary disclosures to the named *qui tam* states at the same time.

360.    This Fourth Amended Complaint details Relator's discovery and investigation of the Defendants' fraudulent schemes and is supported by documentary evidence.

### ii.    The Federal Anti-Kickback Statute

361.    In pertinent part, the Anti-Kickback Statute provides:

(b)   Illegal remuneration

(1)   whoever  knowingly  and  willfully   solicits  or  receives  any remuneration (including any kickback, bribe, or rebate) directly or **indirectly, overtly or covertly, in c**ash or in kind—

(A)   in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B)   in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2)   whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A)   to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B)   to purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(3)   Paragraphs (1) and (2) shall not apply to—

(A)   a discount or other reduction in price obtained by a provider of services or other entity under a Federal health care program if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider or entity under a Federal health care program . . . .

117

42 U.S.C. § 1320a-7b(b) (2000).  Those who violate the statute also are subject to exclusion from participation in federal healthcare programs, and civil monetary penalties of up to $50,000 per violation and up to three times the amount of remuneration paid.  42 U.S.C. § 1320a-7(b)(7) (2000); 42 U.S.C. § 1320a-7a(a)(7) (2000).

> ### iii.    Payment for Drugs Under Medicaid

362.    Federal and state regulations set maximum prices for pharmaceuticals and related services reimbursed under state Medicaid programs.  Title 42, section 447.512 of the Code of Federal Regulations provides, in pertinent part:

> (b)    Other drugs.
>
> The agency payments for brand name drugs certified in accordance with paragraph (c) of this section and drugs other than multiple-source ["generic"] drugs for which a specific limit has been established under § 447.514 of this subpart must not exceed, in the aggregate, payment levels that that agency has determined by applying the lower of the—
>
> > (1)    [Estimated acquisition cost] plus reasonable dispensing fees established by the agency; or
> >
> > (2)    Providers' usual and customary charges to the general public.

42 C.F.R. § 447.512(b) (2007).

363.    Pursuant to this federal regulation, many states require Medicaid providers to charge no more than the usual and customary charge billed to the general public, or to non-Medicaid patients.  Other states further require that their Medicaid programs receive the best, i.e., lowest, price available to any other payor.

> ## B.    Omnicare and the SNFs Submitted False Claims by Offering and Soliciting and Accepting Kickbacks in Violation of the Anti-Kickback Statute and the FCA.

364.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  As

described more fully above, Omnicare violated the Anti-Kickback Statute by engaging in a scheme to provide pharmaceuticals and services for which Omnicare would bill but never make a bona fide attempt to collect payment from certain skilled nursing facilities in order to maintain and grow its business, especially by expanding the business that was reimbursable by Medicare Part D and Medicaid.  Omnicare caused SNF facilities, including but not limited to the defendants named in this complaint, to violate the Anti-Kickback Statute by engaging with the facilities in the scheme under which Omnicare offered to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at those facilities in order to win and keep Medicare Part D and Medicaid business.  These SNFs violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business.  Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

365.    Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

366.    The claims submitted by Omnicare and the SNFs are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by Omnicare and the SNFs to Medicare and the state Medicaid programs.  Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and

services to Medicare Part A patients at the SNF facilities in order to win and keep Medicare Part D and Medicaid business, Omnicare and the SNFs submit or cause false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute. Finally, Omnicare continues to make or cause pharmacists to make false implied and/or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above. Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

367.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or SNFs had the potential to influence the Government's payment decision.

368.    Because of the illegal acts described above, Omnicare made millions of dollars in sales of pharmaceuticals and services reimbursable by Medicare Part D and Medicaid it would not otherwise have achieved. The ultimate submission by Omnicare and/or SNFs of false and/or fraudulent claims to the Government and state Medicaid programs was a foreseeable factor in the Government's loss and a consequence of the scheme. Consequently, the Government and the states have suffered substantial damages.

**C.    Omnicare Makes False Certifications to the United States Government.**

369.    Omnicare has submitted Medicare provider applications and/or signed provider agreements requiring it to comply with applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute. By participating in the

Medicare program, and in submitting applications, and/or entering agreements with Medicare, Omnicare certified compliance with applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, representative examples of which certifications are described above.

370.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  Omnicare violated the Anti-Kickback Statute by engaging in a scheme to provide pharmaceuticals and services for which Omnicare would bill but never attempt to collect payment to certain skilled nursing facilities in order to keep the business that was reimbursable by Medicare Part D and Medicaid.  Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

371.    Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

372.    The claims submitted by Omnicare are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by Omnicare to Medicare and the state Medicaid programs.  Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at the SNFs in order to win and keep Medicare Part D and Medicaid business, Omnicare submits or causes false and/or fraudulent express certifications to be made, such as

certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute.  Finally, Omnicare continues to make or cause pharmacists to make false implied and/or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above.  Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

373.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare have the potential to influence the Government's payment decision.

374.    Because of the illegal acts described above, Omnicare makes millions of dollars in sales of pharmaceuticals and services to Medicare Part D and Medicaid patients that it would not otherwise achieve.  The ultimate submission by Omnicare of false and/or fraudulent claims to the Government and state Medicaid programs is a foreseeable factor in the Government's loss and a consequence of the scheme.  Consequently, the Government and the states have suffered substantial damages.

### D.    Omnicare Causes the Skilled Nursing Facilities that Pocket Omnicare's Medicare Part A Reimbursement to Make False Certifications to the United States Government.

375.    Each of Omnicare's skilled nursing facility customers, including the SNFs, has submitted Medicare provider applications, signed provider agreements, and/or annual cost reports requiring or certifying compliance with the requirement that the skilled nursing facility to comply

with applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.  *See* Ex. 97, Medicare Enrollment Application 37.  By participating in the Medicare program, and in submitting applications, and/or entering agreements with Medicare, National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, certified compliance with applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, representative examples of which certifications are described above.

376.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  Omnicare caused its National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, to violate the Anti-Kickback Statute by engaging with the facilities in a scheme under which Omnicare offered to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at those facilities in order to win and keep Medicare Part D and Medicaid business.  Those favored facilities also violated the Anti-Kickback Statute—by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business. Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

377.    Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

378.    The claims submitted by the National Account, Regional Hold, and P-Hold customers, including but not limited to the Skilled Nursing Defendants named in this complaint, are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, to Medicare and the state Medicaid programs.  Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at facilities belonging to Omnicare's National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, in order to win and keep Medicare Part D and Medicaid business, these customers submit or cause false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute.  Finally, these customers continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above.  Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

379.    Given the structure of the health care systems, the false statements, representations, and records made by National Account, Regional Hold, and P-Hold customers,

including but not limited to the SNFs named in this complaint, have the potential to influence the Government's payment decision.

380.     The ultimate submission by the National Account, Regional Hold, and P-Hold customers, including but not limited to SNFs named in this complaint, of false and/or fraudulent claims to the Government and state Medicaid programs is a foreseeable factor in the Government's loss and a consequence of the scheme.  Consequently, the Government and the states have suffered substantial damages.

### E.     Omnicare Makes False Certifications to State Medicaid Programs.

381.     Omnicare has submitted Medicaid provider applications and/or signed provider agreements requiring it to comply with applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.  By participating in the Medicaid program, and in submitting applications, and/or entering agreements with state Medicaid programs, Omnicare has certified compliance with applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.

382.     The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  Omnicare violated the Anti-Kickback Statute by engaging in a scheme to provide pharmaceuticals and services for which Omnicare would bill but never attempt to collect payment to certain skilled nursing facilities in order to keep the business that was reimbursable by Medicare Part D and Medicaid.  Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

383.     Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

384.     The claims submitted by Omnicare are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by Omnicare to Medicare and the state Medicaid programs.  Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at facilities belonging to National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, in order to win and keep Medicare Part D and Medicaid business, Omnicare submits or causes false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that it/they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute.  Finally, Omnicare continues to make or cause pharmacists to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above.  Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

385.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare have the potential to influence the Government's payment decision.  Omnicare's failure to require payment from certain skilled nursing facilities is not reported to state Medicaid programs for purposes of calculating either the usual and customary charges for drugs and services, or the lowest price offered to any payor, causing the states that use those formulas to pay a greater price than what is permissible.

386.     Because of the illegal acts described above, Omnicare makes millions of dollars in sales of pharmaceuticals and services reimbursable by Medicare Part D and Medicaid it would not otherwise have achieved.  The ultimate submission by Omnicare of false and/or fraudulent claims to the Government and state Medicaid programs was a foreseeable factor in the Government's loss and a consequence of the scheme.  Consequently, the Government and the states have suffered substantial damages.

> **F.     Omnicare Caused the Skilled Nursing Facilities that Pocketed Omnicare's Medicare Part A Reimbursement to Make False Certifications to State Medicaid Programs.**

387.     Each of Omnicare's skilled nursing facility customers has submitted Medicaid provider applications, signed provider agreement, and/or annual cost reports requiring or certifying compliance with the requirement that the skilled nursing facility to comply with applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.  By participating in the Medicaid program, and in submitting applications, and/or entering agreements with state Medicaid programs National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, certify compliance with applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.

388.     The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  Omnicare caused the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, to violate the Anti-Kickback Statute by engaging with the facilities in a scheme under which Omnicare offered to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at those facilities in order to win and keep Medicare Part D and Medicaid business.  Those favored facilities also violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business.  Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

389.     Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

390.     The claims submitted by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by such customers to Medicare and the state Medicaid programs.  Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at the SNFs in order to win and keep

Medicare Part D and Medicaid business, the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, submit or cause false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute. Finally, the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above. Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

391.   Given the structure of the health care systems, the false statements, representations, and records made by National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint have the potential to influence the Government's payment decision. Omnicare's failure to require payment from certain skilled nursing facilities is not reported to state Medicaid programs for purposes of calculating either the usual and customary charges for drugs and services, or the lowest price offered to any payor, causing the states that use those formulas to pay a greater price than what is permissible.

392.   The ultimate submission by the SNFs of false and/or fraudulent claims to the Government and state Medicaid programs was a foreseeable factor in the Government's loss and a consequence of the scheme. Consequently, the Government and the states have suffered substantial damages.

**G.      Skilled Nursing Facilities that Pocket Omnicare's Medicare Part A Reimbursement Make False Certifications to the United States Government.**

393.     Each of Omnicare's skilled nursing facility customers has submitted Medicare provider applications, signed provider agreements, and/or annual cost reports requiring or certifying compliance with the requirement that the skilled nursing facility to comply with applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.  *See* Ex. 97, Medicare Enrollment Application 37.  By participating in the Medicare program, and in submitting applications, and/or entering agreements with Medicare and/or state Medicaid programs, the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, certify compliance with applicable Medicare laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute.

394.     The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  The National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, violate the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business.  Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

395.     Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a

kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

396.    The claims submitted by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by such customers to Medicare and the state Medicaid programs. Specifically, due to these customers' false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at their facilities in order to win and keep Medicare Part D and Medicaid business, the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint submit or cause false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute. Finally, the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above. Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

397.    Given the structure of the health care systems, the false statements, representations, and records made by the National Account, Regional Hold, and P-Hold customers,

including but not limited to the SNFs named in this complaint, have the potential to influence the Government's payment decision.  Omnicare's failure to require payment from certain skilled nursing facilities is not reported to state Medicaid programs for purposes of calculating either the usual and customary charges for drugs and services, or the lowest price offered to any payor, causing the states that use those formulas to pay a greater price than what is permissible.

398.    The ultimate submission by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, of false and/or fraudulent claims to the Government and state Medicaid programs is a foreseeable factor in the Government's loss and a consequence of the scheme.  Consequently, the Government and the states have suffered substantial damages.

### H.    Skilled Nursing Facilities that Pocketed Omnicare's Medicare Part A Reimbursement Made False Certifications to State Medicaid Programs.

399.    Each of Omnicare's skilled nursing facility customers has submitted Medicaid provider applications, signed provider agreements, and/or annual cost reports requiring or certifying compliance with the requirement that the skilled nursing facility to comply with applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.  By participating in the Medicaid program, and in submitting applications, and/or entering agreements with state Medicaid programs, Omnicare's National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, have certified compliance with applicable Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.

400.    The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program.  The SNFs

violate the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business. Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

401.    Kickback-tainted claims are non-reimbursable because compliance with the Anti-Kickback Statute is a condition of payment of any claims submitted for payment to federal healthcare programs, including Medicare and Medicaid.  Furthermore, claims resulting from a kickback scheme are inherently false and/or fraudulent as the claims are the product of false and/or fraudulent conduct.

402.    The claims submitted by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by such customers to Medicare and the state Medicaid programs. Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at the facilities belonging to National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, in order to win and keep Medicare Part D and Medicaid business, such customers submit or cause false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid provider enrollment forms and cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute. Finally, the National Account, Regional Hold, and P-Hold customers, including but not limited to

the SNFs named in this complaint, continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above. Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

403.     Given the structure of the health care systems, the false statements, representations, and records made by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint have the potential to influence the Government's payment decision.  Omnicare's failure to require payment from certain skilled nursing facilities was not reported to state Medicaid programs for purposes of calculating either the usual and customary charges for drugs and services, or the lowest price offered to any payor, causing the states that use those formulas to pay a greater price than what was permissible.

404.     The ultimate submission by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, of false and/or fraudulent claims to the Government and state Medicaid programs was a foreseeable factor in the Government's loss and a consequence of the scheme.  Consequently, the Government and the states have suffered substantial damages.

## I. Skilled Nursing Facilities that Pocketed Omnicare's Medicare Part A Reimbursement Submitted False Medicare and Medicaid Cost Reports.

405.     Medicare and Medicaid require skilled nursing facilities, including but not limited to Omnicare's National Account, Regional Hold, and P-Hold customers, to submit regular, detailed cost reports accounting for their assets, transactions, and costs.  On those cost reports, the SNFs and other skilled nursing facilities that have pocketed Omnicare's Medicare Part A

reimbursement have had to account for those very funds. They have misrepresented the nature of their assets, transactions, and costs on their cost reports; Medicare and Medicaid would certainly not have allowed them to keep such money if the truth had been disclosed. The misrepresentations by these customers on their Medicare and Medicaid cost reports violated the FCA, 31 U.S.C. § 3729 (a). In addition, when the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, submit their Medicare and Medicaid cost reports, each facility certifies that it will comply with applicable Medicare and/or Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs.

406. The Anti-Kickback Statute prohibits the offer or acceptance of remuneration to induce the purchase of a good or service reimbursed by a federal healthcare program. The National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint violated the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business. Finally, the Anti-Kickback Statute specifies, as amended in 2010, that a claim for reimbursement arising from an illegal kickback is false for purposes of the FCA.

407. The cost reports submitted by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, are false and/or fraudulent not only because they are presented with the knowledge that they are ineligible for payment, but because they are based on and/or contain false certifications or representations made or caused to be made by these customers to Medicare and the state Medicaid programs. Specifically, due to Omnicare's false and/or fraudulent schemes to forgo reimbursement on

pharmaceuticals and services to Medicare Part A patients in order to win and keep Medicare Part D and Medicaid business, these customers submit or cause false and/or fraudulent express certifications to be made, such as certifications in Medicare and state Medicaid cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute.  Finally, the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above.  Compliance with each of those certifications was and is a condition of payment for Medicare and Medicaid.

408.    Given the structure of the health care systems, the false statements, representations, and records made by the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, have the potential to influence the Government's payment decision.  Omnicare's failure to require payment from certain skilled nursing facilities is not reported to state Medicaid programs for purposes of calculating either the usual and customary charges for drugs and services, or the lowest price offered to any payor, causing the states that use those formulas to pay a greater price than what is permissible.

409.    When those skilled nursing facilities submit the Medicare and Medicaid cost reports, they falsely certify compliance with applicable Medicare and/or Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and

the provisions regarding payment for drugs, and thus violated the FCA, 31 U.S.C. § 3729 (a), causing the Government and States to suffer substantial damages.

### J. Omnicare Falsely Certifies Compliance with the CIA.

410. As a condition to participating in federal and state healthcare programs, Omnicare agreed to abide by the provisions in its CIA with the Office of the Inspector General for the Department of Health and Human Services. The CIA requires Omnicare to certify in its implementation report and annual reports under the agreement that it is complying with all terms and conditions of the CIA. By continuing to engage in illegal conduct, such as forgoing payment for pharmaceuticals and services reimbursable by Medicare Part A to induce purchase of pharmaceuticals and services reimbursable by Medicare Part D and Medicaid, Omnicare falsely certifies that it was in compliance with the CIA. In addition, by failing to maintain a disclosure program and by terminating Ruscher when she questioned Omnicare's illegal practices, Omnicare falsely certifies that it was in compliance with the CIA, and thus violated the FCA, 31 U.S.C. § 3729 (a), causing the Government to suffer substantial damages.

### K. Omnicare Conspired with the SNFs to Defraud Medicare and Medicaid in Violation of the FCA.

411. Omnicare, the National Account, Regional Hold, and P-Hold customers enter into agreements and conspire with one another to submit false claims for reimbursement for pharmaceuticals, pharmaceutical services and other services provided to long-term care patients to Medicare and state Medicaid programs and to receive reimbursement for these pharmaceuticals and services to which they were not entitled.

412. As part of the scheme and agreement to obtain reimbursement for pharmaceuticals and services in violation of the state Medicaid programs' reimbursement policies, Omnicare, National Account, Regional Hold, and P-Hold customers, including but not limited to

the SNFs named in this complaint, conspire and agree to perform acts to effectuate the conspiracy. Omnicare offers, and those facilities accept, kickbacks to induce the facilities to keep their business with Omnicare.  Under this scheme, Omnicare forgoes reimbursement on pharmaceuticals and services to Medicare Part A patients in order to win and keep Medicare Part D and Medicaid business.

413.    Omnicare, National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, know that their actions will result in the submission to Medicare and state Medicaid programs of false and fraudulent claims for reimbursement for pharmaceuticals and services provided to long-term care patients, violating the FCA, 31 U.S.C. § 3729 (a), and resulting in substantial damages to the Government.

## VIII.  DAMAGES

414.    As a result of Omnicare's scheme to defraud Medicare and the state Medicaid programs, with the participation of the SNFs, Defendants have reaped illegal profits at the expense of American consumers and taxpayers who pay reimbursements for pharmacy costs for Medicare and state Medicaid programs.  As noted above, the ultimate submission by Omnicare and/or the SNFs of false claims to the Government and state Medicaid programs was a foreseeable factor in the Government's loss and a consequence of the scheme.  The Government and the States have suffered damages as a result.

## IX.    CAUSES OF ACTION

A.    **Count I – FALSE CLAIMS 31 U.S.C. § 3729(a)(1)(former)/31 U.S.C. § 3729(a)(1)(A)(current)**

415.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

416.     Omnicare violates the Anti-Kickback Statute by engaging in a scheme to provide pharmaceuticals and services for which Omnicare bills but never attempts to collect payment from certain skilled nursing facilities in order to keep the business that was reimbursable by Medicare Part D and Medicaid.  Omnicare causes the SNFs to violate the Anti-Kickback Statute by engaging with the facilities in the scheme under which Omnicare offers to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at those facilities in order to win and keep Medicare Part D and Medicaid business.  As a result of those violations, all of the claims that Omnicare submits and/or causes to be submitted to the Government and the state Medicaid programs are false or fraudulent.  Omnicare knowingly presents such false or fraudulent claims and/or causes such false or fraudulent claims to be presented for payment or approval in violation of 31 U.S.C. § 3729(a).  When Omnicare submits claims for payment under its Medicare and Medicaid state provider agreements, it falsely certifies compliance with applicable Medicare and Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus has violated the FCA, 31 U.S.C. § 3729(a).

417.     Additionally, the SNFs violate the Anti-Kickback Statute by accepting pharmaceuticals and services for their Medicare Part A patients and pocketing the reimbursement in exchange for giving Omnicare their Medicare Part D and Medicaid business.  Thus, all of the claims knowingly submitted by the SNFs are false or fraudulent.  The SNFs knowingly present such false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a).  When the SNFs submit claims for payment under their Medicare and state Medicaid provider agreements, they falsely certify compliance with applicable Medicare and state Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute, and thus violate the FCA, 31 U.S.C. § 3729(a).  When the SNFs submit Medicare and Medicaid cost

reports, they falsely certify compliance with applicable Medicare and/or Medicaid laws, regulations, and program instructions including, but not limited to, the Anti-Kickback Statute and the provisions regarding payment for drugs, and thus violate the FCA, 31 U.S.C. § 3729 (a).

418.    The United States Government has paid the false and/or fraudulent claims.

419.    By virtue of the false or fraudulent claims that Omnicare knowingly causes to be submitted or that Omnicare and the SNFs submit, the United States Government has suffered substantial monetary damages.

**B.    Count II – False Records or Statements (31 U.S.C. § 3729(a)(2) (former); 31 U.S.C. § 3729(a)(1)(B) (current))**

420.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

421.    As a result of Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at the facilities belonging to National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, in order to win and keep Medicare Part D and Medicaid business, Defendants knowingly make or use or cause to be made or used false records or statements or omitted material facts (a) to get false and/or fraudulent claims paid or approved by the Government, and/or (b) that are material to false and/or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(2) (former) and/or 31 U.S.C. § 3729(a)(1)(B) (current).  These false statements or records include, but are not limited to, certifications in Medicare and state Medicaid cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute.  The Defendants continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid,

including the Anti-Kickback Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above.

422.     By virtue of the false records or statements that Defendants made or used or caused to be made or used, the United States has suffered substantial monetary damages.

C.     **Count III – Conspiracy (31 U.S.C. § 3729(a)(3)(former)/31 U.S.C. § 3729(a)(1)(C) (current)**

423.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

424.     Omnicare and the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, enter into agreements and conspire with one another to submit false claims for reimbursement for pharmaceuticals, pharmaceutical services and other services provided to long-term care patients to Medicare and state Medicaid programs and to receive reimbursement for these pharmaceuticals and services to which they were not entitled.  Omnicare offers, and National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, accept, kickbacks to induce the facilities to keep their business with Omnicare, thereby causing all of the claims submitted by Omnicare and the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, to Medicare and state Medicaid programs to be false or fraudulent.  Accordingly, Omnicare and the National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint, are conspiring to defraud the United States by (a) getting false or fraudulent claims allowed or paid, or (b) committing a violation of 31 U.S.C. § 3729(a), in violation of 31 U.S.C. § 3729(a).

425.     By virtue of the false and/or fraudulent claims that Omnicare and the National

Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint conspire to get allowed or paid, the United States has suffered substantial monetary damages.

> **D.      Count IV – Reverse False Claims (31 U.S.C. § 3729(a)(7) (former); 31 U.S.C. 3729(a)(1)(G) (current))**

426.      Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

427.      For the duration of Omnicare's false and/or fraudulent schemes to forgo reimbursement on pharmaceuticals and services to Medicare Part A patients at facilities belonging to National Account, Regional Hold, and P-Hold customers, including but not limited to the SNFs named in this complaint in order to win and keep Medicare Part D and Medicaid business, Defendants have refused to reimburse the Government, which was overcharged for prescription drugs.  Throughout this scheme, Defendants have knowingly (a) made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease an obligation to pay money to the Government, (b) made, used or caused to be made or used false records and/or statements material to an obligation to pay (or to reimburse) money to the Government; or (c) concealed or improperly avoided or decreased an obligation to pay (or to reimburse) money to the Government, in violation of 31 U.S.C. § 3729(a)(7) (former) and/or 31 U.S.C. 3729(a)(1)(G) (current).  These false statements or records include, but are not limited to, certifications in Medicare and state Medicaid cost reports, representative examples of which certifications are described above, that they will comply with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback Statute.  The Defendants continue to make or cause providers to make false implied and or express certifications of compliance with all federal and state laws and regulations applicable to Medicare and Medicaid, including the Anti-Kickback

Statute, and certifications, in submitting claims for reimbursement to Medicare and the state Medicaid programs, as described above.

428.    By virtue of Defendants' failure to disclose their obligation to repay the Government in violation of 31 U.S.C. §3729(a)(7) (former) and/or 31 U.S.C. 3729(a)(1)(G) (current), the Government has suffered substantial monetary damages.

## RELIEF

429.    On behalf of the United States Government, *qui tam* Relator seeks to receive monetary damages equal to three times that suffered by the United States Government.   In addition, Relator seeks to receive all civil penalties on behalf of the United States Government in accordance with the False Claims Act.

430.    *Qui tam* Relator seeks to be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act.

431.    *Qui tam* Relator seeks to be awarded all costs and expenses for this action, including attorneys' fees and court costs.

432.    *Qui tam* Relator seeks pre-judgment interest at the highest rate allowed by law.

433.    *Qui tam* Relator seeks to be awarded all other relief on behalf of Relator or the United States Government to which either may be entitled and that the Court deems just and proper.

## PRAYER

WHEREFORE, Relator prays that this Court enter judgment on behalf of the Relator and against Omnicare and the SNFs for the following:

- Damages in the amount of three (3) time the actual damages suffered by the United States Government as a result of the conduct of Omnicare and the SNFs;

- Civil penalties against Omnicare up to $11,000 for each violation of 31 U.S.C. § 3729;

- The maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

- All costs and expenses of this litigation, including attorneys' fees and costs of court; and

- All other relief on behalf of Relator or the United States Government to which they may be entitled and that the Court deems just and proper.

**F.     Count V – California False Claims Act (Cal. Gov't. Code § 12650 *et seq.*)**

434.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

435.    This is a *qui tam* action brought by Relator and the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650 *et seq.*

436.    Cal. Gov't Code § 12651(a) provides liability for any person who-

(a)     knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof, a false claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

(c)     conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision;

(d)     knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision;

(e)     is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

437.     In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code §§ 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code §14107.2.

438.     Omnicare and/or the SNFs knowingly violated Cal. Gov't Code § 12651(a) from at least 1998 to the present by their violation of federal and state laws, including Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf, & Inst. Code §14107.2, and the Federal Anti-Kickback Statute, as described herein.  The fraudulent conduct continues to this day.

439.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the California Medicaid program are false and/or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to Cal. Bus. & Prof. Code §§ 650-650.1 and Cal. Welf, & Inst. Code §14107.2, and the Federal Anti-Kickback Statute, representative examples of which certifications are described above.  Compliance with federal and state laws and regulations were conditions of payment.

440.     The State of California, by and through the California Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

441.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of California's payment decision.

442.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of California's loss and a consequence of the scheme.

443.     As a result of the violations of Cal. Gov't Code §12651(a) by Omnicare and/or the SNFs, the State of California has been damaged.

444.     There are no bars to recovery under Cal. Gov't Code § 12652(d)(3), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of herself and the State of California.

445.     This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF CALIFORNIA:

- Three times the amount of actual damages that the State of California has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of up to $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of California;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**G.      Count VI – Delaware False Claims and Reporting Act (6 Del. C. § 1201 *et seq.*)**

446.      Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

447.      This is a *qui tam* action brought by Relator and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, Title 6, Chapter 12 of the Delaware Code.

448.      6 Del. C. § 1201(a) provides liability for any person who-

    (a)      knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

    (b)      knowingly makes, uses, or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved;

    (c)      conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; or

    (d)      knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision.

449.      In addition, 31 Del. C. § 1005 prohibits the solicitation or receipt of any remuneration (including kickbacks, bribes or rebate) directly or indirectly, overtly or covertly, in cash or in kind, in return for the furnishing of any medical care or services for which payment may be made in whole or in part under any public assistance program.

450.      Omnicare and/or the SNFs knowingly violated 6 Del. C. § 1201(a) from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Delaware Anti-Kickback Statute (31 Del. C. § 1005), as described herein.  The fraudulent conduct continues to this day.

451.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Delaware Medicaid program are false or fraudulent.   Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Delaware Anti-Kickback Statute (31 Del. C. § 1005).   Compliance with federal and state laws and regulations were conditions of payment.

452.     The State of Delaware, by and through the Delaware Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

453.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Delaware's payment decision.

454.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Delaware's loss and a consequence of the scheme.

455.     As a result of the violations by Omnicare and/or the SNFs of 6 Del. C. § 1201(a), the State of Delaware has been damaged.

456.     There are no bars to recovery under 6 Del. C. § 1206(c) and, or in the alternative, Relator is an original source as defined therein.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 6 Del. C. § 1203(b) on behalf of herself and the State of Delaware.

457.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF DELAWARE:

- Three times the amount of actual damages that the State of Delaware has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Delaware;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to 6 Del. C. § 1205, and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**H.     Count VII – District of Columbia Procurement Reform Amendment Act (D.C. Code § 2-308.13 *et seq.*)**

458.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

459.     This is a *qui tam* action brought by Relator and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. Code § 2-308.13 *et seq.*

460.     D.C. Code § 2-308.14(a) provides liability for any person who:

(a)     knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

(c)     conspires to defraud the District by getting a false claim allowed or paid by the District;

(d)     knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District;

(e)     is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

461.     Omnicare and/or the SNFs knowingly violated D.C. Code § 2-308.14(a) from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the District of Columbia Anti-Kickback Statute (D.C. Code § 4-802), as described herein.  The fraudulent conduct continues to this day.

462.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the District of Columbia Medicaid program are false or fraudulent. Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the District of Columbia Anti-Kickback Statute (D.C. Code § 4-802).   Compliance with federal and state laws and regulations were conditions of payment.

463.     The District of Columbia, by and through the District of Columbia Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

464.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the District of Columbia's payment decision.

465.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the District of Columbia's loss and a consequence of the scheme.

466.     As a result of the violations by Omnicare and/or the SNFs of D.C. Code § 2-308.14(a), the District of Columbia has been damaged.

467.     There are no bars to recovery under D.C. Code § 2-308.15(c)(2) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to D.C. Code § 2-308.15(b) on behalf of herself and the District of Columbia.

468.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the DISTRICT OF COLUMBIA:

- ▪ Three times the amount of actual damages that the District of Columbia has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the District of Columbia;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to D.C. Code § 2-308.15(f) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

## I.  Count VIII – Florida False Claims Act (Fla. Stat. § 68.081 *et seq.*)

469.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

470.    This is a *qui tam* action brought by Relator and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.*

471.    Fla. Stat. § 68.082(2) provides liability for any person who-

(a)    knowingly presents, or causes to be presented, to an officer or employee of an agency a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c)    conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid;

(d)    knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency.

472.     Omnicare and/or the SNFs knowingly violated Fla. Stat. § 68.082(2) from at least 1998 to the present by their violation of federal and state laws, including: the Federal Anti-Kickback Statute and the Florida Anti-Kickback Statute (Fla. Stat. § 409.920), as described herein. The fraudulent conduct continues to this day.

473.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Florida Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Florida Anti-Kickback Statute (Fla. Stat. § 409.920).  Compliance with federal and state laws and regulations were conditions of payment.

474.     The State of Florida, by and through the Florida Medicaid program and other state healthcare programs, paid the false and/or fraudulent claims.

475.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Florida's payment decision.

476.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Florida's loss and a consequence of the scheme.

477.     As a result of the violations by Omnicare and/or the SNFs of Fla. Stat. § 68.082(2), the State of Florida has been damaged.

478.     There are no bars to recovery under Fla. Stat. § 68.087(3) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Fla. Stat. § 68.083(2) on behalf of herself and the State of Florida.

479.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF FLORIDA:

- ▪ Three times the amount of actual damages that the State of Florida has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- ▪ A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Florida;

- ▪ Prejudgment interest; and

- ▪ All costs incurred in bringing this action.

To RELATOR:

- • The maximum amount allowed pursuant to Fla. Stat. § 68.085 and/or any other applicable provision of law;

- • Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- • An award of reasonable attorneys' fees and costs; and

- • Such further relief as this Court deems equitable and just.

**J.     Count IX – Georgia State False Medicaid Claims Act (Ga. Code. Ann. § 49-4-168 *et seq.*)**

480.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

481.     This is a *qui tam* action brought by Relator and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code. Ann. § 49-4-168 *et seq.*

482.     Ga. Code. Ann. § 49-4-168.1(a) provides liability for any person who:

(a)     knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

(c)     conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

(d)     knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay, repay, or transmit money or property to the State of Georgia.

483.     Omnicare and/or the SNFs knowingly violated Ga. Code. Ann. § 49-4-168.1 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute, as described herein.  The fraudulent conduct continues to this day.

484.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Georgia Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute.  Compliance with federal and state laws and regulations were conditions of payment.

485.     The State of Georgia, by and through the Georgia Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

486.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Georgia's payment decision.

487.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Georgia's loss and a consequence of the scheme.

488.     As a result of the violations by Omnicare and/or the SNFs of Ga. Code. Ann. § 49-4-168.1, the State of Georgia has been damaged.

489.     There are no bars to recovery under Ga. Code Ann. § 49-4-168.2(j)(2) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ga. Code Ann. § 4-4-168.2(b) on behalf of herself and the State of Georgia.

490.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF GEORGIA:

- Three times the amount of actual damages that the State of Georgia has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Georgia;

- Prejudgment interest; and

- All costs incurred in bringing this action.

TO RELATOR:

- The maximum amount allowed pursuant to Ga. Code. Ann. § 49-4-168.2(i)(2) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

### K.   Count X – Hawaii False Claims Act (Haw. Rev. Stat. § 661-21 *et seq.*)

491.   Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

492.   This is a *qui tam* action brought by Relator and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 *et seq.*

493.   Haw. Rev. Stat. § 661-21(a) provides liability for any person who:

(a)   knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

(b)   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)   conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

(d)   knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State; or

(e)   is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

494.     Omnicare and/or the SNFs knowingly violated Haw. Rev. Stat. § 661-21(a) from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Hawaii Anti-Kickback Statute (Haw. Rev. Stat. § 346-43.5), as described herein.  The fraudulent conduct continues to this day.

495.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Hawaii Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Hawaii Anti-Kickback Statute (Haw. Rev. Stat. § 346-43.5).  Compliance with federal and state laws and regulations were conditions of payment.

496.     The State of Hawaii, by and through the Hawaii Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

497.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Hawaii's payment decision.

498.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Hawaii's loss and a consequence of the scheme.

499.     As a result of the violations by Omnicare and/or the SNFs of Haw. Rev. Stat. § 661-21(a) the State of Hawaii has been damaged.

500.     There are no bars to recovery under Haw. Rev. Stat. § 661-28 and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct

and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of herself and the State of Hawaii.

501.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF HAWAII:

- Three times the amount of actual damages that the State of Hawaii has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Hawaii;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Haw. Rev. Stat. §661-27 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**L.     Count XI – Illinois Whistleblower Reward and Protection Act (740 Ill. Comp. Stat. *et seq.*)**

502.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

503.     This is a *qui tam* action brought by Relator and the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175 *et seq*.  The fraudulent conduct continues to this day.

504.     For conduct before July 27, 2010, 740 Ill. Comp. Stat. 175/3(a) provides liability for any person who:

(a)     knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(c)     conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

(d)     knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State.

505.     For conduct on or after July 27, 2010, 740 Ill. Comp. Stat. 175/3(a)(1) provides liability for any person who:

(a)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c)     conspires to commit a violation of § 3(a)(1);

(d)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State.

506.     In addition, 305 Ill. Comp. Stat. 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return

for furnishing any item or service for which payment may be made in whole or in part under the Illinois Medicaid program.

507. Omnicare and/or the SNFs knowingly violated 740 Ill. Comp. Stat. 175/3(a) from at least 1998 to the present by their violation of federal and state laws, including the Illinois Anti-Kickback Statute (305 Ill. Comp. Stat. 5/8A-3(b)) and the Federal Anti-Kickback Statute, as described herein.

508. As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Illinois Medicaid program are false or fraudulent. Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Illinois Anti-Kickback Statute (305 Ill. Comp. Stat. 5/8A-3(b)). Compliance with federal and state laws and regulations were conditions of payment.

509. The State of Illinois, by and through the Illinois Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

510. Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Illinois's payment decision.

511. The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Illinois's loss and a consequence of the scheme.

512. As a result of the violations by Omnicare and/or the SNFs of 740 Ill. Comp. Stat. 175/3(a), the State of Illinois has been damaged.

513.    There are no bars to recovery under 740 Ill. Comp. Stat. 175/4(e)(4), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 740 Ill. Comp. Stat. 175/4(b) on behalf of herself and the State of Illinois.

514.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF ILLINOIS:

- Three times the amount of actual damages that the State of Illinois has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Illinois;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to 740 Ill. Comp. Stat. 175/4(d) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**M.     Count XII – Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-1 *et seq*.)**

515.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

516.     This is a *qui tam* action brought by Relator and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5-1 *et seq*.

517.     Ind. Code § 5-11-5.5-2 provides liability for any person who:

(b)     Knowingly or intentionally:

    (1)     presents a false claim to the state for payment or approval;

    (2)     makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

    (3)     with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

    (4)     with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

    (5)     receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

    (6)     makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

    (7)     conspires with another person to perform an act described in § 5-11-5.5-2; or

    (8)     causes or induces another person to perform an act described in subdivisions (1) through (6).

518.     Omnicare and/or the SNFs knowingly violated Ind. Code § 5-11-5.5-2 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Indiana Anti-Kickback Statute (Ind. Code § 12-15-24-2), as described herein.

519. The fraudulent conduct continues to this day.

520. As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Indiana Medicaid program are false or fraudulent. Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Indiana Anti-Kickback Statute (Ind. Code § 12-15-24-2). Compliance with federal and state laws and regulations were conditions of payment.

521. The State of Indiana, by and through the Indiana Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

522. Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Indiana's payment decision.

523. The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Indiana's loss and a consequence of the scheme.

524. As a result of the violations by Omnicare and/or the SNFs of Ind. Code § 5-11-5.5-2, the State of Indiana has been damaged.

525. There are no bars to recovery under Ind. Code § 5-11-5.5-7(f) and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Ind. Code § 5-11-5.5-4 on behalf of herself and the State of Indiana.

526. This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF INDIANA:

- Three times the amount of actual damages that the State of Indiana has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Indiana;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Ind. Code § 5-11-5.5-6 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**N.      Count XIII – Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:437.1 *et seq.*)**

527.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

528.     This is a *qui tam* action brought by Relator and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law,  La. Rev. Stat. Ann. § 46:437.1 *et seq.*

529.     La. Rev. Stat. Ann. § 46:438.3 provides-

(a)      No person shall knowingly present or cause to be presented a false or fraudulent claim;

(b)   No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds; and

(c)   No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

530.   In addition, La. Rev. Stat. Ann. § 46:438.2(A) prohibits the solicitation, receipt, offering or payment of any financial inducements, including kickbacks, bribes, rebates, etc., directly or indirectly, overtly or covertly, in cash or in kind, for furnishing health care goods or services paid for in whole or in part by the Louisiana medical assistance programs.  The fraudulent conduct continues to this day.

531.   Omnicare and/or the SNFs knowingly violated La. Rev. Stat. Ann. § 46:438.3 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Louisiana Anti-Kickback Statute (La. Rev. Stat. Ann. § 46:438.2(A)), as described herein.

532.   As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Louisiana Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Louisiana Anti-Kickback Statute (La. Rev. Stat. Ann. § 46:438.2(A)).   Compliance with federal and state laws and regulations were conditions of payment.

533.   The State of Louisiana, by and through the Louisiana Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

534.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Louisiana's payment decision.

535.    The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Louisiana's loss and a consequence of the scheme.

536.    As a result of the violations by Omnicare and/or the SNFs of La. Rev. Stat. Ann. § 46:438.3, the State of Louisiana has been damaged.

537.    There are no bars to recovery under La. Rev. Stat. Ann. § 46:439.1(E) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to La. Rev. Stat. Ann. § 46.439.1(A) on behalf of herself and the State of Louisiana.

538.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF LOUISIANA:

- ▪ Three times the amount of actual damages that the State of Louisiana has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- ▪ A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Louisiana;

- ▪ Prejudgment interest; and

■ All costs incurred in bringing this action.

To Relator:

    ■ The maximum amount allowed pursuant to La. Rev. Stat. § 46:439.4(A) and/or any other applicable provision of law;

    ■ Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    ■ An award of reasonable attorney's fees and costs; and

    ■ Such further relief as this Court deems equitable and just.

**O.    Count XIV – Massachusetts Claims Act (Mass. Gen. Laws Ann. 12 § 5A *et seq.*)**

539.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

540.    This is a *qui tam* action brought by Relator and the Commonwealth of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. 12 § 5A *et seq.*

541.    Mass. Gen. Laws Ann. 12 § 5B provides liability for any person who:

(a)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

(c)    conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

(d)    knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or to transmit money or property to the commonwealth or political subdivision thereof; or

(e)    is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the

commonwealth or political subdivision within a reasonable time after discovery of the false claim.

542.     In addition, Mass. Gen. Laws Ann. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe or rebate, directly or indirectly, overtly or overtly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Massachusetts Medicaid program.

543.     Omnicare and/or the SNFs knowingly violated Mass. Gen. Laws Ann. 12 § 5B from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Massachusetts Anti-Kickback Statute (Mass. Gen. Laws Ann. 118E §41), as described herein.  The fraudulent conduct continues to this day.

544.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Massachusetts Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Massachusetts Anti-Kickback Statute (Mass. Gen. Laws Ann. 118E §41).  Compliance with federal and state laws and regulations were conditions of payment.

545.     The Commonwealth of Massachusetts, by and through the Massachusetts Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

546.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Massachusetts's payment decision.

547.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Massachusetts's loss and a consequence of the scheme.

548.     As a result of the violations by Omnicare and/or the SNFs of Mass. Gen. Laws Ann. 12 § 5B, the Commonwealth of Massachusetts has been damaged.

549.     There are no bars to recovery under Mass. Gen. Laws Ann. 12 § 5G(3) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. 12 § 5C(2) on behalf of herself and the Commonwealth of Massachusetts.

550.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Massachusetts in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the COMMONWEALTH OF MASSACHUSETTS:

- Three times the amount of actual damages that the Commonwealth of Massachusetts has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the Commonwealth of Massachusetts;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Mass. Gen. Laws Ann.12, §5F and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**P.**     **Count XV – Michigan Medicaid False Claims Act (Mich. Comp. Laws § 400.601 *et seq*.)**

551.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

552.     This is a *qui tam* action brought by Relator and the State of Michigan to recover treble damages and civil penalties under the Michigan Medicaid False Claim Act, Mich. Comp. Laws § 400.601 *et seq*.

553.     Mich. Comp. Laws §§ 400.603 to 400.607 provides liability for a person who:

(a)     knowingly makes or causes to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit;

(b)     makes or presents or causes to be made or presented to an employee or officer of this state a claim under Medicaid, knowing the claim to be false;

(c)     enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim under §§ 400.1 to 400.121.

554.     Omnicare and/or the SNFs knowingly violated Mich. Comp. Laws §§ 400.603 to 400.607 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Michigan Anti-Kickback Statute (Mich. Comp. Laws § 400.604), as described herein.  The fraudulent conduct continues to this day.

555.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Michigan Medicaid program are false or fraudulent.   Further,

Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Michigan Anti-Kickback Statute (Mich. Comp. Laws § 400.604).  Compliance with federal and state laws and regulations were conditions of payment.

556.     The State of Michigan, by and through the Michigan Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

557.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Michigan's payment decision.

558.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Michigan's loss and a consequence of the scheme.

559.     As a result of the violations by Omnicare and/or the SNFs of Mich. Comp. Laws §§ 400.603 to 400.607, the State of Michigan has been damaged.

560.     There are no bars to recovery under Mich. Comp. Laws § 400.610a(13) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mich. Comp. Laws § 400.610a(9) on behalf of herself and the State of Michigan.

561.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF MICHIGAN:

- Three times the amount of actual damages that the State of Michigan has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Michigan;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Mich. Comp. Laws § 400.610a(9) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**Q.    Count XVI – Montana False Claims Act (Mont. Code Ann. § 17-8-401 *et seq.*)**

562.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

563.    This is a *qui tam* action brought by Relator and the State of Montana to recover treble damages and civil penalties under the Montana False Claims Act, Mont. Code Ann. § 17-8-401 *et seq.*

564.    Mont. Code Ann. § 17-8-403(1) provides liability for any person who:

(a)    knowingly presents or causes to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

     (b)    knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

     (c)    conspires to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity

     (d)    knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors.

565.     Omnicare and/or the SNFs knowingly violated Mont. Code Ann. § 17-8-403(1) from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Montana Anti-Kickback Statute (Mont. Code Ann § 45-6-313), as described herein.  The fraudulent conduct continues to this day.

566.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Montana Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Montana Anti-Kickback Statute (Mont. Code Ann § 45-6-313).  Compliance with federal and state laws and regulations were conditions of payment.

567.     The State of Montana, by and through the Montana Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

568.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Montana's payment decision.

569.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Montana's loss and a consequence of the scheme.

570.     As a result of the violations by Omnicare and/or the SNFs of Mont. Code Ann. § 17-8-403(1), the State of Montana has been damaged.

571.     There are no bars to recovery under Mont. Code Ann. § 17-8-403(5)(c) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mont. Code Ann. § 17-8-406 on behalf of herself and the State of Montana.

572.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Montana in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF MONTANA:

- ▪ Three times the amount of actual damages that the State of Montana sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- ▪ A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Montana

- ▪ Prejudgment interest; and

- ▪ All costs incurred in bringing this action.

To RELATOR:

- ▪ The maximum amount allowed pursuant to Mont. Code Ann. § 17-8-410 and/or any other applicable provision of law;

- ▪ Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- ▪ An award of reasonable attorneys' fees and costs; and

▪ Such further relief as this Court deems equitable and just.

**R.      Count XVII – Nevada False Claims Act (N.R.S. § 357.010 *et seq*.)**

573.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

574.    This is a *qui tam* action brought by Relator and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010 *et seq*.

575.    N.R.S. § 357.040(1) provides liability for any person who:

(a)      knowingly presents or causes to be presented a false claim for payment or approval;

(b)      knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

(c)      conspires to defraud by obtaining allowance or payment of a false claim;

(d)      knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State or a political subdivision;

(e)      is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the state or political subdivision within a reasonable time.

576.    In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

577.    Omnicare and/or the SNFs knowingly violated N.R.S. § 357.040(1) by their violation of federal and state laws, including: the Federal Anti-Kickback Statute and the Nevada Anti-Kickback Statute (N.R.S. § 422.560), as described herein.  The fraudulent conduct continues to this day.

578.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Nevada Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Nevada Anti-Kickback Statute (N.R.S. § 422.560).  Compliance with federal and state laws and regulations were conditions of payment.

579.     The State of Nevada, by and through the Nevada Medicaid program and other state health care programs, paid the false and fraudulent claims.

580.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Nevada's payment decision.

581.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Nevada's loss and a consequence of the scheme.

582.     As a result of the violations by Omnicare and/or the SNFs of N.R.S. § 357.040(1), the State of Nevada has been damaged.

583.     There are no bars to recovery under N.R.S. § 357.100 and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.R.S. § 357.080 on behalf of herself and the State of Nevada.

584.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF NEVADA:

- Three times the amount of actual damages that the State of Nevada has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Nevada;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.R.S. § 357.210 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**S.    Count XVIII – New Jersey False Claims Act (N.J. Stat. Ann. §§ 2A:32-C1–2A:32-C18)**

585.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

586.    This is a *qui tam* action brought by Relator and the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J. Stat. Ann. §§ 2A:32-C1–2A:32-C18.

587.    N.J. Stat. Ann. § 2A:32C-3 provides liability for any person who:

      (a)      knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

      (b)      knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

      (c)      conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

588.     Omnicare and/or the SNFs knowingly violated N.J. Stat. Ann. § 2A:32C-3 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute, as described herein.  The fraudulent conduct continues to this day.

589.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the New Jersey Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute.  Compliance with federal and state laws and regulations were conditions of payment.

590.     The State of New Jersey, by and through the New Jersey Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

591.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of New Jersey's payment decision.

592.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of New Jersey's loss and a consequence of the scheme.

593.     As a result of the violations by Omnicare and/or the SNFs of N.J. Stat. Ann. § 2A:32C-3, the State of New Jersey has been damaged.

594.     There are no bars to recovery under N.J. Stat. Ann. § 2A:32C-9(c), and, or in the alternative, Relator is an original sources as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.J. Stat. Ann. § 2A:32C-5(b) on behalf of herself and the State of New Jersey.

595.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF NEW JERSEY:

- Three times the amount of actual damages that the State of New Jersey has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of New Jersey;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.J. Stat. Ann. § 2A:32C-3**7** and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

▪ Such further relief as this Court deems equitable and just.

**T.      Count XIX – New Mexico Medicaid False Claims Acts**

596.      Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

597.      This is a *qui tam* action brought by Relator and the State of New Mexico  to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq*. and the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1 *et seq.*

598.      N.M. Stat. Ann. § 27-14-4 provides liability for any person who

(a)      presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent;

(b)      presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program;

(c)      makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

(d)      conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent

(e)      makes, uses or causes to be made or used a record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state, relative to the Medicaid program, knowing that such record or statement is false.

599.      N.M. Stat. Ann. § 44-9-3 provides liability for any person who

(a)      knowingly presents or causes to be presented to an employee, officer or agent of the State, or to a contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

(b)      knowingly makes, uses, or causes to be made or used a false, misleading, or fraudulent record or statement to obtain or support the approval of or the payment on a false or fraudulent claim;

      (c)      conspires to defraud the State by obtaining approval or payment on a false or fraudulent claim;

      (d)      conspires to make, use or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State;

      (e)      knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State.

600.    Omnicare and/or the SNFs knowingly violated N.M. Stat. Ann. § 27-14-4 and/or N.M. Stat. Ann. § 44-9-3 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the New Mexico Anti-Kickback Statute (N.M. Stat Ann. § 30-44-7), as described herein.  The fraudulent conduct continues to this day.

601.    As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the New Mexico Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the New Mexico Anti-Kickback Statute (N.M. Stat Ann. § 30-44-7).   Compliance with federal and state laws and regulations were conditions of payment.

602.    The State of New Mexico, by and through the New Mexico Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

603.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of New Mexico's payment decision.

604.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of New Mexico's loss and a consequence of the scheme.

605.     As a result of the violations by Omnicare and/or the SNFs of N.M. Stat. Ann. § 27-14-4 and/or N.M. Stat. Ann. § 44-9-3, the State of New Mexico has been damaged.

606.     There are no bars to recovery under N.M. Stat. Ann. § 27-14-10(C) and/or N.M. Stat. Ann. § 44-9-9, and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.M. Stat. Ann. § 27-14-7 and N.M. Stat. Ann. § 44-9-3 on behalf of herself and the State of New Mexico.

607.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF NEW MEXICO:

- ▪ Three times the amount of actual damages that the State of New Mexico has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- ▪ A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of New Mexico;

- ▪ Prejudgment interest; and

- ▪ All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.M. Stat. Ann. § 27-14-9 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**U.    Count XX – New York False Claims Act (N.Y. State Fin. Law § 187 *et seq.*)**

608.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

609.    This is a *qui tam* action brought by Relator and the State of New York to recover treble damages and civil penalties under the New York False Claims Act, N.Y. State Fin. Law § 187 *et seq*.

610.    For conduct occurring before August 27, 2010, N.Y. State Fin. Law § 189 provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to any employee, officer or agent of the state or a local government, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government;

(c)    conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid;

(d)    knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a local government.

611.    For conduct occurring on or after August 27, 2010, N.Y. State Fin. Law § 189(1) provides liability for any person who:

(a) knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval;

(b) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(c) conspires to commit a violation of § 189(1);

(d) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government.

612. Omnicare and/or the SNFs knowingly violated N.Y. State Fin. Law § 189 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute, as described herein. The fraudulent conduct continues to this day.

613. As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the New York Medicaid program are false or fraudulent. Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute. Compliance with federal and state laws and regulations were conditions of payment.

614. The State of New York, by and through the New York Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

615. Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of New York's payment decision.

616. The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of New York's loss and a consequence of the scheme.

617.     As a result of the violations by Omnicare and/or the SNFs of N.Y. State Fin. Law § 189, the State of New York has been damaged.

618.     There are no bars to recovery under N.Y. Fin. Law § 190(9) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to N.Y. State Fin. Law § 190(2) on behalf of herself and the State of New York.

619.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New York in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF NEW YORK:

- Three times the amount of actual damages that the State of New York has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $6,000 and not more than $12,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of New York;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to N.Y. State Fin. Law § 190(6) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**V.     Count XXI – Oklahoma Medicaid False Claims Act (Okla. Stat. Ann. § 5053.1 *et seq.*)**

620.     Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

621.     This is a *qui tam* action brought by Relator and the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63 Okla. Stat. Ann. § 5053.1 *et seq*.

622.     63 Okla. Stat. Ann. § 5053.1(B) provides liability for any person who:

(a)     knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

(b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(c)     conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

(d)     knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state.

623.     Omnicare and/or the SNFs knowingly violated 63 Okla. Stat. Ann. § 5053.1(B) from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Oklahoma Anti-Kickback Statute (56 Okla. Stat. Ann. § 1005), as described herein.  The fraudulent conduct continues to this day.

624.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Oklahoma Medicaid program are false or fraudulent.   Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false

reporting, including but not limited to the Anti-Kickback Statute and the Oklahoma Anti-Kickback Statute (56 Okla. Stat. Ann. § 1005). Compliance with federal and state laws and regulations were conditions of payment.

625.    The State of Oklahoma, by and through the Oklahoma Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

626.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Oklahoma's payment decision.

627.    The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Oklahoma's loss and a consequence of the scheme.

628.    As a result of the violations by Omnicare and/or the SNFs of 63 Okla. Stat. Ann. § 5053.1(B), the State of Oklahoma has been damaged.

629.    There are no bars to recovery under 63 Okla. Stat. Ann. § 5053.5 and, or in the alternative, Relator is an original source as defined therein. Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 63 Okla. Stat. Ann. § 5053.2 on behalf of herself and the State of Oklahoma.

630.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF OKLAHOMA:

- Three times the amount of actual damages that the State of Oklahoma has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Oklahoma;

- Prejudgment interest; and

- All costs incurred in bringing this action.

TO RELATOR:

- The maximum amount allowed pursuant to 63 Okla. Stat. Ann. § 5053.4 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**W.    Count XXII – Rhode Island State False Claims Act (R.I. Gen. Laws § 9-1.1-1 et seq.)**

631.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

632.    This is a *qui tam* action brought by Relator and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq*.

633.    R.I. Gen. Laws § 9-1.1-3 provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

189

(c)     conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

(d)     knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

634.    Omnicare and/or the SNFs knowingly violated R.I. Gen. Laws § 9-1.1-3 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Rhode Island Anti-Kickback Statutes (R.I. Gen Laws § 5-48.1-3 and § 40-8.2-3), as described herein.  The fraudulent conduct continues to this day.

635.    As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Rhode Island Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Rhode Island Anti-Kickback Statutes (R.I. Gen Laws § 5-48.1-3 and § 40-8.2-3).  Compliance with federal and state laws and regulations were conditions of payment.

636.    The State of Rhode Island, by and through the Rhode Island Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

637.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Rhode Island's payment decision.

638.    The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Rhode Island's loss and a consequence of the scheme.

639.     As a result of the violations by Omnicare and/or the SNFs of R.I. Gen. Laws § 9-1.1-3, the State of Rhode Island has been damaged.

640.     There are no bars to recovery under R.I. Gen. Laws § 9-1.1-4(e)(3), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to R.I. § 9-1.1-4(b) on behalf of herself and the State of Rhode Island.

641.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF RHODE ISLAND:

- Three times the amount of actual damages that the State of Rhode Island has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Rhode Island;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to R.I. Gen. Laws § 9-1.1-4(d) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

▪  Such further relief as this Court deems equitable and just.

**X.      Count XXIII – Tennessee Medicaid False Claims Act (Tenn. Code  Ann. § 71-5-181 *et seq*.)**

642.      Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

643.      This is a *qui tam* action brought by Relator and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*

644.      Tenn. Code Ann. § 71-5-182(a)(1) provides liability for any person who-

(a)      presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

(b)      makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false; or

(c)      conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent;

(d)      makes, uses, or causes to be made or used, a record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state, relative to the Medicaid program, knowing such record or statement is false.

645.      Omnicare and/or the SNFs knowingly violated Tenn. Code Ann. § 71-5-182(a)(1) from at least 1998 to the present by their violation of federal and state laws, including: the Federal Anti-Kickback Statute and the Tennessee Anti-Kickback Statute (Tenn. Code Ann. § 71-5-182), as described herein.  The fraudulent conduct continues to this day.

646.      As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Tennessee Medicaid program are false or fraudulent.   Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false

reporting, including but not limited to the Anti-Kickback Statute and the Tennessee Anti-Kickback Statute (Tenn. Code Ann. § 71-5-182).  Compliance with federal and state laws and regulations were conditions of payment.

647.    The State of Tennessee, by and through the Tennessee Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

648.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Tennessee's payment decision.

649.    The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Tennessee's loss and a consequence of the scheme.

650.    As a result of the violations by Omnicare and/or the SNFs of Tenn. Code Ann. § 71-5-182(a)(1), the State of Tennessee has been damaged.

651.    There are no bars to recovery under Tenn. Code Ann. § 71-5-183(d)(2) and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(1) on behalf of herself and the State of Tennessee.

652.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF TENNESSEE:

- ▪ Three times the amount of actual damages that the State of Tennessee has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- ▪ A civil penalty of not less than $5,000 and not more than $25,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Tennessee;

- ▪ Prejudgment interest; and

- ▪ All costs incurred in bringing this action.

TO RELATOR:

- ▪ The maximum amount allowed pursuant to Tenn. Code Ann. § 71-5-183(d) and/or any other applicable provision of law;

- ▪ Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- ▪ An award of reasonable attorneys' fees and costs; and

- ▪ Such further relief as this Court deems equitable and just.

**Y.    Count XXIV – Texas False Claims Act (V.T.C.A. Hum. Res. Code § 36.001 *et seq.*)**

653.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

654.    This is a *qui tam* action brought by Relator and the State of Texas to recover double damages and civil penalties under Texas False Claims Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

655.    Tex. Hum. Res. Code Ann. § 36.002 provides liability for any person who:

(a)    knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid Program that is not authorized or that is greater than the benefit or payment that is authorized;

(b)    knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning . . . information required to be provided by a federal or state

194

law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(c)     knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;

(d)     knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to this state under the Medicaid program; or

(e)     knowingly engages in conduct that constitutes a violation under Tex Hum. Res. Code Ann. § 32.039 (the Texas Anti-Kickback Statute).

656.     Omnicare and/or the SNFs knowingly violated Tex. Hum. Res. Code Ann. § 36.002 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Texas Anti-Kickback Statute (Tex. Hum. Res. Code Ann. § 32.039), as described herein.  The fraudulent conduct continues to this day.

657.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Texas Medicaid program are false or fraudulent.  Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Texas Anti-Kickback Statute (Tex. Hum. Res. Code Ann. § 32.039).  Compliance with federal and state laws and regulations were conditions of payment.

658.     The State of Texas, by and through the Texas Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

659.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Texas's payment decision.

660.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Texas's loss and a consequence of the scheme.

661.     As a result of the violations by Omnicare and/or the SNFs of Tex. Hum. Res. Code Ann. § 36.002, the State of Texas has been damaged.

662.     There are no bars to recovery under Tex. Hum. Res. Code Ann. § 36.113(b), and, or in the alternative, Relator is an original source as defined therein.  Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Tex. Hum. Res. Code Ann. § 36.101 on behalf of herself and the State of Texas.

663.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF TEXAS:

- Two times the amount of actual damages that the State of Texas has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,000 as described in Tex. Hum. Res. Code Section Ann. § 36.052(a)(3) for each false claim that Omnicare and the SNFs presented or caused to be presented to the state of Texas;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Tex. Hum. Res. Code Ann. § 36.110, and/or any other applicable provision of law;

    ▪  Reimbursement for reasonable expenses that Relator incurred in connection with this action; and

    ▪  An award of reasonable attorneys' fees and costs.

**Z.    Count XXV – Virginia Fraud Against Taxpayer Act (Va. Code Ann. § 8.01-216.1 *et seq.*)**

664.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

665.    This is a *qui tam* action brought by Relator and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq.*

666.    For conduct occurring before July 1, 2011, Va. Code Ann. § 8.01-216.3 provides liability for any person who-

(a)    Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

(b)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth;

(c)    Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid;

(d)    Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(e)    Authorizes to make or deliver a document certifying receipt of property used, or to be used by the Commonwealth, and intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(f)    Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

      (g)     Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth.

667.     For conduct occurring on or after July 1, 2011, Va. Code Ann. § 8.01-216.3 provides liability for any person who-

      (a)     Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

      (b)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

      (c)     Conspires to commit a violation of § 8.01-216.3;

      (d)     Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and knowingly delivers, or causes to be delivered, less than all such money or property;

      (e)     Is authorized to make or deliver a document certifying receipt of property used, or to be used by the Commonwealth, and intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

      (f)     Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

      (g)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Commonwealth or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Commonwealth.

668.     Omnicare and/or the SNFs knowingly violated Va. Code Ann. § 8.01-216.3 from at least 1998 to the present by their violation of federal and state laws, including the Federal Anti-Kickback Statute and the Virginia Anti-Kickback Statute (Va. Code Ann. § 32.1-315), as described herein.  The fraudulent conduct continues to this day.

669.     As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Virginia Medicaid program are false or fraudulent.  Further, Omnicare

and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute and the Virginia Anti-Kickback Statute (Va. Code Ann. § 32.1-315).   Compliance with federal and state laws and regulations were conditions of payment.

670.     The Commonwealth of Virginia, by and through the Virginia Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

671.     Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the Commonwealth of Virginia's payment decision.

672.     The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the Commonwealth of Virginia's loss and a consequence of the scheme.

673.     As a result of the violations by Omnicare and/or the SNFs of Va. Code Ann. § 8.01-216.3, the Commonwealth of Virginia has been damaged.

674.     There are no bars to recovery under Va. Code Ann. § 8.01-216.8, and, or in the alternative, Relator is an original source as defined therein.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Va. Code Ann. § 8.01-216.5 on behalf of herself and the Commonwealth of Virginia.

675.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the COMMONWEALTH OF VIRGINIA:

- Three times the amount of actual damages that the Commonwealth of Virginia has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- A civil penalty of not less than $5,500 and not more than $11,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the Commonwealth of Virginia;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**AA.    COUNT XXVI – Wisconsin False Claims Act (Wis. Stat. Ann. § 20.931 *et seq.*)**

676.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

677.    This is a *qui tam* action brought by Relator and the State of Wisconsin to recover treble damages and civil penalties under the Wisconsin False Claims Act, Wis. Stat. Ann. § 20.931 *et seq.*

678.    Wis. Stat. Ann. § 20.931(2) provides liability for any person who-

(a)    knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

    (b)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

    (c)     conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

    (d)     knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors.

679.    Omnicare and/or the SNFs knowingly violated Wis. Stat. Ann. § 20.931(2) from at least 1998 to the present by their violations of federal and state laws, including the Federal Anti-Kickback Statute, as described herein.  The fraudulent conduct continues to this day.

680.    As a result of Omnicare's kickback scheme, all of the claims that Omnicare knowingly submitted to the Wisconsin Medicaid program are false or fraudulent.   Further, Omnicare and/or the SNFs falsely certified, expressly and/or impliedly, and represented full compliance with all federal and state laws and regulations prohibiting fraudulent acts and false reporting, including but not limited to the Anti-Kickback Statute.  Compliance with federal and state laws and regulations were conditions of payment.

681.    The State of Wisconsin, by and through the State of Wisconsin Medicaid program and other state health care programs, paid the false and/or fraudulent claims.

682.    Given the structure of the health care systems, the false statements, representations, and records made by Omnicare and/or the SNFs had the potential to influence the State of Wisconsin's payment decision.

683.    The ultimate submission by Omnicare of false claims to the state Medicaid programs was a foreseeable factor in the State of Wisconsin's loss and a consequence of the scheme.

684.     As a result of the violations by Omnicare and/or the SNFs of Wis. Stat. Ann. § 20.931(2), the State of Wisconsin has been damaged.

685.     Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Wis. Stat. Ann. §20.931 on behalf of herself and the State of Wisconsin.

686.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Wisconsin in the operation of its Medicaid program.

WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Omnicare:

To the STATE OF WISCONSIN:

- ▪ Three times the amount of actual damages that the State of Wisconsin has sustained as a result of the fraudulent and illegal practices of Omnicare and the SNFs;

- ▪ A civil penalty of not less than $5,000 and not more than $10,000 for each false claim that Omnicare and the SNFs presented or caused to be presented to the State of Wisconsin;

- ▪ Prejudgment interest; and

- ▪ All costs incurred in bringing this action.

To RELATOR:

- ▪ The maximum amount allowed pursuant to Wis. Stat. Ann. § 20.931(11) and/or any other applicable provision of law;

- ▪ Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- ▪ An award of reasonable attorneys' fees and costs; and

- ▪ Such further relief as this Court deems equitable and just.

### BB.    Count XXVII – Common Fund Relief

687.    Relator realleges and incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

688.    The states possessing *qui tam* statutes have a regulatory scheme for rewarding Relator for coming forward, while those that have none will potentially receive a windfall with little or no investigation or commitment of time or resources to the recovery.  The Common Fund doctrine preserves the right of the litigant or counsel to an award from the Common Fund that has been generated.  The United States Supreme Court, and many other courts, have addressed this situation.  *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980):

> Since the decisions in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettuss*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. [citations omitted].   The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough*, supra 105 U.S., at 532-537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees [citations omitted].   The doctrine rests upon the perception that persons who obtain the benefit of the lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense [citation omitted].   Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefitted by this suit. [citations omitted].

*Accord*, *In re Smithkline Beckman Corp. Securities Litig.*, 751 F. Supp. 525, 531 (E.D. Pa. 1990). A lengthy string of cases recognizes the Common Fund doctrine for situations like that in this case.  *See The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation*, 31 Ind. L. Rev. 313, 337–38 (1998).   Relator respectfully requests this Court to award her a percentage share from the Common Fund generated by her actions.

## X.   DEMAND FOR JURY TRIAL

689.    Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury.

Respectfully submitted,


/s/ David Berg
David Berg
State Bar No. 02187000
Joel M. Androphy
State Bar No. 01254700
Sarah M. Frazier
State Bar No. 24027320
Rachel L. Grier
State Bar No. 24055592
BERG & ANDROPHY
3704 Travis Street
Houston, TX 77002
Tel: (713) 529-5622
Fax: (713) 529-3785
dberg@bafirm.com
jandrophy@bafirm.com
sfrazier@bafirm.com
rgrier@bafirm.com

*Attorneys-in-Charge for Relator*
*Susan Ruscher*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on April 17, 2015 a true and correct copy of the above Third Amended Complaint was forwarded via the CM/ECF filing system, the United States Mail, certified, return receipt requested, by facsimile, by electronic mail, or by messenger to the United States Attorney's Office in Houston, Texas, the Department of Justice in Washington, D.C., and the Attorneys General of the Qui Tam States and the District of Columbia.


                     <u>/s/ Sarah M. Frazier</u>
                     Sarah M. Frazier