**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| *ex rel. Susan Ruscher, et al.* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civ. Action No. 4:08-cv-3396** |
| **VS.** | § | |
| | § | |
| **OMNICARE, INC.** *et al* | § | |
| | § | |
| **Defendants.** | § | |

<u>**MEMORANDUM & ORDER**</u>

In this False Claims Act *qui tam* action, Defendant Omnicare, Inc., has filed counterclaims against Relator Susan Ruscher. The gravamen of Omnicare's counterclaims is that Relator improperly took confidential and proprietary documents from the company in the days before her termination. Some of those documents were later used in this lawsuit. Relator has filed a Motion to Dismiss Omnicare's Counterclaims. (Doc. No. 264.) She asserts that the counterclaims should be dismissed for lack of subject matter jurisdiction, on public policy grounds, and for failure to state a claim. Having considered the submissions of the parties and the applicable law, Relator's Motion is **GRANTED** as to Omnicare's conversion claim and **DENIED** as to all other claims.

**I.      BACKGROUND**

Relator Susan Ruscher brought this False Claims Act ("FCA") *qui tam* lawsuit against Omnicare, Inc., a provider of pharmaceuticals to long-term care facilities, and 200 of its affiliates.[1] Relator, who served for several years as Omnicare's Collections Manager, alleges an

---

[1] Relator's claims against former Omnicare CEO Joel Gemunder were dismissed by this Court. (Doc. No. 147.)

ongoing nationwide scheme of kickbacks used by Omnicare to attract and retain business from skilled nursing facilities. The details of the allegations are set out in this Court's June 2014 Memorandum and Order. (Doc. No. 147, at 2-7.)

After Relator filed her suit, Omnicare filed an answer alleging six counterclaims against Ms. Ruscher. (Doc. No. 214, hereinafter "Counterclaims".)[2] Omnicare alleges that Ms. Ruscher, who worked in Omnicare's collections department from July 2005 through August 2008, took a large number of documents from Omnicare's corporate headquarters in the days before she was terminated. Counterclaims ¶¶ 4, 12. In addition, Omnicare alleges that she arranged with two other former Omnicare employees, Cathy Brumleve and Kevin Stallo, for them to provide additional confidential documents to Relator after she was terminated. *Id.* ¶ 14. Some of those documents were protected by attorney-client privilege or the work-product doctrine. *Id.* ¶ 15. Relator shared some of these confidential documents with her own attorneys. *Id.* ¶ 17.

Omnicare alleges that the documents taken by Relator were subject to Omnicare's confidentiality policies, and that Relator, Ms. Brumleve, and Mr. Stallo had access to the documents only by virtue of their positions as trusted employees of Omnicare. *Id.* ¶¶ 7-9. The employees were trained on the importance of keeping such documents confidential. *Id.* ¶¶ 10-11. Furthermore, not all of the documents were relevant to the False Claims Act claims asserted in this lawsuit. *Id.* at ¶ 20. Omnicare alleges that it has been damaged by this disclosure, and that the damages are not related to Relator's pursuit of this action. *Id.* at ¶ 21.

On the basis of these allegations, Omnicare has brought claims against Relator for 1) breach of fiduciary duty, 2) civil conspiracy, 3) breach of implied contract, 4) promissory estoppel, 5) conversion, and 6) misappropriation of trade secrets pursuant to Kentucky's Uniform

---

[2] For the purposes of a motion to dismiss, the Court takes the factual allegations pleaded in the Counterclaims as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Trade Secrets Act, Ky. Rev. Stat. § 365.880, *et seq.* Relator has moved to dismiss all of Omnicare counterclaims. (Doc. No. 264.)

## II.    SUBJECT MATTER JURISDICTION

### a.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 668 F.3d 281, 286 (5th Cir. 2012) (internal quotation marks omitted). Lack of subject matter jurisdiction may be found using (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996); *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980); *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

### b.  ANALYSIS

Relator argues that Omnicare's counterclaims — all of which are based on Kentucky law — are outside of this Court's subject matter jurisdiction. The Court indisputably has subject matter jurisdiction over Relator's claims under the False Claims Act (FCA) because those claims raise questions of federal law. Omnicare contends that the Court also has supplemental jurisdiction over the Kentucky law counterclaims pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).

3

Pursuant to that statute, district courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The text of the statute suggests that § 1367 applies to both compulsory and permissive counterclaims under Rule 13. While the Fifth Circuit has not ruled on this question, the Seventh, Second, and First Circuits have held that the adoption of § 1367 in 1990 abrogated the law's prior distinction between compulsory and permissive counterclaims for jurisdictional purposes. *See Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996); *Jones v. Ford Motor Credit Company*, 358 F.3d 205, 213 (2d Cir. 2004); *Global NAPS, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87 (1st Cir. 2010); *see also NatureSweet, Ltd. v. Mastronardi Produce, Ltd.*, No. 3:12-CV-1424-G, 2013 WL 460068, at *4 n.4 (N.D. Tex. Feb. 6, 2013) (following the Second and Seventh Circuits in finding subject matter jurisdiction over permissive counterclaims that satisfy § 1367).

A claim is "part of the same case or controversy" if it "[sprang] from a 'common nucleus of operative fact.'" *Id.* at *6 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Omnicare contends that the counterclaims arose from the same nucleus of facts at issue in Relator's retaliation claim, which she brought in her personal capacity.[3] That claim, Omnicare argues, put the circumstances of Relator's termination from Omnicare at issue in this case. The counterclaims allegedly relate to Relator's termination because it was in anticipation of termination that Relator took documents from the company. Counterclaims at ¶ 12.

---

[3] Relator later voluntarily withdrew her retaliation claim as what she described as a "self-imposed sanction" for violating the seal provisions. *See* Relator's Response to Omnicare's Mot. to Disqualify Relator Susan Ruscher, Doc. No. 351 at 7. However, the retaliation claim was pleaded in the operative complaint at the time that Omnicare added these counterclaims.

The counterclaims are also related to the FCA claims by virtue of the purpose to which the documents were allegedly put: namely, this lawsuit. Relator forcefully argues in her motion that the public policy behind the FCA supports dismissing the counterclaims against her. If this Court finds that it does not have supplemental jurisdiction over Omnicare's counterclaims, the claims must be brought in Kentucky state court. A judge there would be significantly less well equipped than this one to weigh the parties' arguments about how the documents were or were not relevant to Relator's False Claims Act allegations.

Relator cites one *qui tam* case in which the district court dismissed similar counterclaims for lack of subject matter jurisdiction. *See United States ex rel. Roberts v. Aging Care Home Health, Inc.*, Civ. No. 02-2199, 2008 WL 2676774 (W.D. La. June 2, 2008). That case is distinguishable from this one in two key ways: First, and most importantly, the United States had elected to intervene in the case, and the individual relators had been dismissed from the case. *Id.* at *1. Second, relators in that case did not plead a separate cause of action under the FCA's anti-retaliation provision, as Relator did here, thereby putting her employment relationship with Omnicare at issue.

The Court finds this to be a close question. Nonetheless, the Court concludes that the facts that the documents were taken shortly before her termination, and that at least some of the documents have been used in this lawsuit, constitute a "common nucleus of operative fact" between Relator's claims and Omnicare's counterclaims. The Court has subject matter jurisdiction over Omnicare's counterclaims.

## III.   PUBLIC POLICY

Next, Relator argues that all of Omnicare's tort claims against her should be dismissed as violative of the public policy behind the FCA. Both sides seek to persuade the Court that the

answer to this is dictated by "settled law." However, a close examination of the cases cited by both sides suggests that this matter is by no means settled, and that the status of counterclaims against FCA relators often turns on fine distinctions in the defendant's pleadings.

The Fifth Circuit has never addressed the availability of counterclaims against relators in *qui tam* actions. The leading appellate decisions on the issue come from a pair of cases in the Ninth Circuit. In the first case, the Ninth Circuit held that FCA defendants could not seek contribution or indemnification from the relator because "[t]he FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands.'" *Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas)*, 934 F.2d 209, 213 (9th Cir. 1991). In a later case, however, the court clarified that *Mortgages* did not stand for the proposition that all counterclaims against relators were barred. *See U.S. ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827 (9th Cir. 1993). Instead, "counterclaims for independent damages" — that is, those damages that are not dependent on a qui tam defendant's liability — will be permitted. *Id.* at 831.

Applying these background principles, courts have disagreed on the viability of counterclaims related to the taking of documents. Some courts have found such claims to be barred by public policy. *See U.S. ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 151-52 (D.D.C. 2009) (claim for breach of document-return provisions of separation agreement is void as against public policy); *U.S. ex rel. Grandeau v. Cancer Treatment Centers of America*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004). The court in *Head* concluded that, because the FCA requires relators to share evidence with the government, 31 U.S.C. § 3730(b)(2), "[e]nforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to a defendant who is under investigation would unduly frustrate the

purpose of this provision." The *Head* court also dismissed a counterclaim for contractual indemnification, through which the defendant sought to hold the relator liable for "any damages arising from the pending FCA claims."[4]

Others have taken a more nuanced approach. In *Cafasso ex rel. United States v. Gen. Dynamics C4 Systems., Inc.,* the Ninth Circuit did not decide whether public policy would bar certain counterclaims, but concluded that "it would not cover [relator's] conduct given her vast and indiscriminate appropriation of [defendant's] files." 637 F.3d 1047, 1062 (9th Cir. 2011). The Court explained that, "those asserting [protection under the policy] would need to justify why removal of the documents was reasonably necessary to pursue an FCA claim" and that the plaintiff had failed to make "such [a] particularized showing." *Id.*; *see also Walsh v. Amerisource Bergen Corp.*, Civ. No. 11-7584, 2014 WL 2738215, at *4-7 (E.D. Pa. June 17, 2014) (declining to dismiss counterclaim where defendants alleged that Relator "took a large variety of Defendants' confidential, proprietary and privileged information"); *Siebert v. Gene Sec. Network, Inc*, No. 11-CV-01987-JST, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) (recognizing public policy exception, but declining to dismiss counterclaim "because it is possible that Siebert also took confidential documents that bore no relation to his False Claims Act claim"); *U.S. ex rel. Notorfransesco v. Surgical Monitoring Assoc., Inc.*, Civ. No. 09-1703, 2014 WL 7008561, at *4-5 (E.D. Pa. Dec. 12, 2014).[5]

---

[4] Counterclaims not related to the taking of evidence for use in the *qui tam* action were permitted. In particular, the court held that public policy did not bar counterclaims based on statements that relator made to third parties and counterclaims that would only be viable if the FCA claim failed, including malicious prosecution, libel, slander, defamation and fraud. *Head*, 668 F. Supp. 2d at 151-53.

[5] Defendants also cite *US ex rel Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 99 (D.D.C. 2002), in which the court dismissed relator's *qui tam* complaint and allowed the defendant to go forward on counterclaims for breach of contract and violation of Virginia's Uniform Trade Secrets Act. Perhaps because the *qui tam* complaint was dismissed, the court did not discuss the

In this case, Omnicare's counterclaims all flow from Relator's admitted taking of "a large variety of documents related to Omnicare's efforts to collect amounts owed by its SNF customers" and her alleged agreement with two coworkers for them to provide her with additional confidential Omnicare documents after her termination. Counterclaims ¶ 12, 14. Some of those documents were allegedly covered by Omnicare's attorney-client privilege. *Id.* at ¶ 15. An unknown number of the documents were given to Ms. Ruscher's attorneys and used in connection with this lawsuit. *Id.* at 17. Omnicare also alleges that she "took more documents than were reasonably necessary to support her claims in the case." *Id.* at 20. Finally, Omnicare claims that it has been or will be damaged by the disclosure of its confidential information.

This Court agrees with many others that public policy will bar Omnicare from recovering from Relator for damages flowing solely from her disclosure of relevant documents to her attorneys and to the government. However, Omnicare's allegations include that Relator took documents beyond those reasonably calculated to support her FCA allegations. Counterclaims ¶ 20. It is possible that Omnicare may be able to show damages flowing from the taking of documents not related to this claim, and that Relator may be liable for those damages. As in *Walsh*, *Siebert*, and *Notorfransesco*, it is simply too early to tell. Accordingly, the Court will not now dismiss Omnicare's counterclaims.

## IV.     FAILURE TO STATE A CLAIM

### a. LEGAL STANDARD

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for

---

public policy implications of allowing the counterclaims to go forward, so that decision is of comparatively little help to this Court now.

entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, consistent with Rule 8(a), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678. Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

### b. ANALYSIS

#### i. *Breach of fiduciary duty*

Omnicare alleges that Relator breached her fiduciary duty to Omnicare when she took documents from the company and disclosed them to her attorneys and to the government.[6]

---

[6] Relator asks us to apply the more stringent pleading requirements of Rule 9(b) to Omnicare's breach of fiduciary duty claim on the basis of broad statements by some Kentucky courts that "a breach of a fiduciary duty is equivalent to fraud." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 487 (Ky. 1991); *see also Sahni v. Hock*, 369 S.W.3d 39, 49 (Ky. App. 2010) (Taylor, J., concurring in part and dissenting in part). While breach of a fiduciary duty may be equivalent to fraud for some purposes — for instance, whether the crime-fraud exception applies, as in *Steelvest* — Relator does not explain why the purposes of Rule 9(b) are served by treating breach of fiduciary duty as a form of fraud. Furthermore, federal courts in Kentucky routinely apply Rule 12(b)(6), not Rule 9(b), to motions to dismiss claims for breach of fiduciary duty. *See, e.g.*, *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F. Supp. 2d 707 (E.D. Ky. 2009); *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2012 WL 3109492 (W.D. Ky. 2012). The Court

Relator seeks to dismiss the claim, contending that Omnicare has not adequately pleaded the existence of the fiduciary relationship or the acts that constituted a breach of the relationship.

Under Kentucky law, a fiduciary relationship exists where a relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *ATC Distrib. Group, Inc. v. Whatever It Takes Transmission & Parts, Inc.* 402 F.3d 700, 715 (6th Cir. 2005) (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 485 (Ky. 1991)). Omnicare alleges that Relator had access to confidential and proprietary information, including customer contracts, customer lists, and other sensitive documents, as part of her job in the collections department. Counterclaims ¶ 4, 8-9. The Court is convinced that this is sufficient to state a claim for relief under Kentucky's definition of a fiduciary relationship.

Omnicare has also satisfactorily pleaded the facts surrounding Relator's alleged breach of the agreement. The pleadings allege that Relator, on the Sunday before she was terminated, "took from Omnicare corporate headquarters a large variety of documents related to Omnicare's efforts to collect amounts owed by its SNF customers," Counterclaims ¶ 12, and disclosed them to her lawyers, *id.* at ¶ 17. The fiduciary duty claim survives.

## ii.  Civil conspiracy

Omnicare alleges that Relator is liable for conspiring with two former coworkers to take documents from Omnicare. In Kentucky, a civil conspiracy is "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful

---

is not persuaded that statements made in different contexts by Kentucky courts should govern the applicability of a federal procedural rule, and will evaluate the breach of fiduciary duty claim under the Rule 12 (b)(6) standard.

act, or to do a lawful act by unlawful means." *Smith v. Board of Education of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936). "In order to prevail on a claim of civil conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *Peoples Bank of N. Kentucky, Inc. v. Crowe Chizek and Co., LLC*, 277 S.W.3d 255, 261 (Ky. Ct. App. 2008) (citing *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995),  *overruled on other grounds by Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229 (Ky. 2013)). Kentucky courts refer to the Restatement (Second) definition of "concert of action":

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts, § 876 (1979) (cited in *Peoples Bank*, 277 S.W.3d at 261).

Relator argues that Omnicare has failed to properly plead the elements of civil conspiracy because taking documents for the purposes of an FCA claim does not constitute an "unlawful act." This is really an attempt to reassert her policy objections to the counterclaims. Setting aside those issues, which the Court has already explained are more properly taken up on a full factual record, it is clear that Omnicare has satisfied its pleading burden with respect to the conspiracy claim. Omnicare alleges an agreement between Relator, Ms. Brumleve and Mr. Stallo to take confidential and proprietary documents from Omnicare in violation of their fiduciary duties to Omnicare. Counterclaims ¶¶ 9-11, 15. Relator argues that Omnicare has not alleged that Relator provided "substantial assistance" to Ms. Brumleve and Mr. Stallo. However, "substantial assistance" is but one route to conspiracy liability under Kentucky law. If co-conspirators act tortiously "pursuant to a common design," this is sufficient to state a claim for relief under

Kentucky law. Here, Omnicare has alleged tortious acts by all three co-conspirators in furtherance of a common plan to funnel Omnicare documents to Relator, and accordingly its civil conspiracy claim survives.

### iii.   Breach of implied contract and promissory estoppel

Omnicare alleges that Relator breached an implied contract with her employer when she violated the company's policies regarding confidential and proprietary information. Under Kentucky law, "[o]nce an employer establishes an express personnel policy and the employee continues to work while the policy remains in effect, the policy is deemed an implied contract for so long as it remains in effect." *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 363 (Ky. 2005). Relator does not dispute that Omnicare had a confidentiality policy that prohibited sharing confidential information outside the company. Instead, she argues that the implied contract is unenforceable for public policy reasons.

Relator makes a similar argument with respect to Omnicare's promissory estoppel claim, contending only that "it is not reasonably expected that an employee, due to [her] continued employment, would promise not to disclose fraud to the government." Relator's Br. at 17-18. True enough. But the policy considerations raised by both the contract and promissory estoppel claims are questions to be asked upon a full record, and the Court will not dismiss such claims now.

### iv.   Conversion

Omnicare also alleges that Relator is liable for the tort of conversion because she took documents from Omnicare and because she exercises dominion and control over the documents. Counterclaims ¶¶ 50-54. Relator objects that Omnicare has not demanded the return of its property, has not lost the right to use and enjoy the property, and has not suffered damages.

There is a more fundamental obstacle to Omnicare's conversion claim. The Kentucky Uniform Trade Secrets Act (KUTSA) explicitly preempts "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Ky. Rev. Stat. § 365.892(1). This bars only those claims that are "completely replace[d]" by the KUTSA. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001). Here, Omnicare's conversion claim seeks relief for the documents that were taken by Relator and her colleagues. Those are the same documents covered by the misappropriation of trade secrets claim, and no other facts are alleged to differentiate the two claims. *Cf. Budsgunshop.com, LLC v. Sec. Safe Outlet, Inc.*, No. 5:10-CV-00390-KSF, 2012 WL 1899851, at *13 (E.D. Ky. May 23, 2012) (conversion claim based on theft of an entire website is not preempted by KUTSA because allegations go beyond mere misappropriation of trade secrets). Accordingly, the conversion claim will be dismissed because it is preempted by the KUTSA *T.D.I. Int'l, Inc. v. Golf Preservations, Inc.*, No. CIV.A. 6:07-313-DCR, 2008 WL 294531, at *6 (E.D. Ky. Jan. 31, 2008).

### v.   Misappropriation of trade secrets

Finally, Relator contends that Omnicare has not sufficiently alleged her claim for misappropriation of trade secrets. In order to qualify for trade secret protection, information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ky. Rev. Stat. § 365.880. Relator argues that Omnicare has not sufficiently alleged the secrecy of its confidential or proprietary information.

In its pleadings, Omnicare describes the company policy for dealing with confidential information. Specifically, confidential information was shared with employees on a "need-to-know" basis, and employees were warned of the risks of disclosing the information outside of the

13

company, including inadvertent disclosures. Counterclaims ¶ 11.  In addition, employees with access to confidential information were required to certify "that they understood and would follow the procedures described in their training." *Id.* at ¶ 10.

Omnicare contends that, because the documents were only accessible to company employees and because Relator certified that she understood the confidentiality policies, it has sufficiently stated a claim that reasonable efforts were taken to ensure secrecy. *See Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 671-72 (E.D. Ky. 2009) (evidence that information was only available to company employees and that employees signed confidentiality agreements was sufficient to support jury finding of misappropriation).  In the absence of any citations to contrary authority, the Court agrees that Omnicare has satisfied the pleading requirements for its trade secrets claim.

## V.       CONCLUSION

For the foregoing reasons, Relator's Motion to Dismiss Omnicare's Counterclaims is **GRANTED** as to Omnicare's conversion claim and **DENIED** as to all other claims. For reasons of public policy, Omnicare will not be permitted to pursue damages flowing from Relator's disclosure of documents that she reasonably believed could be related to this FCA action to her attorneys and to the government.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 15th of July, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE